IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE | : | |
| | : | Civil Action No: 22-cv-02942-GEKP |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT, HYPERALLERGIC MEDIA, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED
COMPLAINT AGAINST DEFENDANT, HYPERALLERGIC MEDIA, INC.**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and through undersigned counsel, Defendant, Hyperallergic Media, Inc., files this motion seeking dismissal of the counts asserted by plaintiff in her Amended Complaint for failure to state a claim. Defendant, Hyperallergic Media, Inc., requests that plaintiff's Amended Complaint be dismissed with prejudice as against Hyperallergic Media, Inc.

**I.      Preliminary Statement**

Plaintiff, Janet Monge, initiated this multiple-count action on May 20, 2022 pursuant to her Complaint that was filed in the Philadelphia Court of Common Pleas against Defendants University of Pennsylvania, Amy Gutmann, Wendell Pritchett, Kathleen Morrison, Deborah Thomas, & Christopher Woods, Paul Mitchell, Billy Penn, Maya Kasutto, The Philadelphia Inquirer, PBC, Abdul Aliy Muhammad & Jenice Armstrong, The New Yorker, Heather Ann Thompson, ESPN, INC. d/b/a Andscape, Nicole Froio & Linn Washington, The Association of Black Anthropologists, The Society of Black Archaeologists, The Guardian Media Group d/b/a The Guardian, Ed

1

Pilkington, Daily Mail and General Trust, PLC d/b/a Daily Mail, Adam Schrader, Slate, Elain Ayers, NYP Holdings, Inc. d/b/a New York Post, Jackson O'Bryan, Teen Vogue, Ezra Lerner, Hyperallergic Media ("Hyperallergic Media, Inc.", "moving Defendant"), Kinjal Dave & Jake Nussbaum, Smithsonian Magazine, Nora McGreevy, Al Dia News, Brittany Valentine, New York Times, Co., and Michael Levenson, alleging defamation, defamation by implication, false light, and civil aiding and abetting.

On June 21, 2022, Defendant, Hyperallergic Media, Inc., filed Preliminary Objections to Plaintiff's Complaint.

Thereafter, on June 22, 2022, Plaintiff filed an Amended Complaint, adding as Defendant, The American Anthropological Association, and omitting The Association of Black Anthropologists and Smithsonian Magazine as Defendants in this matter.

On June 27, 2022, Defendant, Hyperallergic Media, Inc., filed Preliminary Objections to Plaintiff's Amended Complaint.

On July 27, 2022, Defendant Nora McGreevy filed a notice of removal of this action to federal court based on the Federal Officer Removal Statute under 28 U.S.C. §1442(a)(1).

This action arises from alleged defamatory statements published about Plaintiff as a result of her work with human remains recovered from the MOVE bombing site in Philadelphia, Pennsylvania. Plaintiff is now bringing the following counts against all defendants: (Count I) defamation, (Count II) defamation by implication, (Count III) false light, and (Count IV) civil aiding and abetting.

Plaintiff avers in her Amended Complaint that she "has spent her entire career working for social justice by restoring personhood to unidentified human remains." (*See* Plaintiff's Amended Complaint, ¶ 1.)

In her Amended Complaint, Plaintiff claims that "[o]ne of the most challenging cases in [her] storied career was the matter involving the "Jane Doe" bone fragment remains removed by the City of Philadelphia from the site of the tragic 1985 bombing by the City, whose officials dropped an aerial explosive fire bomb on the home of its own citizens in one of the most horrific examples of excessive force found in American history; it killed eleven (11) persons (including five children) who were member[s] of a group known as the MOVE family." (*See* Plaintiff's Amended Complaint, ¶ 4.) Plaintiff further claims that she "worked for 36 years to identify the person whose bone fragments were not properly identified as belonging to any member of the MOVE family, extensively researching and studying them, along with attempting to contact known MOVE family members multiple times in an effort to gain cooperation so the remains could be conclusively identified." (*See* Plaintiff's Amended Complaint, ¶ 5.)

Plaintiff avers that "[f]rom the beginning of her engagement by the City of Philadelphia, which sought her aid as a world-renowned forensic physical/biological anthropologist, [she] worked tirelessly to restore identity to the Jane Doe bone fragment remains, all while contextualizing the tragedy of the MOVE bombing in social and political arenas." (*See* Plaintiff's Amended Complaint, ¶ 6.)

Plaintiff contends that "in 2021, false, defamatory, and widely disseminated media reports about [her] efforts made her the victim of vicious attacks on her personal and professional reputation initiated by a current doctoral candidate at the University of

Pennsylvania, Paul Mitchell, with the help of his PhD advisor, Penn Anthropology professor Deborah Thomas, solely for their own unlawful purposes and in retaliation for [Plaintiff] having reported the unprofessional conduct of Mr. Mitchell." (*See* Plaintiff's Amended Complaint, ¶ 7.) Plaintiff claims that "Mr. Mitchell purposefully, and with full knowledge that he was falsifying information, cooperated with his then-girlfriend Maya Kasutto, a writer for the Billy Penn 501(c)(3) news organization (a project of WHYY Philadelphia), to aid her in authoring an article containing malicious, sensationalized allegations of racial bias about the investigatory process undertaken by two respected anthropologists, Dr. Alan Mann and [Plaintiff], based entirely on false and misleading statements and attacking [Plaintiff's] well-deserved, excellent reputation worldwide as a forensic physical/biological anthropologist." (*See* Plaintiff's Amended Complaint, ¶ 8.)

Plaintiff claims "[t]he defamatory statements about [Plaintiff] in that Billy Penn article became even more widely disseminated through the actions of Defendant Thomas who released email blasts to colleagues and others in furtherance of Defendant Mitchell's intentional actions to disparage [Plaintiff's] reputation." (*See* Plaintiff's Amended Complaint, ¶ 9.) Moreover, Plaintiff avers "the contents of Billy Penn article, and all its defamatory misstatements, was then republished and embellished, in whole or in part, by several major media outlets, including those named Defendants herein, which resulted in great harm to [Plaintiff's] reputation and employment as a professor and curator, and caused her great economic harm." (*See* Plaintiff's Amended Complaint, ¶ 10.)

