**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JANET MONGE | Civil Action No.: 2:22-cv-02942-HB |
| Plaintiff, | |
| vs. | |
| UNIVERSITY OF PENNSYLVANIA, et al. | |
| Defendant | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
AS TO THE SOCIETY OF BLACK ARCHAEOLOGISTS**

Submitted by:
**SALMON RICCHEZZA SINGER & TURCHI** LLP
Joseph L. Turchi, Esquire
Michele L. Weckerly, Esquire
Attorneys for Defendant,
The Society of Black Archaeologists

# TABLE OF CONTENTS

Page

Table of Authorities………………………………………………………………………ii

I.      INTRODUCTION………………………. ……………………………......................1

II.     PROCEDURAL HISTORY OF THE CASE…………………….…….….…………1


III.    RELEVANT BACKGROUND…………………………………………

        i.  Timeline of Events……………………………………………………………1
        ii. Allegations Specific to the Society of Black Archaeologists…………………………4

IV.     ARGUMENT…………………………………………………………………...5

        A.  The Standard for Dismissal…………………………………….………………...5

        B.  Plaintiff's Amended Complaint as to The Society of Black Archeologists must be
            Dismissed for Lack of Personal Jurisdiction ………………….…………………...7

        C.  Plaintiff's Defamation Claim (Count I) must be Dismissed because Plaintiff is a Public
            Figure so that the Standards of Actual Malice Apply …….…………………………10

        D.  Plaintiff Has Failed to Establish an Actionable Claim for Defamation by Implication
            (Count II)………………………………………………………………….15

        E.  Plaintiff Has Failed to Establish an Actionable Claim for False Light (Count III)….17

        F.  Plaintiff Has Failed to Establish an Actionable Claim for Punitive Damages………18

V.      CONCLUSION……...…………………………………………………….………..20

# TABLE OF AUTHORITIES

Page

**CASES:**

*Time Share Vacation Club v. Atl. Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir. 1984).....5,6

*N. Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir. 1990)....….6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)………………………………6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009)….………......………..6

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)………………………...6,7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011))..………..7

*Hammons v. Ethicon, Inc.*, 240 A.3d 537, 554 (Pa. 2020)……………………………...7,8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, (1985))…………..……………………...8

*McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011)………...…………...…9

*Rutt v. Bethlehem's Globe Publishing Co.*, 335 Pa. Super. 163, 484 A.2d 72 (1984)…9,10

*Joseph v. Scranton Times L.P.*, 634 Pa. 35, 69-70, 129 A.3d 404, 424 (2015). …10,11,19

*Gertz v. Robert Welch*, 418 U.S. 323, 343, 94 S. Ct. 2997, at 3008-09…………………10

*Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 86 (2007)………..………...10,11

*Livingston v. Murray*, 417 Pa. Super. 202, 214 (1992)…………………………………15

*Sarkees v. Warner-West Corporation*, 349 Pa. at 368, 369 ………………………..…15

*Neish v. Beaver Newspapers*, 398 Pa. Super. 588, 598, 581 A.2d 619, 624 (1990)……...17

*Sovereign Bank v. Ganter*, 2006 PA Super 338, ¶ 17, 914 A.2d 415, 421. ……………17

*Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984)…………………………………....19

*BMW v. Gore*, 517 U.S. 559, 116 S. Ct. 1589 (1996)…………………………………....19

**STATUTES:**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………6

## I.     INTRODUCTION

Defendant, The Society of Black Archaeologists (hereinafter "The Society of Black Archaeologists "or the "Society"), by and through their attorneys, Salmon Ricchezza Singer & Turchi, LLP, hereby submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(2). In the alternative, Defendant moves for dismissal pursuant to Rule 12(b)(6).

