**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                            :
JANET MONGE,                                :
                                            :
            PLAINTIFF                        :
                                            :     Civ. No. 2:22-cv-02942-GEKP
      v.                                    :
                                            :
UNIVERSITY OF PENNSYLVANIA et al.,          :
                                            :
            DEFENDANTS                       :
                                            :
_____ :

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTUAL ALLEGATIONS ...................................................... 4

III.    ARGUMENT ...................................................................................................... 9

     A.      Standard of Review ................................................................................. 9

     B.      Plaintiff's Defamation and Defamation by Implication Claims Against
             Penn, Dr. Gutmann, and Dr. Pritchett Fail as a Matter of Law. ......................... 11

          1.      Any Attempt to Hold Defendants Liable for Drs. Gutmann and
                Pritchett's April 26, 2021 Statement Fails Because It is a Statement
                of Opinion That is Not Capable of Defamatory Meaning ...................... 12

          2.      Plaintiff's Remaining Allegations Are Vague and Conclusory, at
                Best, and, Therefore, Insufficient to Plead a
                Defamation/Defamation by Implication Claim Against Penn ................. 16

     C.      Plaintiff's False Light Claim Against Defendants Penn, Dr. Gutmann, and
             Dr. Pritchett Fails as a Matter of Law. ................................................................. 18

          1.      Plaintiff's Amended Complaint is Devoid of Factual Averments
                Identifying a Statement Made by Penn, Dr. Gutmann, or Dr.
                Pritchett That Creates a False Impression, As Well as the Alleged
                Recipients of Such a Statement or That Defendants Acted with
                Actual Malice ......................................................................................... 20

          2.      Plaintiff's False Light Claim Fails Because Plaintiff Cannot Show
                  Penn, Dr. Gutmann, or Dr. Pritchett Disclosed Private Facts About
                Plaintiff and, Regardless, Any Statement Made by Penn, Dr.
                Gutmann, or Dr. Pritchett is One of Legitimate Concern to the
                Public ..................................................................................................... 21

     D.      Plaintiff's Purported Aiding and Abetting Claims Against Penn, Dr.
             Gutmann, Dr. Pritchett Fail as a Matter of Law. ................................................. 23

     E.      Any Attempt to Hold Penn Liable for Alleged Conduct of Dr. Deborah
             Thomas Fails for the Same Reasons Identified by Dr. Thomas in Her
             Motion to Dismiss Plaintiff's Amended Complaint. ........................................... 26

IV.     CONCLUSION .................................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*,
  2020 WL 12968360 (E.D. Pa. Apr. 27, 2020) ........................................................................25

*Am. Osteopathic Ass'n v. Am. Bd. of Internal Med.*,
  555 F. Supp. 3d 142 (E.D. Pa. 2021) ......................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................9, 10

*Bair v. Purcell*,
  500 F. Supp. 2d 468 (M.D. Pa. 2007) ...................................................................................24, 25

*Balletta v. Spadoni*,
  47 A.3d 183 (Pa. Cmwlth. Ct. 2012) .....................................................................................16

*Bank v. Cmty. Coll. of Philadelphia*,
  2022 WL 2905243 (E.D. Pa. July 22, 2022) ..........................................................................11

*Bassaro v. de Levie*,
  236 A.3d 1069 (Pa. Super. 2020) ..........................................................................................26

*Beckman v. Dunn*,
  419 A.2d 583 (Pa. Super. 1980) ............................................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................9, 10

*Bogash v. Elkins*,
  176 A.2d 677 (Pa. 1962) .........................................................................................................12

*Braig v. Field Commc'ns*,
  456 A.2d 1366 (Pa. Super. 1983) ..........................................................................................14

*Bush v. Lawrence*,
  2019 WL 517812 (Pa. Super. Feb. 11, 2019) ........................................................................11

*Carter v. Susquehanna Reg'l Police Dep't*,
  2009 WL 1183415 (E.D. Pa. Apr. 30, 2009) ..........................................................................17

*Chaleplis v. Karloutsos*,
  2022 WL 95691 (E.D. Pa. Jan. 10, 2022) ..............................................................................23

*Ciolli v. Iravani,*
    651 F. Supp. 2d 356 (E.D. Pa. 2009*)* ................................................................12

*Davis v. Resources for Human Development, Inc.,*
    770 A.2d 353 (Pa. Super. 2001)..........................................................................18

*Doe v. Liberatore,*
    478 F. Supp. 2d 742 (M.D. Pa. 2007)..................................................................24

*Ersek v. Township of Springfield, Delaware Cty.,*
    822 F. Supp. 218 (E.D. Pa. 1993) .......................................................................19

*Fassett v. Delta Kappa Epsilon (New York),*
    807 F.2d 1150 (3d Cir. 1986)...............................................................................24

*Foster v. UPMC South Side Hosp.,*
    2 A.3d 655 (Pa. Super. 2010)..............................................................................18

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009).................................................................................10

*Grimm v. Grimm,*
    149 A.3d 77 (Pa. Super. 2016).............................................................................25

*Gross v. United Engineers and Constructors, Inc.,*
    302 A.2d 370 (Pa. Super. 1973)..........................................................................17

*HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.,*
    107 A.3d 114 (Pa. Super. 2014)..........................................................................23

*Itri v. Lewis,*
    422 A.2d 591 (Pa. Super. 1980)..........................................................................11

*Jaindl v. Mohr,*
    637 A.2d 1353 (Pa. Super. 1994), *affirmed*, 661 A.2d 1362 (Pa. 1995) .................18

*Jefferis v. Commonwealth,*
    537 A.2d 355 (Pa. Super. 1988)..........................................................................24

*Joseph v. Scranton Times L.P.,*
    129 A.3d 404 (Pa. 2015).....................................................................................11

*Kane v. Chester Cnty.,*
    811 F. App'x 65 (3d Cir. 2020)............................................................................16

*Keating v. Bucks Cnty. Water & Sewer Auth.,*
    2000 WL 1888770 (E.D. Pa. Dec. 29, 2000).......................................................12

*Klein v. Pike Cnty. Com'rs*,
    2011 WL 6097734 (M.D. Pa. Dec. 6, 2011)..........................................................10

*Krajewski v. Gusoff*,
    53 A.3d 793 (Pa. Super. 2012)..........................................................................19

*Larsen v. Phila. Newspapers*,
    543 A.2d 1181 (Pa. Super. 1988).......................................................................18

*Lee v. Univ. of Pa., Sch. of Dental Med.*,
    2019 WL 4060843 (E.D. Pa. Aug. 27, 2019) ......................................................17

*Livingston v. Murray*,
    612 A.2d 443 (Pa. Super. 1992)........................................................................12

*Mallory v. S & S Publishers*,
    260 F. Supp. 3d 453 (E.D. Pa. 2017), *aff'd sub nom. Mallory v. Simon &*
    *Schuster, Inc.*, 728 F. App'x 132 (3d Cir. 2018) ...............................................13

*Marion v. Bryn Mawr Tr. Co.*,
    253 A.3d 682 (Pa. Super. 2021), *reargument denied* (Apr. 28, 2021), *appeal*
    *pending on other grounds*, 2021 WL 4540443 (Pa. Oct. 5, 2021) .........................23

*Marricone v. Experian Info. Sols., Inc.*,
    2009 WL 3245417 (E.D. Pa. Oct. 6, 2009)...........................................................22

*Mathias v. Carpenter*,
    587 A.2d 1 (Pa. Super. 1991)........................................................................12, 13

