**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANET MONGE,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | **NO.: 2:22-cv-02942-GEKP** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA,** | : | |
| *et al.,* | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS THE PHILADELPHIA INQUIRER, PBC, ABDUL-ALIY
<u>MUHAMMAD, AND JENICE ARMSTRONG'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    RELEVANT FACTUAL BACKGROUND ............................................................. 2

III.   ARGUMENT ............................................................................................................. 5

      A.  Counts One and Two (Defamation and Defamation by Implication) should be
          dismissed for failing to state a claim upon which relief can be granted against The
          Inquirer Defendants. ...................................................................................... 5

          1.  Dr. Monge fails to identify any allegedly false statement or implication in the
              Muhammad Op-Ed or the Armstrong Opinion Column. .............................. 5

              a)  Dr. Monge does not identify any allegedly false factual statement or implication
                  about her in the Muhammad Op-Ed. ...................................................... 6

              b)  Dr. Monge does not identify any allegedly false factual statement or implication
                  about her in the Armstrong Opinion Column. ......................................... 8

          2.  Dr. Monge fails to plausibly allege actual malice. .................................... 8

      B.  Count Three (False Light) should be dismissed for failing to state a claim upon which
          relief can be granted against The Inquirer Defendants. ................................. 12

      C.  Count Four (Civil Aiding and Abetting) should be dismissed for failing to state a claim
          upon which relief can be granted against The Inquirer Defendants. .......................... 12

IV.    RELIEF REQUESTED .......................................................................................... 14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Am. Future Sys., Inc. v. Better Business Bureau*, 923 A.2d 389 (Pa. 2007) ............................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 10, 13

*Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562 (Pa. Super. Ct. 2005) ......................................... 10

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ............................................................. 9

*Hranec Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114 (Pa. Super. Ct. 2014) ....... 13

*Kuwait & Gulf Link Transport Co. v. Doe*, 216 A.3d 1074 (Pa. Super. Ct. 2019) ........................ 5

*Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181 (Pa. Super. Ct. 1988) ................................... 12

*Manning v. WPXI, Inc.*, 886 A.2d 1137 (Pa. Super. Ct. 2005) .................................................. 10

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) ...................................................... 10

*McCafferty v. Newsweek Media Group*, Ltd., 955 F.3d 352 (3d Cir. 2020) ................ 8, 10, 11, 12

*McDowell v. Paiewonsky*, 769 F.2d 942 (3d Cir. 1985) ............................................................. 9

*Milkovich v. Lorain Journal*, 497 U.S. 1 (1990) .................................................................. 6, 7

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) .................................................................... 9

*Pace v. Baker-White*, 850 Fed. Appx. 827 (3d Cir. 2021) .................................................... 10, 11

*Philadelphia Newspapers v. Hepps,* 475 U.S. 767 (1986) .......................................................... 5

*Snyder v. Phelps*, 562 U.S. 443 (2011) ................................................................................... 5

**Other Authorities**

Restatement (Second) Torts § 876 (1979) ................................................................................ 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JANET MONGE,** | : | **CIVIL ACTION** |
| | : | |
| *Plaintiff,* | : | **NO.: 2:22-cv-02942-GEKP** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA,** | : | |
| *et al.,* | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS THE PHILADELPHIA INQUIRER, PBC, ABDUL-ALIY**
**MUHAMMAD, AND JENICE ARMSTRONG'S MOTION TO DISMISS**

**I.     INTRODUCTION**

The Philadelphia Inquirer, PBC, Abdul-Aliy Muhammad, and Jenice Armstrong ("The Inquirer Defendants") are three of the 37 defendants named in Janet Monge's defamation, false light invasion of privacy, and civil aiding and abetting lawsuit.  Dr. Monge's claims against The Inquirer Defendants are based on an April 21, 2021 op-ed by Muhammad ("Muhammad Op-Ed") and a May 18, 2021 opinion column by Armstrong ("Armstrong Opinion Column")—both published by The Philadelphia Inquirer.

The Inquirer Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for the following reasons:

- Dr. Monge's ***defamation claims*** against The Inquirer Defendants (Counts One and Two) fail as a matter of law for two independent reasons: (1) Dr. Monge does not identify any allegedly false factual statement or implication about her in either the Muhammad Op-Ed or the Armstrong Opinion Column, and (2) Dr. Monge does not plausibly allege that either the

Muhammad Op-Ed or the Armstrong Opinion Column was published with actual malice—that is, with knowledge that it was false or with reckless disregard as to whether it was false or not.

