IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANET MONGE | : |
| | : Civil Action No: 22-cv-02942-GEKP |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| UNIVERSITY OF PENNSYLVANIA, et al. | : |
| | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANT, HYPERALLERGIC MEDIA, INC.'S
REPLY IN FURTHER SUPPORT OF ITS
<u>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **TABLE OF AUTHORITIES** | | iii-v |
| **I.** | **INTRODUCTION** | 1 |
| **II.** | **ARGUMENT** | 2 |
| | **COUNT I - DEFAMATION AND COUNT II - DEFAMATION BY IMPLICATION MUST BE DISMISSED AS AGAINST HYPERALLERGIC** | 2 |
| | 1. As A Limited Purpose Public Figure, Plaintiff Has Failed to Prove That the Statements Attributed to Hyperallergic Were Made With Actual Malice. | 2 |
| | 2. The Statements Attributable to Hyperallergic Were Substantially True. | 6 |
| | **COUNT III – FALSE LIGHT MUST BE DISMISSED AS AGAINST HYPERALLERGIC** | 8 |
| | **COUNT IV – CIVIL AIDING AND ABETTING MUST BE DISMISSED AS AGAINST HYPERALLERGIC** | 10 |
| **III.** | **CONCLUSION** | 12 |

# TABLE OF AUTHORITIES

**CASES**

*Am. Future Sys., Inc. v. Better Bus. Bureau*,
    592 Pa. 66, 923 A.2d 389 (2007)……………………………………………………3

*Bartlett v. Bradford Publ'g, Inc.*,
    2005 PA Super 350, 885 A.2d 562……………………………….…………….5

*Bobb v. Kraybill*,
    354 Pa. Super. 361, 511 A.2d 1379 (1986)…………….…………………….6

*Diaz v. Bd. of Educ.*, Civil Action No. 05-4667 (WJM),
    2006 U.S. Dist. LEXIS 87056 (D.N.J. Nov. 30, 2006)…………………………2-3

*Dunlap v. Phila. Newspapers, Inc.*,
    301 Pa. Super. 475, 448 A.2d 6 (1982)……………………………………...……7

*Friedman v. Isr. Labour Party*,
    957 F. Supp. 701 (E.D. Pa. 1997)……………………………………………………5

*Gertz v. Robert Welch*,
    418 U.S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974)……..……………………….2

*Gilbert v. Bionetics Corp.*, Civ. Act. No. 98-2668,
    2000 U.S. Dist. LEXIS 8736 (E.D. Pa. June 6, 2000)…………..………………6-7

*Graboff v. Colleran Firm*,
    744 F.3d 128 (3d Cir. 2014)……………………………………………………9

*Kilian v. Doubleday & Co.*,
    367 Pa. 117, 79 A.2d 657 (1951)……………………………………….……7

*Lynch v. Borough of Ambler,* CIVIL ACTION 94-6401,
    1995 U.S. Dist. LEXIS 3217 (E.D. Pa. Mar. 14, 1995)………...………………..6

*Mallory v. S & S Publrs.*,
    260 F. Supp. 3d 453 (E.D. Pa. 2017)………………………………………..…..9

*Marcone v. Penthouse Int'l Magazine for Men*,
    754 F.2d 1072 (3d Cir. 1985)……………………………………...…………2, 10

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020) …………………………………………..……3

*McCafferty v. Newsweek Media Grp., Ltd.*, No. 18-1276,
 2019 U.S. Dist. LEXIS 36543 (E.D. Pa. Mar. 7, 2019)……………………...……9

*McDowell v. Paiewonsky*,
 769 F.2d 942 (3d Cir. 1985)……………………………………………………2-3

*Medico v. Time, Inc.*,
 643 F.2d 134 (3d Cir. [1981])………………………………………….....…..…5

*Mmubango v. Google, Inc.*, No. 12-1300,
 2013 U.S. Dist. LEXIS 24989 (E.D. Pa. Feb. 22, 2013)………………….....…11

*Moses v. McWilliams,*
 379 Pa. Super. 150, 549 A.2d 950 (1988)……………………………....…..……6

