IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | No. 22-cv-02942 (GEKP) |
| | : | |
| UNIVERSITY OF PENNSYLVANIA, et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT NORA MCGREEVY'S REPLY IN SUPPORT OF HER
MOTION TO DISMISS**

Defendant Nora McGreevy ("McGreevy"), by her undersigned attorneys, respectfully submits this reply to Dr. Janet Monge's ("Monge's") Memorandum of Law in Opposition to Defendant's Motion to Dismiss (the "Response"), ECF No. 75, filed on September 27, 2022.

**I.    INTRODUCTION**

The Response ignores McGreevy's case law showing that she is entitled to official immunity under federal law because she wrote the April 26, 2021 Smithsonian Article (the "Article") as a contractor of the federal government, which edited and published the Article. Nor does she explain how the Article – which simply aggregates news accounts from reputable publications – is false or was published with fault. McGreevy is not a proper party to this case and the claims against her should be dismissed. The Court may then decide whether it wishes to exercise supplemental jurisdiction over the remaining 36 or so defendants and the dozen or so remaining motions to dismiss.

## II. ARGUMENT

### A. *Monge Ignores Settled Law Showing That McGreevy is Entitled to Official Immunity*

Monge opposes McGreevy's immunity claims based on a false premise: that there are "two types of immunities provided to government contractors: derivative immunity and government contractor immunity." ECF No. 75 at 21. She claims the former is derived from the Supreme Court's decision in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940) and the latter is derived from *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). But Plaintiff fails to address the immunity arguments McGreevy actually relied upon—the official immunity articulated by the Supreme Court in *Westfall v. Erwin*, 484 U.S. 292 (1988), which provides immunity to protect the discretionary acts of government contractors done within the scope of their duties. Although McGreevy clearly relies on immunity under *Westfall* (McGreevy's Mem. (ECF 38) at 10), Plaintiff does not cite the *Westfall* case anywhere in her brief, never mind distinguish it.

While Plaintiff at least acknowledges Your Honor's opinion in *Vangjeli v. Banks*, 2020 U.S. Dist. LEXIS 182844 (E.D. Pa. Oct. 2, 2020), she cites only to the portion of the decision which dealt with derivative immunity. Response at 22 (citing to *Rhodes Indus. v. Shoreline Found., Inc.*, 2022 W.L. 742486 (E.D. Pa. 2022) which addressed a derivative immunity defense and discussed *Vangjeli*'s decision only on derivative immunity). As this Court stated in *Vangjeli*: "there is a fundamental difference between derivative sovereign immunity and official immunity that necessarily means that both will not apply in the same case: discretion is necessary to a claim of official immunity but fatal to a claim for derivative sovereign immunity." *Vangjeli*, 2020 U.S. Dist. LEXIS 182844 at *12. McGreevy's Motion was based on official immunity, not derivative sovereign immunity.

McGreevy was performing discretionary acts at the behest of the Smithsonian, but, as made clear in McGreevy's agreement with the Smithsonian (which Plaintiff again does not address), the Smithsonian had ultimate control over the content of the Article, with the right to edit and publish it (which Plaintiff concedes, Response at 25).  As McGreevy argued in her motion to dismiss, McGreevy is entitled to official immunity because her acts were "(a) discretionary in nature and (b) f[ell] within the scope of the officials' duties." *Vangjeli*, 2020 U.S. Dist. LEXIS 182844 at *6-7.  Plaintiff does not address this point at all.  Nor does she acknowledge or address the D.C. Circuit's en banc opinion in *Expeditions Unlimited Aquatic Enters., Inc. v. Smithsonian Inst*.  *See* 566 F.2d 289, 295 (D.C. Cir. 1977) (en banc), which held that a defamation claim against a Smithsonian employee was protected by official immunity so long as the statements at issue were made "within the outer perimeter of his duties."  The same rule applies to McGreevy as a federal contractor.  *See Vangjeli*, 2020 U.S. Dist. LEXIS 182844, at *6-7; *Nicole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 351 (3d Cir. 2012) (holding in affirming of dismissal that a federal contractor is "entitled to immunity for discretionary conduct that falls within the outer perimeter of their official duties").[1]

