IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE,<br>      *Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : <br> : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*,<br>      *Defendants* | : <br> : | No. 22-2942 |

## MEMORANDUM

PRATTER, J.                                                                    JANUARY 23, 2023

### INTRODUCTION

A very grim series of events in the history of Philadelphia that occurred almost 40 years ago continues to engender troubling direct and indirect consequences. The aftermath of the 1985 MOVE events provides the setting for this case.

Dr. Janet Monge filed a complaint against numerous defendants asserting claims for defamation, defamation by implication, false light, and civil aiding and abetting. Drs. Christopher Woods and Kathleen Morrison moved to dismiss Dr. Monge's complaint for failure to state a claim. For the reasons set forth below, the Court grants Drs. Woods and Morrison's motion to dismiss with prejudice as to Dr. Monge's claims for defamation, defamation by implication, and false light, and without prejudice as to Dr. Monge's claim for civil aiding and abetting.

### BACKGROUND

I. **The 1985 MOVE Bombing and Dr. Monge's Involvement with the Identification of the MOVE Event Human Remains**

Dr. Monge alleges that Drs. Woods and Morrison made false and defamatory statements about her regarding her involvement in the identification of the human remains of those who died following the MOVE bombing events. In 1985, the Philadelphia Police Department dropped a

bomb on the residence of some of the people involved in the MOVE organization—an organization of revolutionaries, all of whom have adopted the surname "Africa." Eleven MOVE members, presumed to include six adults and five children, were killed during the bombing. Because the fire burned for several hours before it was extinguished, processing the bomb site was especially difficult. By the time the Philadelphia Medical Examiner's Office arrived, the City had begun using cranes and other construction equipment to dig up the debris and body parts, resulting in severe damage to the human remains.

Philadelphia's Chief Medical Examiner invited Dr. Alan Mann—then a professor in the Department of Anthropology at the University of Pennsylvania—to assist with the identification of the remains. Dr. Mann invited Dr. Janet Monge, his then doctoral student and mentee, to assist with the identification. Because the remains were not intact or complete, Drs. Mann and Monge sorted the remains based on age. Drs. Mann and Monge concluded that a pelvis bone and femur bone fragments did not conform to the ages of the individuals presumed to have been killed during the bombing. They determined that the bones belonged to a female between the ages of 17 and 21, but the oldest child known to be in the MOVE residence was Katricia (Tree) Africa, a 14-year-old-girl. Drs. Mann and Monge thus considered the remains to be unaffiliated with the MOVE victims and referred to them as "Jane Doe." The MOVE Commission, appointed by the City of Philadelphia to investigate the MOVE bombing and its aftermath, issued a report in which Dr. Ali Hameli concluded that the Jane Doe pelvis bone and femur bone fragments were associated with Katricia (Tree) Africa. Given the disputed identity of the remains, the Philadelphia Medical Examiner's Office, along with Drs. Mann and Monge, retained responsibility for identifying the unidentified human bone fragments, which were released by the Philadelphia Medical Examiner's Office to Dr. Mann for further investigation at The Penn Museum.

From 1986 to 2001, the bones were stored in Dr. Mann's office at the Penn Museum. In 2001, Dr. Mann joined the Anthropology Department at Princeton University. Dr. Monge assisted Dr. Mann with teaching his courses at Princeton and, from 2001 to 2015, Dr. Monge transported the MOVE remains to Princeton from the Penn Museum two to five times. In 1995 and again in 2014, Dr. Monge unsuccessfully attempted to contact members of the MOVE organization— Ramona Africa and Consuella Dotson—regarding the remains. Because Dr. Monge concluded that she would not be able to get help from the Africa family, and because she did not think she would be able to conclusively identify the remains, Dr. Monge declared the case cold.

## II. Dr. Monge's Coursera Course

In August 2020, Dr. Monge published "Real Bones: Adventures in Forensic Anthropology" on the Coursera online platform. Coursera's website offers free classes that are available to anyone who enrolls through the website. The stated purpose of Dr. Monge's course was to teach how forensic anthropology can be used to restore the personhood of individuals unidentified through the scientific investigation of bone remains. Dr. Monge used the MOVE remains as teaching aids during her course. In the first two classes, Dr. Monge described the MOVE organization, the history of the MOVE bombing, the inappropriate excavation of the bomb site, and displayed slides of the remains. In the ninth class, Dr. Monge and one of her students are seen in Penn Museum's laboratory using the MOVE remains to explain how forensic techniques can be used to determine the age of remains. Dr. Monge is also describing the process she used to estimate the age of the MOVE remains. During the video, Dr. Monge describes the remains as "juicy" and "greasy" when explaining how she knows that these are the remains of a young person.

Beginning in April 2021, various articles and statements were published about Dr. Monge's involvement in the identification of the MOVE remains and her use of the remains in the online course. These articles and statements form the basis of Dr. Monge's present action. In short, she

3

claims that she has been defamed or exposed in a false light in published statements. A number of the defendants move to dismiss her complaint. This memorandum addresses the motion of defendants Christopher Woods and Kathleen Morrison.

## LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Dr. Monge concedes that she did not identify "any defamatory statements made by [Drs. Woods and Morrison], and thus, her claims for defamation, defamation by implication, and false light against them must fail." Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss, at 20. Therefore, the Court grants with prejudice Drs. Woods and Morrison's motion to dismiss Dr. Monge's complaint as to her defamation, defamation by implication, and false light claims.

However, Dr. Monge asserts that while the defamation claims must fail, Drs. Woods and Morrison can still be liable for civil aiding and abetting. Section 876 of the Restatement (Second) of Torts sets forth the elements of this cause of action:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other person in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

To bring a claim under Section 876(b) of the Restatement, the plaintiff must establish that "the defendant knew of or could reasonably foresee the underlying bad actor's misdeed," or that the defendant exhibited intentional ignorance as the to the underlying actor's bad deeds. *Marion v. Bryn Mawr Trust Co.*, 253 A.3d 682, 690 (Pa. Super. Ct. 2021) (citing *Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)). To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). Liability under Section 876 "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

Dr. Monge's allegations regarding her civil aiding and abetting claim do not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). Based on the facts alleged in Dr. Monge's complaint, the Court is unable "to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* Thus, the Court will grant without prejudice Drs. Woods and Morrison's motion to dismiss Dr. Monge's complaint as to the civil aiding and abetting claims.

## CONCLUSION

For all of these reasons, the Court will grant Drs. Woods and Morrison's motion to dismiss with prejudice as to Dr. Monge's claims for defamation, defamation by implication, and false light, and without prejudice as to Dr. Monge's claim for civil aiding and abetting. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**