IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE, | : | |
|     *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*, | : | |
|     *Defendants* | : | No. 22-2942 |

**MEMORANDUM**

PRATTER, J.                                                                                                                                        FEBRUARY ___, 2023

### INTRODUCTION

A very grim series of events in the history of Philadelphia that occurred almost 40 years ago continues to engender troubling direct and indirect consequences. The aftermath of the 1985 MOVE events provides the setting for this case.

Dr. Janet Monge filed a complaint against numerous defendants asserting claims for defamation, defamation by implication, false light, and civil aiding and abetting. Defendant Hyperallergic Media, Inc., and Defendants Kinjal Dave and Jake Nussbaum filed motions to dismiss Dr. Monge's complaint for failure to state a claim. The Court grants Hyperallergic's and Ms. Dave's and Mr. Nussbaum's motions to dismiss with prejudice as to Dr. Monge's claims for defamation and false light, and without prejudice as to the claims for defamation by implication and civil aiding and abetting.

### BACKGROUND

**I. The 1985 MOVE Bombing and Dr. Monge's Involvement with the Identification of the MOVE Event Human Remains**

Dr. Monge alleges that Hyperallergic, Ms. Dave, and Mr. Nussbaum made false and defamatory statements about her regarding her involvement in the identification of the human

1

remains of those who died following the MOVE bombing events. In 1985, the Philadelphia Police Department dropped a bomb on the residence of some of the people involved in the MOVE organization—an organization of revolutionaries, all of whom have adopted the surname "Africa." Eleven MOVE members, presumed to include six adults and five children, were killed during the bombing. Because the fire burned for several hours before it was extinguished, processing the bomb site was especially difficult. By the time the Philadelphia Medical Examiner's Office arrived, the City had begun using cranes and other construction equipment to dig up the debris and body parts, resulting in severe damage to the human remains.

Philadelphia's Chief Medical Examiner invited Dr. Alan Mann—then a professor in the Department of Anthropology at the University of Pennsylvania—to assist with the identification of the remains. Dr. Mann invited Dr. Janet Monge, his then–doctoral student and mentee, to assist with the identification. Because the remains were not intact or complete, Drs. Mann and Monge sorted the remains based on age. Drs. Mann and Monge concluded that a pelvis bone and femur bone fragments did not conform to the ages of the individuals presumed to have been killed during the bombing. They determined that the bones belonged to a female between the ages of 17 and 21, but the oldest child known to be in the MOVE residence was Katricia (Tree) Africa, a 14-year-old-girl. Drs. Mann and Monge thus considered the remains to be unaffiliated with the MOVE victims and referred to them as the bones of "Jane Doe."

The MOVE Commission, appointed by the City of Philadelphia to investigate the MOVE bombing and its aftermath, issued a report in which Dr. Ali Hameli concluded that the Jane Doe pelvis bone and femur bone fragments were associated with Katricia (Tree) Africa. Given the disputed identity of the remains, the Philadelphia Medical Examiner's Office, along with Drs. Mann and Monge, retained responsibility for identifying the unidentified human bone fragments,

2

which were released by the Philadelphia Medical Examiner's Office to Dr. Mann for further investigation at The Penn Museum.

From 1986 to 2001, the bones were stored in Dr. Mann's office at the Penn Museum. In 2001, Dr. Mann joined the Anthropology Department at Princeton University. Dr. Monge assisted Dr. Mann with teaching his courses at Princeton and, from 2001 to 2015, Dr. Monge transported the MOVE remains to Princeton from the Penn Museum two to five times. In 1995 and again in 2014, Dr. Monge unsuccessfully attempted to contact members of the MOVE organization—Ramona Africa and Consuella Dotson—regarding the remains. Because Dr. Monge concluded that she would not be able to get help from the Africa family, and because she did not think she would be able to conclusively identify the remains, Dr. Monge declared the case cold.

