IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE,<br>*Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*,<br>*Defendants* | : | No. 22-2942 |

# MEMORANDUM

PRATTER, J. MARCH 6, 2023

This Court's February 3, 2023, opinion in this case recounts the factual and procedural background of this matter. Mem. Op., Doc. No. 108. That background is adopted fully herein. This memorandum addresses the motion of defendant American Anthropological Association, and the facts relevant to the American Anthropological Association's motion to dismiss are set forth below. For the reasons that follow, the Court grants the American Anthropological Association's motion to dismiss with prejudice as to Dr. Monge's claims for defamation and false light, and without prejudice as to Dr. Monge's claims for defamation by implication and civil aiding and abetting claims.

## BACKGROUND

On April 26, 2021, the Association of Black Anthropologists (ABA),[1] the Society of Black Archaeologists (SBA),[2] and the Black in Bioanthropology Collective (BiBA) released a collective statement asserting that the groups "condemn in the strongest possible language the University of Pennsylvania, Princeton University, Coursera, along with Professors Alan Mann and Janet Monge,

[1] The Association of Black Anthropologists (ABA) is a section of the American Anthropological Association. The American Anthropological Association was substituted as the defendant in this case.

[2] The Society of Black Archaeologists (SBA) is a named defendant in this action. SBA filed its own motion to dismiss asserting that the Court lacks personal jurisdiction over it. The Court will separately address and resolve SBA's motion to dismiss.

for their horrific treatment of the remains of Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the Africa family." Am. Compl. ¶ 167. Dr. Monge alleges that these statements "suggest unethical and illegal racially motivated animus, stating members of the group[s] were 'outraged by the stunning ethical indifference shown by all parties involved to both Tree and Delisha and to the Africa family, but also by the fact that these entities effectively monetized the remains of Black children murdered in a state terrorist attack—a fact made all the more painful given the heightened public awareness of brutal murders of Black children and youth by the police over the past few years." Am. Compl. ¶ 168.

## LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. Dr. Monge's Defamation Claim

"A complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made." *Bank v. Cmty. Coll. of Phila.*, No. 22-cv-293, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988)). To state a claim for defamation, the plaintiff must plead:

> (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a). Where the plaintiff meets their burden of proof, the burden shifts to the defendants to prove: (1) the truth of the defamatory statement; (2) the privileged nature of the communication; and (3) that the subject matter of the defamatory statement is a matter of public concern. 42 Pa. C.S. § 8343(b).

Courts will dismiss meritless defamation claims at this preliminary stage. *See e.g., Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (affirming the dismissal of a defamation claim because the "statement was not capable of a defamatory meaning as a matter of law"); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 422–25 (E.D. Pa. 2020) (dismissing defamation claim at the motion to dismiss stage because "the Court [did] not find that the statements [were] capable of defamatory meaning"); *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (noting that "[i]f the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial").

#### A. Capable of Defamatory Meaning

First, to determine whether a statement is defamatory, the Court must determine whether the statement is capable of a defamatory meaning. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp.

2d 377, 399 (E.D. Pa. 2011). To do so, the Court considers "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). When the statement at issue is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Id.* (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d. Cir. 1999)).

A defamatory statement is one that "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing with him or her." *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014).

**1. Truth is a Defense to Defamation**

Truth is an affirmative defense to defamation. *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001); 42 Pa. C.S. § 8343(b)(1) ("[T]he defendant has the burden of proving . . . [t]he truth of the defamatory communication[.]"). To assert truth as a defense, the defendant must establish that the statement at issue is substantially true, however they need not prove that the statement is absolutely true. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified.") (internal quotation marks omitted). The statement will not be considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (citation omitted).

### 2. Pure Opinions Are Not Capable of Defamatory Meaning

Pennsylvania law draws a distinction between opinions and statements of fact. *Meyers v. Certified Guar. Co.*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019) (citing Restatement (Second) of Torts § 566 cmt. a (1977)). "A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Meyers*, 221 A.3d at 670. Pennsylvania law further draws a distinction between pure opinions and mixed opinions. *Id.* (quoting Restatement (Second) of Torts § 566 cmt. b (1977)). Mixed opinions, which "impl[y] the allegation of undisclosed defamatory facts as the basis for the opinion," are actionable. *Braig v. Field Commc'ns*, 456 A.2d 1366, 1372 (Pa. Super. Ct. 1983). Pure opinions, which are based on disclosed facts, are "absolutely privileged" and "cannot be defamatory . . . no matter how derogatory they are." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (quoting *Braig*, 456 A.2d at 1373) (internal quotation marks omitted).

