IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE, *Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*, *Defendants* | : | No. 22-2942 |

## MEMORANDUM

PRATTER, J.                                                               MARCH 10, 2023

This Court's February 3, 2023, opinion in this case recounts the factual and procedural background of this matter. Mem. Op., Doc. No. 108. That background is adopted fully herein. This memorandum addresses the motion of defendant Deborah Thomas, and the facts relevant to Dr. Thomas's motion to dismiss are set forth below. For the reasons that follow, the Court grants Dr. Thomas's motion to dismiss with prejudice as to Dr. Monge's claims for defamation, defamation by implication, false light, and civil aiding and abetting.

## BACKGROUND

Dr. Deborah Thomas, a University of Pennsylvania faculty member, shared the articles that allegedly defame Dr. Monge on an email listserv to the American Black Anthropologists, an organization that Dr. Monge is a member of. Dr. Monge alleges that "[t]he defamatory statements about Dr. Monge in th[e] Billy Penn article became even more widely disseminated through the actions of Defendant [Dr.] Thomas who released email blasts to colleagues and others in furtherance of Defendant [Paul] Mitchell's intentional actions to disparage Dr. Monge's reputation." Am. Compl. ¶ 9. Dr. Monge also alleges that Dr. Thomas "suggested herself that Dr. Monge improperly handled the remains, and stated that she was going to work with [Mr.] Mitchell

1

to create a timeline and chain of custody narrative regarding the remains to be used to target Dr. Monge." *Id.* ¶ 165.

## LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I. The Communications Decency Act

Dr. Thomas argues that she is immune from liability under the Communications Decency Act of 1996 (CDA), 47 U.S.C. § 230. The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "Interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). "Information content provider" is defined as "any person or entity that is responsible, in whole or

in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Immunity under the CDA "applies where: (1) the defendant is a user or provider of an interactive computer service; (2) the asserted claim seeks to treat the defendant as publisher of the challenged communication; and (3) the challenged communication is information provided by another information content provider." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 503 (E.D. Pa. 2020), *aff'd* 850 F. App'x 827 (3d Cir. 2021) (internal quotation marks omitted). Where CDA immunity applies, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). In other words, the CDA preempts state law causes of action, such as defamation, to the extent they are inconsistent with the protections afforded under the CDA.

Dr. Monge argues that Dr. Thomas can be held liable for not only sharing the allegedly defamatory articles via email and thus amplifying the reach of the articles, but also for suggesting in her email that Dr. Monge improperly handled the remains and stating that she would work with Mr. Mitchell to create a timeline of the events. Dr. Monge contends that "[s]uch a statement, especially coming from one of Dr. Monge's fellow Penn faculty member[s], materially contributed to the defamatory statements within the forwarded articles by purporting to verify the accuracy of those statements. Without her commentary, the recipients are free to decide whether or not to believe the articles, but with the verification from a fellow Penn Anthropology faculty member, [Dr.] Thomas' emails are much more likely to be believed by the recipients."[1] Pl.'s Resp. in Opp. to Mot. to Dismiss, at 21.

---

[1] Based on the context of the statement, the Court presumes that Dr. Monge meant that the articles shared by Dr. Thomas were more likely to be believed, not that Dr. Thomas's email was more likely to be believed.

3

Dr. Thomas argues that her conduct is plainly protected under the CDA. The text of the CDA makes clear that the CDA immunizes Dr. Thomas's conduct of sharing the allegedly defamatory articles via email. 47 U.S.C. § 230(c)(1), (e)(3). Email is an "interactive computer service" and the publishers and authors of the articles that Dr. Thomas shared are "information content providers" because they created the content and published the articles online. 47 U.S.C. § 230(f)(2), (3). So, Dr. Thomas, as the user of an interactive computer service, cannot be "treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. §230(c)(1).

Courts analyzing and applying the CDA have consistently held that distributing, sharing, and forwarding content created and/or developed by a third party is conduct immunized by the CDA. *See e.g., Green v. America Online (AOL)*, 318 F.3d 465, 470–71 (3d Cir. 2003) (upholding CDA immunity for the sharing of defamatory messages and computer programs created by a third party in an internet chat room); *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015) (affirming the conclusion that the CDA prevents a plaintiff from "hold[ing] the defendants liable as publishers of information originating from other information content providers"); *Peters v. LifeLock Inc.*, No. 14-cv-576, 2014 WL 12544495, at *3 (D. Ariz. Sept. 19, 2014) (holding that individual "cannot be liable for defamation based on forwarding [another's allegedly defamatory] email"); *Mitan v. A. Neumann & Assocs., LLC*, No. 08-cv-6154, 2010 WL 4782771, at *4 (D.N.J. Nov. 17, 2010) ("Read together, these provisions provide immunity from common law defamation claims for persons who republish the work of other persons through internet-based methodologies, such as websites, blogs, and email."); *Novins v. Cannon*, No. 09-cv-5354, 2010 WL 1688695, at *2–3 (D.N.J. Apr. 27, 2010) (holding that CDA immunity extended to individuals who republish via the Internet allegedly defamatory statements originally made by others in email and internet postings);

4

*Phan v. Pham*, 105 Cal. Rptr. 3d 791, 792–95 (Cal. 2010) (holding that person who forwarded an email with defamatory content could not be held liable for defamation).

