**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANET MONGE, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*, | : | |
| *Defendants* | : | **No. 22-2942** |

## MEMORANDUM

PRATTER, J.                                                    MARCH ____, 2023

The factual and procedural background of this matter is set forth in the Court's February 3, 2023 memorandum. This memorandum addresses defendant Nora McGreevy's motion to dismiss. For the reasons that follow, the Court grants Ms. McGreevy's motion to dismiss with prejudice as to the defamation and false light claims, and without prejudice as to the defamation by implication and civil aiding and abetting claims.

### BACKGROUND

On April 26, 2021, the Smithsonian Magazine published an article by Nora McGreevy titled "Museum Kept Bones of Black Children Killed in 1985 Police Bombing in Storage for Decades." Dr. Monge alleges that this article implies that she acted unprofessionally and was driven by a racist animus. As set forth in the Amended Complaint, the article states in part:

> What's more, the remains appear to have been used as a "case study" in an online course presented by Princeton University and hosted on Coursera. Titled "Real Bones: Adventures in Forensic Anthropology," the class was recorded in 2019 and includes footage of Janet Monge, an adjunct professor in anthropology at the University of Pennsylvania and former student of Mann, picking up the bones and describing them in graphic detail. She makes no reference to the fact that the families of the probable victims Tree and Delisha never provided consent for their daughters' bones to be used in this way, the Guardian notes.

1

Am. Compl. ¶ 161(b).[1] Dr. Monge also alleges that the article reports that the remains are those of Katricia and Delisha Africa and suggests that a failure to contact the Africa family constituted professional misconduct on the part of Dr. Monge.

## LEGAL STANDARD

An action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

### I.   Ms. McGreevy's Entitlement to Immunity as a Federal Contractor

Ms. McGreevy argues that she is entitled to official immunity because she wrote the article at issue pursuant to a contract with the Smithsonian Institution, an entity that Ms. McGreevy asserts has immunity from the present action. Ms. McGreevy's immunity argument is premised on the

---

[1]   The Smithsonian Magazine article attached to Dr. Monge's Amended Complaint as Exhibit G is incomplete. Large portions of the text of the article are illegible in the exhibit, including portions of the language quoted by Dr. Monge in the amended complaint.

language set forth in the contract between Ms. McGreevy and the Smithsonian Institution. According to Ms. McGreevy, she was contracted to write an article for publication in the Smithsonian Magazine. Ms. McGreevy attached the contract as an exhibit to her notice of removal, but Dr. Monge did not mention Ms. McGreevy's contract in her complaint, nor did Dr. Monge attach the contract to the complaint. "In evaluating a motion to dismiss, [the Court] may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim . . . ." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation and quotation marks omitted). However, courts are not permitted to rely upon matters outside the pleadings which are not integral to the claims alleged in the complaint. Fed. R. Civ. P. 12(d).[2] It would be improper to consider the contract at the motion to dismiss stage. This Memorandum makes no use of the contract.

Because Ms. McGreevy also addresses the substance of Dr. Monge's claims, the Court will instead consider whether Dr. Monge has adequately alleged claims for defamation, defamation by implication, false light, and civil aiding and abetting against Ms. McGreevy.

## I.   Dr. Monge's Defamation Claim

"A complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made." *Bank v. Cmty. Coll. of Phila.*, No. 22-cv-293, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988)). To state a claim for defamation, the plaintiff must plead:

(1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient

---

[2]   Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." If Ms. McGreevy wanted the Court to consider the contract and her argument for official immunity at this stage, she must seek to treat her Rule 12(b)(6) motion to dismiss as a Rule 56 motion for summary judgment.

of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion.

42 Pa. C.S. § 8343(a). Where the plaintiff meets the burden of proof, the burden shifts to the defendants to prove: (1) the truth of the defamatory statement; (2) the privileged nature of the communication; and (3) that the subject matter of the defamatory statement is a matter of public concern. 42 Pa. C.S. § 8343(b).

