IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE,<br>*Plaintiff* | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*,<br>*Defendants* | : <br> : <br> : | No. 22-2942 |

# MEMORANDUM

PRATTER, J.                                                                                              MAY 22, 2023

## INTRODUCTION[1]

The University of Pennsylvania, Dr. Amy Gutmann, and Dr. Wendell Pritchett all move to dismiss the claims brought against them by Dr. Monge. For the reasons that follow, the Court grants the motion to dismiss without prejudice to Dr. Monge to endeavor to replead as to the defamation, defamation by implication, false light, and civil aiding and abetting claims.

## BACKGROUND

Dr. Monge alleges that in addition to the media reports published by various other defendants in this matter, she was "attacked" by the University of Pennsylvania and faculty members at the University. She avers that "[t]he damage done by [the allegedly] false and defamatory statements and articles was then amplified by the University of Pennsylvania, who made statements, both to its own faculty and to the public, that apologetically condemned the investigatory efforts of its employee although she had done nothing wrong." Am. Compl. ¶ 13.

---

[1] The factual and procedural background of this matter is set forth in the Court's February 3, 2023 memorandum.

1

Specifically, On April 26, 2021, Dr. Amy Gutmann, President of the University of Pennsylvania, and Dr. Wendell Pritchett, Provost of the University of Pennsylvania, issued a statement to the employees of the Penn Museum:[2]

> We were profoundly disturbed to learn this past week that human remains, provided to a faculty member by the medical examiner many decades ago in an effort to identify a victim from the 1985 bombing of the MOVE house, had been kept at the Penn Museum for much of that time. Simply said, this was insensitive, unprofessional and unacceptable.
>
> An official apology has been extended to the Africa family by the Museum and the University, and the Museum is currently working to return the remains to the family. In our judgment, it is imperative that we bring in an outside investigator who can examine how this unfolded and provide us with a complete report on what transpired. To this end, we have hired attorneys Joe Tucker and Carl Singley of the Tucker Law Group to investigate how the remains came into the possession of the Museum and what transpired with them for nearly four decades. We will share this report with the community and use its findings to help us ensure that nothing of this nature is repeated in the future.[3]

Ex. A, Mot. to Dismiss. Dr. Monge alleges that a similar statement authored by Drs. Gutmann and Pritchett was also sent to the full University of Pennsylvania community.[4]

---

[2] Dr. Monge alleges that the statement was issued by Drs. Gutmann and Pritchett on April 28, 2021. However, the copy of the statement attached as Exhibit A to the motion to dismiss, which is also publicly available at https://penntoday.upenn.edu/announcements/statement-regarding-human-remains-recovered-move-home, clearly notes that the statement was published on April 26, 2021.

[3] "In evaluating a motion to dismiss, [the Court] may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim . . ." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted). Although the statement was not attached as an exhibit to the complaint, Dr. Monge incorporated Dr. Gutmann and Dr. Pritchett's statement by reference. Dr. Monge bases her claims against these three moving defendants on this statement, includes a direct quote from the statement, and explicitly alleges that Drs. Gutmann and Pritchett authored a statement sent to Penn Museum employees. Therefore, the Court can properly consider Drs. Gutmann and Pritchett's statement, which was attached as Exhibit A to defendants University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[4] The alleged second statement sent to the University of Pennsylvania community was not attached as an exhibit to Dr. Monge's complaint, and defendants University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett were unable to identify or locate any such statement.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 provides that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a pleading against Rule 8(a)'s requirements, and an action may be dismissed if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotations omitted).

## DISCUSSION

### I. Dr. Monge's Defamation Claim

To state a claim for defamation, the plaintiff must plead: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient

3

of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. C.S. § 8343(a).