Plaintiff contends that "[a]lthough [Plaintiff] has never been found to have violated any professional, ethical, or legal standards in her handling of the remains, reports published in the media repeated the false and defamatory sentiments from the

Billy Penn article, directly stating and implying that [Plaintiff's] work was inappropriate, unethical, and inhumane." (*See* Plaintiff's Amended Complaint, ¶ 11.) Plaintiff further contends that "the published statements falsely accused, directly or by innuendo, [Plaintiff] of criminally violating the rights of one of the children who died in the bombing and resulting fire, even though the bone fragments properly provided to and retained by [Plaintiff] were not related to the child identified in the defamatory reports." (*See* Plaintiff's Amended Complaint, ¶ 12.)

Plaintiff claims "[w]hen these false statements were published, Defendants knew or should have known from reasonable investigation that the statements being made were false or would wrongly imply falsities about [Plaintiff], yet Defendants published them anyway for the purpose of gaining pageviews for its misplaced agendas, all starting with Defendant Kasutto's article written with Defendant Mitchell's help." (*See* Plaintiff's Amended Complaint, ¶ 14.) Plaintiff claims her "reputation has been irreparably and wrongfully destroyed, she has been the victim of adverse employment actions, and she has received threatening emails and phone calls, including multiple death threats." (*See* Plaintiff's Amended Complaint, ¶ 15.) Plaintiff now seeks "to recover the severe economic and non-economic damages that have been caused by the malicious and outrageous continuing defamatory actions of the defendants and to obtain published retractions of the false statements and apologies for the harm they have caused." (*See* Plaintiff's Amended Complaint, ¶ 16.)

As concerns Defendant Hyperallergic Media, Inc., Plaintiff claims that "[o]n October 31, 2021, Hyperallergic published the article []"How the Possession of Human Remains Led to a Public Reckoning at the Penn Museum," authored by [] Kinjal Dave

and Jake Nussbaum." (*See* Plaintiff's Amended Complaint, ¶ 161(j).) Plaintiff avers that "[l]ike its predecessors, the article details the aftermath of the media firestorm, but falsely blames Dr. Monge for a racially motivated investigation of the bone fragments, stating [']Consuella did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching.[']" (*See* Plaintiff's Amended Complaint, ¶ 161(j).)

Defendant Hyperallergic Media, Inc. hereby files this Motion to Dismiss the Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   Argument

### A.  <u>Standard of Review</u>

To survive a motion for dismissal, a party's complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stating a claim upon which relief may be granted "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" be enough to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly, 550* U.S. at 570. The court has no duty to "conjure up unpleaded facts that might turn a frivolous ... action into a substantial one." *Id.* at 562. A complaint, thus, is not sufficient if it merely contains "naked assertions" devoid of factual enhancement. *Iqbal*, 556 U.S. at 678. The tenet that a court must accept as true all allegations contained in a complaint when ruling on a Rule 12(b)(6) motion is inapplicable to legal conclusions. *Id.*

Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations. *Twombly, 550* U.S. at 555, 564.

In deciding a motion under Fed.R.Civ.P.12(b)(6), the court must determine whether the plaintiff has alleged the necessary elements of each cause of action.  If the necessary elements are alleged, the court must then separate the factual allegations from the legal conclusions and other boilerplate.  Finally, the court must determine whether the facts alleged (exclusive of conclusory statements) are sufficiently detailed to support the causes of action alleged.  *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## B.       Plaintiff's Claims are Barred as Against Moving Defendant

As a threshold matter:

> To state a cause of action for defamation under Pennsylvania law, a plaintiff must establish: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) a reference to the plaintiff; (4) a recipient's understanding of the communication's defamatory character and its application to plaintiff; (5) special harm resulting from the publication; and (6) abuse of any conditional privilege." *Iafrate v. Hadesty*, 423 Pa. Super. 619, 621 A.2d 1005, 1006 (Pa. Super. Ct. 1993) (quoting *Smith v. Wagner*, 403 Pa. Super. 316, 588 A.2d 1308, 1311 (Pa. Super. Ct. 1991)). The statute of limitations for defamation claims is one year from the date of publication. 42 Pa. Cons. Stat. § 5523. To avoid the potential for endless re-triggering of the statute of limitations, Pennsylvania has adopted the "single publication rule," which holds that for purposes of the statute of limitations "any one edition of a book or newspaper, or any one radio, television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication." *Graham v. Today's Spirit*, 503 Pa. 52, 468 A.2d 454, 457 (Pa. 1983) (quoting *Restatement (Second) of Torts* § 577(A)(3)); *see also* 42 Pa. Cons. Stat. § 8341(b). Under this rule, "it is the original printing of the defamatory material and not the circulation of it which results in a cause of action." *Graham*, 468 A.2d at 457.

> *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 173-74 (3d Cir. 2012.)

7

Pennsylvania courts have not considered whether the single publication rule applies to Internet publication. Other courts addressing Internet-based defamation have found the rule applicable to information widely available on the Internet. Noting that "[c]oncerns regarding the rapid pace of changes in the way information is disseminated, the desire to avoid multiplicity of suits and the need to give effect to relevant Statutes of Limitation . . . gave rise to the single publication rule," those courts reason that there is "no rational basis upon which to distinguish publication of a book or report through traditional printed media and publication through electronic means . . . ." *Firth v. State*, 184 Misc. 2d 105, 706 N.Y.S.2d 835, 843 (N.Y. Ct. Cl. 2000), *aff'd* 98 N.Y.2d 365, 775 N.E.2d 463, 747 N.Y.S.2d 69 (N.Y. Ct. App. 2002); *see also Nationwide Bi-Weekly Admin., Inc. v. Belo Corp*., 512 F.3d 137, 144 (5th Cir. 2007) ("Every court to consider the issue after *Firth* has followed suit in holding that the single publication rule applies to information widely available on the Internet."); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1131 (9th Cir. 2006). We believe that Pennsylvania courts would extend the single publication rule to publicly accessible material on the Internet based on similar reasoning.

See In re Phila. Newspapers, LLC, 690 F.3d 161, 174 (3d Cir. 2012.)