## II.     PROCEDURAL HISTORY OF THE CASE

Plaintiff, Janet Monge ("Dr. Monge" or "Plaintiff") filed a civil action complaint on May 20, 2022 against various defendants, including the Moving Defendant. Plaintiff filed an amended Complaint on June 22, 2022. A copy of the Plaintiff's amended Complaint is attached hereto at Exhibit "A." On July 27, 2022, this case was removed to Federal Court. Plaintiff's address is 106 Federal Street, Philadelphia, PA 19147 The Society's address is PO Box 3771, Santa Monica, CA 90408. Plaintiff filed her amended Complaint with the following causes of action:

> **Count I** – Defamation (Plaintiff v. All Defendants)
> First Amended Complaint at ¶¶ 178-191;
>
> **Count II** – Defamation by Implication (Plaintiff v. All Defendants),
> First Amended Complaint at ¶¶ 192-208;
>
> **Count III** – False Light (Plaintiff v. All Defendants),
> First Amended Complaint at ¶¶ 209-216;
>
> **Count IV** – Civil Aiding and Abetting (Plaintiff v. All Defendants)
> First Amended Complaint at ¶¶ 217-221.

## III.     RELEVANT BACKGROUND

### i. Timeline of Events

Plaintiff is well-known for her work in the field of anthropology, having been named "Best Museum Curator" by Philadelphia Magazine. See Ex, A ¶ 2. Plaintiff is also the recipient of

numerous awards for her teaching and scholarship. See Id. In fact, the instant case concerns one of the most important cases of the Plaintiff's career, involving "one of the most horrific examples of excessive force found in American history," having been engaged by the City of Philadelphia due to her status as a world-renown forensic physical/biological anthropologist. See Ex, A ¶¶ 4, 6. Plaintiff made it clear that her connection to the MOVE bombing came as a result of the City of Philadelphia soliciting the assistance of Dr. Mann to identify bones located at the site of the MOVE bombing. See Ex, A ¶ 6.

Pursuant to the Amended Complaint, the unidentified bone fragments were not provided to Plaintiff to use as she saw fit. Rather, the Philadelphia Medical Examiner's Office, as well as Dr. Mann and Dr. Monge were tasked only with underlining identifying the fragments. Once fragments were identified, they were released to funeral homes for proper burial. See Ex, A ¶ 97.

As set forth in Plaintiff's Amended Complaint, despite the passage of almost forty years since the bombing, Plaintiff has never been able to positively identify the bone fragments in her possession. See Ex, A ¶¶ 89, 90 and 91. Plaintiff viewed her specific mandate for this case to not only identify the Jane Doe bone fragments, but also contextualize the MOVE bombing in "social and political arenas." See Ex, A ¶ 6. In fact, nearly thirty years following the incident, Plaintiff continued to work with a local journalist related to the MOVE bombing. See Ex, A ¶¶ 112, 115.

After determining that the case was "cold" Plaintiff began discussing using the unidentified bones in a series of video lectures in coordination with Dr. Jeffrey Himpele, decided to use the bones in an online lecture, unrelated to her efforts to identify the bone fragments. See Ex, A ¶ 119. Notably, Plaintiff and Dr. Mann were only given the remains in an effort to help identify them. See Ex, A ¶¶ 86 and 87. Nobody in the Philadelphia Medical Examiner's Office, or any representative of the MOVE Commission authorized the use of the unidentified bone fragments in

a series of video lectures. The video lectures were available to students enrolled in the Coursera website.

Plaintiff concedes that the source of the bone fragments was never confirmed. See Ex, A ¶¶ 99 and 130. Given that the fragments were never positively associated with any particular individual, it is clear that nobody in the MOVE family gave the Plaintiff authority to use the bone fragments for her video lecture series. It is clearly disputed, though generally accepted that the bone fragments belonged to Tree and Delisha Africa. See Ex, A ¶¶ 92 and 93. It is also undisputed that Plaintiff did not seek permission of the any members of the Africa family to display bones in a video lecture. See Ex, A ¶¶ 101 and 113. Notably, several members of the Africa family, including those referenced in the Amended Complaint, as well as the Moving Defendant's April 26, 2021 statement are still living. See Exhibit D to Plaintiff's Amended Complaint. Had Plaintiff wanted to discuss the use of MOVE family-member bone fragments in a video lecture on the internet, she could have done so. Regardless of whether the bone fragments belonged to Tree and Delisha Africa, it is undisputed that they belonged to somebody in the Africa family, and thus the family should have been consulted before Plaintiff went beyond her mandate and used the fragments as a teaching aid.