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020)........................................................11, 13, 14, 16

*Meyers v. Certified Guar. Co., LLC*,
    221 A.3d 662 (Pa. Super. 2019)....................................................................12, 13

*Moses v. McWilliams*,
    549 A.2d 950 (Pa. Super. 1988)....................................................................11, 19

*Pendergrass v. Pendergrass*,
    2019 WL 9100240 (E.D. Pa. Apr. 18, 2019) ......................................................25

*Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)............................................................................7

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)........................................................................9, 10

*Phillips v. Selig*,
    2001 WL 1807951 (Pa. Com. Pl. Sept. 19, 2001) ........................................................11, 19

*Reed v. Pray*,
    2018 WL 5117223 (Pa. Super. Oct. 22, 2018) ........................................................18

*Rush v. Phila. Newspapers, Inc.*,
    732 A.2d 648 (Pa. Super. 1999) ........................................................19

*Santillo v. Reedel*,
    634 A.2d 264 (Pa. Super. 1993) ........................................................19

*Sarkees v. Warner–West Corp.*,
    37 A.2d 544 (Pa. 1944) ........................................................12, 16

*Schatzberg v. State Farm Mut. Auto. Ins. Co.*,
    877 F. Supp. 2d 232 (E.D. Pa. 2012) ........................................................12, 22

*Smith v. Borough of Dunmore*,
    633 F.3d 176 (3d Cir. 2011) ........................................................23

*Sprague v. Porter*,
    2014 WL 10803063 (Pa. Super. Ct. Aug. 26, 2014) ........................................*passim*

*Strickland v. Univ. of Scranton*,
    700 A.2d 979 (Pa. Super. 1997) ........................................................18, 19, 22

*Thomas Merton Ctr. v. Rockwell Intern. Corp.*,
    442 A.2d 213 (Pa. 1981) ........................................................12

*Till v. VIP Wireless Inc.*,
    2015 WL 7259918 (Pa. Super. May 14, 2015) ........................................................26

*Turk v. Salisbury Behav. Health, Inc.*,
    2010 WL 1718268 (E.D. Pa. Apr. 27, 2010) ........................................................17

*Veno v. Meredith*,
    515 A.2d 571 (Pa. Super. 1986), *appeal denied*, 616 A.2d 986 (Pa. 1992)...........13, 14, 15, 16

*Vogel v. W.T. Grant Co.*,
    327 A.2d 133 (Pa. 1974) ........................................................18

*Weinstein v. Bullick*,
    827 F. Supp. 1193 (E.D. Pa. 1993) ........................................................18

*Welc v. Porter*,
    675 A.2d 334 (Pa. Super. 1996) ........................................................24

**Statutes**

42 Pa. C.S. § 8343(a) ..............................................................................................11

Fed. R. Civ. P. 8(a)(2) ...............................................................................................9

Fed. R. Civ. P. 12(b)(6) .............................................................................................9

Restatement (Second) of Torts, § 566.................................................................12, 13

Restatement (Second) of Torts § 652D.......................................................................22

Restatement (Second) of Torts § 652E .......................................................................18

Restatement (Second) of Torts § 876...........................................................................23

I. __INTRODUCTION__

A tragedy occurred in 1985, when the Philadelphia Police Department dropped an aerial bomb on a house in West Philadelphia where members of the "Christian Action Life Movement" (i.e., the "MOVE" family or organization) resided.  Eleven people died in the ensuing fire, and numerous homes were destroyed.  Philadelphia's Chief Medical Examiner asked Dr. Alan Mann, who was a Professor in Anthropology at Penn, to assist in analyzing and identifying the bone fragments that were at the bomb site.  Plaintiff was a doctoral student at Penn, and Dr. Mann's mentee, at the time, and assisted Dr. Mann in his analysis and investigation.

Ultimately, there was one set of bone fragments – a pelvis bone and femur bone – that Dr. Mann and Plaintiff were unable to identify conclusively.  After some debate regarding the identity of these remains, the Philadelphia Medical Examiner's Office gave the remains to Dr. Mann for additional investigation.  From 1985 until 2001, these bone fragments were stored in Dr. Mann's office at Penn.  When Dr. Mann left Penn in 2001, the bone fragments were given to Plaintiff and similarly stored in her office at the University of Pennsylvania Museum of Archaeology and Anthropology ("Penn Museum").

In April 2021, concerns regarding the Penn Museum and Plaintiff's handling of the MOVE remains were included in articles published by Billy Penn and the Philadelphia Inquirer.  Multiple media outlets then reported on the handling of the MOVE remains, sometimes connecting this to broader issues for museums and universities, as well as within the field of anthropology:  the dehumanization of Black people in life and the desecration of their bodies after death and moral and human dignity implications of continuing possession and use of human remains.  In response to the significant media attention and public outcry, Penn's President and Provost at the time (Drs. Gutmann and Pritchett) issued a statement expressing their opinion regarding the length of time

the MOVE remains were kept at the Penn Museum, apologizing to the Africa family, committing to return the MOVE remains to the Africa family, and explaining that Penn hired a law firm to investigate how the remains came into the possession of the Penn Museum and what transpired with them for nearly four decades.  The statement did not identify Plaintiff by name, but expressed an opinion that the handling of the human remains was "insensitive, unprofessional and inappropriate."

Plaintiff apparently disagrees with the opinion expressed in the statement and the positions taken by multiple media outlets, and does not concur with Penn's decision to apologize to the community.  She does not believe that she should have to accept any responsibility or blame for the handling of the remains, and has sued Penn, five Penn employees, a doctoral student, the American Anthropological Association, the Society of Black Archaeologists, 12 media outlets, and 16 journalists, claiming that they published disparaging statements about her that are either false and defamatory, imply defamatory meaning, and/or place her in a false light.

While Plaintiff's attempt to construct a conspiracy theory is misplaced, her defamation, false light, and aiding and abetting claims against Penn, Dr. Gutmann, and Dr. Pritchett fail for much simpler reasons.  As an initial matter, Plaintiff's purported defamation and defamation by implication claims fail because: (1) they are based on the April 26, 2021 statement of Drs. Gutmann and Pritchett, which is nothing more than an opinion based upon disclosed facts and, therefore, is not capable of defamatory meaning; and (2) without this statement, Plaintiff's purported defamation and defamation by implication claims against Penn are based upon vague and conclusory allegations which do not identify when Penn made the alleged defamatory statement(s), the content of the alleged defamatory statement(s), and to whom the alleged defamatory statement(s) was made.

Further, Plaintiff's purported false light claim against Penn, Dr. Gutmann, and Dr. Pritchett similarly fails. Plaintiff has not identified a specific statement made by Penn, Dr. Gutmann, or Dr. Pritchett that created a false impression of Plaintiff. She has not provided the details that would be necessary to plead a false light claim, such as the content of the challenged statement(s), the recipient(s) of the statement(s), the timing of the statement(s), and how Penn, Dr. Gutmann, or Dr. Pritchett allegedly acted with actual malice. Additionally, Plaintiff has not demonstrated that Penn (or Drs. Gutmann or Pritchett) disclosed private facts about Plaintiff. Rather, as Plaintiff's Amended Complaint makes clear, Penn, Drs. Gutmann and Pritchett (at most) responded to information that had already been published and widely disseminated by various media outlets without divulging any new or private information. Further, any statements that were made by Penn (including by Drs. Gutmann and Pritchett) touched on a matter of legitimate public concern, i.e., public outcry regarding the handling of the remains of a victim of the MOVE bombing.