- Dr. Monge's ***false light invasion of privacy claim*** against The Inquirer Defendants (Count Three) fails as a matter of law for the same two reasons as her defamation claims.

- Dr. Monge's ***civil aiding and abetting claim*** against The Inquirer Defendants (Count Four) fails as a matter of law because she does not plausibly allege that The Inquirer Defendants acted in concert with any other Defendant or provided substantial assistance or encouragement to any other Defendant to engage in tortious conduct.

## II.     RELEVANT FACTUAL BACKGROUND

Dr. Monge begins her operative, Amended Complaint by asserting that she "has spent her entire career working for social justice by restoring personhood to unidentified human remains" and that "being able to bring the identity of those remains to light is one of [her] most important aspects of her chosen field."  Am. Compl. at ¶ 1.  Dr. Monge further states that "[o]ne of the most challenging cases in [her] storied career was the matter involving the 'Jane Doe' bone fragment remains removed by the City of Philadelphia from the site of the tragic 1985 bombing by the City, whose officials dropped an aerial explosive fire bomb on the home of its own citizens in one of the most horrific examples of excessive force found in American history; it killed eleven (11) persons (including five children) who were member[s] of a group known as the MOVE family."  *Id.* at ¶ 4.

Dr. Monge alleges that she "worked for 36 years to identify the person whose bone fragments were not properly identified as belonging to any member of the MOVE family, extensively researching and studying them, along with attempting to contact known MOVE

family members multiple times in an effort to gain their cooperation so the remains could be conclusively identified." *Id.* at ¶ 5.  According to the Amended Complaint, "[f]rom the beginning of her engagement by the City of Philadelphia, which sought her aid as a world-renowned forensic anthropologist, Dr. Monge worked tirelessly to restore identity to the Jane Doe bone fragment remains, all while contextualizing the tragedy of the MOVE bombing in social and political arenas." *Id.* at ¶ 6.  Over the course of the "36 years" in which Dr. Monge "research[ed] and stud[ied] the "Jane Doe" remains, *id.* at ¶ 5, the remains were stored at the University of Pennsylvania and Princeton University, with Dr. Monge taking them back and forth between the two institutions several times, *id.* at ¶¶ 103, 106-108.

From approximately 2017 to 2020, Dr. Monge helped develop an eleven-session Massive Open Online Course titled "Real Bones: Adventures in Forensic Anthropology," which, in August 2020, was made publicly available for free on the Coursera online platform. *Id.* at ¶¶ 119-122, 131.  In her Amended Complaint, Dr. Monge recounts that "[t]he first two classes, titled 'Losing Personhood: MOVE A Case Study' and 'Restoring Personhood' respectively, described the MOVE organization and discussed the history of the MOVE Bombing before explaining the gross, inappropriate excavation of the bomb site and displaying slides of the unidentified fragments pulled from the wreckage." *Id.* at ¶ 125.  The ninth class, titled "MOVE – An Analysis of the Remains," was filmed at a Penn Museum lab and featured Dr. Monge and one of her students "handl[ing]" the remains. *Id.* at ¶¶ 125, 127-129.

In that ninth class, according to the Amended Complaint, "Dr. Monge can be seen in the Penn Museum's lab with one of her students and the unidentified bone fragments comparing those fragments to other similar bone fragments and models for comparison and explaining how forensic techniques could be used to determine the age of the remains." *Id.* at ¶ 128.  Both Dr.

Monge and her student "handled the remains, utilizing rubber gloves to ensure that there would be no outside contamination." *Id.* at ¶ 129. They "discussed the process they took in attempting to provide an age estimate of the person from whom the fragments originated and Dr. Monge explained that, despite her diligence, the source of the fragments has still not been identified." *Id.* at ¶ 130.