*Mzamane v. Winfrey*,
 693 F. Supp. 2d 442 (E.D. Pa. 2010)…………………………………….…...…2

*Norton v. Glenn*,
 580 Pa. 212, 860 A.2d 48 (2004)……………………………………......……5

*N.Y. Times Co. v. Sullivan*,
 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964)………………………2-3, 10

*Santillo v. Reedel,*
 430 Pa. Super. 290, 634 A.2d 264 (1993)……………………………………..9

*Sciandra v. Lynett*,
 409 Pa. 595, 187 A.2d 586 (1963)………………………………………..…….5

*St. Amant v. Thompson*,
 390 U.S. 727, 88 S. Ct. 1323, 20 L.Ed.2d 262 (1968)……………….….……10

*Taha v. Bucks Cty.*, No. 12-6867,
 2015 U.S. Dist. LEXIS 173135 (E.D. Pa. Dec. 30, 2015)………….….……..9

*Waldbaum v. Fairchild Publ'ns*,
 201 U.S. App. D.C. 301, 627 F.2d 1287 (1980)…..……………………………3

*Weber v. Lancaster Newspapers, Inc.*,
 2005 PA Super 192, 878 A.2d 63……………………………………………..11

*Williams v. WCAU-TV*,
 555 F. Supp. 198 (E.D. Pa. 1983)…………………………………....………5

**RULES & REGULATIONS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure.………………………….……1, 12

**OTHER AUTHORITIES**

Restatement (Second) of Torts, § 611 (1977)……………………………………………..…5

Restatement (Second) of Torts § 652E)…………………………………………………...9

Restatement (Second) of Torts, § 876.……………………………………………...………10

Restatement (Second) of Torts, § 876(c)……………………………………..………….10

Robert D. Sack, 1 *Sack on Defamation* § 3.7 (3d ed. 1999)………………………………7

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and through undersigned counsel, Defendant, Hyperallergic Media, Inc., ("Hyperallergic") files this reply memorandum of law in further support of its motion seeking dismissal of the counts asserted by plaintiff in her Amended Complaint for failure to state a claim. In support thereof, Hyperallergic states:

**I.     INTRODUCTION**

This action arises from alleged defamatory statements published about Plaintiff as a result of her work with human remains recovered from the MOVE bombing site in Philadelphia, Pennsylvania. Plaintiff is now bringing the following counts against all defendants: (Count I) defamation, (Count II) defamation by implication, (Count III) false light, and (Count IV) civil aiding and abetting.

As concerns Hyperallergic, Plaintiff claims that "[o]n October 31, 2021, Hyperallergic published the article []"How the Possession of Human Remains Led to a Public Reckoning at the Penn Museum," authored by [] Kinjal Dave and Jake Nussbaum." (*See* Plaintiff's Amended Complaint, ¶ 161(j).) Plaintiff avers that "[l]ike its predecessors, the article details the aftermath of the media firestorm, but falsely blames Dr. Monge for a racially motivated investigation of the bone fragments, stating [']Consuella did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching.[']" (*See* Plaintiff's Amended Complaint, ¶ 161(j).)

Notably, Plaintiff's employment-related claims involving her demotion and damages stemming therefrom pre-date the article attributed to Hyperallergic. That is, the article Plaintiff references in her Amended Complaint pertaining to Hyperallergic is dated

1

October 31, 2021, (*See* Exhibit O to Plaintiff's Amended Complaint) whereas the articles alleged to have been published by other Defendants were, according to Plaintiff's Amended Complaint, all published by July, 2021. (*See* Plaintiff's Amended Complaint, ¶ 151-161.) While Plaintiff claims she "has been the victim of adverse employment actions" (*see* Plaintiff's Amended Complaint, ¶ 177), any adverse employment action complained of by Plaintiff occurred months prior to Hyperallergic's October 31, 2021 publication.