---

[1] Plaintiff devotes an entire section to the Supreme Court's opinion in *Boyle*, but that decision relates specifically to immunity from state law product liability suits against government contractors for design defects in defense equipment.  Thus, the third "prong" of the test relating to a duty to warn of dangers of the product not known to the United States was specifically included to address state tort law concerns in the area of product liability.  *Boyle*, 487 U.S. at 512.  A duty to warn makes little sense in the context of a service contract like that at issue here (and in *Vangjeli*).  This case fits more clearly into type of official immunity described in *Westfall*.  In any event, even under Plaintiff's formulation of the *Boyle* test, McGreevy would fit well within it since the government was thoroughly involved in the Article:  Plaintiff admits that the Smithsonian edited and published the Article, which is hardly a "rubber stamp".  Response at 25.  The agreement between the Smithsonian and McGreevy shows that the Smithsonian in fact had total control over the decision to publish all, part or none of the article.  And, providing immunity to McGreevy is perfectly consistent with the overall rationale of *Boyle*, which was to protect the discretionary acts of federal contractors when they perform acts on behalf of the United States government for which the government itself is immune.  *Boyle*, 487 U.S. at 512 ("It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production.").

Plaintiff does not dispute that the Smithsonian is a federal entity. She does not dispute that the Article was edited and published by the Smithsonian, consistent with its mission to further the "increase and diffusion of knowledge," 20 U.S.C. § 41. She does not dispute that the Smithsonian—which she dismissed as a defendant in this action—is immune from suit. And she offers no argument to rebut McGreevy's showing that McGreevy is also entitled to immunity under *Westfall*. Accordingly the claims against McGreevy should be dismissed.

### B. *Monge Does Not State A Case for Defamation*

Monge does not dispute that the statements at issue in the Article are "literally true." ECF No. 75 at 25. That concession is enough to dismiss Plaintiff's claims since "First Amendment concerns compel the plaintiff to prove . . . that the alleged defamatory statement is in fact false." *Lewis v. Phila. Newspapers, Inc.*, 833 A.2d 185, 191 (Pa. Super. Ct. 2003).

But Plaintiff argues that McGreevy's article is defamatory because it supposedly *implies* that she "committed professional misconduct in the handling of the remains" by not notifying the next of kin (who she says were unknown) and that she "committed misconduct based on some racial motive . . . ." *Id.* at 25-26. Plaintiff cannot state a claim for defamation by implication.

First, as explained in McGreevy's Motion, the Article implies no such thing.[2] More importantly, any implication of "misconduct" or "racism" that a reader might draw from

---

[2] To the extent Plaintiff maintains that the Article implies as a fact that the remains conclusively did not belong to Tree and Delisha Africa (Response at 26), she is wrong. As noted in McGreevy's Motion, the Article clearly states that the remains were "never conclusively identified." And while Monge believes that the remains did not belong to Tree and Delisha Africa, she does not and cannot dispute that other professionals had a different view. The Article could not have contained an "assumption" the remains were conclusively those of Tree and Delisha (Response at 26), where it expressly stated the opposite. And the Article makes clear that Monge did not have the consent of the families of "*probable* victims Tree and Africa" to use the bones in a course while describing them as "juicy" and attributes this information to another reputable news organization, *The Guardian*. The reader was provided with the accurate facts, and the reader was free to draw their own opinions from those facts. That is particularly so where McGreevy was simply providing a review of the controversy based on already published media reports.

the concededly true facts in the Article is not a fact, it is a subjective conclusion that a reader may (or may not) reach based on disclosed facts. That is the very definition of a protected opinion. *See McCafferty v. Newsweek Media Group*, 955 F.3d 352, 359 (3d Cir. 2020) ("[A]n opinion based on disclosed facts cannot be false.").

Monge cites *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 16 (Pa. Super. Ct. 1982) and *Menkowitz v. Peerless Publs., Inc.*, 211 A.3d 797, 801 (Pa. 2019), but those cases involved alleged implications of *facts*—not subjective conclusions a reader might draw from disclosed facts. In *Dunlap*, the Inquirer ran a full-page spread with a banner stating "Wide Police Corruption Revealed." 448 A.2d at 8. Beneath this banner, the article showed two pictures, captioned "Sergeant's Car 17B Stops Outside Known Gambling Location," and "Patrol Outside, Gambling Inside." *Id.* The Sergeant claimed the article implied the provably true fact that he was gambling on the job. *Id.* at 15. *Menkowitz* is the opposite of this case. There, Plaintiff complained about statements that there were "rumors of professional misconduct regarding [Menkowitz's] treatment of an older female patient." *Menkowitz*, 211 A.3d at 799. Menkowitz claimed that the article implied as a fact that Plaintiff had engaged in sexual misconduct. *Id.* at 802 (finding the use of the phrase "professional misconduct" in particular, "suggests an array of misconduct to lay persons, including sexual impropriety"). Because Plaintiff concedes that the facts in the Article are true and she complains only about value judgments readers might ascribe to those true facts, her defamation claim fails.