## II. Dr. Monge's Coursera Course

In August 2020, Dr. Monge published "Real Bones: Adventures in Forensic Anthropology" on the Coursera online platform. Coursera's website offers free classes that are available to anyone who enrolls through the website. The stated purpose of Dr. Monge's course was to teach how forensic anthropology can be used to restore the personhood of individuals unidentified through the scientific investigation of bone remains. Dr. Monge used the MOVE remains as teaching aids during her course. In the first two classes, Dr. Monge described the MOVE organization, the history of the MOVE bombing, the inappropriate excavation of the bomb site, and displayed slides of the remains. In the ninth class, Dr. Monge and one of her students are seen in Penn Museum's laboratory using the MOVE remains to explain how forensic techniques can be used to determine the age of remains. Dr. Monge is also describing the process she took to estimate the age of the MOVE remains. During the video, Dr. Monge describes the remains as "juicy" and "greasy" when explaining how she knows that these are the remains of a young person.

3

Beginning in April 2021, numerous articles and statements were published about Dr. Monge's involvement in the identification of the MOVE remains and her use of the remains in the online course. These articles and statements form the basis of Dr. Monge's present action. In short, she claims that by various published statements she has been defamed or exposed to in a false light. A number of the defendants move to dismiss her complaint. This memorandum addresses the motion of defendants Hyperallergic, Ms. Dave, and Mr. Nussbaum.

### III. Hyperallergic, Ms. Dave and Mr. Nussbaum's Publication of the Allegedly Defamatory Statements

On October 31, 2021, Hyperallergic published an article by Ms. Dave and Mr. Nussbaum titled "How the Possession of Human Remains Led to a Public Reckoning at the Penn Museum." Am. Compl. ¶ 161(j). Dr. Monge alleges that the article "falsely blames Dr. Monge for a racially motivated investigation of the bone fragments, stating 'Consuella [sic] did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching.'" *Id.*

### LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show

4

"more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. Dr. Monge's Defamation Claim

To state a claim for defamation in Pennsylvania, the plaintiff must plead:

> (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a). "A complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made." *Bank v. Cmty. Coll. of Phila.*, No. 22-cv-293, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988)). Where the plaintiff meets this burden, defendants then have the burden of proving: (1) the truth of the defamatory statement; (2) the privileged nature of the communication; and (3) that the subject matter of the defamatory statement is a matter of public concern. 42 Pa. C.S. § 8343(b).

Courts will dismiss meritless defamation claims at this preliminary stage. *See e.g., Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (affirming the dismissal of a defamation claim at the motion to dismiss stage because the "statement was not capable of a defamatory meaning as a matter of law"); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 422–25 (E.D. Pa. 2020) (dismissing defamation claim at the motion to dismiss stage because "the Court [did] not find that the statements [were] capable of defamatory meaning"); *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (noting that "[i]f the court determines that the challenged

5

publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial").

## A. <u>Capable of Defamatory Meaning</u>

The first step in evaluating whether a statement is defamatory is to determine whether the statement is capable of a defamatory meaning. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011). "In making this determination, the Court must address two questions: (1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). When the statement at issue is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Id.* (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d. Cir. 1999)).

A statement is defamatory if it "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing with him or her." *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014). Further, the plaintiff bears "the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant." *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777 (1986).

### 1. Truth is a Defense to Defamation

Under Pennsylvania law, truth is an affirmative defense to a defamation claim. *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001); 42 Pa. C.S. § 8343(b)(1) ("[T]he defendant has the burden of proving . . . [t]he truth of the defamatory communication[.]"). To successfully assert

6

truth as a defense, the defendant must establish that the statement at issue is substantially true, however the defendant need not prove that the statement is absolutely true. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified.") (internal quotation marks omitted). In other words, the statement will not be considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (citation omitted).

### 2. Pure Opinions Are Not Capable of Defamatory Meaning

Pennsylvania law draws a distinction between opinions and statements of fact. *Meyers v. Certified Guar. Co.*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019) (citing Restatement (Second) of Torts § 566 cmt. a (1977)). "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Meyers*, 221 A.3d at 670. Pennsylvania law further draws a distinction between pure opinions and mixed opinions. *Id.* (quoting Restatement (Second) of Torts § 566 cmt. b (1977)). Mixed opinions, which "impl[y] the allegation of undisclosed defamatory facts as the basis for the opinion," are actionable. *Braig v. Field Commc'ns*, 456 A.2d 1366, 1372 (Pa. Super. Ct. 1983). Pure opinions, which are based on disclosed facts, are "absolutely privileged" and "cannot be defamatory . . . no matter how derogatory they are." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (quoting *Braig*, 456 A.2d at 1373) (internal quotation marks omitted). "When an article discloses the underlying facts, readers can easily judge the facts for themselves." *McCafferty*, 955 F.3d at 357.