## B. ABA, SBA, and BiBA's Allegedly Defamatory Statements

### 1. The Allegedly Defamatory Statements Are True

Dr. Monge alleges that ABA, SBA, and BiBA defamed her by stating that "these entities effectively monetized the remains of Black children murdered in a state terrorist attack." Am. Compl. ¶ 168. The entities to which ABA, SBA, and BiBA were referring include the University of Pennsylvania, Princeton University, and Coursera. *Id.* ¶ 167. The allegations in Dr. Monge's amended complaint demonstrate that this statement is substantially true, and thus the American Anthropological Association cannot be held liable for ABA, SBA, and BiBA's statements. *See Tucker*, 237 F.3d at 287; *Masson*, 501 U.S. at 516–17.

First, as to the University of Pennsylvania, Dr. Monge admits that after she was "moved to a new lab in the physical anthropology department at the Penn Museum, Dr. Monge began working with a geneticist from another leading university on a number of research projects," including

projects potentially involving the remains. Am. Compl. ¶¶ 109–17. One of the possible projects was using DNA analysis to identify the remains of the person killed during the MOVE bombing. *Id.* ¶¶ 110–11. Dr. Monge also admits that she filmed portions of her "Real Bones: Adventures in Forensic Anthropology" course "at the Penn Museum in their lab facilities." *Id.* ¶¶ 123–24. Dr. Monge admits that she "can be seen in the Penn Museum's lab with one of her students and the unidentified bone fragments comparing those fragments to other similar bone fragments . . . and explaining how forensic techniques could be used to determine the age of the remains." *Id.* ¶ 128.

Second, as to Princeton University, Dr. Monge admits that she was a visiting professor and lecturer at Princeton and that she developed her online course, in which she displayed the human remains for teaching purposes, with another Princeton professor. *Id.* ¶¶ 118–19.

Finally, with respect to Coursera, Dr. Monge admits that she published her course on the Coursera online platform. *Id.* ¶ 121. Given the role these entities played in facilitating Dr. Monge's use of the remains for research and more importantly for teaching purposes, and given that these entities benefitted from Dr. Monge's teaching endeavors, it is substantially true that these entities benefitted from the use of the remains of Black children. *Id.* ¶ 168. The American Anthropological Association does not explain how the entities "monetized" the remains, rather, it avers only that "the statements made by the Association are substantially true (given that Plaintiff did handle such remains from the MOVE bombing for teaching purposes)." Mot. to Dismiss, at 14. Although the Court is unable to say that the entities made money off of Dr. Monge's use of the remain, this "[m]inor inaccurac[y] do[es] not amount to falsity [because] the substance, the gist, the sting of the libelous charge"—that the entities in some way benefited from Dr. Monge's use of the remains—is "justified." *Masson*, 501 U.S. at 516–17 (1991).

It is also substantially true that the remains were of "Black children murdered in a state terrorist attack." Am. Compl. ¶ 168. Then-Mayor of Philadelphia, W. Wilson Goode, approved the dropping of an aerial bomb on the MOVE residence, an effort implemented to "seize control of the MOVE house by any means necessary" resulting from increased tensions between the members of the MOVE organization and the Philadelphia police. *Id.* ¶¶ 74–75 (internal quotation marks omitted). Dr. Monge admits that the City of Philadelphia's bombing of the MOVE compound was "horrifying" and a "horrible murderous action[]" and that it was shocking that no one in Mayor Goode's administration ever faced any consequences. *Id.* ¶¶ 79, 80. Of those who died in the bombing, five were children. *Id.* ¶ 79. Dr. Monge further admits that the remains had been identified by Dr. Hameli as belonging to Katricia Africa, the "oldest child known to be in the MOVE house" at the time of the MOVE bombing. *Id.* ¶¶ 91, 93. While Dr. Monge and Dr. Mann concluded that the remains belonged to someone between the ages of 17 and 21, Dr. Hameli concluded that the remains belonged to a child, thus it is substantially true that the remains belonged to "Black children." *See id.* ¶¶ 90, 168.