Dr. Monge, by asserting defamation claims against Dr. Thomas, seeks to treat Dr. Thomas as the publisher of the allegedly defamatory articles which Dr. Thomas shared via email. This is precisely the kind of factual scenario where CDA immunity applies. *See Green*, 318 F.3d at 470–71; *Pace*, 432 F. Supp. 3d at 503. Therefore, Dr. Thomas's conduct of sharing the allegedly defamatory articles via email is immune from liability under the CDA.

Dr. Monge also argues that Dr. Thomas materially contributed to the allegedly defamatory statements by including her own commentary in the email forwarding the articles. The Ninth Circuit Court of Appeals articulated what has been referred to as the "material contribution" test: a defendant's actions or conduct must materially contribute to the unlawfulness of the message shared via the Internet for CDA immunity to be lost. *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1167–68 (9th Cir. 2008) ("[W]e interpret the term 'development' as referring not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness.") ("*Roommates*"); *see also Phan*, 105 Cal. Rptr. 3d at 793 ("[A] defendants own acts must *materially contribute* to the illegality of the internet message for immunity to be lost.").

Dr. Monge's argument that Dr. Thomas materially contributed to the alleged defamation by suggesting in her email that Dr. Monge improperly handled the remains and stating that she would work with Mr. Mitchell to create a timeline of the events is unavailing. Dr. Thomas did not add anything new to the articles, or materially modify them, when she shared them via email, so she did not materially contribute to the alleged defamation. *See e.g., Phan*, 105 Cal. Rptr. 3d at 792–95 (holding that person who forwarded an email with defamatory content, and added an

5

introductory paragraph, did not make a material contribution to the alleged defamation, and thus could not be held liable). All Dr. Thomas did was share the articles via email with her opinion, based on the content of the articles, that Dr. Monge had improperly handled the remains.

Case law suggests that conduct akin to Dr. Thomas's alleged conduct does not rise to the level of "materially contributing" and courts have upheld CDA immunity in these cases. *See e.g., Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017); *Phan*, 105 Cal. Rptr. 3d at 792–95. In *Batzel*, the defendant made "minor wording changes" to an email created by a third party before forwarding the email to a listserv. *Id.* at 1022. He also included his own message in the email forwarding the third-party email to the listserv. *Id.* The Ninth Circuit Court of Appeals concluded that the defendant could not be liable for defamation because the "minor alterations" to the email did not "rise to the level of 'development'" and so the defendant could not "be considered the content provider of the [third-party's] e-mail for purposes of § 230." *Id.* at 1031.

In *Phan*, the defendant forwarded an allegedly defamatory email. 105 Cal. Rptr. 3d at 793. In his own message forwarding the email, the defendant included a statement which "merely said, in essence: Look at this and 'Everything will come out to the daylight.' All he said was: The truth will come out in the end. What will be will be. Whatever." *Id.* at 793, 795. The Court held that the defendant "made no material contribution to the alleged defamation in the e-mail he received." *Id.* at 795. "[T]he only possible defamatory content is to be found in the e-mail was the original content received by defendant . . . [n]othing 'created' by defendant . . . was itself defamatory." *Id.*

Dr. Thomas relies on *Phan* and *Batzel* in arguing that she did not materially contribute to the alleged defamation and thus is immune from liability. Dr. Thomas also points out that Dr.

6

Monge fails to cite any cases which support her argument that Dr. Thomas's alleged suggestion qualifies as materially contributing to the allegedly defamatory articles which she shared.[2]

The CDA provides immunity to Dr. Thomas for sharing the allegedly defamatory articles via email and for allegedly suggesting that Dr. Monge mishandled the remains because Dr. Thomas did not materially contribute to the allegedly defamatory articles she forwarded. The Court therefore grants Dr. Thomas's motion to dismiss with prejudice as to the defamation, defamation by implication, false light, and civil aiding and abetting claims asserted in Dr. Monge's complaint.[3]

## CONCLUSION

In summary, the Court will grant with prejudice Dr. Thomas's motion to dismiss as to Dr. Monge's claims for defamation, defamation by implication, false light, and civil aiding and abetting. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[2] Dr. Thomas distinguishes the few cases upon which Dr. Monge relies. *Compare Enigma Software Grp., USA, LLC v. Bleeping Comp. LLC*, 194 F. Supp. 3d 263, 276 (S.D.N.Y. 2016) (holding that operator of customer support website was not immune from liability for alleged defamatory statements published by its agent on its website about plaintiff); *Roca Labsy, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1321 (M.D. Fla. 2015) (holding that operator of consumer review website was immune from liability for defamation where operator did not substantively alter third-party content or become directly involved in the alleged illegality, but instead trimmed the length of the content, added links, and utilized search engine optimization and provided statistics of the information contained in the third parties' posts); *Roommates*, 521 F.3d at 1169 (holding that operator of online roommate-matching website that violated state housing discrimination laws was not entitled to immunity under the CDA where its own acts – posting a questionnaire with mandatory discriminatory questions and using the answers to limit who has access to housing – were entirely its own doing); *with* Pl. Opp.at 24-25 (arguing that Dr. Thomas should not be immune under the CDA where she forwarded alleged defamatory articles to others, without drafting or altering their content in any way, and suggested that Plaintiff improperly handled the MOVE remains). Def.'s Reply Mem. of L. in Support of Def.'s Mot. to Dismiss, at 3–4.

[3] Because the Court finds that the CDA immunizes Dr. Thomas from Dr. Monge's state law claims, it will not analyze the merits of these claims as they relate to Dr. Thomas's alleged conduct.