Courts can dismiss meritless defamation claims at this preliminary stage. *See e.g., Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (affirming the dismissal of a defamation claim because the "statement was not capable of a defamatory meaning as a matter of law"); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 422–25 (E.D. Pa. 2020) (dismissing defamation claim at the motion to dismiss stage because "the Court [did] not find that the statements [were] capable of defamatory meaning"); *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (noting that "[i]f the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial").

### A. Capable of Defamatory Meaning

The Court must first determine whether the statement at issue is capable of a defamatory meaning. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011). To do so, the Court considers "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). When the statement at issue is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Id.* (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d. Cir. 1999)).

A defamatory statement is one that "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing

with him or her." *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014).

### 1. Truth is a Defense to Defamation

Truth is an affirmative defense to defamation. *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001); 42 Pa. C.S. § 8343(b)(1) ("[T]he defendant has the burden of proving . . . [t]he truth of the defamatory communication[.]"). To assert truth as a defense, the defendant must establish that the statement at issue is substantially true. However, defendant need not prove that the statement is absolutely true. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified.") (internal quotation marks omitted). The statement will not be considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (citation omitted).

### B. Nora McGreevy's Allegedly Defamatory Statements

Dr. Monge alleges that Ms. McGreevy defamed her by stating that (1) Dr. Monge used the human remains recovered from the MOVE bombing site as a case study in her online course, during which Dr. Monge is seen holding the bones and describing them in detail; (2) by stating that Dr. Monge did not obtain consent from Katricia Africa or Delisha Africa's mothers—Ramona Africa and Consuella Dodson, respectively—to use their bones for teaching purposes; and (3) by asserting that the remains are those of Katricia and Delisha Africa. The allegations in Dr. Monge's amended complaint demonstrate that these statements are substantially true, and thus Ms. McGreevy cannot be held liable. *See Tucker*, 237 F.3d at 287.

Dr. Monge admits that she used the remains during her online course as a case study to teach students how forensic anthropology techniques can be used to determine the ages of remains. Dr. Monge further admits that during the course, she and her student are seen displaying the remains and describing them as "greasy" and "juicy", which according to Dr. Monge, are anthropological terms of art.

Dr. Monge also admits that in 2014, she failed to make contact with Consuella Dodson and in 2018 she concluded that she would not be able to get help from the Africa family. Dr. Monge's prior attempts at contacting the Africa family also had nothing to do with her desire to use the remains in an educational setting. When Dr. Monge first attempted to contact Ramona Africa in 1995, it was to turn the remains over to the Africa family. When she attempted to contact Consuella Dodson in 2014, it was to obtain a DNA sample from her to assist with the identification of the remains. Even if Dr. Monge had successfully contacted either Ramona Africa or Consuella Dodson, it would have been unrelated to Dr. Monge's intent to use the remains for teaching. It is therefore literally true that Dr. Monge used the remains for teaching purposes without obtaining consent from Katricia or Delisha Africa's mothers.

Finally, the article does not assert that the remains definitively belong to Katricia or Delisha Africa. The article acknowledges the competing identifications, notes that the remains were never conclusively identified, and refers to Katricia and Delisha Africa as the "probable victims." Am. Compl. Ex. G. It is substantially true that the remains have been identified as belonging to Katricia and/or Delisha Africa. As Dr. Monge notes in her Amended Complaint, the lead pathologist for the MOVE Commission, Dr. Ali Hameli, identified the remains as belonging to Katricia Africa, notwithstanding Dr. Mann and Dr. Monge's conclusions to the contrary.

Because the allegedly defamatory statements are true, they are not actionable. *See Tucker*, 237 F.3d at 287.

## II. Defamation by Implication

"Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). "To establish defamation by innuendo, the innuendo must be *warranted, justified, and supported by the publication*." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. 1992) (emphasis added) (internal quotation marks omitted). The implication "cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1994). The Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Id.* "When the implication alleged by the plaintiff is not 'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Pace*, 423 F. Supp. 3d at 510. Moreover, "[i]f the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication." *Sarkees*, A.2d at 546.