The pleading standard set forth in Federal Rule of Civil Procedure 8(a) governs Dr. Monge's defamation claim. *Rishell v. RR Donnelley & Sons Co.*, No. 06-cv-4782, 2007 WL 1545622, at *2-*3 (E.D. Pa. May 24, 2007); *P&I Ins. Servs., LLC v. Risk Averse Ins., LLC*, No. 20-cv-5910, 2022 WL 103135, at *10 & n.4 (E.D. Pa. Jan. 11, 2022); *Turk v. Salisbury Behavioral Health, Inc.*, No. 09-cv-6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 17, 2010) (citing *Hanna v. Plumer*, 380 U.S. 460, 473 (1965)) ("The federal pleading standards apply to state law claims asserted in federal court."). Under Rule 8(a), unlike under the Pennsylvania pleading standard,[5] the plaintiff need not identify the specific allegedly defamatory statement. *Rishell*, 2007 WL 1545622, at *3. "As long as a defamation count provides sufficient notice to defendants, it states a claim." *Id.* (internal quotations omitted); *see also P&I Ins. Servs.*, 2022 WL 103135, at *10; *Knit With v. Knitting Fever, Inc.*, No. 04-cv-4221, 2009 WL 973492, at *6 (E.D. Pa. Apr. 8, 2009). However, to survive dismissal under Rule 12(b)(6), the plaintiff must do more than assert merely conclusory allegations. *Lee v. Univ. of Pa., Sch. of Dental Med.*, No. 19-cv-835, 2019 WL 4060843, at *6 (E.D. Pa. Aug. 27, 2019). "[She] must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience." *Id.*

Where the plaintiff meets her burden of proof and adequately pleads a defamation claim, the burden shifts to the defendants to prove: (1) the truth of the defamatory statement; (2) the privileged nature of the communication; and (3) that the subject matter of the defamatory statement is a matter of public concern. 42 Pa. C.S. § 8343(b).

---

[5] Under Pennsylvania law, the complaint must, on its face, identify the allegedly defamatory statements and to whom the statements were made. *Bank v. Cmty. Coll. of Phila.*, No. 22-cv-293, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988)).

4

Courts will dismiss meritless defamation claims at this preliminary stage. *See e.g., Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (affirming the dismissal of a defamation claim because the "statement was not capable of a defamatory meaning as a matter of law"); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 422–24 (E.D. Pa. 2020) (dismissing defamation claim at the motion to dismiss stage because "the Court [did] not find that the statements [were] capable of defamatory meaning"); *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (noting that "[i]f the court determines that the challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial").

### A. Whether Dr. Monge's Defamation Claim Against the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett is Adequately Plead

#### 1. Dr. Gutmann and Dr. Pritchett's April 26, 2021 Statement Issued to Penn Museum Employees

The parties do not dispute that Dr. Monge's claim against Drs. Gutmann and Pritchett, based on their April 26, 2021 statement calling Dr. Monge's actions "insensitive, unprofessional and unacceptable" was adequately plead.

#### 2. The Allegedly Defamatory Statement Made by the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett to the University of Pennsylvania Community

Dr. Monge alleges that the University of Pennsylvania defamed her by allegedly amplifying the statements and articles published by the other defendants in this matter, and by allegedly making a statement condemning her investigatory efforts. Dr. Monge also alleges that Drs. Gutmann and Pritchett defamed her by authoring and issuing a second statement, similar to their April 26, 2021 statement, which was sent to the full University of Pennsylvania community.

Dr. Monge has adequately alleged her claim under the pleading standard set forth in Rule 8(a). As set forth above, Dr. Monge first alleges that Drs. Gutmann and Pritchett issued a statement calling Dr. Monge's conduct "insensitive, unprofessional and unacceptable." By asserting that

5

these defendants then sent a *similar* statement to the full University of Pennsylvania community, Dr. Monge put the defendants on notice as to the nature of the additional allegedly defamatory statement that she attributes to them. *See Rishell*, 2007 WL 1545622, at *2. Dr. Monge also did more than assert mere conclusory allegations. She identified the speakers of the allegedly defamatory statement (the University of Pennsylvania and Drs. Gutmann and Pritchett), the approximate date the statement was made (shortly after April 28, 2021), the content of the allegedly defamatory statement (a statement suggesting Dr. Monge's actions were "insensitive, unprofessional and unacceptable), and the audience to whom the statement was made (the University of Pennsylvania community). *See Lee*, 2019 WL 4060843, at *6.

### B. Capable of Defamatory Meaning

The first step a Court must take in the defamation analysis is to determine whether the statement at issue is capable of defamatory meaning. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011). The Court considers "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). The allegedly defamatory statement must be "viewed in context" to determine whether it is capable of a defamatory meaning. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014). When the statement at issue is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Id.* (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d. Cir. 1999)).

A statement is defamatory if it "tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from association or dealing with him or her." *U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990) (internal quotation omitted). "[T]he statement must do more than merely embarrass or annoy the

6

plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff*, 744 F.3d at 136 (quoting *Tucker*, 848 A.2d at 124). If the court determines, in the first instance, that the statement is capable of defamatory meaning, "then it is for the jury to decide if the statement was so understood by the reader or listener." *U.S. Healthcare*, 898 F.2d at 923.