An exception to the single publication rule is the doctrine of republication. Republishing material (for example, the second edition of a book), editing and reissuing material, or placing it in a new form that includes the allegedly defamatory material, resets the statute of limitations. *Restatement (Second) of Torts* § 577(A); *Davis v. Mitan (In re Davis)*, 347 B.R. 607, 611 (W.D. Ky. 2006). Traditional principles of republication thus require the retransmission of the allegedly defamatory material itself for the doctrine to apply. However, courts addressing the doctrine in the context of Internet publications generally distinguish between linking, adding unrelated content, or making technical changes to an already published website (which they hold is not republication), and adding substantive material related to the allegedly defamatory material to an already published website (which they hold is republication). *See Davis*, 347 B.R. at 611-12.

Several courts specifically have considered whether linking to previously published material is republication. To date, they all hold that it is not based on a determination that a link is akin to the release of an additional copy of the same edition of a publication because it does not alter the substance of the original publication. *See, e.g., Sundance Image Tech., Inc. v. Cone Editions Press, Ltd*., No. 02-02258, 2007 U.S. Dist. LEXIS 16356, 2007 WL 935703 (S.D. Cal. Mar. 7, 2007); *Churchill v. State of N.J*., 378 N.J. Super. 471, 876 A.2d 311 (N.J. Super. Ct. 2005).

*In re Phila. Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012.)

Moreover, in considering Plaintiff's False Light claim, "[u]nder Pennsylvania law, "invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *See Yerger v. Landis Mfg. Sys., Inc.*, Civil Action No. 88-7694, 1989 U.S. Dist. LEXIS 6800, at *17 (E.D. Pa. June 16, 1989)(citing Harris by Harris v. Easton Publishing co., 335 Pa. Super. 141, 152, 483 A.2d 1377, 1383 (1984)) (citing Marks v. Bell Telephone Co., 460 Pa. 733, 331 A.2d 424 (@975)). "The statute of limitations for each of these causes of action is one year." *See Yerger v. Landis Mfg. Sys., Inc.*, Civil Action No. 88-7694, 1989 U.S. Dist. LEXIS 6800, at *17-18 (E.D. Pa. June 16, 1989)(citing 42 Pa. Cons. Stat. Ann. § 5523.)

### i.      *Statute of Limitations as Bar to Plaintiff's Claims*

Plaintiff's claims are barred by a one-year statute of limitations. The printing of the original purportedly defamatory article is claimed to have occurred on April 21, 2021: namely, the Billy Penn article authored by Maya Kasutto. (*See* Plaintiff's Amended Complaint, ¶ 151-153.) Plaintiff filed her initial Complaint in this action on May 20, 2022, which is more than one year after the Billy Penn article was published. Moving Defendant also sets forth that the single publication rule is applicable hereto, and Plaintiff's cause of action accrued upon the publication of Kasutto's Billy Penn article. Of note, the article Plaintiff attributes to moving Defendant was not published until October 31, 2021, (*see* Exhibit O to Plaintiff's Amended Complaint), and said article is not a republication of the prior-published Billy Penn or Philadelphia Inquirer articles. Moving Defendant's article merely links to Kasutto's Billy Penn article and the

Abdul-Aliy Muhammad Philadelphia Inquirer article published on the same day. *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012)("…though a link and reference may bring readers' attention to the existence of an article, they do not republish the article.")

Because Plaintiff's cause of action accrued on April 21, 2021, and because Plaintiff failed to commence her cause of action within the timeframe of the applicable Statute of Limitations, Plaintiff's claims should be barred.

   ii.   ***Plaintiff's Claims for Damages Barred As Against Moving Defendant***

As an initial matter, all of Plaintiff's defamatory claims are alleged to have taken place in 2021. The following is a chronology of the Articles and Plaintiff's Employment Claims:

| | |
|---|---|
| April 21 | Article published in Billy Penn. (*See* Plaintiff's Amended Complaint, ¶ 151)<br>Article in Philadelphia Inquirer. (*See* Plaintiff's Amended Complaint, ¶ 154) |
| April 23 | Mitchell writes article that is published in The Daily Mail; Guardian; and New York Post. (*See* Plaintiff's Amended Complaint, ¶¶ 158-160) |
| April 24 | New York Times article. (*See* Plaintiff's Amended Complaint, ¶ 161(a)) |
| April 26 | Article by McGreevy published in Smithsonian Magazine. (*See* Plaintiff's Amended Complaint, ¶ 161(b))<br><br>Statements by the Association of Black Anthropologists; Society of Black Archaeologists; and Black in Bioanthropology Collective released requesting Monge be removed from her position with the U of Penn. (*See* Plaintiff's Amended Complaint, ¶¶ 167-168)<br><br>**Monge claims** she was locked out of her lab. (*See* Plaintiff's Amended Complaint, ¶ 169.) |

| | |
|---|---|
| April 28 | Guttman and Pickett send email to employees of the Penn Museum and full U of Penn community. (*See* Plaintiff's Amended Complaint, ¶ 170) |
| | **Monge claims** Penn Anthology Dept Chair Dr. Kathleen Morrison advised Monge that she was being put on a "work pause" and would be removed from teaching any University class. (*See* Plaintiff's Amended Complaint, ¶ 171) |
| April 30 | Article in Slate. (*See* Plaintiff's Amended Complaint, ¶ 161(c)) |
| May 3 | Al Dia News article. (*See* Plaintiff's Amended Complaint, ¶ 161(d) |
| May 4 | **Monge claims** she was informed that her scheduled summer programs at Penn Museum and scheduled high school talks for Penn were being cancelled. (*See* Plaintiff's Amended Complaint, ¶ 172) |
| May 7 | Andscape article. (*See* Plaintiff's Amended Complaint, ¶ 161(e)) |
| May 16 | The New Yorker. (*See* Plaintiff's Amended Complaint, ¶ 161(f)) |
| May 18 | Philadelphia Inquirer article #2. (*See* Plaintiff's Amended Complaint, ¶ 161(g)) |
| May 26 | Andscape article #2. (*See* Plaintiff's Amended Complaint, ¶ 161(h)) |
| July 16 | Article in Teen Vogue (*See* Plaintiff's Amended Complaint, ¶ 161(i)) |
| August 2021 | **Monge claims** that she discovered that she had been removed from Penn's Anthropology Dept's webpage where it lists the current Graduate Group and Affiliated Faculty.  She was shortly thereafter informed that she would no longer be able to teach any of her current classes, be an adjunct professor, or even be an associate curator at the Penn Museum, and she was being demoted to Museum Keeper.  The demotion was affected with a salary cut of $65,000 per year for the following two years of her employment when she will be deemed to retire.<br>(*See* Plaintiff's Amended Complaint, ¶¶ 174-175) |
| **October 31** | **Article in Hyperallegic** (Dave and Nussbaum). (*See* Plaintiff's Amended Complaint, ¶ 161(j)) |