Plaintiff claims that in 2021, Defendant Paul Mitchell initiated a false, defamatory, and widely disseminated media report for his own unlawful purposes, along with Defendant Deborah Thomas. See Ex, A, ¶ 7. Following the dissemination of information by Defendant Paul Mitchell, several additional articles were prepared regarding this incident.

Following the news of the bones being used in the Coursera course, Mr. Mike Africa, Jr., was interviewed by Co-Defendant, The Guardian Media Group. See Exhibit D to Plaintiff's Amended Complaint. He indicated that the parents of Tree and Delisha were not notified of the

existence of the remains, nor were the remains returned. Id. The Africa family believed that their children were buried and were not aware that their children's bones were being used as specimens for the forensic anthropology course. Id.

Mike Africa, Jr., was specifically quoted as having said that:

Nobody said you can do that, holding up their bones for the camera. That's not how we process our dead. This is beyond words. The anthropology professor is holding the bones of a 14-year-old girl whose mother is still alive and grieving.

See the Collective Statement from the Association of Black Anthropologists (ABA), the Society of Black Archaeologists (SBA), and the Black in Bioanthropology Collective (BiBA) attached as Ex. B.

Following the revelation that Plaintiff used the human remains entrusted to her and Dr. Mann for identification as a teaching aid, a number of news media companies reported on the Plaintiff' conduct. In response, Defendant the Society of Black Archeologists, collectively signed a statement which was posted on the Wenner-Gren blog on or around April 29, 2021. Plaintiff claims that she "has never been found to have violated any professional, ethical, or legal standards in her handling of the remains." See Ex. A, ¶ 11.

### ii. Allegations Specific to the Society of Black Archaeologists

As to the Moving Defendant, Plaintiff alleges that The Society of Black Archaeologists (hereinafter "Moving Defendant" or "SBA"), is "a business entity with a corporate mailing address of PO Box 3771, Santa Monica, California 90409." See Ex, A ¶ 41. Plaintiff further alleges that the SBA is an "international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in archaeological research." See Id. As an "international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in

archaeological research," The Society of Black Archaeologists does not conduct "general business" of any kind. See Ex, A ¶ 41.

At issue in this case is a collective statement from April 26, 2021 signed by the Association of Black Anthropologists, the Society of Black Archaeologists, and the Black Bioanthropology collective and posted on the Wenner-Gren Blog. Plaintiff takes specific exception to the statement's condemnation of Plaintiff's "horrific treatment of the remains of Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the Africa family." See Ex, A ¶ 168. Plaintiff alleges further defamation against the Moving Defendant following the Moving Defendant's statement that the organization was "outraged by the stunning ethical indifference shown by all parties involved to both Tree and Delisha and to the Africa family, but also by the fact that these entities effectively monetized the remains of Black children murdered in a state terrorist attack- a fact made all the more painful given the heightened public awareness of brutal murders of Black children and youth by the police over the last few years." See the Collective Statement from the Association of Black Anthropologists (ABA), the Society of Black Archaeologists (SBA), and the Black in Bioanthropology Collective (BiBA) attached as Ex. B. Based on the Amended Complaint, it is clear that the incident was the subject of substantial controversy prior to the April 29, 2021 statement.

## IV. <u>ARGUMENT</u>

### a. Standard of Review

A motion to dismiss for lack of personal jurisdiction must be granted unless plaintiffs introduce evidence to establish that the defendant is properly subject to jurisdiction; therefore, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.,* whether *in personam* jurisdiction actually lies." *Time Share Vacation Club v. Atl.*

*Resorts, Ltd.,* 735 F.2d 61, 67 n. 9 (3d Cir. 1984). "Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* "[A]t no point may a plaintiff rely on the bare pleading alone in order to withstand a defendant's Rule 12(b)(2) motion." *Id.* "Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Id. See also N. Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir. 1990).