Finally, Plaintiff's purported civil aiding and abetting claim against Penn, Dr. Gutmann, and Dr. Pritchett is based on vague and conclusory allegations, without the requisite factual allegations demonstrating that Penn (including Drs. Gutmann and Pritchett) made any defamatory statements about Plaintiff, acted in concert with any other Defendants, or provided "substantial assistance or encouragement" to any other Defendants to engage in alleged tortious conduct.

Accordingly, Plaintiff's claims against Penn, Dr. Gutmann, and Dr. Pritchett should be dismissed in their entirety, with prejudice.

## II.   <u>RELEVANT FACTUAL ALLEGATIONS</u>[1]

In 1971, Vincent Leaphart founded the "Christian Action Life Movement," an organization that later became known as the MOVE Organization.  *See* June 22, 2022 Amended Complaint, Dkt. No. 1-4 ("Am. Compl.") ¶ 63.   MOVE members, primarily located in Philadelphia, Richmond, Virginia and Rochester, New York believed that they were the target of unwarranted and unlawful discrimination and harassment by these governmental departments.  *See* Am. Compl. ¶¶ 67-68.   In 1983, Philadelphia members of MOVE began living at 6221 Osage Avenue, Philadelphia, Pennsylvania.  *See* Am. Compl. ¶ 69.   As tensions between MOVE and their neighbors grew, others within the neighborhood formed the "United Residents of the 6200 Block of Osage Avenue" to protest MOVE's presence in their neighborhood.  *See* Am. Compl. ¶ 70.

Based on years of conflict between the Philadelphia Police Department and MOVE members, and growing complaints about MOVE from United Residents of the 6200 Block of Osage Avenue, Philadelphia's Mayor, District Attorney's Office, and Police Department created a plan to remove MOVE members from the property at 6221 Osage Avenue.  *See* Am. Compl. ¶ 71. On May 12, 1985, a Philadelphia Court of Common Pleas judge approved requests for search and arrest warrants for certain MOVE members, and police evacuated the Osage Avenue neighborhood.  *See* Am. Compl. ¶ 72.  The following day, May 13, 1985, the Philadelphia Police Department went to 6221 Osage Avenue and asked four MOVE members named in the warrants to surrender.  The MOVE members refused, and the Philadelphia Police Department began firing high-pressured water, tear gas, and smoke projectiles at the house.  When hours passed and no progress was made, the Philadelphia Police Department dropped an aerial bomb at 6221 Osage

---

[1]     Defendants accept as true, for purposes of their Motion to Dismiss only, the allegations in the Amended Complaint.  Defendants' recitation of those facts herein is for purposes of this Motion only and should not be deemed as an admission by Defendants that the alleged facts are true.

Avenue, causing the house to erupt into flames.  The fire burned for hours before extinguishing it.  *See* Am. Compl. ¶¶ 72-77.  Eleven MOVE members died in the fire.  *See* Am. Compl. ¶ 79.

Philadelphia's Chief Medical Examiner asked Dr. Alan Mann, a Professor in the Department of Anthropology at Penn at that time, to assist in analyzing the bone fragments that were removed from the bomb site.  *See* Am. Compl. ¶¶ 86-87.  Dr. Mann asked his doctoral student and mentee, Dr. Janet Monge ("Plaintiff"),[2] to assist him with the analysis.  *Id.*  After conducting their examination, Dr. Mann and Plaintiff concluded that a pelvis bone and proximal femur bone fragments were from a young adult female, likely between the ages of 17 and 21, and did not conform to any of the ages of the individuals presumed to have been killed in the bombing.  *See* Am. Compl. ¶¶ 89-91.  Others asked to examine the bone fragments disagreed, believing that they belonged to a 14-year-old girl named Katricia (Tree) Africa.  *See* Am. Compl. ¶¶ 91-93.

The Philadelphia Medical Examiner's Office released the human bone fragments to Dr. Mann for further investigation.  *See* Am. Compl. ¶¶ 96-98.  From 1986-2001, the bone fragments were stored in Dr. Mann's Office at the Penn Museum.  *See* Am. Compl. ¶¶ 99, 102.  After Dr. Mann left Penn to join the Anthropology Department at Princeton University, the bone fragments were kept in Plaintiff's office.  *See* Am. Compl. ¶¶ 103-106.

Plaintiff worked for Penn as a Keeper and Associate Curator at the Penn Museum and a Lecturer and Adjunct Professor in Penn's Department of Anthropology.  *See* Am. Compl. ¶ 19.  Between 2001 and 2015, Plaintiff showed the bone fragments to multiple different people, including taking them to Princeton University to have other anthropologists review them.  *See* Am. Compl. ¶ 107.  In 2019, Plaintiff recorded a multi-part course on forensic anthropology, which

---

[2]     Plaintiff is an Anthropologist who has a Bachelor's degree in Anthropology from Pennsylvania State University and a PhD in Anthropology from Penn.  *See* Am. Compl. ¶ 18.

was titled "Real Bones: Adventures in Forensic Anthropology" and published on the Coursera online platform in August 2020.  *See* Am. Compl. ¶¶ 120-124, 131.  In the ninth class, Plaintiff and one of her students displayed the bone fragments, comparing them to other similar bone fragments and models and explaining how forensic techniques can be used to determine the age of the remains.  *See* Am. Compl. ¶¶ 127-130.

On April 21, 2021, Maya Kasutto, a journalist, published an online article on Billy Penn's website titled "Remains of Children Killed in MOVE Bombing Sat in a Box at Penn Museum for Decades."  *See* Am. Compl. ¶ 151.  That same day, the Philadelphia Inquirer published an article titled "Penn Owes Reparations for Previously Handling Remains of a MOVE Bombing Victim" by Abdul-Aliy Muhammad.  *See* Am. Compl. ¶ 154.  Two days later, on April 23, 2021, The Daily Mail, The Guardian, and the New York Post published their own articles about the story.  *See* Am. Compl. ¶ 160.  The New York Times then published an article called "Decades After Police Bombing, Philadelphians 'Sickened' by Handling of Victim's Bones" on April 24, 2021 and on April 26, 2021, the Smithsonian Magazine published an article titled "Museum Kept Bones of Black Children Killed in 1985 Police Bombing in Storage for Decades."  *See* Am. Compl. ¶ 161. The articles identified Plaintiff by name and described her role in storing the remains and using them in her office.  *See* Am. Compl. ¶¶ 151, 154, 160-161.  They also described Plaintiff using the remains in a lecture that was filmed for an online course in which she picked up the femur and pelvic bones and referred to them as "juicy" and smelling "kind of greasy."  *See id.*

On April 26, 2021, the Association of Black Anthropologists, the Society of Black Archaeologists, and the Black in Bioanthropology Collective released a statement "condemn[ing] in the strongest possible language the University of Pennsylvania, Princeton University, Coursera, along with Professors Alan Mann and Janet Monge, for their horrific treatment of the remains of

Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the Africa family." *See* Am. Compl. ¶ 167.