On April 21, 2021, The Inquirer published the Muhammad Op-Ed, which, among other things, described and criticized Dr. Monge's use of the remains for educational purposes. Am. Compl. at ¶ 154 & at Ex. B (copy of Muhammad Op-Ed with some text missing); Ex. 1 (copy of Muhammad Op-Ed with full text).[1] On May 18, 2021, The Inquirer published the Armstrong Opinion Column, which—without mentioning Dr. Monge at all—similarly took issue with the academic use of the remains. Am. Compl. at ¶ 160(g) & at Ex. L (copy of Armstrong Opinion Column with some text missing); Ex. 2 (copy of Armstrong Opinion Column with full text). As discussed below, Dr. Monge has not identified any way in which either the Muhammad Op-Ed or the Armstrong Opinion Column publication is actionable, and, as a result, the Amended Complaint should be dismissed with prejudice as to The Inquirer Defendants for failing to state a single legally cognizable claim against them.

---

[1] Because the copies of the Muhammad Op-Ed and Armstrong Opinion Column attached to the Amended Complaint are both missing some text at page breaks, The Inquirer Defendants have attached as Exhibits 1 and 2 copies of the Muhammad Op-Ed and Armstrong Opinion Column that include the publications' full text.

III.   **ARGUMENT**

    A.   **Counts One and Two (Defamation and Defamation by Implication) should be dismissed for failing to state a claim upon which relief can be granted against The Inquirer Defendants.**

        1.   **Dr. Monge fails to identify any allegedly false statement or implication in the Muhammad Op-Ed or the Armstrong Opinion Column.**

In *Philadelphia Newspapers v. Hepps*, the Supreme Court of the United States Supreme Court held that the First Amendment imposes "a constitutional requirement that the plaintiff bear the burden of showing falsity" in any defamation action based on a media publication about a matter of "public concern." 475 U.S. 767, 776 (1986); *see also Kuwait & Gulf Link Transport Co. v. Doe*, 216 A.3d 1074, 1088 n.4 (Pa. Super. Ct. 2019) ("Under the First Amendment to the United States Constitution, a plaintiff asserting defamation concerning a publication of a matter of 'public concern' bears the burden of proving that the publication was false."). As the Supreme Court has explained, "[s]peech deals with matters of public concern [1] when it can fairly be considered as relating to any matter of political, social or other concern to the community or [2] when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotation marks and citations omitted). Here, both the Muhammad Op-Ed and the Armstrong Opinion Column fit comfortably in each category because the notorious MOVE bombing and its aftermath is plainly a matter of "concern to the community" and "a subject of legitimate news interest."

Given that both the Muhammad Op-Ed and Armstrong Opinion Column address matters of public concern, *Hepps* makes falsity a constitutionally mandated element of Dr. Monge's defamation claims against The Inquirer Defendants. This means that, for the defamation claims against The Inquirer Defendants to survive dismissal, Dr. Monge must identify a statement or

implication about her in the Muhammad Op-Ed and the Armstrong Opinion Column that is
"provable as false." *Milkovich v. Lorain Journal*, 497 U.S. 1, 19 (1990).  Put differently, she
must point to an allegedly false statement or implication that is "sufficiently factual to be
susceptible of being proved true or false."  *Id.* at 21.  Because Dr. Monge has failed to do so
here, her defamation claims against The Inquirer Defendants should be dismissed.

a)   <b>Dr. Monge does not identify any allegedly false factual<br>statement or implication about her in the Muhammad Op-Ed.</b>

In her Amended Complaint, Dr. Monge raises four concerns about the Muhammad Op-
Ed, none of which can possibly suffice to satisfy her falsity burden.  *See* Am. Compl. ¶¶ 155-
156.

*First*, Dr. Monge contends that the publication "conclusively asserted that the
unidentified bone fragments were the remains of the black children who died in the tragic
bombing and fire, Katricia and Delisha Africa."  Am. Compl. ¶ 155.  Dr. Monge appears to have
confused this publication with another, as the Muhammad Op-Ed says no such thing.  Rather, it
states that Penn had been holding "the remains of someone killed in the 1985 MOVE
bombing"—a fact that Dr. Monge does not appear to dispute.  *See* Am. Compl. at Ex. B; Ex. 1.
As to the identity of that particular bombing victim—something that Dr. Monge asserts has not
been established—the article merely states, as Dr. Monge herself acknowledges, that there had
been "a dispute over whether specific remains belonged to Tree [aka, Katricia] Africa, who was
14 when killed in the MOVE bombing."  *See* Am. Compl. ¶¶ 93-94; Am. Compl. at Ex. B; Ex. 1.