## II.     ARGUMENT

### COUNT I - DEFAMATION AND COUNT II - DEFAMATION BY IMPLICATION MUST BE DISMISSED AS AGAINST HYPERALLERGIC

**1.     As A Limited Purpose Public Figure, Plaintiff Has Failed to Prove That the Statements Attributed to Hyperallergic Were Made With Actual Malice.**

"Under the guidance of [*N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964)], [*Gertz v. Robert Welch*, 418 U.S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974)] and their progeny, the Third Circuit has adopted a two-pronged inquiry in determining whether a plaintiff qualifies as a limited purpose public figure: (1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." *See Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 498-99 (E.D. Pa. 2010)(citing *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d Cir. 1985); *see also Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1082 (3d Cir. 1985.)

"A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it."" *See Diaz v. Bd. of Educ.*, Civil Action No. 05-4667 (WJM), 2006 U.S. Dist. LEXIS 87056, at *5 (D.N.J. Nov. 30, 2006)(citing *McDowell v.*

2

*Paiewonsky,* 769 F.2d 942, 948 (3d Cir. 1985)); *see also Waldbaum v. Fairchild Publ'ns,* 201 U.S. App. D.C. 301, 627 F.2d 1287, 1296 (D.C. Cir. 1980). "More specifically, "[i]f the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy."" *See Diaz v. Bd. of Educ.*, Civil Action No. 05-4667 (WJM), 2006 U.S. Dist. LEXIS 87056, at *5 (D.N.J. Nov. 30, 2006)(citing *Waldbaum* at 1297.)

"To show defamation, a public figure (even if just a "limited-purpose public figure" [] []) must show that the publisher acted with "actual malice."" *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020)(citing *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 592 Pa. 66, 923 A.2d 389, 400 (Pa. 2007).) ""Actual malice" is a term of art that does not connote ill will or improper motivation." *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020.) "Rather, it requires that the publisher either know that its article was false or publish it with "reckless disregard" for its truth." *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020)(citing *Am. Future Sys., Inc. v. Better Bus. Bureau*, 592 Pa. 66, 923 A.2d 389, 399 n.12. (2007).) "The First Amendment requires this demanding standard." *See McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020)(citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).)

Plaintiff states in her Opposition to Hyperallergic's Motion that "…since it was the Defendants' own actions that created the public uprising over the handling of the unidentified remains, they cannot now claim that Dr. Monge is a public figure when he made her one." (*See* Plaintiff's Opposition Memorandum, p. 23.) Plaintiff's argument,

3

however, doesn't apply as to Hyperallergic, as Plaintiff was a public figure well before Hyperallergic's October 31, 2021 publication. To provide some context, Plaintiff states in her Amended Complaint that Mr. Mitchell "instigated the first article regarding the unidentified bones by contacting his then girlfriend, Defendant Maya Kassutto, who was writing for Defendant Billy Penn, at the time." (*See* Plaintiff's Amended Complaint, ¶ 150.) The Billy Penn article, published April 21, 2021, made a public controversy out of the issue regarding the human remains recovered from the MOVE bombing site.

The fact that Plaintiff was a public figure by July 2021 is further supported and documented in the report that was prepared by the Tucker Law Group, titled The Odyssey of the MOVE Remains, Report of the Independent Investigation into the Demonstrative Display of MOVE Remains at the PENN Museum and Princeton University, dated August 20, 2021. The Tucker report specifically defines the issue of the MOVE remains as "The Public Controversy". (*See* Exhibit B to Motion to Dismiss, p. 46.) By the time Hyperallergic published the article attributed to it in Plaintiff's Amended Complaint, Plaintiff was already at the center of the public controversy surrounding the MOVE remains.

The articles alleged to have been published by other Defendants were all published by July 2021, over three months prior to the article attributed to Hyperallergic. (*See* Plaintiff's Amended Complaint, ¶ 151-161.) To that point, if Plaintiff was defamed, she was defamed long before the October 31, 2021 publication, which reports on information from other reports that were released.