Moreover, Monge fails to explain how McGreevy acted with the requisite degree of fault. She makes no argument that McGreevy acted with actual malice, so if she is a public figure, which she is,[3] her claim must be dismissed. Moreover, even if she were a private figure,

---

[3] Monge acknowledges that she is a well-respected anthropologist, but asserts that she is "not recognizable to the average person on the street." Response at 27. But the question in a case involving limited public figure (as

5

Monge has failed to reply to McGreevy's argument that she did not act negligently. ECF No. 38-1 at 21. Specifically, Monge ignores the substantial case law McGreevy offered showing she cannot be found negligent for merely repeating statements made by reputable news outlets. If an author could be liable for simply re-publishing a compilation of information reported by reputable news organizations, most blogs would cease to exist.

### C. *A False Light Claim Requires Proving Actual Malice Which Must Be Shown By More Than Mere Republishing of Trustworthy Sources*

The conduct Monge alleges to support her false light claims fails to rise to the level of actual malice required to support a false light claim. *Rubin v. CBS Broad., Inc.*, 170 A.3d 560, 568 n.9 (Pa. Super. Ct. 2017) ("The required standard of fault in a false light claim is thus actual malice."). Monge argues that citing articles without doing further investigation is reckless. ECF No. 75 at 30. However, black letter law requires more:

> "To establish actual malice, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Failure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits. The fact that [the publisher] could have employed a higher degree of journalistic responsibility does not constitute actual malice."

*Coleman v. Ogden Newspapers, Inc.*, 142 A.3d 898, 906 (Pa. Super. Ct. 2016) (quoting *Manning v. WPXI, Inc.*, 886 A.2d 1137, 1144 (Pa. Super. Ct. 2005)). Further, the amount and quality of the sources selected by McGreevy show that she did not act negligently in writing her article, much less with knowledge or reckless disregard for the truth.

---

opposed to an all-purpose public figure) is whether a person has involved themselves in a public controversy, not whether she is a household name. *See Mzamane v. Winfrey*, 693 F. Supp.2d 442, 498 (E.D. Pa. 2010). Monge clearly enmeshed herself in the controversy of the MOVE bombing and these particular bones, as her own Amended Complaint makes clear. Her claim that she did not invite discussion on the issue is also meritless in light of the fact that she produced a Coursera program which specifically discussed the bones. Having put the issue into the public sphere, she can hardly complain that she received comment on the course. *Marcone v. Penthouse Int'l*, 754 F.2d 1072, 1083-83 (3d Cir. 1985).

D. *Republishing Trustworthy Sources Is Not "Substantial Assistance" Sufficient for a Civil Aiding and Abetting Claim*

Likewise, Monge points to McGreevy's "publishing her own false and defamatory article, accepting as true everything stated in the previous articles without doing adequate investigation into whether to assertions were true" to support her claim for civil aiding and abetting. ECF No. 75 at 31. This is circular nonsense. As previously explained, McGreevy made clear to her readers that she was quoting other sources, with accurate language to describe the many high-quality sources she quoted. *See supra* Sections II.B.1, II.C. But further, in no way could McGreevy have provided "substantial assistance" in the publication of the articles she cited merely through their citation. By definition, those articles were completed *before* McGreevy cited them, and they would have been published regardless of McGreevy's citation. Therefore, Monge has not adequately alleged that McGreevy aided and abetted the other defendants' alleged defamation. *See Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996) (collecting cases holding that no substantial assistance is provided where two actors engage in separate voluntary courses of conduct).

WHEREFORE, Defendant Nora McGreevy respectfully requests that the Court grant her Motion to Dismiss.

| | |
|---|---|
| Date: October 11, 2022 | Respectfully submitted, |
| | */s/ Michael E. Baughman* <br> Michael E. Baughman <br> Julian Newton Weiss <br> TROUTMAN PEPPER <br> HAMILTON SANDERS LLP <br> 3000 Two Logan Square <br> 18th and Arch Streets <br> Philadelphia, PA 19103 <br> 215-981-4000 <br> michael.baughman@troutman.com <br> julian.weiss@troutman.com <br> *Attorneys for Defendant Nora McGreevy* |

## CERTIFICATE OF SERVICE

I, Julian Newton Weiss, attorney for Nora McGreevy, Defendant in this matter, certify that a copy of the foregoing Reply in Support of Nora McGreevy's Motion to Dismiss was served via this Court's electronic filing system upon all counsel of record this 11th day of October, 2022:

/s/ *Julian Newton Weiss*
Julian Newton Weiss