### B. Hyperallergic, Ms. Dave, and Mr. Nussbaum's Allegedly Defamatory Statements

#### 1. The Allegedly Defamatory Statements are True

Dr. Monge alleges that Hyperallergic, Ms. Dave, and Mr. Nussbaum's published statements defame her. Hyperallergic, Ms. Dave, and Mr. Nussbaum stated that "Consuella [sic] did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching." Am. Compl. ¶ 161(j). The allegations in Dr. Monge's amended complaint demonstrate that this statement is, in all material respects, substantially true, and thus Hyperallergic, Ms. Dave, and Mr. Nussbaum cannot be held liable. *See Tucker*, 237 F.3d at 287; *Masson*, 501 U.S. at 516–17. First, Dr. Monge admits that she attempted to contact Consuewella Dotson in 2014 to obtain a DNA sample to assist Dr. Monge in her research on the identity of the remains.[1] Am. Compl. ¶¶ 111–13. Dr. Monge also admits that she was unable to make contact with Consuewella Dotson and declared the case cold after concluding that she would not be able to get help from the Africa family. *Id.* ¶¶ 111, 113–17. Thus, it is literally true that Dr. Monge did not obtain consent from Consuewella Dotson to use the remains for research. Second, Dr. Monge admits that she used the remains in her "Real Bones: Adventures in Forensic Anthropology" course to teach people about "how forensic anthropology can be used to restore the personhood of individuals unidentified through the scientific investigation of boney remains." *Id.* ¶¶ 123, 127–28. Thus, it is literally true that Dr. Monge used the remans for teaching.

Because the allegedly defamatory statements are true, they are not actionable. *See Tucker*, 237 F.3d at 287.

---

[1] Dr. Monge spells Ms. Dotson's name as "Consuella" while Hyperallergic, Ms. Dave, and Mr. Nusssbaum spell her name as "Consuewella." This opinion will refer to her as Consuewella Dotson.

8

### 2. The Allegedly Defamatory Statements are Pure Opinions

Dr. Monge also alleges that the article published by Hyperallergic and authored by Ms. Dave and Mr. Nussbaum "falsely blames Dr. Monge for a racially motivated investigation of the bone fragments." Am. Compl. ¶ 161(j). The article questions "[h]ow does the terrain of such anti-Black behavior shift from unremarkable, and even permissible, to condemnable? What does it look like to challenge anti-Black logics and practices in museums and universities" Am. Compl. Ex. O. The article then states that "as curator of the Morton collection, [Dr.] Monge was using Tree Africa's remains in an online course. Anti-Black state violence and anti-Blackness at the university past and present converge." *Id.* These statements follow a detailed description of the MOVE bombing events, Dr. Monge's involvement in the identification of the human remains of those killed during the MOVE bombing, the Penn Museum's retention of the cranial collection of Samuel G. Morton, and efforts by University of Pennsylvania students, faculty, and employees to "redress the legacy of racism, colonialism, and slavery on campus[.]" *Id.*

Hyperallergic, Ms. Dave, and Mr. Nussbaum's statements that Dr. Monge's conduct was "anti-Black" are pure opinions because they "convey [the] subjective belief of the speaker" and are based on disclosed facts. *See Meyers*, 221 A.3d at 670; *McCafferty*, 955 F.3d at 357. In *McCafferty*, the Third Circuit Court of Appeals held that characterizations that "kids are being weaponized" and "they are defending raw racism and sexual abuse" were non-defamatory pure opinions because the "characterizations follow[ed] the article's factual description" of the events which formed the basis of the opinions expressed. 955 F.3d at 357. The Third Circuit reasoned that "[w]hen an article discloses the underlying facts, readers can easily judge the facts for themselves." *Id.* Further, "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior" because "[t]hose statements are just more opinions based on disclosed facts, so they too are not actionable." *Id.* at 359.