Because the allegedly defamatory statements are true, they are not actionable. *See Tucker*, 237 F.3d at 287.

**2. The Allegedly Defamatory Statements Are Pure Opinions**

Dr. Monge alleges that ABA, SBA, and BiBA defamed her by stating that they "condemn[ed] in the strongest possible language the University of Pennsylvania, Princeton University, Coursera, along with Professors Alan Mann and Janet Monge, for their horrific treatment of the remains of Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the Africa family." Am. Compl. ¶ 167. Dr. Monge also alleges that the groups' statements "suggest unethical and illegal racially motivated animus [by] stating [that]

members of the group[s] were 'outraged by the stunning ethical indifference shown by all parties involved to both Tree and Delisha and to the Africa family, but also by the fact that these entities effectively monetized the remains of Black children murdered in a state terrorist attack—a fact made all the more painful given the heightened public awareness of brutal murders of Black children and youth by the police over the past few years.'" *Id.* ¶ 168.

The above-quoted portions of the collective statement published by ABA, SBA, and BiBA follow a detailed description of the MOVE bombing events, Dr. Monge's involvement in the identification of the human remains of those killed during the MOVE bombing, a quote from a member of the Africa family, and a brief acknowledgement of the history of racism in the discipline of anthropology. In its discussion of the history of the MOVE bombing, the statement includes a hyperlink to the Billy Penn and Philadelphia Inquirer articles, noting that "a number of outlets" had published stories on the uninterred remains from the MOVE bombing in the week before ABA, SBA, and BiBA published their collective statement on April 29, 2021. Am. Compl. Ex. P. Mike Africa, Jr., who spoke on behalf of the Africa family, is also quoted in the statement as saying: "Nobody said you can do that, holding up their bones for the camera. That's not how we process our dead. This is beyond words. The anthropology professor is holding the bones of a 14-year-old girl whose mother is still alive and grieving." *Id.*

ABA, SBA, and BiBA's collective statements are each pure opinions because they "convey [the] subjective belief of the speaker" and are based on disclosed facts. *See Meyers*, 221 A.3d at 670; *McCafferty*, 955 F.3d at 357. In *McCafferty*, the Third Circuit Court of Appeals held that characterizations that "kids are being weaponized" and that "they are defending raw racism and sexual abuse" were non-defamatory pure opinions because the "characterizations follow[ed] the article's factual description" of the events which formed the basis of the opinions expressed. 955

F.3d at 357. The Third Circuit reasoned that "[w]hen an article discloses the underlying facts, readers can easily judge the facts for themselves." *Id.* Further, "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior" because "[t]hose statements are just more opinions based on disclosed facts, so they too are not actionable." *Id.* at 359.

The Court turns first to the statements regarding the "horrific treatment of the remains of Tree and Delisha Africa, and . . . the unfathomable heartlessness and disrespect shown towards the Africa family," and the statement that Dr. Monge and others involved showed "ethical indifference . . . to both Tree and Delisha and to the Africa family." Am. Compl. ¶ 167–68. These statements are non-actionable pure opinions because they express the "subjective belief" of ABA as a section of the American Anthropological Association and cannot be "verified as true or false." *Meyers*, 221 A.3d at 670. Further, these statements are based on facts disclosed in the article, namely the history of the MOVE bombing, Dr. Monge's involvement with the identification of bones in the aftermath of the bombing, and the quote from Mike Africa, Jr. regarding the Africa family's displeasure with the handling of the remains. The published statement also contains a hyperlink to multiple articles that similarly set forth detailed accounts of the MOVE bombing and Dr. Monge's involvement in the identification of the remains. Because the statements are based on disclosed facts, the readers of the published statement can judge for themselves whether they agree that the treatment of the remains was "horrific," whether Dr. Monge's actions were "heartless[] and disrespect[ful]" to the Africa family, and whether Dr. Monge showed "ethical indifference . . . to the Africa family." Am. Compl. ¶¶ 167–68; *see McCafferty*, 955 F.3d at 357.