Dr. Monge alleges that Ms. McGreevy defamed her by implying that Dr. Monge's failure to contact the Africa family prior to using the remains for teaching purposes constituted professional misconduct. However, this implication is not supported by the article. *See Livingston*, 612 A.2d at 449. An implication "cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Sarkees*, 37 A.2d at 546. Ms. McGreevy's article does not mention or address professional standards governing the practice of anthropologists. To read the article as implying that Dr. Monge

violated these standards would be to introduce new matter into the article such that the implication is not warranted or justified by the publication.[3] *See Livingston*, 612 A.2d at 449.

The alleged implication set forth by Dr. Monge is not supported or warranted by a reading of the article as a whole. Therefore, the Court will grant without prejudice Ms. McGreevy's motion to dismiss as to the defamation by implication claim.

## III.   False Light

Dr. Monge also asserts a claim for false light under Section 652E of the Restatement (Second) of Torts.[4] A publication is actionable under Section 652E of the Restatement if it: (1) "is not true," (2) "is highly offensive to a reasonable person," and (3) "is publicized with knowledge or in reckless disregard of its falsity." *Graboff*, 744 F.3d at 136; *see also Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988).

Because the statements at issue are substantially true, Dr. Monge's false light claim must fail as a matter of law. *Larsen*, 543 A.2d at 1188. The Court will grant with prejudice Ms. McGreevy's motion to dismiss Dr. Monge's complaint as to her false light claim.

---

[3]    Dr. Monge argues that Ms. McGreevy's article is defamatory *per se* because the purported implication disparages her professional fitness. "Defamation *per se* can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (internal quotation marks omitted). "A statement is defamatory *per se* as an accusation of business misconduct if it ascribes to another conduct, characteristics or a condition that would adversely affect his fitness of the proper conduct of his lawful business." *Id.* (internal quotation marks omitted). Here, because the alleged implication that Dr. Monge violated professional standards is not supported by the article, the Court need not address Dr. Monge's argument that this alleged implication is defamatory *per se*.

[4]    Section 652E defines this cause of action as follows: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652.

## IV.    Civil Aiding and Abetting

Dr. Monge also brings a claim for civil aiding and abetting. She alleges that "[t]he behaviors in which the defendants engaged aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge in a concerted effort to accomplish the particular result of branding [Dr.] Monge as incompetent and racist." Am. Compl. ¶ 218. Section 876(b) of the Restatement (Second) of Torts provides that "one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" To bring such a claim, the plaintiff must establish that "the defendant knew of or could reasonably foresee the underlying bad actor's misdeed," or that the defendant exhibited intentional ignorance as the to the underlying actor's bad deeds. *Marion v. Bryn Mawr Trust Co.*, 253 A.3d 682, 690 (Pa. Super. Ct. 2021) (citing *Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)). To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). Liability "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

Dr. Monge's allegations regarding her civil aiding and abetting claim against Ms. McGreevy do not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Based on the facts alleged in Dr. Monge's complaint, the Court is unable "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the Court will grant without prejudice Ms. McGreevy's motion to dismiss Dr. Monge's complaint as to the civil aiding and abetting claims.

CONCLUSION

For these reasons, the Court will grant Ms. McGreevy's motion to dismiss with prejudice as to the claims for defamation and false light, and without prejudice as to the claims for defamation by implication and civil aiding and abetting.[5] An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5]     Ms. McGreevy properly removed this action to federal court under the federal officer removal statute. 28 U.S.C. § 1442(a)(1). Because the Court is granting Ms. McGreevy's motion to dismiss and thus is "dismiss[ing] all claims over which it has original jurisdiction," the Court will exercise supplemental jurisdiction over all remaining state law claims under 28 U.S.C. §§ 1367(a), 1367(c)(3).