### a. Dr. Gutmann and Dr. Pritchett's April 26, 2021 Statement Issued to Penn Museum Employees

Dr. Monge alleges that Drs. Gutmann and Pritchett defamed her in their April 26, 2021 statement by calling Dr. Monge's actions, with respect to her handling of the MOVE remains, "insensitive, unprofessional and unacceptable." Am. Compl. ¶ 170.

The Court concludes that, when considering the statement at issue in light of the context in which it was made, the statement is capable of defamatory meaning. *See Graboff*, 744 F.3d at 136. First, the statement was made by the President of the University of Pennsylvania, Amy Gutmann, and the Provost of the University of Pennsylvania, Wendell Pritchett, in their official capacities. At the time this statement was published, Dr. Monge was employed as a professor at the University of Pennsylvania and as a curator at the Penn Museum. An explicit accusation of unprofessionalism from these authority figures in their official capacities thus carries with it an aura of greater import. Second, the statement was published on Penn Today, a website associated with the University of Pennsylvania. Third, the statement provides that the University of Pennsylvania and the Penn Museum issued an "official apology" regarding the retention of the remains recovered from the MOVE bomb site. Ex. A, Mot. to Dismiss. Based on these facts, the statement appears to be an official declaration issued on behalf of the University of Pennsylvania by its President and its Provost, rather than a statement expressing the subjective opinions of Drs. Gutmann and Pritchett.

The statement at issue is thus capable of defamatory meaning because it "was reasonably capable of conveying the particular meaning ascribed to it by [Dr. Monge]," specifically that her conduct was unprofessional. *Pace*, 432 F. Supp. 3d at 510. Further, the explicit assertion that Dr. Monge's conduct was unprofessional is defamatory in nature because it not only harms her reputation, *see U.S. Healthcare*, 898 F.2d at 923, but it also constitutes defamation *per se*. "Defamation *per se* can be either 'words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct.'" *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999) (quoting *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990)). "A statement is defamatory *per se* as an accusation of business misconduct if it 'ascribes to another conduct, characteristics or a condition that would adversely affect his fitness of the proper conduct of his lawful business.'" *Id.* (citing Restatement (Second) of Torts § 573 (1977)). A negative opinion or mere general disparagement are not enough—the statement "must be of the type that would be particularly harmful to an individual engaged in the plaintiff's business or profession." *Id.*

Drs. Gutmann and Pritchett's calling Dr. Monge unprofessional is as "an accusation of business misconduct" because the statement is "particularly harmful" to Dr. Monge's ability to conduct business as an anthropologist, a professor, or a museum curator, or to engage in the profession of anthropology. *Id.* Critical to this conclusion are the positions held by the authors of the statement: the President and Provost of the University of Pennsylvania. As set forth above, such an official declaration by these authority figures who, at the time, likely exercised some level of influence over Dr. Monge's employment, carries a greater import and arguably harmed Dr. Monge's professional reputation and "lower[ed] . . . her in the estimation of the community." *U.S. Healthcare*, 898 F.2d at 923.

8

Therefore, the Court concludes that Drs. Gutmann and Pritchett's April 26, 2021 statement is capable of defamatory meaning.

### b. *The Allegedly Defamatory Statement Made by the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett to the University of Pennsylvania Community*

Dr. Monge also alleges that the University of Pennsylvania and Drs. Gutmann and Pritchett defamed her by allegedly issuing a second statement to the University of Pennsylvania community which expressed a similar message as that in their April 26, 2021 statement. To the extent this alleged statement conveys a similar message regarding Dr. Monge's involvement with the MOVE remains, it too is capable of defamatory meaning and possibly also constitutes defamation *per se*.

## C. Public vs. Private Figure

Because Dr. Monge has established that the statements at issue are capable of defamatory meaning and possibly constituted defamation *per se*, the Court must determine whether Dr. Monge has established the requisite level of fault necessary for the survival of her defamation claim. *See Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 465 (E.D. Pa. 2017), *aff'd Mallory v. Simon & Shuster, Inc.*, 728 F. App'x 132, 136 n.2 (3d Cir. 2018) ("When a limited purpose public figure raises a defamation per se claim, she must show by clear and convincing evidence that the defendant acted with actual malice in publishing statements about her."); *see also Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1087–88 (3d Cir. 1985) (holding that plaintiff did not prove actual malice to prevail on his defamation per se claim against the defendant). The Court must now assess whether Dr. Monge is a public figure, a limited public figure, or a private figure. This determination will dictate whether Dr. Monge is required to prove that the defamatory statements were made only negligently, or with actual malice.