As indicated above, the article Plaintiff references in her Amended Complaint pertaining to moving Defendant is dated October 31, 2021. (*See* Exhibit O to Plaintiff's Amended Complaint.) Plaintiff claims she "has been the victim of adverse employment actions" (*see* Plaintiff's Amended Complaint, ¶ 177), but notably, any adverse employment action complained of by Plaintiff had occurred months prior to the alleged October 31, 2021 publication of moving Defendant's article. Because Plaintiff's employment-related claims involving her demotion and damages stemming therefrom pre-date the article attributed to moving Defendant, Plaintiff's claim for damages resulting from the publication of moving Defendant's article should be barred.

**WHEREFORE**, Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court dismiss Plaintiff's Amended Complaint with prejudice as against Defendant Hyperallergic Media, Inc.

**C.    Plaintiff's Claim for Defamation Under Count One of the Amended Complaint Must be Dismissed with Prejudice Pursuant to F.R.C.P. 12(b)(6)**

"…[I]n an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

>    (1) The defamatory character of the communication.
>
>    (2) Its publication by the defendant.
>
>    (3) Its application to the plaintiff.
>
>    (4) The understanding by the recipient of its defamatory meaning.
>
>    (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
>
>    (6) Special harm resulting to the plaintiff from its publication.
>
>    (7) Abuse of a conditionally privileged occasion."

*See Joseph v. Scranton Times L.P.*, 634 Pa. 35, 69-70, 129 A.3d 404, 424 (2015)(citing 42 Pa.C.S. § 8343(a).)

"Where the plaintiff has met this burden, the Act sets forth the following, which the defendant has the burden of proving:

> (1) The truth of the defamatory communication.

> (2) The privileged character of the occasion on which it was published.

> (3) The character of the subject matter of defamatory comment as of public concern.

*See Joseph v. Scranton Times L.P.*, 634 Pa. 35, 70, 129 A.3d 404, 424-25 (2015)(citing 42 Pa.C.S. § 8343(b).)

Of note, "…defamation includes a requirement the plaintiff prove a constitutionally-mandated minimum level of fault in order for the court to impose liability on a media defendant." *See Joseph v. Scranton Times L.P.*, 634 Pa. 35, 76, 129 A.3d 404, 428 (2015)(citing Norton, 580 Pa. at 224-25, 860 A.2d at 55-56.)

To that point:

> …[T]he appropriate standard of fault depends on whether the plaintiff is a public or private figure. See Gertz, 418 U.S. at 343, 94 S. Ct. at 3008-09 (articulating that "the state interest in compensating injury to the reputation of private individuals requires a different rule should obtain with respect to them" as compared to public figures). If the plaintiff is a public official or public figure, see Curtis Publ'g Co. v. Butts, 388 U.S. 130, 164 87 S. Ct. 1975, 1996, 18 L. Ed. 2d 1094 (1967) (extending the actual malice requirement to public figures who are not governmental officials), and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice. See Gertz, 418 U.S. at 343, 94 S. Ct. at 3008-09; Milkovich, 497 U.S. at 14-15, 20, 110 S. Ct. at 2703, 2706-07. In contrast, states are free to allow a private-figure plaintiff to recover by establishing that the defendant acted negligently rather than maliciously. The Superior Court has adopted this test, see Rutt, 335 Pa. Super. at 186, 484 A.2d at 83 ("[A] private figure defamation plaintiff, seeking compensation for harm inflicted as a result of the publication of defamatory matter, must prove that the defamatory matter was published with 'want of reasonable care

and diligence to ascertain the truth' or, in the vernacular, with negligence.")…

*See Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 83-84, 923 A.2d 389, 400 (2007.)

Plaintiff here must prove that the statements attributed to moving Defendant were made with actual malice, as Plaintiff is a public figure and the statements at issue regard a matter of public concern, considering Plaintiff's extensive participation in the custody, use, and identification of MOVE remains commencing in the wake of the MOVE bombing and continuing until 2021.

Simply stated, public figures are "less deserving of (judicial) protection . . . because they have 'voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them.'" In other words, public figures effectively have assumed the risk of potentially unfair criticism by entering into the public arena and engaging the public's attention.

*See Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 88, 923 A.2d 389, 402 (2007)(citing Steaks Unlimited, 623 F.2d at 273 (ellipsis in original))(other citations omitted.))

Notably,

Recognizing that public figures assume special prominence in the affairs of society, Gertz observed that two characteristics are particularly relevant to such designation, namely, the ability to rebut the defamatory statements due to greater access to the channels of communication than private individuals, see Gertz, 418 U.S. at 344, 94 S. Ct. at 3009 ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy."), and voluntary exposure to controversy, see id. at 345, 94 S. Ct. at 3010 (indicating that "public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them."). Further, Gertz determined that the classification as a public figure arises in two circumstances: first, referring to an "all purpose" public figure, the Court explained that, "in some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." Id., 418 U.S. at 351, 94 S. Ct. at 3013. Alternatively, a

"limited purpose public figure," which according to the Court is more common, is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. To determine such status, the Court instructed that it is necessary to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Id. at 352, 94 S. Ct. at 3013; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 n.3, 106 S. Ct. 2505, 2509 n.3, 91 L. Ed. 2d 202 (1986).

See Am. Future Sys., Inc. v. Better Bus. Bureau, 592 Pa. 66, 86-87, 923 A.2d 389, 401 (2007.)