Even if jurisdiction exists, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. The United States Supreme Court has held that a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Twombly,* 550 U.S. at 555. But "factual allegations must be enough to raise a right to relief above the speculative level"[1] and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing more than a mere possibility that a defendant has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires

---

[1] *Twombly,* 550 U.S. at 555.

the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

> **b. Plaintiff's Amended Complaint as to The Society of Black Archeologists must be Dismissed for Lack of Personal Jurisdiction**

Moving Defendant should be dismissed for a lack of personal jurisdiction, First, Plaintiff has not alleged facts sufficient to justify an exercise of personal jurisdiction over the Moving Defendant in Pennsylvania because the Amended Complaint fails to identify any specific conduct that was purposefully directed toward Pennsylvania that gave rise or relates to their causes of action. Because personal jurisdiction is not well supported, Moving Defendant respectfully requests that the Court grant their Rule 12(b)(2) Motion to Dismiss.

The Due Process Clause of the Fourteenth Amendment imposes limits on a state court's jurisdiction over non-residents because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)). *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 554 (Pa. 2020).

Restrictions on jurisdiction, however, are not only to protect defendants from being forced to litigate in distant courts but also "are a consequence of the territorial limitations on the power of the respective States" under our federalist system. See *Id*. In assessing personal jurisdiction over out-of-state corporate defendants, courts have recognized a distinction between situations where a corporation's connections are "so continuous and systematic as to render them essentially at home in the forum State," allowing for jurisdiction over causes of action unrelated to in-state activities, and those more limited connections with a state which restrict jurisdiction to causes of action "where there is an affiliation between the forum and the underlying controversy." See *Hammons* at 555 (Pa. 2020).

In *Burger King Corp. v. Rudzewicz*, the United States Supreme Court opined that general personal jurisdiction should be limited to where corporations are headquartered or incorporated. *Id*. at 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The Court left open the possibility of bringing a claim against a corporation where it is not incorporated or headquartered only in the exceptional instance in which its operations were "so substantial and of such a nature as to render the corporation at home." See *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 555 (Pa. 2020).

Additionally, Pennsylvania has recognized that an assertion of specific jurisdiction is only appropriate where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, . . . it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." See *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 556 (Pa. 2020), citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (plurality).

As to the Moving Defendant, Plaintiff alleges that The Society of Black Archaeologists (hereinafter "Moving Defendant" or "SBA"), is "a business entity with a corporate mailing address of PO Box 3771, Santa Monica, California 90409." See Ex, A ¶ 41. Plaintiff further alleges that the SBA is an "international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in archaeological research." See *Id*. In lieu of separately delineating her theories of venue against each of the various Defendants, Plaintiff makes a blanket assertion that "Defendants either live in Pennsylvania, are incorporated in Pennsylvania, or carry out a continuous and systematic part of their general business within this Commonwealth."

As to the Moving Defendant, it is clear based on Plaintiff's own pleadings that it neither lives, nor is incorporated in Pennsylvania. See Ex, A ¶ 41. Plaintiff does not even make a passing attempt at showing that the Moving Defendant carries out any part of its "general business" within Pennsylvania. See *Id*. In fact, as an "international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in archaeological research" it is inaccurate to characterize The Society of Black Archaeologists has having any "general business" at all. See Ex, A ¶ 41.

To the extent this Court finds that The Society of Black Archaeologists does conduct "general business" for the purpose of asserting personal jurisdiction, Plaintiff still bears the burden of showing that same is conducted in Pennsylvania. To that end, Plaintiff has attached nothing to her Amended Complaint other than a single blog post from "The Wenner-Gren Blog."