In response to the various articles and statements about Penn and the Penn Museum's handling of the remains, and the public outcry that resulted, on April 26, 2021 Penn's President, Dr. Amy Gutmann, and Provost, Dr. Wendell Pritchett, issued a statement expressing their opinion that: "We were profoundly disturbed to learn this past week that human remains, provided to a faculty member by the medical examiner many decades ago in an effort to identify a victim from the 1985 bombing of the MOVE house, had been kept at the Penn Museum for much of that time. Simply said, this was insensitive, unprofessional and unacceptable." *See* Am. Compl. ¶ 170; April 26, 2021 Statement, attached hereto as Exhibit A.[3] Drs. Gutmann and Pritchett continued, stating that Penn and the Penn Museum issued an official apology to the Africa family, the Penn Museum was working to return the remains to the Africa family, and that Penn hired attorneys Joe Tucker and Carl Singley of the Tucker Law Group to investigate how the remains came into the possession of the Penn Museum and what transpired with them for nearly four decades. They also committed to share the report with the community and use its findings to help ensure nothing of this nature is repeated. *Id.*

Between April 30, 2021 and October 31, 2021, at least seven (7) other media outlets published articles on the story, including Slate (titled "The Grim Open Secret of College Bone Collections"), Al Dia News (titled "There Will Be No Justice for Penn and Princeton's Treatment of MOVE Victims"), Andscape (titled "The Scandal Over the MOVE Bombing Victims' Remains

---

[3]     This statement is publicly available at https://penntoday.upenn.edu/announcements/statement-regarding-human-remains-recovered-move-home. Additionally, given that this statement is referenced and placed at issue in the Amended Complaint, the Court may consider it, in full, in deciding Defendants' Motion to Dismiss. *See Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Is Part of Anthropology's Racist History" and a second article titled "Disrespect for the MOVE Families Is a Stain That Never Goes Away in Philadelphia"), The New Yorker (titled "Saying Her Name"), the Philadelphia Inquirer (titled "The Disrespectful Handling of the MOVE Victims' Remains by the City and Penn Merits More Investigation"), Teen Vogue ("Move Bombing Remains Scandal Shows Enduring Racism in Anthropology"), and Hyperallergic ("How the Possession of Human Remains Led to a Public Reckoning at the Penn Museum"). *See* Am. Compl. ¶ 161.

According to Plaintiff, Dr. Deborah Thomas (Professor of Anthropology at Penn) "released email blasts to colleagues and others," which more widely disseminated the Billy Penn article. *See* Am. Compl. ¶ 9. Additionally, per Plaintiff, Dr. Thomas shared unidentified media reports on the American Black Anthropologists email list serv. *See* Am. Compl. ¶ 164. Plaintiff also claims that Dr. Thomas "suggested herself that [Plaintiff] improperly handled the remains and stated that she was going to work with Mitchell to create a timeline and chain of custody narrative regarding the remains." *See* Am. Compl. ¶ 165. As of August 2021, Plaintiff was demoted to Museum Keeper at the Penn Museum and removed from teaching any classes at Penn, her salary was cut by $50,000 per year, and her scheduled summer programs at the Penn Museum and scheduled high school talks for Penn were cancelled. *See* Am. Compl. ¶¶ 171-175.

On April 20, 2022, Plaintiff filed a praecipe to issue a writ of summons in the Philadelphia Court of Common Pleas. *See* Dkt. No. 1-1. One month later, on May 20, 2022, Plaintiff filed a Complaint against Penn, President Gutmann, Provost Pritchett, Christopher Woods (Director of the Penn Museum), Kathleen Morrison (Chair of the Department of Anthropology at Penn), and Deborah Thomas (Professor of Anthropology at Penn), as well as Paul Mitchell, the Association of Black Anthropologists, the Society of Black Archaeologists, each of the 13 media outlets that

-8-

published articles regarding the handling of the MOVE remains, and each of the 16 journalists who wrote those articles alleging: (1) defamation (Count I); (2) defamation by implication (Count II); (3) false light (Count III); and (4) aiding and abetting (Count IV) against all **37** Defendants. *See* Dkt. No. 1-2. On June 22, 2022, Plaintiff filed an Amended Complaint. *See* Dkt. No. 1-4. The Amended Complaint alleges the same four Counts as the original Complaint but adds The American Anthropological Association as a Defendant and removes The Association of Black Anthropologists and Smithsonian Magazine as Defendants. *Id.* On July 27, 2022, Defendant Nora McGreevey removed the action to federal court, based on the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1). *See* Dkt. No. 1.

## III. <u>ARGUMENT</u>

### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) tests the sufficiency of a pleading against Rule 8(a)'s requirements. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, Plaintiff's Amended Complaint must set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("Factual allegations must be

enough to raise a right to relief above the speculative level.") (citing *Twombly*, 550 U.S. at 555). Accordingly, a complaint that pleads facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotes omitted).

The Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff, but mere legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79; *Phillips*, 515 F.3d at 233. Thus, a plaintiff's obligation to state the grounds for her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545 (citations omitted). Where a complaint merely alleges entitlement to relief, but does not allege facts showing entitlement, it must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "[N]aked assertions devoid of further factual enhancement" are similarly inadequate. *Iqbal*, 556 U.S. at 697. The assumption of truth is inapplicable to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citations omitted). Thus, this Court is not required to "conjure up" unpleaded or unclaimed facts that "might turn a frivolous claim . . . into a substantial one." *Twombly*, 550 U.S. at 562 (citation omitted).   In deciding a motion to dismiss, a court "need not assume that a . . . plaintiff can prove facts that . . . plaintiff has not alleged." *Klein v. Pike Cnty. Com'rs*, 2011 WL 6097734, at *2 (M.D. Pa. Dec. 6, 2011). Counts I-IV of the Amended Complaint against Defendants Penn, Dr. Gutmann, and Dr. Pritchett fail to comply with basic pleading requirements, and instead rely upon conclusory recitations of the legal elements of her purported claims. They should be dismissed in their entirety.

**B.  Plaintiff's Defamation and Defamation by Implication Claims Against Penn, Dr. Gutmann, and Dr. Pritchett Fail as a Matter of Law.**

To state a cause of action for defamation, Plaintiff's Amended Complaint must contain averments of fact which, if proven, would establish: (1) the defamatory character of the communications; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of the intention to be applied to the plaintiff; (6) special harm resulting to the plaintiff; and (7) abuse of a conditionally privileged occasion (i.e., that the defendant published the defamatory statement with want of reasonable care and diligence to ascertain the truth). 42 Pa. C.S. § 8343(a); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020); *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015).   The complaint must allege the content of the defamatory statements, the identity of the persons making such statements, and the identity of the persons to whom the statements were made.  *See Bank v. Cmty. Coll. of Philadelphia*, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988) ("A complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made."); *Phillips v. Selig*, 2001 WL 1807951 at *6 (Pa. Com. Pl. Sept. 19, 2001) (quoting *Itri v. Lewis*, 422 A.2d 591, 592 (Pa. Super. 1980)); *see also Bush v. Lawrence*, 2019 WL 517812, at *1 (Pa. Super. Feb. 11, 2019) (dismissing complaint where plaintiff "fail[ed] to explain precisely what statements" in the letter at issue were defamatory).