*Second*, Dr. Monge alleges that the Muhammad Op-Ed states that she "mishandled" the
remains.  Am. Compl. ¶ 156.  Again, it does not.  The publication states that "[t]he remains of
murdered Black people were mishandled then," referring to the description earlier in the article
of how "*the city* showed neglect in assuring proper handling of the remains of the people who

6

were killed" in the MOVE bombing.  Am. Compl. at B (emphasis added); Ex. 1 (emphasis

added).  Quoting from Professor Richard Kent's book "MOVE: An American Religion," the Op-

Ed recounts that "machine operators crushed bones and mangled skeletons" at the MOVE site

and "for six months the bodies of the MOVE people . . . decomposed in a city morgue." *Id.*  But

even if Muhammad had used the word "mishandled" to refer instead to Dr. Monge's conduct

described elsewhere in the Op-Ed—specifically, her use of remains for instructional purposes—

such a reference would not be "provable as false." *Milkovich*, 497 U.S. at 19.  Whether using

human remains to teach an online class amounts to the "mishandling" of those remains is a

subjective value judgment that is not "sufficiently factual to be susceptible of being proved true

or false." *Id.* at 21.

      *Third*, Dr. Monge complains that, according to her, the Muhammad Op-ed describes

Penn's possession of the MOVE victim remains as "unethical."  Am. Compl. ¶ 156.  Dr. Monge

again inaccurately describes the publication.  The "unethical possession" that the Op-Ed actually

references is Penn's self-described "unethical possession of human remains in the Morton

Collection." *See* Am. Compl. at Ex. B; Ex. 1.

      *Fourth and finally*, Dr. Monge takes issue with the Op-Ed's reference to her conduct as

an "egregious act."  Am. Compl. ¶ 156.  But classifying Dr. Monge's use of the remains for

instructional purposes as "egregious" is a non-actionable subjective value judgment, not a

"provabl[y] false" matter of fact.  *Milkovich*, 491 U.S. at 19.  Again, it is not "sufficiently factual

to be susceptible of being proved true or false" and thus cannot possibly satisfy Dr. Monge's

falsity burden.  *Id.* at 21.  Simply put, Muhammad has the right to express the opinion that Dr.

Monge's conduct disclosed in the Op-Ed was "egregious." *See McCafferty v. Newsweek Media

Group*, Ltd., 955 F.3d 352, 359 (3d Cir. 2020) ("[A]n opinion based on disclosed facts cannot be

false.").  That Dr. Monge may disagree with Muhammad's opinion cannot somehow make what Muhammad wrote about her false.

> **b)**     **Dr. Monge does not identify any allegedly false factual statement or implication about her in the Armstrong Opinion Column.**

In her Amended Complaint, Dr. Monge takes issue with the following paragraph of the Armstrong Opinion Column:

> This latest atrocity is beyond horrible. The MOVE victims' remains have been treated like laboratory specimens, passed from the University of Pennsylvania to Princeton University and then back to Penn.  According to the Guardian, they were even included in a now-deleted video promoting a class called "Real Bones: Adventures in Forensic Anthropology."

Am. Compl. ¶ 161(g).  According to Dr. Monge, this paragraph "falsely implies unlawful and unprofessional racially motivated actions" by Dr. Monge.  *Id.*

Dr. Monge is wrong.  For starters, *the Armstrong Opinion Column does not mention Dr. Monge at all*—not in the paragraph at issue and not anywhere else in the Column either. Moreover, even if the Column attributed the conduct described in the paragraph to Dr. Monge, it still would not imply "unlawful and unprofessional racially motivated actions" by her.  The paragraph expresses a non-actionable subjective value judgment about the undisputed use of the remains for academic purposes—calling that use a "horrible" "atrocity."  *See* Am. Compl. at Ex. L; Ex. 2.  Whether the academic use of the remains amounted to "unlawful and unprofessional racially motivated actions" is a separate issue that the Armstrong Opinion Column does not address at all.

> **2.**     **Dr. Monge fails to plausibly allege actual malice.**

Counts One and Two of the Amended Complaint also fail as a matter of law because Dr. Monge does not plausibly allege that the Muhammad Op-Ed and the Armstrong Opinion Column

were published with "actual malice—that is, with knowledge that [they] w[ere] false or with reckless disregard of whether [they] w[ere] false or not," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  Relying upon the protections provided by the First Amendment, the Supreme Court of the United States first imposed the "actual malice" requirement on defamation plaintiffs who are public officials, *id.*, and later extended it to public figures, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335, 342-45 (1974).  In explaining when an individual qualifies as a public figure, the Court provided two prototypes: (1) an individual who "achieve[s] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts" and (2) an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351.