Of note:

> Pennsylvania has long recognized a privilege for the press to publish accounts of official proceedings or reports even when they contain

4

>defamatory statements. See,e.g., Medico v. Time, 643 F.2d 134, 137 (3d Cir. 1980) (finding that Time magazine's republication which summarized FBI surveillance reports was protected under Pennsylvania's fair report privilege); Sciandra v. Lynett, 409 Pa. 595, 187 A.2d 586 (Pa. 1963) (finding that a newspaper's republication of Governor's report on organized crime was within the ambit of the privilege and not an abuse of that privilege). So long as the press report presents a fair and accurate summary of the proceedings, see Williams v. WCAU-TV, 555 F. Supp. 198, 201 (E.D. Pa. 1983); Sciandra, 187 A.2d at 587; Restatement (Second) of Torts, § 611 (1977), and the account was not published solely for the purpose of causing harm to the person defamed, see Sciandra, 187 A.2d at 588-589 (Pa. 1963); but see Restatement (Second) of Torts, § 611 (1977) (making no reference to the "solely to harm" requirement), it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate.

*See Friedman v. Isr. Labour Party*, 957 F. Supp. 701, 709 (E.D. Pa. 1997.)

Considering the foregoing, unlike the allegations Plaintiff makes against other Defendants which resulted in Plaintiff's allegations that she suffered an adverse employment action, Hyperallergic is far removed from any actions of those Defendants in that the article attributed to Hyperallergic was published long after any of the other published articles.

Moreover, because Plaintiff was a public figure well before October 31, 2021, she bears the burden to demonstrate that Hyperallergic acted with actual malice. "Indeed, "the actual malice standard goes so far as to forbid imposition of liability even in those instances where the defendant negligently publishes false, defamatory statements about a public figure or public official."" *See Bartlett v. Bradford Publ'g, Inc.*, 2005 PA Super 350, ¶ 11, 885 A.2d 562, 566 (citing *Norton v. Glenn*, 580 Pa. 212, 860 A.2d 48, 56 (Pa. 2004).)

Plaintiff cannot meet the actual malice standard to establish liability against Hyperallergic, and accordingly, her defamation claim must be dismissed.

2.   **The Statements Attributable to Hyperallergic Were Substantially True.**

"Under Pennsylvania procedural law, "A complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom and to whom."" *See Lynch v. Borough of Ambler*, CIVIL ACTION 94-6401, 1995 U.S. Dist. LEXIS 3217, at *14 (E.D. Pa. Mar. 14, 1995)(citing *Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950 (1988).)

In her Amended Complaint, Plaintiff identifies the following purportedly defamatory statements attributed to Hyperallergic: "Consuella did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching." (*See* Plaintiff's Amended Complaint, ¶ 161(j).)

Plaintiff *did not*, in fact, obtain permission from Consuewella to use the B-1 remains, which have been associated with Katricia Dotson, for teaching purposes or for a fundraising event. Nonetheless, Dr. Monge did use B-1 remains for teaching purposes. (*See* Exhibit A to Motion to Dismiss, part 1, p. 91, part 2, p. 13, 15)(*see also* Exhibit B to Motion to Dismiss, p. 8.)

This information renders the statements attributable to Hyperallergic as *substantially true*. "In Pennsylvania, truth is an absolute defense to defamation." *See Gilbert v. Bionetics Corp.*, Civ. Act. No. 98-2668, 2000 U.S. Dist. LEXIS 8736, at *10 (E.D. Pa. June 6, 2000)(citing *Bobb v. Kraybill*, 354 Pa. Super. 361, 511 A.2d 1379, 1380 (Pa. Super. Ct. 1986).)

"The truth required to avoid liability for defamation is not complete truth, but rather substantial truth." *See Gilbert v. Bionetics Corp.*, Civ. Act. No. 98-2668, 2000 U.S.

Dist. LEXIS 8736, at *10 (E.D. Pa. June 6, 2000)(citing *Kilian v. Doubleday & Co.*, 367 Pa. 117, 79 A.2d 657, 660 (Pa. 1951).) "While there is no set formula, Pennsylvania has determined proof of substantial truth must go to the "gist" or "sting" of the alleged defamatory matter." *See Gilbert v. Bionetics Corp.*, Civ. Act. No. 98-2668, 2000 U.S. Dist. LEXIS 8736, at *10 (E.D. Pa. June 6, 2000)(citing *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa. Super. 475, 448 A.2d 6, 15 (Pa. Super. Ct. 1982).)