9

The opinions in Hyperallergic, Ms. Dave, and Mr. Nussbaum's article regarding Dr. Monge's "racially motivated investigation" are pure opinions because they are based on disclosed facts, and the readers of the article can judge for themselves, based on the facts set forth in the article, whether or not Dr. Monge's conduct is "anti-Black." *See McCafferty*, 955 F.3d at 357. Because the statements in the article regarding a "racially motivated investigation" are pure opinions, they are, as a matter of law, not capable of defamatory meaning. *Id.*

For all of these reasons, the Court will grant with prejudice Hyperallergic's motion to dismiss and Ms. Dave and Mr. Nussbaum's motion to dismiss the complaint as to Dr. Monge's defamation claim.

## II. Defamation by Implication

"Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). "To establish defamation by innuendo, the innuendo must be *warranted, justified, and supported by the publication*." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. 1992) (emphasis added) (internal quotation marks omitted). The implication "cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1994). The Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Id.* "When the implication alleged by the plaintiff is not 'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Pace*, 423 F. Supp. 3d at 510. Moreover, "[i]f the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication." *Sarkees*, A.2d at 546.

As set forth above, the statements at issue in the Hyperallergic article are literally true and are pure opinions that are not capable of defamatory meaning. To the extent the article implies racial motivation on Dr. Monge's part, this implication is not actionable because it is a pure opinion. *See McCafferty*, 955 F.3d at 357.

For all of these reasons, the Court will grant without prejudice Hyperallergic's motion to dismiss, and Ms. Dave and Mr. Nussbaum's motion to dismiss Dr. Monge's complaint as to her defamation by implication claim. Dr. Monge may seek to cure the claim's shortcomings, if she does so in a timely manner.

### III. False Light

Dr. Monge also asserts a claim for false light. Section 652E of the Restatement (Second) of Torts, defines this cause of action as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

A publication is actionable under Section 652E of the Restatement if it: (1) "*is not true*," (2) "is highly offensive to a reasonable person," and (3) "is publicized with knowledge or in reckless disregard of its falsity." *Graboff*, 744 F.3d at 136. (emphasis added); *see also Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988). "The required standard of fault in a false light claim is thus actual malice." *Rubin v. CBS Broadcasting, Inc.*, 170 A.3d 560, 568 n. 9 (Pa. Super. Ct. 2017).

Because the statements at issue are literally true, Dr. Monge's false light claim must fail as a matter of law. *Larsen*, 543 A.2d at 1188. The Court will grant with prejudice Hyperallergic's

motion to dismiss, and Ms. Dave and Mr. Nussbaum's motion to dismiss Dr. Monge's complaint as to her false light claim.

## IV. Civil Aiding and Abetting

Dr. Monge also bring a claim for civil aiding and abetting. Section 876 of the Restatement (Second) of Torts sets forth the elements of this cause of action as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other person in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

To bring a claim under Section 876(b) of the Restatement, the plaintiff must establish that "the defendant knew of or could reasonably foresee the underlying bad actor's misdeed," or that the defendant exhibited intentional ignorance as the to the underlying actor's bad deeds. *Marion v. Bryn Mawr Trust Co.*, 253 A.3d 682, 690 (Pa. Super. Ct. 2021) (citing *Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)). To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). Liability under Section 876 "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

Dr. Monge's allegations regarding her civil aiding and abetting claim against Hyperallergic and Ms. Dave and Mr. Nussbaum do not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). Based on the facts alleged in Dr. Monge's complaint, the Court is unable "to draw the reasonable

inference that the defendant[s are] liable for the misconduct alleged." *Id.* Thus, the Court will grant without prejudice Hyperallergic's motion to dismiss, and Ms. Dave and Mr. Nussbaum's motion to dismiss Dr. Monge's complaint as to the civil aiding and abetting claims.

## CONCLUSION

To summarize, for all of these reasons, the Court will grant with prejudice Hyperallergic's motion to dismiss, and Ms. Dave and Mr. Nussbaum's motion to dismiss as to Dr. Monge's claims for defamation and false light, and without prejudice as to Dr. Monge's claims for defamation by implication and civil aiding and abetting. An appropriate order as to each motion to dismiss follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

13