Next, the Court considers the statement that the facts of the MOVE bombing and the handling of the MOVE remains are "made all the more painful given the heightened public

awareness of brutal murders of Black children and youth by the police over the past few years." *Id.* ¶ 168. This statement is also a pure opinion. How "painful" these facts are to the American Anthropological Association and ABA is an opinion because it expresses the "subjective belief of the speaker." *Meyers*, 221 A.3d at 670. And because the facts underlying ABA's belief that the handling of the remains was "painful" are disclosed in the published statement, the opinion is non-actionable. *See McCafferty*, 955 F.3d at 357.

Because ABA's statements are pure opinions, they are, as a matter of law, not capable of defamatory meaning. *Id.* For all of these reasons, the Court will grant with prejudice the American Anthropological Association's motion to dismiss the complaint as to the defamation claim.

## II. Defamation by Implication

"Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). "To establish defamation by innuendo, the innuendo must be *warranted, justified, and supported by the publication*." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. 1992) (emphasis added) (internal quotation marks omitted). "When the implication alleged by the plaintiff is not 'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Pace*, 423 F. Supp. 3d at 510.

As set forth above, the statements at issue are either substantially true or are pure opinions that are not capable of defamatory meaning. To the extent the statement implies "unethical and illegal racially motivated animus" on Dr. Monge's part, this implication is not actionable because it is a pure opinion. *See McCafferty*, 955 F.3d at 357. Because the statements in the article regarding a "racially motivated animus" are pure opinions, they are, as a matter of law, not capable of defamatory meaning. *Id.*

For these reasons, the Court will grant without prejudice the American Anthropological Association's motion to dismiss Dr. Monge's complaint as to her defamation by implication claim. Dr. Monge may seek to cure the claim's shortcomings if she does so in a timely manner.

## III. False Light

Dr. Monge also asserts a claim for false light under Section 652E of the Restatement (Second) of Torts.[3] A publication is actionable under Section 652E of the Restatement if it: (1) "is not true," (2) "is highly offensive to a reasonable person," and (3) "is publicized with knowledge or in reckless disregard of its falsity." *Graboff*, 744 F.3d at 136; *see also Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988). "Opinions based on true, disclosed facts cannot support a false-light claim unless they create a false impression." *McCafferty*, 955 F.3d at 360. "In Pennsylvania, falsity means the same thing for false light as it does for defamation." *Id.* "In both contexts, an opinion based on disclosed facts cannot be false." *Id.*; *see also Meyers*, 221 A.3d at 670 ("A statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker.").

The statements at issue are not "false" because they are either substantially true statements of fact or "opinion[s] based on disclosed fact." *McCafferty*, 955 F.3d at 360. Because the statements at issue cannot be false, Dr. Monge's false light claim must fail as a matter of law. *Larsen*, 543 A.2d at 1188; *see also McCafferty*, 955 F.3d at 360. The Court will grant with prejudice the American Anthropological Association's motion to dismiss Dr. Monge's complaint as to her false light claim.

---

3 Section 652E of the Restatement (Second) of Torts, defines this cause of action as follows: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

## IV. Civil Aiding and Abetting

Dr. Monge also brings a claim for civil aiding and abetting. Section 876(b) of the Restatement (Second) of Torts provides that "one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" To bring a claim under Section 876(b) of the Restatement, the plaintiff must establish that "the defendant knew of or could reasonably foresee the underlying bad actor's misdeed," or that the defendant exhibited intentional ignorance as the to the underlying actor's bad deeds. *Marion v. Bryn Mawr Trust Co.*, 253 A.3d 682, 690 (Pa. Super. Ct. 2021) (citing *Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)). To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). Liability under Section 876 "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

Dr. Monge's allegations regarding her civil aiding and abetting claim against the American Anthropological Association do not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). Based on the facts alleged in Dr. Monge's complaint, the Court is unable "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the Court will grant without prejudice the American Anthropological Association's motion to dismiss Dr. Monge's complaint as to the civil aiding and abetting claims.

## CONCLUSION

For all of these reasons, the Court will grant the American Anthropological Association's motion to dismiss as to Dr. Monge's claims for defamation and false light, and without prejudice as to Dr. Monge's claims for defamation by implication and civil aiding and abetting. An appropriate order follows.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**