"[D]efamation includes a requirement [that] the plaintiff prove a constitutionally-mandated minimum level of fault in order to impose liability on a media defendant." *Joseph v. Scranton*

*Times L.P.*, 129 A.3d 404, 428 (Pa. 2015). "[T]he appropriate minimum level of fault depends on whether the plaintiff is a public or private figure." *Id.*; *accord Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974). If the plaintiff is a public figure or a limited public figure, she must establish that the defendant published the defamatory statement with *actual malice*, meaning the defendant acted in reckless disregard as to the truth of the statement. *Gertz*, 418 U.S. at 342–45. If the plaintiff is a private figure, she need only establish that the defendant *negligently* published the defamatory statement. *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007).

A "limited public figure" is someone who is considered a public figure with respect to a specific public controversy. *See McDowell v. Paiewonsky*, 769 F.2d 942, 948–51 (3d Cir. 1985) (concluding that plaintiff's actions were "sufficient to transform him into a public figure for the limited purpose of his work on publicly financed building projects—the subject of the allegedly defamatory remarks"). The Third Circuit Court of Appeals has set forth a two-prong test for determining whether someone is a limited purpose public figure: "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of the plaintiff's involvement in that controversy." *McDowell*, 769 F.2d at 948; *accord Amor v. Conover*, No. 21-cv-5574, 2022 WL 7127657, at *3 (E.D. Pa. Oct. 12, 2022). A public controversy is "a real dispute, the outcome of which affects the general public or some segment of it," and the plaintiff's involvement in the controversy must be voluntary. *McDowell*, 769 F.2d at 948–49. "When an individual undertakes a course of conduct that invites attention [and general public discussion], even though such attention is neither sought nor desired, he may be deemed a public figure." *Id.*; *see also Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1280–81 (3d Cir. 1979) (en banc). In other words, when "an individual voluntarily injects himself or is drawn into a particular public

controversy [he] thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351.

The Court concludes that Dr. Monge is a limited public figure with respect to the MOVE bombing and the identification of the MOVE remains and that she became a limited public figure in 2019 when she published her course "Real Bones: Adventures in Forensic Anthropology" on the Coursera online platform. First, the MOVE bombing events, including the handling of the MOVE remains and the lengthy efforts to identify the remains, are public controversies "which affect[] the general public or some segment of it." *Id.* at 948. The sheer number of articles published on the topic, and the issues raised in the articles—including Dr. Monge's handling of the MOVE remains—demonstrates that these events affect the public and that there is a genuine dispute regarding the handling of the MOVE remains.

Second, although Dr. Monge's involvement in this public controversy spans over 36 years, it is clear that when she published her online course to the Coursera platform in 2019, she voluntarily injected herself into the public controversy. *See Gertz*, 418 U.S. at 351; *McDowell*, 769 F.2d at 948. Coursera is a free website, and the classes posted on the platform are publicly available to anyone who enrolls through the website. Further, the stated purpose of Dr. Monge's course was to teach how forensic anthropology can be used to restore the personhood of individuals unidentified through the scientific investigation of bone remains, and Dr. Monge used the MOVE remains as teaching aids during her course. Thus, by voluntarily publishing her course concerning the MOVE remains to a free, publicly available website, Dr. Monge voluntarily injected herself into the public controversy.

In *McDowell*, the Third Circuit Court of Appeals concluded that an architect was a limited public figure because he "voluntarily assumed a position that invited attention." 769 F.2d at 950.

11

McDowell, the architect, became involved in a project that received substantial media attention from its inception. *Id.* "McDowell's decision to accept the . . . assignment almost inevitably put him *into the vortex of a public controversy.* Just as a professional athlete or coach must accept the attendant publicity surrounding his decision to assume his position, so must plaintiff accept the consequences of his decision." *Id.* (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967); *Chuy*, 595 F.2d at 1265) (emphasis added).

Here, Dr. Monge can similarly be said to have "voluntarily assumed a position that invited attention" when she published a course concerning the identification of the MOVE remains and the MOVE bombing, an event which has received substantial media attention since 1985. *Id.* By publishing this course on the internet, in which she displayed the MOVE remains, Dr. Monge put herself "into the vortex of a public controversy," meaning that Dr. Monge is properly classified as a limited public figure. *Id.*

The Court concludes that Dr. Monge is a limited public figure with respect to the MOVE events, including the identification of the MOVE remains, at least beginning in 2019.