Multiple reports have been publicly released centering around the chain of custody and use of the MOVE remains in the years since the fateful bombing in 1985. (A true and correct copy of the "Final Report of the Independent Investigation into the City of Philadelphia's Possession of Human Remains of Victims of the 1985 Bombing of the MOVE Organization" is attached hereto as Exhibit A[1])(See Exhibit A, part 2, p. 2)("The events surrounding the chain of custody of the B-1 remains from that point onward have been thoroughly discussed in publicly released reports prepared by independent investigators from the Tucker Law Group, LLC (retained by Penn) and Ballard Spahr LLP (retained by Princeton).") In the investigative report publicly released in June 2022, titled "Final Report of the Independent Investigation into the City of Philadelphia's Possession of Human Remains of Victims of the 1985 Bombing of the MOVE Organization" and authored by Dechert LLP and Montgomery McCracken Walker & Rhoads LLP, Plaintiff's extensive 35-year involvement with MOVE remains is

---

[1] The Court can properly consider the independent investigations attached to this Motion to Dismiss because "[i]t is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss."" See Potter v. O'Connor, No. 20-1825, 2021 U.S. Dist. LEXIS 1513, at *2 n.1 (E.D. Pa. Jan. 6, 2021)(citing Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018)) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)); see also Plaintiff's Amended Complaint, ¶ 176.

demonstrated. More specifically, part two of said report involves Plaintiff to such a degree that the title of part two mentions her name, as follows: "Part Two of Three: The MOVE Victim Remains in the Custody of Drs. Alan Mann and Janet Monge". (*See* Exhibit A, part 2, title page)(*see also* Exhibit A, part 2, p. 1)(footnote omitted)("The City also asked the MMWR Review Team to investigate any relevant information related to the MOVE victim remains that the MEO transferred to Drs. Alan Mann and Janet Monge, anthropologists associated with the University of Pennsylvania ("Penn") and Princeton University, in 1986, that were later discovered to still be in Dr. Monge's possession in April 2021 when it came to light that she had used the remains as a teaching tool in an online video course.")[2]

Plaintiff's teaching of a public online video course also lends to Plaintiff's status as a limited purpose public figure. Part two of the investigative report details, in part, the course and its public nature:

> …[O]n January 21, 2019, Dr. Monge used the B-1 remains to film a teaching segment that would later be used for an online video platform called Coursera. Dr. Monge's Coursera course was titled "Real Bones: Adventures in Forensic Anthropology," which included several video segments. The video segment in which the B-1 remains were displayed was titled "MOVE: An Analysis of the Remains" and lasted approximately fourteen minutes. During the video, Dr. Monge and Undergraduate Student One, a Penn undergraduate student who graduated in 2019, examined three bone fragments associated with B-1 while wearing rubber gloves, including a fragment of a femur, a fragmentary right innominate (a pelvic bone formed from the fusion of the ilium, ischium, and pubis), and a fragment of a pubic bone. Among other things, Dr. Monge and Undergraduate Student One, who was conducting research on the MOVE victim remains at the time as part of her senior research paper and had previously arranged to have x-rays of the MOVE victim remains taken at the Museum, discussed their attempts to provide an age estimate of the victim.

---

[2] The MEO referred to herein is the Philadelphia Medical Examiner's Office. (*See* Exhibit A, Correspondence to City Solicitor Cortes from Dechert LLP and Montgomery McCracken Walker & Rhoads LLP.)

In August 2020, Dr. Monge's Coursera course became available online to members of the public who registered (for free) with Coursera. According to Ballard Spahr, the segment in which the B-1 remains were displayed had 1,092 views before it was later taken down in April 2021.

(*See* Exhibit A, p. 14-15)(footnotes omitted.)

Because of Plaintiff's status as a limited purpose public figure, she must meet the actual malice standard to establish liability against moving Defendant.

"The 'actual malice' standard is a constitutionally mandated safeguard, and, as such, must be proven by clear and convincing evidence, the highest standard of proof for civil claims." *Lewis*, 833 A.2d at 192. This standard requires evidence "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." *Matter of Braig*, 520 Pa. 409, 554 A.2d 493, 495 (Pa. 1989). If the plaintiff in a defamation case fails to put forth evidence sufficient to support a finding of actual malice, the trial court may grant summary judgment in favor of the defendant. *See Weaver*, 875 A.2d at 1102.

To establish actual malice, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa. Super. 508, 546 A.2d 639, 643 (Pa. Super. 1988) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 20 L. Ed. 2d 262, 88 S. Ct. 1323 (1968)).

*See Bartlett v. Bradford Publ'g, Inc.*, 2005 PA Super 350, ¶¶ 12-13, 885 A.2d 562, 566-67.

Plaintiff cannot show that moving Defendant acted with actual malice through the following statements: "Consuella did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching."" (*See* Plaintiff's Amended Complaint, ¶ 161(j).)

To provide some context, "[t]he [MOVE] bombing and resulting fire killed five children", (one of which was "Katricia "Tree" Dotson (age 14)"), and six adults. (*See* Exhibit A, part 1, p. 1)(footnote omitted.) Of note, "[m]embers of MOVE take the

surname "Africa" and are often referred to collectively as the "Africa Family."" (*See* Exhibit A, part 1, p. 27.)

> Katricia was the daughter of Consuella Dotson, who was in jail at the time of the bombing, and Nathaniel Galloway. Remains associated with Katricia, which later records note consisted of a portion of a right femur and portion of a right pelvis, were recovered from 6221 Osage Avenue on the first day of recovery efforts, May 14, 1985, at 4:19 p.m. and delivered to the MEO the same day. The remains were found at the back of the basement near the remains of eight other victims. **The MEO designated these remains Case No. 85-2599, Body B-1.**

(*See* Exhibit A, part 1, p. 90)(emphasis provided)(footnotes omitted.)

Furthermore, while there has been much dispute over the identity of the B-1 remains, B-1 remains have been associated with and identified as belonging to Katricia Dotson. (*See* Exhibit A, part 1, p. 91)(footnotes omitted)("The remains of Body B-1 were located at the MEO at the time the Hameli Team began their review in July 1985. Dr. Hameli's report indicates that his team examined the B-1 remains and identified the remains as those of Katricia Dotson")(*see also* Exhibit A, part 2, p. 1)("…[W]e know that Drs. Mann and Monge received (at least) three bone fragments associated with Body B-1 (who was identified by the Hameli Team as fourteen-and-a-half-year-old Katricia Dotson, but is considered unidentified by Dr. Monge)…").