It is not even alleged that the Moving Defendant owns or controls the Wenner-Gren Blog in any way, or that the Moving Defendant in some manner controls where its posts circulate. That a statement joined by the Moving Defendant was posted on the Wenner-Gren Blog is not a basis to hale The Society of Black Archaeologists into a Pennsylvania Court. Nor does the statement represent the sort of systematic and continuous contact with Pennsylvania that makes it appropriate to force The Society of Black Archaeologists into litigation here.

### c. Plaintiff's Defamation Claim (Count I) must be Dismissed because Plaintiff is a Public Figure so that the Standards of Actual Malice Apply

The Superior Court in *Rutt v. Bethlehem's Globe Publishing Co.*, 335 Pa. Super. 163, 484 A.2d 72 (1984) stated that "in determining whether the challenged communication is defamatory, the court must decide whether the communication complained of can fairly and reasonably be construed to have the libelous meaning ascribed to it by the complaining party. In making this determination upon the meaning of the [alleged defamatory communication], it must be construed

as a whole, and each word must be read in the context of all the other words. The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be [interpreted in the same manner other people are likely to understand them]." *Rutt*, supra at 172-73, 484 A.2d at 76-77.

[I]n an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a).

*Joseph v. Scranton Times L.P.*, 634 Pa. 35, 69-70, 129 A.3d 404, 424 (2015). Moreover, under *Gertz*, the appropriate standard of fault depends on whether the plaintiff is a public or private figure. See *Gertz v. Robert Welch*, 418 U.S. 323, 343, 94 S. Ct. 2997, at 3008-09. Further, Gertz determined that the classification as a public figure arises in two circumstances: first, referring to an "all purpose" public figure, the Court explained that "in some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 86, 923 A.2d 389, 401 (2007).

Alternatively, a "limited purpose public figure," which according to the Court is more common, is an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. To determine such status, the Court instructed that it is necessary to consider the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

More recently, however, some courts have held that a controversy may be created by a plaintiff's own activities, particularly with respect to widespread public solicitation and advertisements. *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 87, 923 A.2d 389, 402 (2007). Notably, the U.S. Supreme Court has indicated public officials are required to prove actual malice as a prerequisite to establishing liability in defamation actions. *Joseph v. Scranton Times L.P.*, 634 Pa. 35, 72, 129 A.3d 404, 425 (2015).

As set forth above, it is a question of law whether language can reasonably be construed as defamatory. Here, it is clear that the Plaintiff is a public figure, at least for the purposes of this incident. Specifically, Plaintiff is well-known for her work in the field of anthropology, having been named "Best Museum Curator" by Philadelphia Magazine. See Ex, A ¶ 2. Plaintiff is also the recipient of numerous awards for her teaching and scholarship. See *Id*. In fact, the instant case concerns one of the most important cases of the Plaintiff's career, involving "one of the most horrific examples of excessive force found in American history," having been engaged by the City of Philadelphia due to her status as a <u>world-renown forensic physical/biological anthropologist</u>. See Ex, A ¶¶ 4, 6. Plaintiff viewed her specific mandate for this case to not only identify the Jane Doe bone fragments, but also contextualize the MOVE bombing in "social and political arenas." See *Id*.

Here, it is clear Plaintiff is a public figure. As a world-renown forensic physical/biological anthropologist, tasked with contextualizing the worst examples of excessive force in American history, with a mandate to contextualize the incident both socially and politically, Plaintiff cannot be anything other than a public figure. It is also worth noting that for nearly thirty years following the incident, Plaintiff continued to work with a local journalist related to the MOVE bombing. See Ex, A ¶¶ 112, 115. In other words, even if Plaintiff's status as a world-renown scientist, sought after by the City of Philadelphia to assist on one of the most public cases in the city's history, was by itself sufficient to make Plaintiff a public figure, her continued efforts to work with journalists on this case make it clear she voluntarily injected herself into the public sphere.