"Defamation by implication" is a derivative of a defamation claim, merely expanding upon the first element in a defamation cause of action – the defamatory character of the communication. A statement supports a claim for defamation by implication if the "natural meaning" of the challenged language can "fairly and reasonably" be construed to imply the defamatory meaning

alleged by a plaintiff. *Am. Osteopathic Ass'n v. Am. Bd. of Internal Med.*, 555 F. Supp. 3d 142, 153 (E.D. Pa. 2021) (quoting *Sarkees v. Warner–West Corp.*, 37 A.2d 544, 546 (Pa. 1944)). The implication or "innuendo must be warranted, justified and supported by the publication." *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 242 (E.D. Pa. 2012) (quoting *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. 1992)). A statement cannot be made libelous "by innuendo which puts an unfair and forced construction on the interpretation of the publication." *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 373 (E.D. Pa. 2009*) (quoting *Thomas Merton Ctr. v. Rockwell Intern. Corp.*, 442 A.2d 213, 217 (Pa. 1981)). In other words, innuendo cannot be "used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Sarkees*, 37 A.2d at 546. "If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury." *Id.*

      1. <u>Any Attempt to Hold Defendants Liable for Drs. Gutmann and Pritchett's April 26, 2021 Statement Fails Because It is a Statement of Opinion That is Not Capable of Defamatory Meaning</u>

Statements of opinion, as opposed to fact, are only capable of defamatory meaning in narrow, unique circumstances. *See Sprague v. Porter*, 2014 WL 10803063, at *18 (Pa. Super. Ct. Aug. 26, 2014) (citing *Bogash v. Elkins*, 176 A.2d 677 (Pa. 1962)); *see generally* Restatement (Second) of Torts, § 566. Whether a statement constitutes an opinion or a statement of fact is determined by a court in the first instance. *Keating v. Bucks Cnty. Water & Sewer Auth.*, 2000 WL 1888770, at *12 (E.D. Pa. Dec. 29, 2000) (citing *Bogash v. Elkins*, 176 A.2d 677 (Pa. 1962))*; Mathias v. Carpenter*, 587 A.2d 1, 3 (Pa. Super. 1991). In adopting the Second Restatement's approach to defamation, Pennsylvania distinguishes a statement of fact from a statement of opinion by whether it can be "objectively determined." *Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 670 (Pa. Super. 2019) (citing Restatement (Second) of Torts, § 566, Comment (a)). A statement

of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker.  *Id.*

As clarified in Comment (b) of Section 566 of the Second Restatement, expressions of opinion fall into two sub-categories: (1) the pure type – which "occurs when the maker of the comment states the facts on which he bases his opinion of the plaintiff and then expresses a comment as to the plaintiff's conduct, qualifications or character"; or (2) the mixed type – which "while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication.  Here the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant."  *Mathias*, 587 A.2d at 3 (quoting Restatement (Second) of Torts, § 566, Comment (a)).  Thus, in determining whether a statement is capable of defamatory meaning, a distinct standard is applied to publication of an opinion: "[i]n order for an opinion to be deemed capable of defamatory meaning under Pennsylvania law, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion."  *Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 459 (E.D. Pa. 2017), *aff'd sub nom. Mallory v. Simon & Schuster, Inc.*, 728 F. App'x 132 (3d Cir. 2018); *see Veno v. Meredith*, 515 A.2d 571, 575 (Pa. Super. 1986), *appeal denied*, 616 A.2d 986 (Pa. 1992) ("A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion.  A simple expression of opinion based on disclosed facts is not itself sufficient for an action of defamation.").

In *McCafferty*, the plaintiff claimed that a magazine article, which discussed the popularity of children with radical political opinions and critiqued adults for using children to espouse their controversial views, was libelous.  955 F.3d at 355-56.  According to plaintiff, the article's

suggestion that he was "defending raw racism and sexual abuse" was a defamatory statement of fact  *Id.* at 355.  However, that characterizations followed the article's factual description of interviews of the children, and the court recognized that "opinions based on disclosed facts are 'absolutely privileged,' no matter 'how derogatory' they are."  *Id.* at 357 (quoting *Braig v. Field Commc'ns*, 456 A.2d 1366, 1373 (Pa. Super. 1983).  The court affirmed dismissal, reasoning that the statement was not capable of a defamatory meaning because "those characterizations ma[d]e no factual claims."  *Id.*

In *Veno*, the plaintiffs alleged that published editorials were libelous because they "attacked their professional integrity and competence." 515 A.2d at 575.  At issue was a newspaper editorial critiquing a prior article – for example, stating that the article was "not thoroughly researched" – published in that same newspaper.  *Id.* at 575-76.  The court affirmed the defendants' demurrer, reasoning that the editorial was not capable of a defamatory meaning because it "merely stated an opinion that the tone of the article . . . was not supported by the facts asserted in the article" and that the article itself was a disclosed fact by virtue of its prior publication.  *Id.*

Similarly, in *Neish v. Beaver Newspapers, Inc.*, the plaintiff challenged an editorial criticizing the way the town solicitor handled his job and suggesting replacing the town solicitor. 581 A.2d 619, 622–24 (Pa. Super 1990), *appeal denied*, 593 A.2d 421 (Pa. 1991).  The Court dismissed the plaintiff's defamation claim, concluding that while the statements in the editorial "might be viewed as annoying and embarrassing, they were not tantamount to defamation" as they were based on public events and, therefore, were an opinion not based on undisclosed defamatory facts.  *Id.*

In *Baker v. Lafayette College*, the plaintiff (a college professor) challenged statements made by his department chairman in a memorandum to the provost that (1) plaintiff's having his

wife present in classes was extraordinary, peculiar, and an academically deplorable arrangement and (2) plaintiff was "cavalier in his dealings with students [demonstrating]... a general attitude that the best way to build a program is by giving high grades." 532 A.2d 399, 402-03 (Pa. 1987). The Pennsylvania Supreme Court held that the statements were not capable of defamatory meaning because the language was not based upon undisclosed facts, but rather specifically disclosed facts and, therefore, was a personal opinion not susceptible to defamatory meaning. *Id.*

Reading Drs. Gutmann and Pritchett's April 26, 2021 statement as a whole, it is clear that Drs. Gutmann and Pritchett were stating their opinion regarding the handling of human remains that had been described in detail in multiple media reports. *See* Exhibit A. Their view that "this was insensitive, unprofessional and unacceptable" was a subjective statement of their opinions, not a statement of fact. *Id.* Indeed, their statement did not disclose any new facts or imply factual information about Plaintiff's conduct that was not already disclosed. The opinion was based on facts that Drs. Gutmann and Pritchett disclosed in the very same statement, i.e., that "human remains, provided to a faculty member by the medical examiner many decades ago in an effort to identify a victim from the 1985 bombing of the MOVE house, had been kept at the Penn Museum for much of that time." *Id.* Plaintiff does not contend that the opinions were based on undisclosed facts, new facts or factual assertions that were untrue. Further, as the Amended Complaint itself alleges, Drs. Gutmann and Pritchett's statement was made *after* a number of third-party media outlets published articles addressing the handling of the MOVE remains, which, as both *Veno* and *Neish* held, are disclosed facts. *Compare* Am. Compl. ¶ 170 & Exhibit A, *with* Am. Compl. ¶¶ 151, 154, 160, 161(a), Exs. A-F.

It is quite clear, therefore, that Drs. Gutmann and Pritchett's April 26, 2021 statement was one of opinion based on disclosed facts and, therefore, is not capable of defamatory meaning.