Here, Dr. Monge, a self-described "world-renowned forensic anthropologist" with a "storied career," voluntarily injected herself into the public controversy regarding the notorious MOVE bombing and its aftermath.  *See* pages 2-4 above (quoting Am. Compl. at ¶¶ 4, 6).  As Dr. Monge herself puts it, she spent 36 years "extensively researching and studying" remains from the bombing and "worked tirelessly to restore identity to the Jane Doe bone fragment remains."  Am. Compl. at ¶¶ 5-6.  And she did so "all while contextualizing the tragedy of the MOVE bombing in social and political arenas."  *Id.* at ¶6.  Dr. Monge therefore should be treated as a public figure for purposes of publications relating to the MOVE bombing and its aftermath—including the Muhammad Op-Ed and the Armstrong Opinion Column.  *See, e.g., McDowell v. Paiewonsky*, 769 F.2d 942, 947-51 (3d Cir. 1985) (deeming architect public figure for purposes of statements about involvement in controversial publicly financed development project).

The Superior Court of Pennsylvania has stressed that the actual malice standard Dr. Monge must satisfy due to her public figure status is "a rigorous, if not impossible, burden to meet in most circumstances." *Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562, 566 (Pa. Super. Ct. 2005) (internal quotation marks omitted); *Manning v. WPXI, Inc.*, 886 A.2d 1137, 1143 (Pa. Super. Ct. 2005) (internal quotation marks omitted); *see also McCafferty*, 955 F.3d at 359 (describing actual malice as a "demanding standard").  Indeed, because actual malice is an element of her claim, Dr. Monge must show by "clear and convincing evidence" that The Inquirer Defendants published the Muhammad Op-Ed and the Armstrong Opinion Column with "knowledge" of falsity or "reckless disregard" for the truth.  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991).  To satisfy even the "reckless disregard" prong of this standard, Dr. Monge must show that The Inquirer Defendants "in fact entertained serious doubts as to the truth" of the Muhammad Op-Ed and the Armstrong Opinion Column" or "acted with a high degree of awareness of probable falsity."  *Id.* (internal quotation marks, citations, and alteration omitted).

Here, Dr. Monge has not pleaded, in any non-conclusory way, that The Inquirer Defendants published the Muhammad Op-Ed or the Armstrong Opinion Column with actual malice.  Crucially, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a 12(b)(6) motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, Dr. Monge "must allege *facts* to support an inference of actual malice," *Pace v. Baker-White*, 850 Fed. Appx. 827, 831 (3d Cir. 2021), which she has failed to do here.

In her Amended Complaint, rather than alleging supporting facts, Dr. Monge simply references the actual malice standard in several boilerplate allegations against all the Defendants

and leaves it at that. *See, e.g.,* Am. Compl. at ¶ 196 ("The false and defamatory statements described above and contained in the articles identified were published with knowledge that said statements, innuendo, inference, and manner in which they were presented were false and/or with reckless disregard for whether said material was false, said conduct constituting actual malice."), *id.* at ¶ 214 ("The false statements were published by Defendants with the knowledge and/or reckless disregard for the false light in which the Plaintiff would be portrayed.").  Dr. Monge's insufficient allegations of actual malice are thus a second independent reason that Counts One and Two of the Amended Complaint against The Inquirer Defendants should be dismissed. *See, e.g., Pace*, 850 Fed. Appx. at 831 (affirming dismissal of defamation claim for "conclusory allegations" of actual malice); *McCafferty*, 955 F.3d at 359-60 (affirming dismissal of defamation claim for failure to "plead facts that suggest actual malice").

Even if the Court were unable to deem Dr. Monge a public figure at this stage of the case, dismissal would be appropriate because Dr. Monge's Amended Complaint does not include allegations sufficient to satisfy even the lesser fault standard that applies to private figure defamation plaintiffs.  If Dr. Monge were a private figure, she would need to prove that The Inquirer Defendants published the Muhammad Op-Ed and the Armstrong Opinion Column "negligently."  *Am. Future Sys., Inc. v. Better Business Bureau*, 923 A.2d 389, 400 (Pa. 2007). And Dr. Monge's allegations of any negligence are just as conclusory as her allegations of actual malice.  *See* Am. Compl. at ¶ 180 ("Defendants knew or should have known that the statements described above and contained in the articles identified above were false when made, and Defendants published them either intentionally and malicious, or with reckless disregard for their truth or falsity, or negligently and carelessly published.").