"In *Dunlap*, the court stated that the test is "whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced."" *See Gilbert v. Bionetics Corp.*, Civ. Act. No. 98-2668, 2000 U.S. Dist. LEXIS 8736, at *10 (E.D. Pa. June 6, 2000)(citing *Dunlap v. Philadelphia Newspapers, Inc., 301 Pa. Super. 475, 448 A.2d 6, 15 (Pa. Super. Ct. 1982); see also* Robert D. Sack, 1 *Sack on Defamation* § 3.7 (3d ed. 1999).

In Plaintiff's Opposition to Hyperallergic's Motion, Plaintiff indicates that "even if the Court were to determine that the statements in Hyperallergic's article were literally true, it does not change the fact that the whole article creates a defamatory implication that Dr. Monge committed professional misconduct in the handling of the unidentified remains, which she didn't, and that she may have done so based upon some racial motive, which she did not." *See* Plaintiff's Opposition Memorandum, p. 28.)

While the findings and conclusions of the report prepared by the Tucker Law Group, dated August 20, 2021 and titled <u>The Odyssey of the MOVE Remains</u>, <u>Report of the Independent Investigation into the Demonstrative Display of MOVE Remains at the PENN Museum and Princeton University</u>, indicate, in part, that "Dr. Monge did not violate any specific professional, ethical or legal standards by retaining and displaying

7

the remains", the same report found and concluded that "Dr. Monge's retention of the remains from 2001 to 2021 and their use in the Princeton Online video course **demonstrated, at a minimum, extremely poor judgement and gross insensitivity to the human dignity and social and political implications of her conduct**." (*See* Exhibit B to Motion to Dismiss, p. 8)(emphasis provided.) Plaintiff has not demonstrated how the purported defamatory statements create an implication which departs from Tucker Law Group's finding and conclusion of "extremely poor judgment" and "gross insensitivity" on the part of Plaintiff in her retention and use of the MOVE remains, especially considering Tucker Law Group's other finding and conclusion that "Dr. Monge did not inform MOVE family members of and obtain their consent to use the remains in the Princeton Online video course." (*See* Exhibit B to Motion to Dismiss, p. 8.)

Accordingly, Plaintiff's Defamation and Defamation by Implication claims against Hyperallergic must fail.

Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count One and Count Two of Plaintiff's Amended Complaint with prejudice.

### COUNT III – FALSE LIGHT MUST BE DISMISSED AS AGAINST HYPERALLERGIC

"Pennsylvania has adopted the definition of false light invasion of privacy set forth in the Restatement (Second) of Torts, which describes the cause of action as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*See Mallory v. S & S Publrs.*, 260 F. Supp. 3d 453, 466 (E.D. Pa. 2017)(citing Restatement (Second) of Torts § 652E); see also *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014)("holding that, to state a claim for false light under Pennsylvania law, a plaintiff must allege facts showing that the published material "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity."")

"The standard set forth in subsection (b) of the Restatement mirrors the "actual malice" standard for defamation claims established by New York Times and its progeny." *See Mallory v. S & S Publrs.*, 260 F. Supp. 3d 453, 466 (E.D. Pa. 2017)(citing Taha v. Bucks Cty., No. 12-6867, 2015 U.S. Dist. LEXIS 173135, 2015 WL 9489586, at *3 (E.D. Pa. Dec. 30, 2015)); *see also* New York Times v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)).

That is, "[t]o plead a false light claim under Pennsylvania law, a plaintiff must allege actual malice—i.e., a "highly offensive false statement was publicized" by the defendant "with knowledge or in reckless disregard of [its] falsity."" *See McCafferty v. Newsweek Media Grp., Ltd.*, No. 18-1276, 2019 U.S. Dist. LEXIS 36543, at *15-16 (E.D. Pa. Mar. 7, 2019)(citing *Santillo v. Reedel*, 430 Pa. Super. 290, 634 A.2d 264, 266 (Pa. Super. Ct. 1993).)