As a limited public figure, Dr. Monge "must allege *facts* to support an inference of actual malice" at the pleading stage. *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021). Actual malice is "knowledge that [the statement] was false or [was made] with reckless disregard of whether [the statement] was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The actual malice standard is "a rigorous, if not impossible, burden to meet in most circumstances." *Bartlett v. Bradford Publ'g, Inc.*, 885 A.2d 562, 566 (Pa. Super. Ct. 2005). To satisfy the "reckless disregard" element of the actual malice standard, a plaintiff must show that the defendants "entertained serious doubts as to the truth" of the published statements. *Masson*, 501 U.S. at 510. "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the

truth. Rather the publisher must act with a 'high degree of awareness of . . . probable falsity.'" *Gertz*, 418 U.S. at 332 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

The current pleadings from Dr. Monge fail to meet this high burden. She alleges no facts that even suggest that the University of Pennsylvania, Dr. Gutmann, or Dr. Pritchett had serious doubts as to the truth of the statement at issue prior to publishing it. *See Masson*, 501 U.S. at 510. Dr. Monge simply makes conclusory allegations that the defendants acted with actual malice. *See* Am. Compl. ¶ 196 ("The false and defamatory statements described above and contained in the articles identified were published with knowledge that said statements, innuendo, inference, and manner in which they were presented were false and/or *with reckless disregard for whether said material was false, said conduct constituting actual malice*.") (emphasis added). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678.

Because Dr. Monge fails to plead actual malice, the Court must dismiss the defamation claim as to these moving defendants. *See McCafferty*, 955 F.3d at 360 (affirming dismissal of defamation claim for failure to "plead facts that suggest actual malice"); *Pace*, 850 F. App'x at 831–32 (affirming dismissal of defamation claim for "conclusory allegations" of actual malice).

For all of these reasons, the Court will grant without prejudice the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss as to the defamation claim, leaving it to Dr. Monge to determine whether she is able to replead her claim with an allegation of actual malice.

## II. Defamation by Implication

"Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*,

13

693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). "To establish defamation by innuendo, the innuendo must be *warranted, justified, and supported by the publication.*" *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. 1992) (emphasis added) (internal quotation marks omitted). The implication "cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1994). The Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Id.* "When the implication alleged by the plaintiff is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim." *Pace*, 423 F. Supp. 3d at 510 (internal quotations omitted).

Although not explicitly alleged in the amended complaint, Dr. Monge argues the statement which opines that the retention of the MOVE remains was "insensitive, unprofessional and unacceptable," somehow implies that Dr. Monge's handling of the remains was racist and unethical and implies that Dr. Monge deviated from professional standards governing anthropologists. The contention that the statement implies that Dr. Monge's conduct was racist or unethical is simply not supported by the statement. S*ee Livingston*, 612 A.2d at 449. The statement does not once mention race or ethics, and to read the article as implying either of these things would be "an unfair and forced construction on the interpretation of the publication." *Sarkees*, 37 A.2d at 546. Therefore, these implications are not warranted or justified by a reading of the statement. *See Livingston*, 612 A.2d at 449.

However, as discussed above, the statement at issue constitutes defamation *per se* because it explicitly calls Dr. Monge unprofessional. Thus, it is plausible that the statement "could fairly and reasonably be construed to have the meaning imputed in the innuendo," specifically that Dr. Monge deviated from professional standards governing anthropologists. *Id.* This implication

14

similarly satisfies the standard for defamation *per se* because it is "particularly harmful" to Dr. Monge's engagement in the anthropology profession. *Synygy*, 51 F. Supp. 2d at 580. This does not mean, however, that Dr. Monge's defamation by implication survives dismissal because Dr. Monge is still required to prove actual malice as a limited purpose public figure. Because Dr. Monge has failed to plead actual malice as to these moving defendants, the Court must dismiss the defamation by implication claims against these defendants. *See McCafferty*, 955 F.3d at 360; *Pace*, 850 F. App'x at 831–32.

For these reasons, the Court will grant without prejudice the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss as to the defamation by implication claim, subject to the same possibilities as mentioned above.