As concerns Plaintiff's failure to obtain consent for use of said remains, the recently released final investigative report into the MOVE victim remains explicitly states that "**Dr. Monge**, on the other hand, **did use the B-1 remains** on at least three occasions outside of her efforts to identify them, including **twice for teaching purposes** and once for a Museum-related fundraising event." (*See* Exhibit A, part 2, p. 13)(emphasis provided.) Moreover, the report found that "**Dr. Monge did not** ask for or **receive permission from Consuewella Dotson Africa**, other living relatives of Katricia

Dotson, other MOVE members, or the MEO **to use the B-1 remains for these purposes**." (*See* Exhibit A, part 2, p. 15)(emphasis provided)(footnote omitted.) Even the findings and conclusions of the report dated August 20, 2021 and titled "The Odyssey of the MOVE Remains", a "Report of the Independent Investigation into the Demonstrative Display of MOVE Remains at the PENN Museum and Princeton University" prepared by the Tucker Law Group, found that "Dr. Monge did not inform MOVE family members of and obtain their consent to use the remains in the Princeton Online video course." (Attached hereto as Exhibit B is the Tucker Law Group Report[3])(*See* Exhibit B, p. 8.)

Considering the foregoing, it is indisputable that Plaintiff did not obtain permission from Consuewella to use the B-1 remains, which have been associated with Katricia Dotson, for teaching purposes or for a fundraising event. As such, the statements attributed to moving Defendant are *substantially true*. "A statement that is "*substantially* true" cannot be defamatory[]". *See* Sprague v. Porter, 2013 Phila. Ct. Com. Pl. LEXIS 368, *37(citing <u>Kilian v. Doubleday & Co</u>., 367 Pa. 117, 79 A.2d 657, 660 (Pa. 1951) (emphasis added).) ""If it cannot be conclusively determined whether the publication was true or false, the plaintiff's claim must fail."" *See* Sprague v. Porter, 2013 Phila. Ct. Com. Pl. LEXIS 368, *37 (citing ToDay's Hous. v. Times Shamrock Commc'ns, Inc., 2011 PA Super 91, 21 A.3d 1209, 1213 (Pa. Super. Ct. 2011)); see also Milkovich, 497 U.S. at 17.

---

[3] The Court can properly consider the independent investigations attached to this Motion to Dismiss because "[i]t is well-settled that a court may look beyond the complaint in ruling on a motion to dismiss and consider "documents referenced in the complaint, and documents essential to a plaintiff's claims and attached to either the plaintiff's complaint or the moving defendants' Rule 12(b)(6) motions to dismiss."" *See Potter v. O'Connor*, No. 20-1825, 2021 U.S. Dist. LEXIS 1513, at *2 n.1 (E.D. Pa. Jan. 6, 2021)(citing *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018)) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also* Plaintiff's Amended Complaint, ¶ 176.

Even so, Plaintiff cannot meet the actual malice standard here against moving Defendant to establish her defamation claim, as:

> …"failure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits." *Fitzpatrick v. Philadelphia Newspapers, Inc.*, 389 Pa. Super. 438, 567 A.2d 684, 688 (Pa. Super. 1989) (citing *Harte-Hanks v. Connaughton*, 491 U.S. 657, 665-666, 688, 105 L. Ed. 2d 562, 109 S. Ct. 2678 (1989)). The fact that *[a defendant]* could have employed a higher degree of journalistic responsibility does not constitute actual malice. *See Lewis*, 833 A.2d at 193. "Mere negligence or carelessness is not evidence of actual malice or malice in fact." *Curran*, 546 A.2d at 645 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283, n. 24, 11 L. Ed. 2d 686, 84 S. Ct. 710 (1964)). Although a failure to corroborate a source's statements may be indicative of sub-standard journalistic techniques, it does not satisfy the actual malice standard. *See e.g., St. Amant*, 390 U.S. at 730 (holding that trial court properly found lack of evidence for actual malice despite fact that defendant relied solely upon affidavit of single person of unknown credibility); *Curran*, 546 A.2d at 651 (finding lack of evidence for actual malice where reporter mischaracterized statements made during a press conference because of his own admittedly faulty assumptions, despite the fact that fellow reporter had accurately relayed the content of the press conference).
>
> *See Bartlett v. Bradford Publ'g, Inc.*, 2005 PA Super 350, ¶ 16, 885 A.2d 562, 567.

Where the statements made by moving Defendant were *substantially true*, and where Plaintiff cannot otherwise meet her burden to establish that moving Defendant acted with actual malice in the statements so attributed to said Defendant in Plaintiff's Amended Complaint, Count One of Plaintiff's Amended Complaint must be dismissed as against moving Defendant.

**WHEREFORE**, Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count One of Plaintiff's Amended Complaint with prejudice.

**D.     Plaintiff's Claim for Defamation by Implication Under Count Two of the Amended Complaint Must be Dismissed with Prejudice Pursuant to F.R.C.P. 12(b)(6)**

"In Pennsylvania, "a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo."" *See Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*, 654 F. App'x 80, 105 (3d Cir. 2016) (citing Mzamane v. Winfrey, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)(footnote omitted.)

"As the Pennsylvania Supreme Court has explained:

> The purpose of an innuendo, as is well understood, is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff[.] But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear[.] It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury. . . . [Consequently,] [i]f the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication."

*See Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*, 654 F. App'x 80, 105 (3d Cir. 2016) (citing Sarkees v. Warner-W. Corp., 349 Pa. 365, 37 A.2d 544, 546 (Pa. 1944) (citations and internal quotation marks omitted).)

> A communication will not be regarded as defamatory by innuendo unless the "innuendo [] [is] warranted, justified and supported by the publication." Livingston v. Murray, 417 Pa. Super. 202, 612 A.2d 443, 449 (Pa. Super. Ct. 1992) (citation omitted). But "the literal accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false." Mzamane, 693 F. Supp. 2d at 478 (citation omitted). Thus, "even where the complained-of statements are literally true, if, when viewed in toto, the accurate statements create a false implication, the speaker may be liable for creating a defamatory implication." Id. (emphasis in original).

*See Bull Int'l, Inc. v. MTD Consumer Grp, Inc.*, 654 F. App'x 80, 105 (3d Cir. 2016.)

As set forth *supra*, Plaintiff did not obtain permission from Consuewella to use the B-1 remains, which have been associated with Katricia Dotson, for teaching purposes or for a fundraising event. Nonetheless, Dr. Monge did use B-1 remains for teaching purposes. (*See* Exhibit A, part 1, p. 91, part 2, p. 13, 15)(*see also* Exhibit B, p. 8.) This information renders statements attributable to moving Defendant as *substantially true*, and "[t]ruth is a defense to a defamation action." *See* Today's Housing v. Times Shamrock Communs., Inc., 2010 Pa. Dist. & Cnty. Dec. LEXIS 140, *7(citing <u>American Future Systems, Inc. v. Better Business Bureau of Eastern Pa</u>., 592 Pa. 66, 923 A.2d 389 (Pa., 2007)); <u>Philadelphia Newspapers, Inc. v. Hepps</u>, 475 U.S. 767, 770, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986).

"The publication need not be absolutely true, but only substantially true." *See* Today's Housing v. Times Shamrock Communs., Inc., 2010 Pa. Dist. & Cnty. Dec. LEXIS 140, *7 (citing <u>Masson v. New Yorker Magazine, Inc</u>., 501 U.S. 496, 516, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991).) "Minor inaccuracies in a publication do not rise to the level of falsity if the gist of the allegedly defamatory statement is true." *See* Today's Housing v. Times Shamrock Communs., Inc., 2010 Pa. Dist. & Cnty. Dec. LEXIS 140, *7.

For the foregoing reasons, Plaintiff cannot sustain her defamation by implication claim against moving Defendant.

**WHEREFORE,** Defendant Hyperallergic Media, Inc. respectfully requests this Honorable Court strike Count Two of Plaintiff's Amended Complaint with prejudice.

**E.    Plaintiff's Claim for False Light Under Count Three of the Amended Complaint Must be Dismissed with Prejudice Pursuant to F.R.C.P. 12(b)(6)**

Plaintiff brings a False Light claim against Defendants in Count Three of her Amended Complaint.

> "As with defamation, the elements of a claim for false light include knowledge of, or reckless disregard for, the falsity of a publication:
>
> > One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> >
> > > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> > >
> > > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

> *See Coleman v. Ogden Newspapers, Inc.*, 2016 PA Super 136, 142 A.3d 898, 905 (citing Restatement (Second) of Torts § 652E)(footnote omitted.)

"As is so clearly stated in Section 652E, a publication is actionable if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity." *See Larsen v. Phila. Newspapers, Inc.*, 375 Pa. Super. 66, 81-82, 543 A.2d 1181, 1188 (1988)(citing Comments *a, c & d*.) "The required standard of fault in a false light claim is thus actual malice." *See Rubin v. CBS Broad., Inc.*, 2017 PA Super 292 n.9, 170 A.3d 560, 568 (citing *Time, Inc. v. Hill*, 385 U.S. 374, 387, 87 S. Ct. 534, 17 L. Ed. 2d 456 (1967) (defining actual malice as "knowledge that the statements are false or in reckless disregard of the truth").) "Further, to constitute a tortious invasion of privacy an act (publication) must "'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"" *See Larsen v. Phila. Newspapers, Inc.*, 375 Pa. Super. 66, 82, 543 A.2d 1181, 1188-89 (1988)(citing *Hull v. Curtis Publishing*

*Co.*, 182 Pa.Super. 86, 99, 125 A.2d 644, 646 (1956)), quoting *Smith v. Doss*, 251 Ala. 250, 252-53, 37 So.2d 118, 120-21 (1948).

Plaintiff cannot meet the actual malice standard necessary to support liability against moving Defendant for her False Light claim. While there has been great dispute over the identity of the B-1 remains over the years since the MOVE bombing, B-1 remains have been identified by the Hameli team as Katricia Dotson. (*See* Exhibit A, part 1, p. 91.) Also of note here, in Part One of the "Final Report of the Independent Investigation into the City of Philadelphia's Possession of Human Remains of Victims of the 1985 Bombing of the MOVE Organization" dated May 6, 2022, Dechert LLP found that "[t]here are **remains currently at the MEO that may be associated with Katricia Dotson**, according to our review of the records." (*See* Exhibit A, part 1, p. 96)(emphasis provided.) Pursuant to Part Two of the same report, it is indisputable that:

(1) B-1 remains were used for research purposes:

"During the 2018-2019 school year, with Dr. Monge serving as her faculty advisor, Undergraduate Student One—the student who appeared with Dr. Monge in the Coursera course— wrote her senior research paper on the MOVE victim remains. As part of that research, Undergraduate Student One was given access to the MOVE victim remains, and she arranged for x-rays of the remains to be taken on November 1, 2018 at the Museum. On this date, in addition to the B-1 femur bone and pelvic bone fragments, x-rays were taken of an occipital bone, a scapula, and three vertebrae."

(*See* Exhibit A, part 2, p. 24)(footnotes omitted.)

(2) B-1 remains were used for teaching purposes:

"Dr. Monge did remember using the B-1 remains for teaching purposes on two occasions."

(*See* Exhibit A, part 2, p. 14.)

(3) Plaintiff did not receive permission from Consuewella Dotson Africa to use B-

1 remains for teaching purposes or "in presentation to Museum donors":

> According to the Tucker Law Group, Dr. Monge continued to believe that, since the remains were unidentified, and because her previous efforts to contact MOVE members were unsuccessful, there was no one who she could consult and obtain their informed consent to use the remains for teaching purposes or in the presentation to Museum donors. Therefore, **Dr. Monge did not ask for or receive permission from Consuewella Dotson Africa, other living relatives of Katricia Dotson, other MOVE members, or the MEO to use the B-1 remains for these purposes.**

(*See* Exhibit A, part 2, p. 15)(emphasis provided)(footnotes omitted.)

Considering this information reported as a result of the investigation by Dechert LLP and Montgomery McCracken Walker & Rhoads LLP, the statements attributed to moving Defendant in Plaintiff's Amended Complaint are *substantially true*. However, even if this Honorable Court were to find differently, Plaintiff cannot show that such statements were made with actual malice so as to impose liability on moving Defendant for her claim for false light.

Accordingly, Count Three of Plaintiff's Amended Complaint must be dismissed as against moving Defendant.

**WHEREFORE**, Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count Three of Plaintiff's Amended Complaint with prejudice.

**F.      Plaintiff's Claim for Civil Aiding and Abetting Under Count Four of the Amended Complaint Must be Dismissed with Prejudice Pursuant to F.R.C.P. 12(b)(6)**

Plaintiff brings a claim for civil aiding and abetting under Count Four of her Amended Complaint. Plaintiff claims that "[t]he behaviors in which the Defendants engaged aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge in a concerted effort to

accomplish the particular result of branding [Dr.] Monge as incompetent and a racist."
(*See* Plaintiff's Amended Complaint, ¶ 218.) Plaintiff further avers that "[w]hen each of
the Defendants published their defamatory statements they knew or should have known
through reasonable diligence that the conduct of each of them was tortious and provided
substantial assistance and/or encouragement to engage in such tortious misconduct." (*See*
Plaintiff's Amended Complaint, ¶ 219.)

> "Section 876 of the Restatement (Second) of Torts addresses the tort of civil aiding and abetting, which is also known as concerted tortious conduct:
>
> ### § 876. Persons Acting in Concert
>
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
>
> * * *"
>
> *See Hranec Sheet Metal, Inc. v. Metalico Pittsburgh Inc.*, 2014 PA Super 278, 107 A.3d 114, 120.

"Substantial assistance is typically found in situations where facts are pled or
proved which clearly demonstrate active encouragement to commit the tortious
conduct." *See Cruz v. Roberts*, 70 Pa.D.&C.4th 225, 235 (C.P. Lancaster 2005)(citing
*Welc v. Porter*, 450 Pa. Super. 112, 120, 675 A.2d 334, 338 (1996).) "In determining
whether "substantial assistance" has been given, it appears that some affirmative action

must be taken which causes the tortious actor to conduct himself/herself inappropriately." *See Cruz v. Roberts*, 70 Pa.D.&C.4th 225, 235-36 (C.P. Lancaster 2005)(citing *id.* at 120-22, 675 A.2d at 338-39.)

Plaintiff avers vague and conclusory allegations in an attempt to impute liability to moving Defendant for her civil aiding and abetting claim. Plaintiff is not able to prove or show any facts which demonstrate that "substantial assistance" by Hyperallergic Media, Inc. has been given which "rise to false and defamatory information against Dr. Monge in a concerted effort to accomplish the particular result of branding [Dr.] Monge as incompetent and a racist."

Accordingly, Count Four of Plaintiff's Amended Complaint must be dismissed as against moving Defendant.

**WHEREFORE**, Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count Four of Plaintiff's Amended Complaint with prejudice.

### G.   Motion to Strike Plaintiff's Claims for Punitive Damages

Plaintiff seeks punitive damages in her causes of action for (Count I) defamation, (Count II) defamation by implication, (Count III) false light, and (Count IV) civil aiding and abetting. Punitive damages are rarely appropriate and are only to be awarded in cases to punish extreme or egregious behavior. *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 (Pa. 1985)(plurality opinion), *rev'd on other grounds*, 528 A.2d 947 (1987). Specifically, a Court's assessment of punitive damages is only proper where a person's actions are of such an outrageous nature as to show intentional, willful or wanton conduct due to the defendant's evil motive or reckless indifference to the rights of others. *SHY*

*Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 704 (Pa. 1991); *Chambers v. Montgomery*, 192 A.2d 355, 358 (Pa. 1963). Reckless indifference to the rights of others means that the actor has intentionally done an act of unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). "Simply pleading outrageous conduct does not satisfy the requirement of stating facts which, if proven, would form a basis for a jury concluding that the conduct was such that an award for punitive damages was warranted." *See Wilson v. Chestnut Hill Healthcare*, CIVIL ACTION NO. 99-CV-1468, 2000 U.S. Dist. LEXIS 1580, at *18 (E.D. Pa. Feb. 17, 2000)(citing *Brownawell v. Bryan,*, 40 Pa. D. & C.3d 604, 606 (C.P. Cumberland 1985.)

Therefore, to properly plead a claim for punitive damages, Plaintiff must plead facts from which a reasonable person could conclude that the conduct was outrageous: done with an evil motive, was intentional, malicious, or with reckless indifference to the interests and rights of others. *Martin*, 494 A.2d at 1096-97; *Feld v. Merriam*, 485 A.2d 742 (Pa. 1984).

Plaintiff's allegations of punitive damages generally refer to all Defendants. Plaintiff attempts to assert claims for punitive damages fails because she pleads no specific facts about Defendant Hyperallergic Media, Inc. for a reasonable person to conclude that an award of punitive damages would be appropriate. Rather, Plaintiff makes conclusory allegations about Defendant Hyperallergic Media, Inc. which cannot, as a matter of law, survive this Motion to Dismiss. *See Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 U.S. Dist. LEXIS 65452, at *3 (E.D. Pa. May 12, 2014)(citing *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009))("Conclusory allegations are insufficient to survive a motion to dismiss.")

Accordingly, Plaintiff's claims for punitive damages in Counts I through IV of the Amended Complaint warrant dismissal.

**WHEREFORE**, Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Plaintiff's claim for punitive damages from the Amended Complaint.

## III.    Conclusion

Defendant, Hyperallergic Media, Inc., respectfully submits that the Court dismiss the claims filed by plaintiff in her Amended Complaint against defendant, Hyperallergic Media, Inc., with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**THOMAS PASCHOS & ASSOCIATES, P.C.**

By:      *Thomas Paschos*
         Thomas Paschos, Esquire (TP8039)
         325 Chestnut Street, Suite 800
         Philadelphia, PA 19106
         215-636-0555
         TPaschos@paschoslaw.com
         Attorneys for Defendant,
         Hyperallergic Media, Inc.