As a public figure, it is clear that Plaintiff must show that the statement made by The Society of Black Archaeologists was made with actual malice. Here, actual malice has not even been alleged. Instead, Plaintiff points to a collective statement from April 26, 2021 signed by the Association of Black Anthropologists, the Society of Black Archaeologists, and the Black Bioanthropology collective and posted on the Wenner-Gren Blog. Plaintiff takes specific exception to the statement's condemnation of Plaintiff's "horrific treatment of the remains of Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the Africa family." See Ex, A ¶ 168. Plaintiff alleges further defamation against the Moving Defendant following the Moving Defendant's statement that the organization was "outraged by the stunning ethical indifference shown by all parties involved to both Tree and Delisha and to the Africa family, but also by the fact that these entities effectively monetized the remains of Black children murdered in a state terrorist attack- a fact made all the more painful given the heightened public awareness of brutal murders of Black children and youth by the police over the last few years." See *Id*.

It is clear from a plain reading of the Amended Complaint that everything contained within the Moving Defendant's statement was either a matter of public record, true, or protected opinion. First, Plaintiff made it clear that her connection to the MOVE bombing came as a result of the City of Philadelphia soliciting the assistance of Dr. Mann to identify bones located at the site of the MOVE bombing. Despite Plaintiff's status as a world-renowned anthropologist, it is clear from the Amended Complaint that the unidentified bone fragments were not provided to Plaintiff to use as she saw fit. Rather, the Philadelphia Medical Examiner's Office, as well as Dr. Mann and Dr. Monge were tasked only with identifying the fragments. In this case, once fragments were identified, they were released to funeral homes for proper burial. See Ex, A ¶ 97.

With respect to the bone fragments at issue in this case, Plaintiff was never able to conclusively determine the identity of the remaining bone fragments. After determining that the case was "cold" Plaintiff began discussing using the unidentified bones in a series of video lectures. See Ex, A ¶ 119. It is clear that nobody in the Philadelphia Medical Examiner's Office, or any representative of the MOVE Commission authorized the use of the unidentified bone fragments in a series of video lectures. Instead, it appears that Plaintiff unilaterally began having discussions with Dr. Jeffrey Himpele to adopt the unidentified bone fragments for a purpose far beyond the mandate assigned to the Plaintiff. The video lectures were available to students enrolled in the Coursera website.

Plaintiff freely concedes that the source of the bone fragments were never identified. See Ex, A ¶ 130. Given that the fragments were never identified, it is clear that nobody gave the Plaintiff authority to use the bone fragments for a video lecture series. It is also clear that the incident was the subject of substantial controversy prior to the April 26, 2021 statement. In fact, several articles referenced in the Amended Complaint were linked within the Moving Defendant's

statement. It is clearly disputed, though generally accepted that the bone fragments belonged to Tree and Delisha Africa. It is also undisputed that Plaintiff did not seek permission of the any members of the Africa family to display bones in a video lecture. Notably, several members of the Africa family, including those referenced in the Amended Complaint, as well as the Moving Defendant's April 26, 2021 statement are still living. Had Plaintiff wanted to discuss the use of MOVE family-member bone fragments in a video lecture on the internet, she could have done so. In fact, Mr. Mike Africa, Jr., was interviewed by Co-Defendant, The Guardian Media Group the parents of Tree and Delisha were not notified of the existence of the remains, nor were the remains returned. See Exhibit D to Plaintiff's Amended Complaint. The Africa family believed that their children were buried and were not aware that their children's bones were being used as specimens for the forensic anthropology course. Id.

Mike Africa, Jr., was specifically quoted as having said that

Nobody said you can do that, holding up their bones for the camera. That's not how we process our dead. This is beyond words. The anthropology professor is holding the bones of a 14-year-old girl whose mother is still alive and grieving.

See the Collective Statement from the Association of Black Anthropologists (ABA), the Society of Black Archaeologists (SBA), and the Black in Bioanthropology Collective (BiBA) attached as Ex. B. Regardless of whether the bone fragments belonged to Tree and Delisha Africa, it is undisputed that they belonged to *somebody* in the Africa family, and thus the family should have been consulted before Plaintiff went beyond her mandate and used the fragments as a teaching aid.

Moving Defendant maintains that it is a matter of opinion that Plaintiff conducted herself in a manner demonstrating ethical indifference towards the Africa family. Certainly, given Mr. Mike Africa's statement that such a treatment of the fragments was not how the family wished to

process their dead, it was certainly reasonable for The Society of Black Archaeologists to determine that the treatment was horrific, and represented indifference towards the Africa family.

However, even if this Court were to find that was not a protected opinion, such a statement could not have been made with actual malice, as same is supported even by the public statements that pre-date the statement made by the Moving Defendant, as well as the averments in the Amended Complaint. Moreover, The Society of Black Archaeologists do not require the Plaintiff's permission to determine whether her treatment of the bone fragments was made "more painful given the heightened public awareness of brutal murders of Black children and youth by the police over the last few years." Instead, The Society of Black Archaeologists is entitled to make its own independent determination about what brings them pain.

### d. Plaintiff Has Failed to Establish an Actionable Claim for Defamation by Implication (Count II)

[A] communication may be deemed capable of defamatory meaning by innuendo even though the words utilized therein are not in themselves defamatory. *Livingston v. Murray*, 417 Pa. Super. 202, 214, 612 A.2d 443, 449 (1992). As further explained by the Supreme Court in *Sarkees*:

> The purpose of an innuendo, as is well understood, is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff[.] But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear[.] It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury . . . . [Consequently,] [i]f the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication.

*Sarkees v. Warner-West Corporation*, 349 Pa. at 368, 369, 37 A.2d at 546.

Here, the Plaintiff made the stylistic choice to assert all causes of action equally against all Defendants, despite the fact that nearly every Defendant conducted itself in different ways. Even if every statement made by the Plaintiff was taken as true, it is unclear how the various causes of action were intended to apply to each individual Defendant, leaving the Moving Defendant to guess exactly as to what the "implication" was in its statement.

In any event, the statement made by the Moving Defendant is either true or a reflection of the Moving Defendant's opinion about the Plaintiff's conduct. It is a matter of public record that the bone fragments in Plaintiff's possession were not returned to the Africa family for burial. It is apparent from a plain reading of the Amended Complaint that the Africa family was not consulted prior to Plaintiff's utilization of the bone fragments in an online video lecture. It is further apparent that Plaintiff was not given the bone fragments so that she could use them in a video lecture.

If Plaintiff was incapable of identifying the bone fragments, she should have returned them to City of Philadelphia, or released them for burial. Instead, Plaintiff utilized the bones for her own purposes without consent or knowledge of the Africa family. Notably, with respect to other named Defendants, Plaintiff specifically outlines the "implication" or "innuendo" contained within their various statements. That is not the case with respect to the Moving Defendant. Instead, the statement made by the Moving Defendant is direct, straightforward, and represents the opinion of the Moving Defendant. To sustain a cause of action against the Moving Defendant for defamation by implication, the Plaintiff would need to substantially enlarge the natural meaning of the statement. As Plaintiff could not even offer a plausible implication for any other meaning of the statement made by the Moving Defendant, Count II must be dismissed.

### e. Plaintiff Has Failed to Establish an Actionable Claim for False Light (Count III)

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if:

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Neish v. Beaver Newspapers*, 398 Pa. Super. 588, 598, 581 A.2d 619, 624 (1990).

As with every Count of the Plaintiff's Amended Complaint, Plaintiff never specifies how each Defendant is responsible for the various causes of action, in particular, what aspect of the Moving Defendant's statement was "false." For example, as to various Co-Defendants, Plaintiff seems to take specific exception to suggestions that the bone fragments belonged to Katricia and Delisha Africa specifically. Here, the Moving Defendant specifically acknowledges that the bone fragments were never positively identified. Rather, the Moving Defendant merely states that the assumption is that the bone fragments belong to Tree and Delisha Africa.

Moreover, it is part of the Moving Defendant's mission to counter the history of racism in the field of anthropology. As the Moving Defendant's statement was carefully measured to reflect the factual uncertainties regarding the bone fragments, it cannot be said that they acted with reckless disregard as to the falsity of any statement that was made. They also did not "place" the Plaintiff before the public.

As set forth above, Plaintiff is a world-renown anthropologist. According to the Plaintiff, she was specifically sought out by the City of Philadelphia for her expertise. For nearly forty years, Plaintiff was in contact with the City of Philadelphia and members of the press. She further chose

to publish her work on the internet where it was apparently freely available for anyone to review. Prior to publishing her videos, she did not ask anyone in the Africa family for permission to use the remains she had in her possession for the sole purpose of identifying. It was Plaintiff's choice to put her lectures on the internet that ultimately drew the public's ire. It is also well-established that the Moving Defendant merely responded to a very well-publicized incident. Therefore, it is impossible for Plaintiff to succeed against the Moving Defendant on a claim for false light.

### f. Plaintiff Has Failed to Establish an Actionable Claim for Civil Aiding and Abetting (Count IV)

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Sovereign Bank v. Ganter*, 2006 PA Super 338, ¶ 17, 914 A.2d 415, 421. While Pennsylvania has adopted civil aiding and abetting as a cause of action, it is unclear exactly what Plaintiff is alleging as to the Moving Defendant. Pennsylvania is a fact pleading state.

The Moving Defendant is therefore entitled to understand the nature of the allegations against it. If all of the Plaintiff's allegations are accepted as true, there is no allegation that the Moving Defendant encouraged or provided assistance to any other Defendant to accomplish a tort. Even if the statement made by the Moving Defendant was presumed to be tortious in nature, no distinction is made between the allegations raised under the claim for defamation and the

allegations made under the claim for civil aiding and abetting. As Plaintiff's Amended Complaint is completely defective as to the Moving Defendant, Count IV should be dismissed.

### g. Plaintiff Has Failed to Establish an Actionable Claim for Punitive Damages

Throughout their Complaint, Plaintiff makes vague and unsupported allegations that the Moving Defendant acted recklessly as to the Moving Defendant. Allegations asserting or relating to claims for "recklessness" and punitive damages against the Moving Defendant must be stricken under applicable law. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984); *see also BMW v. Gore*, 517 U.S. 559, 116 S. Ct. 1589 (1996). Pennsylvania case law establishes that where recklessness and/or punitive damages are claimed, the Complaint must contain specific averments of fact sufficient to support such damage as well as inform the defense of what to expect at trial.

Plaintiff's Amended Complaint is devoid of any facts that would even arguably demonstrate that the Moving Defendant engaged in any type of willful, wanton or malicious conduct.

Finally, as set forth above, Moving Defendant contends that the Plaintiff is a public individual for the purposes of assessing her claims. However, if the Court determines that the Plaintiff is a private individual, her demand for punitive damages must be stricken. Specifically, the First Amendment prohibits awards of presumed and punitive damages for defamatory statements where private plaintiffs show less than actual malice. *Joseph v. Scranton Times L.P.*, 634 Pa. 35, 79-80, 129 A.3d 404, 430 (2015). The Court further held that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth. *Id*.

Given that there is no plausible reading of the Amended Complaint that would demonstrate actual malice as to the Moving Defendant, if the Court concludes that Plaintiff is a private

individual, it must simultaneously strike her demand for punitive damages as to the Moving Defendant.

## V.  <u>CONCLUSION</u>

For all the foregoing reasons and those contained in the accompanying Memorandum of Law, The Society of Black Archaeologists request that this Court sustain its Preliminary Objections as set forth herein and enter an Order in the form proposed.

**Respectfully Submitted,**

**SALMON RICCHEZZA SINGER & TURCHI** LLP

*/s/ Michele Weckerly*

By: _____
Joseph L. Turchi, Esquire
Michele L. Weckerly, Esquire
Attorneys for Defendant,
The Society of Black Archaeologists

Dated: 8/12/2022