Thus, any defamation claim against Penn, Dr. Gutmann, and/or Dr. Pritchett based on Drs. Gutmann and Pritchett's April 26, 2021 statement fails as a matter of law.  *See McCafferty*, 955 F.3d at 355; *Veno*, 515 A.2d at 575-76; *Neish*, 581 A.2d at 622-24; *Baker*, 532 A.2d at 402-03.[4] For these reasons, Plaintiff's purported defamation and defamation by implication claims should be dismissed.  *See, e.g., Kane v. Chester Cnty.*, 811 F. App'x 65, 70 (3d Cir. 2020) (affirming dismissal where expressed opinions were based on disclosed facts and thus are not actionable defamatory statements); *Beckman v. Dunn*, 419 A.2d 583, 587 (Pa. Super. 1980) (affirming grant of judgment on the pleadings where plaintiff, former student, challenged letter from professor to ombudsman as defamatory concerning plaintiff's doctoral examinations and termination of her participation in the program because the letter clearly indicated that the evaluation of plaintiff's academic abilities was based on her prior coursework, performance, and conflicts with the department and, therefore, was a non-defamatory statement of opinion based on disclosed facts); *Balletta v. Spadoni*, 47 A.3d 183, 196-200 (Pa. Cmwlth. Ct. 2012) (affirming rejection of defamation claim where challenged statements in newspaper were non-actionable statements of opinion because, when viewed in the context of the article in its entirety, it was clear that the article fully disclosed the facts upon which the defendant based his opinions and, therefore, the statements did not imply the existence of undisclosed facts).

      2. Plaintiff's Remaining Allegations Are Vague and Conclusory, at Best, and, Therefore, Insufficient to Plead a Defamation/Defamation by Implication Claim Against Penn

---

[4]    Given that Drs. Gutmann and Pritchett's statement is one of opinion that is not capable of defamatory meaning, Plaintiff's purported "defamation by implication" claim, to the extent it is based on this statement, fails for the same reason. *See Sarkees v. Warner–West Corp.*, 37 A.2d 544, 546 (Pa. 1944) ("If the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication.").

Beyond Drs. Gutmann and Pritchett's April 26, 2021 statement, it appears that Plaintiff's purported defamation and defamation by implication claims against Penn are based on her vague and conclusory allegation that Penn made unidentified "statements to its faculty and the public that apologetically condemned the investigatory efforts of its employee even though she did nothing wrong." *See* Am. Compl. ¶ 163.   Such allegations are insufficient, as Plaintiff's Amended Complaint does not include any factual allegations detailing the alleged defamatory statement(s) she believes Penn made. *See generally*, Am. Compl.   Without any such factual averments, it is not surprising that Plaintiff also failed to provide any details regarding when and to whom the alleged defamatory statement was made. *See generally*, Am. Compl.   Without any factual averments identifying an alleged statement or communication made by Penn or the identity of the person(s) to whom the alleged statement(s) was made, Plaintiff's purported defamation claim (Count I) and defamation by implication claim (Count II) based on this allegation fails as a matter of law. *See, e.g., Turk v. Salisbury Behav. Health, Inc.*, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010) (holding plaintiff's Amended Complaint failed to state a claim for defamation because it did not identify the substance of the alleged defamatory statements or state the circumstances under which they were allegedly made); *Lee v. Univ. of Pa., Sch. of Dental Med.*, 2019 WL 4060843, at *6 (E.D. Pa. Aug. 27, 2019) (granting motion to dismiss because "[t]o survive dismissal, [a plaintiff] must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience); *Carter v. Susquehanna Reg'l Police Dep't*, 2009 WL 1183415, at *8 (E.D. Pa. Apr. 30, 2009) (dismissing plaintiff's defamation claim against former employer as she did not "set forth the substance of the allegedly defamatory comments").[5]

---

[5]     *See also Gross v. United Engineers and Constructors, Inc.*, 302 A.2d 370, 372 (Pa. Super. 1973) (affirming grant of preliminary objections and dismissing libel and slander claims where "[t]he Complaint fails to allege with any particularity the content of the oral or written statements claimed to have been made, the identity of the person or persons making those statements, the relationship of that person or persons to the defendant

### C.  Plaintiff's False Light Claim Against Defendants Penn, Dr. Gutmann, and Dr. Pritchett Fails as a Matter of Law.

For false light claims, Pennsylvania adopts the definition set forth in the Restatement (Second) of Torts, which provides that "one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  Restatement (Second) of Torts § 652E; *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 135–36 (Pa. 1974); *Weinstein v. Bullick*, 827 F. Supp. 1193, 1202 (E.D. Pa. 1993) (citing *Vogel* for the proposition that Pennsylvania courts have adopted the Restatement definition of false light invasion of privacy).

To state a "false light" claim, Plaintiff must show "publicity, given to ***private*** facts about her, which would be highly offensive to a reasonable person and which are ***not*** of legitimate concern to the public."  *Sprague v. Porter*, 2014 WL 10803063, at *26 (Pa. Super. Ct. Aug. 26, 2014) (emphasis added); *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997).[6]

---

company and authority to act in behalf of the defendant company, the identity of the person or persons to whom the statements were made, and the relationship of that person or persons to the companies receiving the alleged communications."); *Reed v. Pray*, 2018 WL 5117223 (Pa. Super. Oct. 22, 2018) ("Simply put, Mr. Reed's averment that Ms. Pray made statements of a defamatory nature as she was entering or exiting Borough Council meetings at some unidentified time over the past year is too vague to state a cause of action for defamation. . . . In fact, we note the complaint in the case sub judice does not include any averments as to the specific dates of the subject Borough Council meetings or that any citizens or residents were even within earshot of Ms. Pray and/or heard Ms. Pray make the statements. Accordingly, we agree with the trial court that Mr. Reed's defamation count fails to allege with sufficient particularity the identity of persons to whom the statements were made, which is an essential element of an actionable defamation claim."); *Foster v. UPMC South Side Hosp.*, 2 A.3d 655, 666 (Pa. Super. 2010) (finding complaint "fatally vague" where it failed to identify "who made the statements and to whom the statements were made").

[6]    Pennsylvania courts have gone back and forth over the elements of a false light claim. *Compare Larsen v. Phila. Newspapers*, 543 A.2d 1181, 1188 (Pa. Super. 1988) (disclosure of public or private facts sufficient to state a false light claim); *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Pa. Super. 2012) ("false light does not require proof that the matter giving rise to the plaintiff's claim be restricted to one of private concern") *with Strickland*, 700 A.2d at 987 (disclosure of private facts not of legitimate public concern required).  However, the most recent Pennsylvania Superior Court opinion to address this issue concluded that, to state a viable

Mere negligence is insufficient to support a claim for false light/invasion of privacy.  *See Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.  Super. 1999).  Rather, Plaintiff must establish that Penn publicized a highly offensive, false statement about **private** facts pertaining to Plaintiff **with knowledge or in reckless disregard of the falsity**.  *See Santillo v. Reedel*, 634 A.2d 264, 266 (Pa. Super. 1993); *Sprague*, 2014 WL 10803063, at *26; *Strickland*, 700 A.2d at 987 (emphasis added).  "False light" claims require the same specificity in pleading as defamation claims.  *Ersek v. Township of Springfield, Delaware Cty.*, 822 F. Supp. 218, 223 (E.D. Pa. 1993) (citing *Moses* for specificity standard for defamation pleading).  Thus, for a false-light claim to be legally sufficient, Plaintiff must allege "the makers, the recipients and the contents of the [challenged] statements."  *Phillips*, 2001 WL 1807951 at *6.

Count III, Plaintiff's false light claim against all Defendants, generally alleges that all of the statements and articles referenced in the Amended Complaint were made/published without regard to their truth or falsity and publicized information that implied falsehoods about Plaintiff and/or included misrepresentations about her character, conduct, and activities that are not of legitimate public concern and that place her in a false light of a kind highly offensive to a reasonable person.  *See* Am. Compl. ¶¶ 210-213.  It appears that Plaintiff's purported false light claims against Penn, Dr. Gutmann, and Dr. Pritchett are based on the following allegations: (1) Penn amplified the alleged damage done by the alleged false and defamatory media articles by making unidentified "statements to its faculty and the public that apologetically condemned the investigatory efforts of its employee even though she did nothing wrong" (Am. Compl. ¶ 163);

---

false light claim, a plaintiff must allege that publicity was given to private facts.  *See Sprague*, 2014 WL 10803063, at *26.

and (2) Drs. Gutmann and Pritchett's April 26, 2021 statement (Am. Compl. ¶ 170).  These allegations are insufficient for several reasons.

        1. <u>Plaintiff's Amended Complaint is Devoid of Factual Averments Identifying a Statement Made by Penn, Dr. Gutmann, or Dr. Pritchett That Creates a False Impression, As Well as the Alleged Recipients of Such a Statement or That Defendants Acted with Actual Malice</u>

Plaintiff fails to plead essential facts supporting her false light claims against Penn, Dr. Gutmann, and Dr. Pritchett, such as facts demonstrating that they made any factual statements about Plaintiff that can be said to create a false impression, let alone the content of the alleged defamatory statement(s), when the alleged statement(s) was made, and to whom the alleged statement was made.  *See* generally Am. Compl.

For example, Drs. Gutmann and Pritchett's April 26, 2021 statement cannot be said to create a false impression as the only "information" included in their statement had already been publicized through a number of media articles and, at most, Drs. Gutmann and Pritchett offered their opinion about those facts.  *See* Section III.B.1, *supra*.  This is not enough to state a false light claim.  *See, e.g.*, *Sprague*, 2014 WL 10803063, at *26 (dismissing false light claim and, in doing so, noting that challenged statements did not create false impression because defendant reported what had already been publicized and then offered her opinion).

Additionally, Plaintiff's Amended Complaint does not include any factual allegations detailing the alleged defamatory statement(s) she believes Penn made, let alone provide any details regarding when the alleged statement(s) was made and to whom.  *See generally*, Am. Compl.  At most, Plaintiff vaguely alleges that Penn made a statement to faculty and the public apologizing for how the MOVE remains were handled, but fails to provide any additional information or detail.  But this does not provide nearly enough detail to meet her burden.  *See* Section III.B.2, *supra*.

Finally, Plaintiff's purported false light claims against Penn, Dr. Gutmann, and Dr. Pritchett fail because her Amended Complaint does not include any factual averments demonstrating that any statements were made about Plaintiff with knowledge that they were false or made with reckless disregard for any alleged falsity.  Rather, Plaintiff simply alleges, in a conclusory manner, that they acted with knowledge or reckless disregard.  Conclusory allegations are not enough to properly plead a false light claim.

Without such factual averments, Plaintiff's purported false light claim against Penn, Dr. Gutmann, and Dr. Pritchett (Count III) should be dismissed.  *See* Section III.B.2, *supra* (citing cases dismissing claims for failure to plead required elements).

2. <u>Plaintiff's False Light Claim Fails Because Plaintiff Cannot Show Penn, Dr. Gutmann, or Dr. Pritchett Disclosed Private Facts About Plaintiff and, Regardless, Any Statement Made by Penn, Dr. Gutmann, or Dr. Pritchett is One of Legitimate Concern to the Public</u>

Plaintiff's false light claims against Penn, Dr. Gutmann, and Dr. Pritchett also fail because: (1) Plaintiff does not allege that Penn, Dr. Gutmann, or Dr. Pritchett publicized ***private*** facts about Plaintiff; and (2) information regarding the handling of the MOVE remains is a matter of legitimate public interest.

*First*, according to Plaintiff's own Amended Complaint, multiple media outlets reported on the Penn Museum's handling of the MOVE remains, including Billy Penn, the Philadelphia Inquirer, The Daily Mail, The Guardian, the New York Post, the New York Times, and the Smithsonian Magazine.  *See* Am. Compl. ¶¶ 151-161.  Even a simple comparison of Drs. Gutmann and Pritchett's April 26, 2021 statement to the statements and/or articles published by these media outlets, among others, shows that Drs. Gutmann and Pritchett did not publicize any ***private*** facts about Plaintiff.  *Compare* Exhibit A *with* Am. Compl., Exs. A-P.  And the Amended Complaint

lacks any other allegations showing that Penn publicized private facts about Plaintiff. Without such factual averments, her false light claim fails as a matter of law. *See, e.g.*, *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 246 (E.D. Pa. 2012) (holding that plaintiff's false light claim failed in part because matters of the public record are not private facts); *Strickland*, 700 A.2d 987 (affirming dismissal where plaintiff failed to raise a genuine issue of material fact regarding whether the defendant publicized ***private*** facts); *see also Marricone v. Experian Info. Sols., Inc.*, 2009 WL 3245417, at *2 (E.D. Pa. Oct. 6, 2009) ("There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public.") (quoting Restatement (Second) of Torts § 652D, cmt. B); *Sprague*, 2014 WL 10803063, at *26 (holding that plaintiff's false light claim failed where defendant did not disclose any ***private*** facts that created false impression).

*Second*, the information reported on by various media outlets, and briefly addressed by Drs. Gutmann and Pritchett in their April 26, 2021 statement, concerns a matter of legitimate concern to the public. *See* Am. Compl. ¶¶ 210-213. Plaintiff's Amended Complaint demonstrates this, as it details the media and public outrage that resulted from publication of this information. *See* Am. Compl. ¶¶ 151-161. Additionally, as an anthropologist, Plaintiff should have been well aware that the public has a legitimate concern in understanding how human remains, particularly those believed to be from a victim of a horrific and widely reported tragedy, were handled. This is particularly true given the important issues currently facing museums, universities, and the field of anthropology more broadly: the dehumanization of Black people in life and the desecration of their bodies after death and moral and human dignity implications of continuing possession and use of human remains. Where, as here, there is no doubt that the content of any statements or conduct attributed to Penn, Dr. Gutmann, and/or Dr. Pritchett is a legitimate matter of public

concern, Plaintiff's false light claim fails.  *See, e.g.*, *Smith v. Borough of Dunmore*, 633 F.3d 176, 178 (3d Cir. 2011) (affirming summary judgment on false light claim where information which was made public—that fire captain had been suspended for lacking required training—concerned a public safety matter and was, therefore, a matter of public concern); *Sprague*, 2014 WL 10803063, at *26 (holding that plaintiff's false light claim failed where defendant's statement – commentary on corruption trial of elected official – was matter of public concern).

### D. Plaintiff's Purported Aiding and Abetting Claims Against Penn, Dr. Gutmann, Dr. Pritchett Fail as a Matter of Law.

To state a claim for civil aiding and abetting, Plaintiff must prove that Penn, Dr. Gutmann, and Dr. Pritchett: (1) committed a tortious act in concert with another or pursuant to a common design with him; (2) knew that another's conduct constituted a breach of duty and gave substantial assistance or encouragement to so conduct himself; or (3) gave substantial assistance to another in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to a third person.  *See Chaleplis v. Karloutsos*, 2022 WL 95691, at *10 (E.D. Pa. Jan. 10, 2022) (noting that Pennsylvania Supreme Court explicitly adopted Restatement (Second) of Torts, § 876 for civil aiding and abetting claims, also known as concerted tortious conduct); *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 120 (Pa. Super. 2014) (same); Restatement (Second) of Torts § 876.

In determining whether a defendant gave substantial assistance or encouragement, Pennsylvania Courts consider "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, [and] his relation to the other and his state of mind[.]" *Marion v. Bryn Mawr Tr. Co.*, 253 A.3d 682, 693 (Pa. Super. 2021), *reargument denied* (Apr. 28, 2021), *appeal pending on other grounds*, 2021 WL 4540443 (Pa. Oct. 5, 2021) (citing Restatement (Second) of Torts § 876 cmt d); *see also Synthes, Inc. v. Emerge Med.*, Inc.,

25 F. Supp. 3d 617, 677 (E.D. Pa. 2014) (using Restatement § 876 comment d factors to evaluate substantial assistance).  In addition to these factors, courts often consider the duration of the assistance (*Bair v. Purcell*, 500 F. Supp. 2d 468, 496 (M.D. Pa. 2007)), and the foreseeability of the harm that occurred (*Fassett v. Delta Kappa Epsilon (New York)*, 807 F.2d 1150, 1163-64 (3d Cir. 1986); *Jefferis v. Commonwealth*, 537 A.2d 355, 358 (Pa. Super. 1988)).  To establish substantial assistance, Plaintiff must plead and/or prove facts clearly demonstrating active encouragement to commit the tortious conduct through some affirmative action taken that causes the tortious actor to conduct himself/herself inappropriately.  *See Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007) (citing *Welc v. Porter*, 675 A.2d 334, 338 (Pa. Super. 1996)).

Plaintiff's Amended Complaint lacks any factual averments supporting her purported civil aiding and abetting claims against Penn, Dr. Gutmann, and Dr. Pritchett.  *See generally*, Am. Compl.  At most, Plaintiff alleges that Drs. Gutmann and Pritchett issued a statement on April 26, 2021 *after* widespread publicity had already ensued.  *See* Am. Compl. ¶ 170; Exhibit A. Otherwise, Count IV alleges, in general terms, that the 37 Defendants encouraged, aided and abetted the alleged tortious misconduct of each other when they published alleged defamatory statements that they knew or should have known was providing substantial assistance and/or encouragement to engage in tortious conduct.  *See* Am. Compl., ¶¶ 218-219.  This is woefully insufficient to state a claim for civil aiding and abetting against Penn, Dr. Gutmann, and Dr. Pritchett.

As an initial matter, for the reasons provided above, Plaintiff has not even demonstrated that Penn, Dr. Gutmann, or Dr. Pritchett engaged in any tortious conduct by defaming her or placing her in a false light.  *See* Sections III.B-III.C, *supra*.  Additionally, Plaintiff's Amended Complaint does not contain any factual averments detailing how she believes Penn, Dr. Gutmann,

or Dr. Pritchett acted in concert with any other Defendants, or provided "substantial assistance or encouragement" to any other Defendants to engage in alleged tortious conduct. *See generally*, Am. Compl.  With respect to Drs. Gutmann and Pritchett's April 26, 2021 statement, simply issuing a statement that is not capable of defamatory meaning, after a number of media outlets already reported on the subject, cannot constitute "substantial assistance or encouragement." Additionally, Plaintiff's Amended Complaint lacks any factual averments demonstrating affirmative action on the part of Drs. Gutmann and Pritchett to encourage or assist any other Defendant in issuing defamatory statements about Plaintiff. *See* Am. Compl. ¶¶ 151-161; *see Pendergrass v. Pendergrass*, 2019 WL 9100240, at *2 (E.D. Pa. Apr. 18, 2019) (holding that "concerted tortious action requires the secondary actor [i.e., the party to be held liable] to have knowledge of the primary actor's [i.e., the party committing the underlying tort] tortious actions or the primary actor's tortious act must be foreseeable to the secondary actor") (quoting *Grimm v. Grimm*, 149 A.3d 77 (Pa. Super. 2016).[7]

Accordingly, Plaintiff's purported civil aiding and abetting claim against Penn, Dr. Gutmann, and Dr. Pritchett should be dismissed. *See, e.g., Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*, 2020 WL 12968360, at *1 (E.D. Pa. Apr. 27, 2020) (granting motion to dismiss where plaintiff asserted in conclusory fashion that the defendant "had the intent to assist and/or encourage" and "provided [the primary tortfeasor] with substantial assistance and encouragement," as the amended complaint contained no facts showing that the defendant actively encouraged and/or assisted the alleged tortious conduct); *Till v. VIP Wireless Inc.*, 2015 WL

---

[7]    To the extent that Plaintiff alleges that Penn, Dr. Gutmann, and/or Dr. Pritchett aided and abetted any media outlets who published articles *prior to* Drs. Gutmann and Pritchett's April 26, 2021 statement, such a claim obviously fails as Defendants cannot provide substantial assistance or encouragement to an act that has already been completed. *See Bair v. Purcell*, 500 F. Supp. 2d 468, 497 (M.D. Pa. 2007) (holding that, where allegedly tortious conduct had not yet occurred, any prior conduct cannot serve as evidence of aiding and abetting the tortious conduct).

7259918, at *5 (Pa. Super. May 14, 2015) (affirming dismissal under Rule 1028(a)(4) where plaintiff did not allege any individual actions on the part of the individual defendants nor explain who among the defendants aided the tortious conduct of the others, as would be necessary to sustain a cause of action for civil aiding and abetting); *Bassaro v. de Levie*, 236 A.3d 1069 (Pa. Super. 2020) (affirming dismissal where plaintiff failed to set forth facts stating a cause of action against a third-party tortfeasor).

> **E.  Any Attempt to Hold Penn Liable for Alleged Conduct of Dr. Deborah Thomas Fails for the Same Reasons Identified by Dr. Thomas in Her Motion to Dismiss Plaintiff's Amended Complaint.**

The Amended Complaint is unclear in several respects, but Penn assumes that Plaintiff is attempting to hold Penn liable for defamation, defamation by implication, false light, and aiding and abetting based on allegations that Dr. Deborah Thomas: (1) "released email blasts to colleagues and others," which more widely disseminated the Billy Penn article (Am. Compl. ¶ 9); (2) shar[ed] unidentified media reports on the American Black Anthropologists email list serv (Am. Compl. ¶ 164); (3) "suggested herself that [Plaintiff] improperly handled the remains and stated that she was going to work with Mitchell to create a timeline and chain of custody narrative regarding the remains." (Am. Compl. ¶ 165); and (4) helped Paul Mitchell initiate false, defamatory, and widely disseminated media reports about Plaintiff's handling of the MOVE remains (Am. Compl. ¶ 7).  But any such attempt fails as a matter of law for the same reasons identified in Dr. Thomas's Motion to Dismiss, which Penn incorporates by reference.  *See* Dkt. No 40.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff's claims against Penn, Dr. Gutmann, and Dr. Pritchett fail as a matter of law.   As a result, the Court should dismiss Counts I-IV of the Amended Complaint against Penn, Dr. Gutmann, and Dr. Pritchett in their entirety, with prejudice.

Dated: August 12, 2022

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Michael L. Banks*

Michael L. Banks (PA ID No. 35052)
Benjamin K. Jacobs (PA ID No. 315984)
Ali M. Kliment (PA ID No. 318988)
Alexis Caris (PA ID No. 330623)
1701 Market Street
Philadelphia, PA 19103
Tel: 215.963.5650/4614
Fax: 215.963.5001
Email: michael.banks@morganlewis.com
        benjamin.jacobs@morganlewis.com
        ali.kliment@morganlewis.com
        alexis.caris@morganlewis.com

*Counsel for Defendants University of Pennsylvania,*
*Amy Gutmann, Wendell Pritchett, Kathleen*
*Morrison, Deborah Thomas, and Christopher*
*Woods*