11

**B.**     **Count Three (False Light) should be dismissed for failing to state a claim upon which relief can be granted against The Inquirer Defendants.**

Count Three of the Amended Complaint, which asserts a claim of false light invasion of privacy, is legally deficient and should be dismissed for the same reasons as the defamation claims.

The Superior Court of Pennsylvania has held that falsity is an element of any false light invasion of privacy claim, regardless of whether the publication at issue is about a matter of public concern.  *See Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188-89 (Pa. Super. Ct. 1988) (explaining the "falsity" element of a Pennsylvania false light claim).  The Superior Court has further held that "actual malice" is also an element of any false light invasion of privacy claim, regardless of whether the plaintiff is a public or private figure.  *See id.* at 1188 (explaining that "a publication is actionable [as false light invasion of privacy] if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity").

Therefore, because, as described at pages 5-11 above, Dr. Monge has not plausibly alleged falsity or actual malice, her false light claim against The Inquirer Defendants should be dismissed for the same reasons as her defamation claims against them.  *See, e.g.*, *McCafferty*, 955 F.3d at 360 (affirming dismissal of false light claim on falsity and actual malice grounds).

**C.**     **Count Four (Civil Aiding and Abetting) should be dismissed for failing to state a claim upon which relief can be granted against The Inquirer Defendants.**

Finally, Count Four of the Amended Complaint, which summarily asserts a claim for civil aiding and abetting against all Defendants, should also be dismissed with prejudice.

By including her aiding and abetting county, Dr. Monge seeks to hold each Defendant liable for all of the other Defendants' allegedly defamatory publications.  Adopting Section 876

of the Restatement (Second) of Torts, the Superior Court has recognized three grounds for such a claim:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Hranec Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 120 (Pa. Super. Ct. 2014) (quoting Restatement (Second) Torts § 876).

In her Amended Complaint, Dr. Monge simply parrots the requirements of Restatement Section 876 and again improperly relies upon "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Specifically, Dr. Monge alleges that (a) "[t]he behaviors in which the Defendants engaged aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge *in a concerted effort* to accomplish the particular results of branding [Dr.] Monge as incompetent and a racist" and that (b) "[w]hen each of the Defendants published their defamatory statements they knew or should have known through reasonable diligence that the conduct of each of them was tortious and *provided substantial assistance and/or encouragement* to engage in such tortious misconduct." Am. Compl. at ¶¶ 218-219 (emphasis added)

Crucially, Dr. Monge fails to plead any *facts* that, if true, would plausibly support the allegation that The Inquirer Defendants acted "in a concerted effort" with any of the other Defendants—let alone that they did so "to accomplish the particular result of branding [Dr.] Monge as incompetent and a racist." *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Rule 8(a)(2))). Nor does Dr. Monge plead any *facts* that, if true, would show that The Inquirer Defendants actually provided "substantial assistance" or "encouragement" to any of the other Defendants—let alone substantial assistance or encouragement to engage in tortious conduct.

Therefore, Dr. Monge's claim for civil aiding and abetting (Count Four) against The Inquirer Defendants should be dismissed.

## IV.    RELIEF REQUESTED

For the foregoing reasons, The Inquirer Defendants respectfully request that the Amended Complaint be dismissed against them, in its entirety and with prejudice.

                                    Respectfully submitted,

                                    **LeVAN STAPLETON SEGAL COCHRAN**
Date: August 12, 2022               **LLC**

                                    */s/ Eli Segal*_____
                                    Eli Segal (Id. No. 205845)
                                    Peter H. LeVan, Jr. (Id. No. 83456)
                                    One Liberty Place
                                    1650 Market Street, Suite 3600
                                    Philadelphia, PA 19103
                                    (215) 402-6555
                                    esegal@levanstapleton.com
                                    plevan@levanstapleton.com

*Attorneys for Defendants The Philadelphia Inquirer, PBC, Abdul-Aliy Muhammad, and Jenice Armstrong*