In Plaintiff's Opposition to Hyperallergic's Motion, Plaintiff indicates that "Hyperallergic should have been aware of the need to investigate its sources given the

9

seriousness of the allegations contained in the initial articles, yet they relied entirely on those articles' assertions without doing any type of investigation to back them up." *See* Plaintiff's Opposition Memorandum, p. 25.) Contrary to Plaintiff's assertion, "[f]ailure to investigate, without more, does not demonstrate actual malice." *See Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1089 (3d Cir. 1985)(citing *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 20 L.Ed.2d 262 (1968); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 288, 84 S. Ct. 710, 11 L.Ed.2d 686 (1964).)

As set forth above, Hyperallergic contends that its statements are substantially true, which negates, at minimum, that the statements attributed to Hyperallergic were false. Plaintiff cannot meet the actual malice standard necessary to support liability against Hyperallergic for her False Light claim. Accordingly, Plaintiff's False Light claim against Hyperallergic must fail.

Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count Three of Plaintiff's Amended Complaint with prejudice.

### COUNT IV – CIVIL AIDING AND ABETTING MUST BE DISMISSED AS AGAINST HYPERALLERGIC

Pursuant to the Restatement (Second) of Torts, § 876(c), "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he"

> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*See* Restat 2d of Torts, § 876.

Plaintiff has in no way demonstrated how Hyperallergic provided substantial assistance to any other Defendant in this matter. Plaintiff merely asserts in her Memorandum of Law in Opposition to the Motion to Dismiss filed by Hyperallergic, that

10

"Hyperallergic clearly provided that assistance by publishing its own false and defamatory article, accepting as true everything stated in the previous articles without doing adequate investigation into whether those assertions were true" (citing Plaintiff's Amended Complaint at Paragraphs 151-62), and "[b]y continuing the false and defamatory reporting, Hyperallergic not only lent credibility to the false statements previously published, but it also increased the publicity of those stories and increased the number of people who reading the defamatory statements against Dr. Monge." (*See* Plaintiff's Opposition Memorandum, pp. 26-27.)

As an initial note, "…a publisher's decision to print a statement is typically considered under direct liability principles." *See Mmubango v. Google, Inc.*, No. 12-1300, 2013 U.S. Dist. LEXIS 24989, at *8 n.5 (E.D. Pa. Feb. 22, 2013)(citing Weber v. Lancaster Newspapers, Inc., 2005 PA Super 192, 878 A.2d 63, 73-74 (Pa. Super. Ct. 2005).) Even so, Plaintiff has not shown facts which demonstrate that "substantial assistance" by Hyperallergic has been given to another Defendant. Plaintiff cites to Paragraphs 151-62 in her Amended Complaint to make her argument here. Notably, the alleged articles and publications cited to by Plaintiff all pre-date the October 31, 2021 publication of Hyperallergic. Thus, Plaintiff has not shown, and cannot show that Hyperallergic provided substantial assistance to any other Defendant as all the other articles pre-date the Hyperallergic publication. Accordingly, Plaintiff's Civil Aiding and Abetting claim against Hyperallergic must fail.

Defendant Hyperallergic Media, Inc. respectfully requests that this Honorable Court strike Count Four of Plaintiff's Amended Complaint with prejudice.

### III. <u>CONCLUSION</u>

Defendant, Hyperallergic Media, Inc., respectfully submits that the Court dismiss the claims filed by plaintiff in her Amended Complaint against defendant, Hyperallergic Media, Inc., with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

**THOMAS PASCHOS & ASSOCIATES, P.C.**

By: *Thomas Paschos*
Thomas Paschos, Esquire (TP8039)
325 Chestnut Street, Suite 800
Philadelphia, PA 19106
215-636-0555
TPaschos@paschoslaw.com
Attorneys for Defendant,
Hyperallergic Media, Inc.