### III. False Light

Dr. Monge also asserts a claim for false light under Section 652E of the Restatement (Second) of Torts.[6] A publication is actionable under Section 652E of the Restatement if it (1) "is not true," (2) "is highly offensive to a reasonable person," and (3) "is publicized with knowledge or in reckless disregard of its falsity." *Graboff*, 744 F.3d at 136; *see also Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988). "The required standard of fault in a false light claim is thus actual malice." *Rubin v. CBS Broadcasting, Inc.*, 170 A.3d 560, 568 n. 9 (Pa. Super. Ct. 2017).

To the extent the statement at issue "is highly offensive to a reasonable person" because it is defamatory *per se*, the false light claim here fails as a matter of law because Dr. Monge fails to

---

[6] Section 652E defines this cause of action as follows: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652E.

15

plead actual malice. *Graboff*, 744 F.3d at 136; *see also Rubin*, 170 A.3d at 568 n.9. Dr. Monge fails to allege that the University of Pennsylvania, Dr. Gutmann, or Dr. Pritchett published the statement with "knowledge that [the statement] was false or [was made] with reckless disregard of whether [the statement] was false or not." *N.Y. Times Co.*, 376 U.S. at 279–80. Thus, she fails to satisfy the required standard of fault for a false light claim. *See Rubin*, 170 A.3d at 568 n.9.

The Court will grant without prejudice the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss the false light claim.

## IV. Civil Aiding and Abetting

Dr. Monge also brings a claim for civil aiding and abetting. She alleges that "[t]he behaviors in which the defendants engaged aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge in a concerted effort to accomplish the particular result of branding [Dr.] Monge as incompetent and racist." Am. Compl. ¶ 218. She further alleges that "[w]hen each of the defendants published their defamatory statements they knew or should have known through reasonable diligence that the conduct of each of them was tortious and provided substantial assistance and/or encouragement to engage in such tortious misconduct." *Id.* ¶ 219.

A defendant is subject to liability for civil aiding and abetting if he "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[.]" Restatement (Second) of Torts § 876(b). To bring such a claim, the plaintiff must establish that "the defendant knew of or could reasonably foresee the underlying bad actor's misdeed," or that the defendant exhibited intentional ignorance as the to the underlying actor's bad deeds. *Marion v. Bryn Mawr Trust Co.*, 253 A.3d 682, 690 (Pa. Super. Ct. 2021) (citing *Grimm v. Grimm*, 149 A.3d 77, 88 (Pa. Super. Ct. 2016)). To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the

tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). When considering whether the defendant "gives substantial assistance or encouragement," courts consider "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, [and] his relation to the other and his state of mind[.]" *Marion*, 253 A.3d at 693 (quoting Restatement (Second) of Torts § 876 cmt. d). Liability "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

In asserting her claims against the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett, Dr. Monge fails to demonstrate that (1) these defendants had knowledge of the allegedly tortious conduct of the other defendants named in this matter; and (2) these defendants substantially assisted the other defendants in conducting their allegedly tortious conduct. As to the three moving defendants' knowledge, Dr. Monge vaguely alleges that these defendants "knew or should have known" of the allegedly defamatory nature of the articles and statements published prior to the April 26, 2021 statement. Am. Compl. ¶ 219. However, Dr. Monge provides no factual allegations which demonstrate how or why the University of Pennsylvania, Dr. Gutmann, or Dr. Pritchett would have possessed such knowledge as to the conduct of those who they allegedly aided or abetted. As to substantial assistance, Dr. Monge fails to include sufficient factual allegations to demonstrate that the University of Pennsylvania, Dr. Gutmann, or Dr. Pritchett took affirmative action to assist the other defendants in their allegedly tortious conduct. *See, e.g., Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 572 (E.D. Pa. 2013) (quoting Restatement (Second) of Torts § 566 cmt. a) (proving that "[p]arties are considered to be 'acting in concert [for a civil

17

aiding and abetting claim] when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result'").

Dr. Monge's allegations regarding her civil aiding and abetting claim against the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett thus do not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal quotations omitted). Based on the facts alleged in Dr. Monge's complaint, the Court is unable "to draw the reasonable inference that the defendant[s] are liable for the misconduct alleged." *Id.* Thus, the Court will grant without prejudice the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss to the civil aiding and abetting claims.

## CONCLUSION

For all of these reasons, the Court will grant the University of Pennsylvania, Dr. Gutmann, and Dr. Pritchett's motion to dismiss without prejudice as to the defamation, defamation by implication, false light, and civil aiding and abetting claims. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE