IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET MONGE,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA** *et al.,* | : | |
| *Defendants* | : | **No. 22-2942** |

## MEMORANDUM

PRATTER, J.                                                            JUNE _/ 3_, 2023

### INTRODUCTION

Paul Mitchell moves to dismiss the claims brought against him by Janet Monge. For the reasons that follow, the Court grants the motion to dismiss without prejudice to Dr. Monge to endeavor to replead the defamation, defamation by implication, false light, and civil aiding and abetting claims.

### BACKGROUND[1]

Paul Mitchell is an anthropology doctoral candidate at the University of Pennsylvania. During his time as an undergraduate and master's student at the university, Mr. Mitchell took several courses from Dr. Monge, and Dr. Monge served as his advisor for his master's thesis. Dr. Monge alleges that she worked with the University of Pennsylvania's Anthropology Department to allow Mr. Mitchell to transfer and earn his doctorate degree at the University of Pennsylvania following Mr. Mitchell's alleged removal from a program at another university.

After returning to the University of Pennsylvania, Mr. Mitchell focused his work on the Samuel G. Morton Cranial Collection, a collection of approximately 1,000 skulls located at the

---

[1] The factual and procedural background of this matter relating to the MOVE bombing events, Dr. Monge's involvement in the identification of the MOVE remains, and Dr. Monge's publication of her online course to the Coursera platform is set forth in the Court's February 3, 2023 memorandum.

Penn Museum. Mr. Mitchell allegedly began engaging in misconduct, including "defacing Penn Museum lab books, tearing pages from the equipment used to catalogue entries for the lab's micro-CT scanner, . . . plagiarism," and accessing, without authorization, the Penn Museum facilities and collections. Am. Compl. ¶¶ 139–42. Once Dr. Monge discovered Mr. Mitchell's misconduct, she reported these activities to Penn Museum Security and administrators, as well as to the Chair of the University of Pennsylvania's Anthropology Section, Dr. Kathleen Morrison.

In May 2019, Dr. Monge confronted Mr. Mitchell about his misconduct. According to Dr. Monge, Mr. Mitchell reacted explosively, screaming, throwing objects, and threatening Dr. Monge. Dr. Monge alleges that she was scared by Mr. Mitchell's reaction and the comments he made during this confrontation. In response, Dr. Monge filed a report with the Penn Museum's administration and required that Mr. Mitchell be supervised when he was interacting with the Physical Anthropology collections at the Penn Museum. Dr. Monge claims that this eventually gave rise to Mr. Mitchell's "revengeful false reporting relating to the [MOVE] bone fragments." *Id.* at ¶ 147.

Dr. Monge alleges that Mr. Mitchell's retaliatory actions against her began in early April 2021, when he met with Dr. Christopher Woods, the Director of the Penn Museum, and accused Dr. Monge, allegedly without any foundation, of mishandling the unidentified MOVE remains and engaging in professional misconduct relating to the MOVE bombing investigation. Mr. Mitchell further expressed concerns relating to the Penn Museum's policies on the handling of the remains, including the MOVE remains, and accused Dr. Monge of lacking professionalism in her Coursera course.

After not seeing the purportedly intended disciplinary results for Dr. Monge, Mr. Mitchell contacted Maya Kassutto regarding the MOVE remains and Dr. Monge's alleged mishandling of

them. Dr. Monge alleges that Mr. Mitchell "purposefully, and with full knowledge that he was falsifying information, cooperated with his then-girlfriend Maya Kas[s]utto, a writer for the Billy Penn 501(c)(3) news organization (a project of WHYY Philadelphia), to aid her in authoring an article" about the MOVE remains and Dr. Monge's involvement in the identification of the remains. *Id.* ¶ 8. Dr. Monge alleges that Mr. Mitchell also aided in the publication of the Philadelphia Inquirer article authored by Abdul-Aliy Muhammad.

Dr. Monge alleges that on April 23, 2021, Mr. Mitchell prepared a paper on the handling and identity of the MOVE remains, arguing that the remains are those of Katricia and Delisha Africa and condemning the handling of the bones and bone fragments. Mr. Mitchell allegedly distributed this paper to University of Pennsylvania employees, MOVE members, and media outlets. On the same day, the Daily Mail, the Guardian, and the New York Post published articles on the MOVE remains.

Dr. Monge brought defamation, defamation by implication, false light, and civil aiding and abetting claims against Mr. Mitchell relating to the allegedly defamatory statements he made about her to Dr. Woods, his alleged aiding of the publication of the Billy Penn and the Philadelphia Inquirer articles, and the allegedly defamatory paper he purportedly wrote and circulated. Mr. Mitchell now moves to dismiss the claims brought against him.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 8 provides that "a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a pleading against Rule 8(a)'s requirements, and an action may be dismissed if it "fail[s] to state a claim upon which relief can

be granted." Fed. R. Civ. P. 12(b)(6). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion to dismiss stage, the Court must accept factual allegations as true, "but [it is not] compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal citation and quotation marks omitted).

## DISCUSSION

### I.  Defamation

To state a claim for defamation, the plaintiff must plead: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a).

The pleading standard set forth in Federal Rule of Civil Procedure 8(a) governs Dr. Monge's defamation claim. *Rishell v. RR Donnelley & Sons Co.*, No. 06-cv-4782, 2007 WL 1545622, at *3 (E.D. Pa. May 24, 2007); *P&I Ins. Servs., LLC v. Risk Averse Ins., LLC*, No. 20-cv-5910, 2022 WL 103135, at *10 & n.4 (E.D. Pa. Jan. 11, 2022). Under Rule 8(a), unlike under the Pennsylvania pleading standard,[2] the plaintiff need not identify the specific allegedly

---

[2]     Under Pennsylvania law, the complaint must, on its face, identify the allegedly defamatory statements and to whom the statements were made. *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. 1988).

defamatory statement. *Rishell*, 2007 WL 1545622, at *3. "As long as a defamation count provides sufficient notice to defendants, it states a claim." *Id.* (internal quotation marks omitted); *see also P&I Ins. Servs.*, 2022 WL 103135, at *10. However, to survive dismissal under Rule 12(b)(6), the plaintiff must do more than assert merely conclusory allegations. *Lee v. Univ. of Pa., Sch. of Dental Med.*, No. 19-cv-835, 2019 WL 4060843, at *6 (E.D. Pa. Aug. 27, 2019). "[She] must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience." *Id.*

Where the plaintiff meets her burden of proof and adequately pleads a defamation claim, the burden shifts to the defendant to prove: (1) the truth of the defamatory statement; (2) the privileged nature of the communication; and (3) that the subject matter of the defamatory statement is a matter of public concern. 42 Pa. Cons. Stat. § 8343(b).

## A. Capable of Defamatory Meaning

The first step a court must take in the defamation analysis is to determine whether the statement at issue is capable of defamatory meaning. *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 399 (E.D. Pa. 2011). Courts can dismiss defamation claims at the motion to dismiss stage if the statements are not capable of defamatory meaning. *See, e.g., Gibney v. Fitzgibbon*, 547 F. App'x 111, 113–14 (3d Cir. 2013); *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 423–24 (E.D. Pa. 2020); *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004).

To determine whether a statement is capable of defamatory meaning, the Court considers "(1) whether the communication was reasonably capable of conveying the particular meaning ascribed to it by the plaintiff; and (2) whether that meaning is defamatory in character." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). When the statement is not "'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Id.* (quoting *Beverly*

*Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d. Cir. 1999)). A statement is defamatory if it "tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990). "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Tucker*, 848 A.2d at 124).

### 1. Truth Is a Defense to Defamation

In Pennsylvania, truth is an affirmative defense to defamation. 42 Pa. Cons. Stat. § 8343(b)(1); *Tucker v. Fischbein*, 237 F.3d 275, 287 (3d Cir. 2001). To assert truth as a defense, the defendant must establish that the statement at issue is substantially true; however, the defendant need not prove that the statement is absolutely true. *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982). "The proof of truth must go to the gist or sting of the defamation. The test is whether the [alleged] libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* (internal quotation marks omitted); *accord Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 516–17 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified.") (internal quotation marks omitted).

### 2. Pure Opinions Are Not Capable of Defamatory Meaning

Under Pennsylvania law, "[a] statement of fact can be verified as true or false, whereas an expression of opinion only conveys a subjective belief of the speaker." *Meyers v. Certified Guar. Co.*, 221 A.3d 662, 670 (Pa. Super. Ct. 2019) (citing Restatement (Second) of Torts § 566 cmt. a). Mixed opinions, which "impl[y] the allegation of undisclosed defamatory facts as the basis for the

6

opinion," are actionable. *Braig v. Field Commc'ns*, 456 A.2d 1366, 1372 (Pa. Super. Ct. 1983) (quoting Restatement (Second) of Torts § 566). Pure opinions, which are based on disclosed facts, are "absolutely privileged" and "cannot be defamatory . . . no matter how derogatory they are." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020) (quoting *Braig*, 456 A.2d at 1373) (internal quotation marks omitted).

### B. Mr. Mitchell's Early April 2021 Statements to Dr. Wood

#### 1. Whether Mr. Mitchell's Statements Are Time-Barred by the Statute of Limitations

Pennsylvania's statute of limitations for defamation and false light claims is one year from the date of publication. 42 Pa. Cons. Stat. § 5523(1); *Gorman v. Shpetrik*, No. 20-cv-4759, 2022 WL 717075, at *4 (E.D. Pa. Mar. 10, 2022). "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

"[A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion," and "the discovery rule applies to toll the statute of limitations in any case where a party *neither knows nor reasonably should have known of his injury* and its cause at the time his right to institute suit arises." *Fine v. Checcio*, 870 A.2d 850, 857, 859 (Pa. 2005) (emphasis added). "[T]he salient point giving rise to [the] application [of the discovery rule] is the inability of the injured, despite the exercise of *reasonable diligence*, to know that he is injured and by what cause." *Id.* at 858 (emphasis added). "[R]easonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Id.* "[T]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would

be successful. That is what is meant by reasonable diligence." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (emphasis added).

Mr. Mitchell argues that the early April 2021 statements to Dr. Woods are barred by the statute of limitations because Dr. Monge brought the present action against Mr. Mitchell on April 20, 2022, more than one year after the statements were allegedly made. Dr. Monge, however, argues that the statute of limitations does not bar her claim because the discovery rule tolled the statute of limitations. *See Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) (holding that "the discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct"). She argues that she did not have a reason to "awaken inquiry and direct diligence" to inform herself of the statements Mr. Mitchell made to Dr. Woods until *after* the publication of the Billy Penn and the Philadelphia Inquirer articles on April 21, 2021. *Fine*, 870 A.2d at 858. Dr. Monge argues that the discovery rule tolled the statute of limitations on her claim based on these statements because even "despite [her] exercise of reasonable diligence," she had no "reason to inform [her]self of the[se] facts" until the articles were published. *Id.* at 858. Thus, her cause of action did not accrue until sometime after April 21, 2021, making her April 20, 2022 complaint timely. *Id.* at 859.

The Court concludes that the discovery rule tolled the statute of limitations as to Dr. Monge's defamation claim based on these early April 2021 statements because Dr. Monge had no reason to know of these statements, even through the exercise of reasonable diligence, until after the allegedly defamatory articles were published by Billy Penn and the Philadelphia Inquirer on April 21, 2021. Dr. Monge has not alleged that Dr. Woods alerted her to Mr. Mitchell's accusations prior to the publication of the articles, nor has she alleged that any disciplinary action was initiated against her prior to April 21, 2021 such that she would have been put on notice of these statements.

Because the defamation claim based on the early April 2021 statements is timely, the Court must evaluate whether Mr. Mitchell can be held liable for these statements.

### 2. Whether Mr. Mitchell's Statements Are Privileged Under the Judicial Proceeding Privilege

Mr. Mitchell argues that his statements to Dr. Woods are privileged under the judicial proceeding privilege. The judicial proceeding privilege provides immunity for communications that are: "(1) issued as a matter of regular course of the proceedings; or (2) pertinent and material to the proceedings." *Bochetto v. Gibson*, 860 A.2d 67, 72 (Pa. 2004). "The privilege applies to judicial and quasi-judicial proceedings." *Fogel v. Univ. of the Arts*, No. 18-cv-5137, 2019 WL 1384577, at * 9–*10 (E.D. Pa. Mar. 27, 2019). "[U]nder Pennsylvania law government involvement is . . . a necessary condition for according quasi-judicial status to grievance procedures." *Overall v. Univ. of Pa.*, 412 F.3d 492, 497 (3d Cir. 2005). Where the "case involves an entirely private grievance procedure, the privilege available in Pennsylvania for communications made during quasi-judicial proceedings does not apply." *Harris v. St. Joseph's Univ.*, No. 13-cv-3927, 2014 WL 1910242, at *9 (E.D. Pa. May 13, 2014) (denying motion to dismiss defamation claim because statements made during an internal administrative disciplinary investigation and a student conduct hearing at a university were private grievance procedures and, thus, not privileged).

Here, Mr. Mitchell relies on *Fogel* in arguing that he is entitled to this privilege because the privilege has been extended to reports made to a university about the alleged misconduct of one of its professors. Dr. Monge, in response, argues that *Fogel* is inapplicable to Mr. Mitchell's statements to Dr. Woods because Mr. Mitchell intended to initiate a private investigation into Dr. Monge's conduct, thus he was participating in the Penn Museum's private grievance procedures rather than administrative procedures established by law. In *Fogel*, a university professor reported

the alleged sexual misconduct of another professor to the university's Title IX coordinator, which initiated a Title IX investigation into the alleged misconduct. 2019 WL 1384577, at *2–*3, *9. The Court concluded that the reporting professor's statements regarding the sexual misconduct were "pertinent and material" to the Title IX coordinator's subsequent investigation and conclusions regarding the misconduct. *Id.* at *10. Further, in *Fogel*, the reporting of the information to the university's Title IX coordinator initiated a Title IX investigation, which the Court concluded was a quasi-judicial proceeding. *Id.* at *9. Because it involved a quasi-judicial proceeding, the Court applied the judicial proceeding privilege to the statements made to the university's Title IX coordinator and dismissed the defamation claim based on these statements. *Id.* at *10.

Unlike the relevant communications in *Fogel*, Mr. Mitchell's communication to Dr. Woods cannot be considered as being involved in a quasi-judicial proceeding because it relates to a private investigation and "involves an entirely private grievance procedure." *Harris*, 2014 WL 1910242, at * 9. For these reasons, the judicial reporting privilege does not apply to Mr. Mitchell's early-April 2021 statements to Dr. Woods.

### 3.  Whether Mr. Mitchell's Allegedly Defamatory Statements Are Actionable

Because Mr. Mitchell's statements to Dr. Woods are neither time-barred nor privileged, the Court must consider whether they are actionable. Dr. Monge alleges that Mr. Mitchell met with Dr. Woods in early April 2021 and accused Dr. Monge of mishandling the unidentified MOVE remains and engaging in professional misconduct relating to the MOVE bombing investigation. He further expressed concerns relating to the Penn Museum's policies on the handling of the MOVE remains and accused Dr. Monge of lacking professionalism in her Coursera course. These statements could plausibly constitute defamation *per se*, so they may be actionable.

10

Words imputing business misconduct may be considered defamation *per se*. *Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999). "A statement is defamatory *per se* as an accusation of business misconduct if it ascribes to another conduct, characteristics or a condition that would adversely affect his fitness of the proper conduct of his lawful business." *Id.* (citing Restatement (Second) of Torts § 573) (internal quotation marks omitted). A negative opinion or mere general disparagement are not enough—the statement "must be of the type that would be particularly harmful to an individual engaged in the plaintiff's business or profession." *Id.*

The statements Mr. Mitchell allegedly made to Dr. Woods plausibly constitute defamation *per se* because they are "words imputing . . . business misconduct." *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990). First, the alleged statements themselves call into question Dr. Monge's fitness as an anthropologist and as a teacher. Second, the identities and positions of the speaker and the audience are important here, as they give greater weight to the statements. Mr. Mitchell is a doctoral candidate at the University of Pennsylvania who has experience working with Dr. Monge in the Penn Museum. Dr. Woods is the director of the Penn Museum and acts in a supervisory capacity to Dr. Monge at the museum. So, Mr. Mitchell's accusations that Dr. Monge mishandled remains, engaged in professional misconduct, and lacked professionalism in teaching an anthropology course are "of the type that would be particularly harmful" to Dr. Monge's ability to conduct business as an anthropologist, a professor, or a museum curator, or to engage in the profession of anthropology. *Synygy*, 51 F. Supp. 2d at 580.

Because Dr. Monge has established that the statements could plausibly constitute defamation *per se*, the Court must determine whether Dr. Monge has established the requisite level of fault to succeed on her defamation claim. *See Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 465 (E.D. Pa. 2017), *aff'd Mallory v. Simon & Shuster, Inc.*, 728 F. App'x 132, 136 n.2 (3d Cir.

2018) ("When a limited purpose public figure raises a defamation per se claim, she must show by clear and convincing evidence that the defendant acted with actual malice in publishing statements about her."); *see also Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1087–88 (3d Cir. 1985) (holding that plaintiff did not prove actual malice to prevail on his defamation per se claim against the defendant). The requisite level of fault turns on whether Dr. Monge is a limited public figure or a private figure. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342–43 (1974) (providing that public figure plaintiffs must prove actual malice with respect to the publication of allegedly defamatory statements); *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007) (providing that private figures plaintiff need only prove negligence with respect to the publication of allegedly defamatory statements).

Dr. Monge is a limited public figure with respect to the MOVE bombing and the identification of the MOVE remains—both of which are public controversies—and she became a limited public figure in 2019 when she published her course on the Coursera online platform. *Monge v. Univ. of Pa.*, No. 22-cv-2942, 2023 WL 3571935, at *14 (E.D. Pa. May 19, 2023); *see also McDowell v. Paiewonsky*, 769 F.2d 942, 948–49 (3d Cir. 1985) (concluding that a public controversy is "a real dispute, the outcome of which affects the general public or some segment of it"); *Gertz*, 418 U.S. at 351 (concluding that when "an individual voluntarily injects himself or is drawn into a particular public controversy [he] thereby becomes a public figure for a limited range of issues").

As a limited public figure, Dr. Monge "must allege *facts* to support an inference of actual malice" at the pleading stage. *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021). Actual malice is "knowledge that [the statement] was false or [was made] with reckless disregard of whether [the statement] was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

"Reckless disregard" has been sufficiently pled where a plaintiff shows that the defendant "entertained serious doubts as to the truth" of the published statements. *Masson*, 501 U.S. at 510. "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth. Rather the publisher must act with a high degree of awareness of . . . probable falsity." *Gertz*, 418 U.S. at 332 (internal quotation marks omitted).

The current pleadings from Dr. Monge fail to meet this high burden. She alleges no facts that suggest that Mr. Mitchell had doubts as to the truth of his statements prior to making them. *See Masson*, 501 U.S. at 510. Although she alleges that Mr. Mitchell made the statements to Dr. Woods "without any foundation" and that Mr. Mitchell acted "with full knowledge that he was falsifying information," Am. Compl. ¶¶ 8, 148, these conclusory allegations are insufficient to establish that Mr. Mitchell acted with reckless disregard of the truth, or that he entertained a "high degree of awareness of [the] probable falsity" of the statements because Dr. Monge provides no factual support for these allegations. *Gertz*, 418 U.S. at 332. Dr. Monge only generally alleges that Mr. Mitchell, and all of the other defendants, acted with actual malice. *See* Am. Compl. ¶ 196 ("The false and defamatory statements described above and contained in the articles identified were published with knowledge that said statements, innuendo, inference, and manner in which they were presented were false and/or with reckless disregard for whether said material was false, said conduct constituting actual malice."). Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," cannot overcome a Rule 12(b)(6) motion to dismiss. *Ashcroft*, 556 U.S. at 678.

Because Dr. Monge fails to plead actual malice, the Court must dismiss without prejudice the defamation claim against Mr. Mitchell based on his early April 2021 statements to Dr. Woods. *See McCafferty*, 955 F.3d at 360 (affirming dismissal of defamation claim for failure to "plead

facts that suggest actual malice"); *Pace*, 850 F. App'x at 831–32 (affirming dismissal of defamation claim for "conclusory allegations" of actual malice).

### C. Mr. Mitchell's Aiding in the Publication of the Billy Penn and the Philadelphia Inquirer Articles

Dr. Monge alleges that Mr. Mitchell aided in the publication of the Billy Penn article authored by Ms. Kassutto, and the Philadelphia Inquirer article authored by Mr. Muhammad. Mr. Mitchell argues that this purported aid cannot serve as the basis for a defamation claim because there was no publication by Mr. Mitchell. Rather, it was Billy Penn and the Philadelphia Inquirer who published the allegedly defamatory statements. Further, Mr. Mitchell notes that Dr. Monge fails to allege any facts demonstrating *how* Mr. Mitchell aided the publication of these articles, thus he argues that her allegations are conclusory and are insufficient to sustain her claim.

To succeed on a defamation claim, a plaintiff must allege "publication by the defendant" of the allegedly defamatory statement. 42 Pa. Cons. Stat. § 8343(a). Although Dr. Monge need not identify the specific defamatory statement, she must do more than assert merely conclusory allegations to survive dismissal. *Lee*, 2019 WL 4060843, at *6. This means that Dr. Monge must allege that Mr. Mitchell published a statement for the Court to find that he adequately pled his claim under Rule 8(a). *See Gaetano v. Sharon Herald Co.*, 231 A.2d 753, 755 (Pa. 1967) (providing that no cause of action for defamation "arises until there is a publication of the defamatory matter, which is 'its communication intentionally or by a negligent act to one other than the person defamed.'") (quoting Restatement (First) of Torts § 577)).

Dr. Monge has plausibly alleged that Mr. Mitchell "published" defamatory statements to Billy Penn because she alleges that Mr. Mitchell contacted Ms. Kassutto—a writer for Billy Penn—and communicated allegedly defamatory statements to her regarding the MOVE remains

and Dr. Monge's alleged mishandling of the remains.[3] Further, under Rule 8(a), Dr. Monge's allegations are sufficient because she identified the speaker of the allegedly defamatory statement (Mr. Mitchell), the approximate date of the statement (sometime before April 21, 2021), the content of the statement (Dr. Monge's handling of the MOVE remains), and the audience to whom the statement was made (Ms. Kassutto). *See Lee*, 2019 WL 4060843, at *6.

As set forth above, Mr. Mitchell's statements to Ms. Kassutto that Dr. Monge mishandled the MOVE remains plausibly constitute defamation *per se* as "words imputing . . . business misconduct" because they call into question Dr. Monge's fitness as an anthropologist. *Clemente*, 749 F. Supp. at 677. However, because Dr. Monge has failed to sufficiently allege actual malice, as discussed *supra*, the Court must dismiss without prejudice Dr. Monge's defamation claim based on Mr. Mitchell's alleged aiding in the publication of the Billy Penn article.

### D. Mr. Mitchell's Paper

Dr. Monge asserts that on April 23, 2021, Mr. Mitchell prepared a paper about the handling and identity of the MOVE remains. It allegedly states that the remains are those of Katricia and Delisha Africa and condemns the handling of the remains. Mr. Mitchell then allegedly distributed the paper to University of Pennsylvania employees, MOVE members, and media outlets. Dr. Monge did not attach Mr. Mitchell's paper to her complaint.

Dr. Monge has adequately alleged her claim relating to Mr. Mitchell's paper under the pleading standard set forth in Rule 8(a). Dr. Monge first alleges that Mr. Mitchell wrote a paper stating that the remains were those of Katricia and Delisha Africa and condemning the handling of the remains. This allegation put Mr. Mitchell on notice as to the nature of the allegedly defamatory statements that Dr. Monge attributes to Mr. Mitchell. *See Rishell*, 2007 WL 1545622,

---

[3]      Dr. Monge has failed to allege that Mr. Mitchell published any defamatory statements to the Philadelphia Inquirer, thus the defamation claim based on this conduct was not adequately pled.

at *3. Further, Dr. Monge did more than assert mere conclusory allegations about this paper. She identified the speaker of the allegedly defamatory statement (Mr. Mitchell), the approximate date the statement was made (April 23, 2021), the content of the allegedly defamatory statement (the identity and handling of the MOVE remains), and the audience to whom the statement was made (University of Pennsylvania employees, MOVE members, and media outlets). *See Lee*, 2019 WL 4060843, at *6. Therefore, under Rule 8(a), Dr. Monge has adequately alleged a defamation claim against Mr. Mitchell relating to this paper.

Mr. Mitchell also argues that Dr. Monge fails to state a claim for defamation because the paper does not name Dr. Monge. A defamation claim is "constitutionally defective" if it is not "of and concerning" the plaintiff. *N.Y. Times*, 376 U.S. at 288. A statement is "of and concerning" an individual when it is "capable of being reasonably understood as intended to refer to the complainant." *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1385 (Pa. Super. Ct. 1984). Dr. Monge argues that while she is not explicitly named in Mr. Mitchell's paper, it is reasonable to conclude that the paper is referring to Dr. Monge's conduct because at the time of its publication and circulation, Dr. Monge was the only scientist working to identify these remains. *See, e.g., Cosgrove Studio & Camera Shop, Inc. v. Pane*, 182 A.2d 751, 753 (Pa. 1962) ("The fact that the plaintiff is not specifically named in the advertisement is not controlling. *A party defamed need not be specifically named, if pointed to by description or circumstances tending to identify [her.]*") (emphasis added). Thus, although Dr. Monge is not named in Mr. Mitchell's paper, the paper is "capable of being reasonably understood as intend[ing] to refer to" Dr. Monge, so it satisfies the requisite pleading standard for a defamation claim. *Harris*, 483 A.2d at 1385.

The allegedly defamatory statements that are contained in Mr. Mitchell's paper include statements on the handling of the MOVE remains and the identity of the MOVE remains. Dr.

Monge alleges that the paper asserts that the remains are those of Katricia and Delisha Africa and condemns the handling of the MOVE remains.

The allegations in Dr. Monge's amended complaint demonstrate that the statement regarding the identity of the remains is substantially true. *See Dunlap*, 448 A.2d at 15. Thus, Mr. Mitchell cannot be held liable for this statement. *See Tucker*, 237 F.3d at 287. Dr. Monge alleges that she and Dr. Mann determined that the bones belonged to an individual between the ages of 17 to 21. However, she admits that Dr. Ali Hameli—the lead pathologist of the MOVE Commission formed by the City of Philadelphia to investigate the MOVE bombing—concluded in his report that the bones belonged to Katricia Africa, a 14-year-old girl presumed to have been killed during the MOVE bombing. It is therefore at least substantially true that the remains belonged to Katricia and/or Delisha Africa. Because this allegedly defamatory statement is true, it is not actionable. *See id.*

Dr. Monge also alleges that Mr. Mitchell defamed her by condemning the handling of the MOVE remains. As set forth above, although Dr. Monge was not explicitly identified in the paper, the "description or circumstances" in the paper "tend[] to identify [Dr. Monge]" because she was the only scientist at the Penn Museum handling the MOVE remains at the time Mr. Mitchell's paper was published. *Cosgrove Studio*, 182 A.2d at 753. So, it is reasonable that the paper could be understood as condemning Dr. Monge's handling of the remains. *See Harris*, 483 A.2d at 1385. However, in the Amended Complaint, Dr. Monge fails to allege *how* the paper condemns the handling of the remains. In her response in opposition to Mr. Mitchell's motion to dismiss, Dr. Monge argues that the statements in Mr. Mitchell's paper "consisted of the same content as those statements made to [Dr.] Woods," as set forth above. Pl.'s Resp. to Mot. to Dismiss at 26. Assuming, *arguendo*, that this is true, these statements can plausibly be considered defamation *per*

*se* to the extent they also call into question Dr. Monge's fitness as an anthropologist. But at this stage, based on Dr. Monge's current pleadings, these statements are not actionable because Dr. Monge, a limited purpose public figure, fails to allege actual malice. *See Mallory*, 260 F. Supp. 3d at 465; *McCafferty*, 955 F.3d at 360.

For all of these reasons, the Court will grant Mr. Mitchell's motion to dismiss the complaint as to Dr. Monge's defamation claim without prejudice to Dr. Monge to endeavor to replead her claim should she determine that she is able to allege actual malice.

## II.     Defamation by Implication

A claim for defamation also exists where "the context in which the[] statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010). To sustain such a claim, the implication "must be warranted, justified and supported by the publication." *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 217 (Pa. 1981). The Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1994). "When the implication alleged by the plaintiff is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim." *Pace*, 432 F. Supp. 3d at 510 (internal quotation marks omitted).

Although Dr. Monge does not explicitly allege so in the Amended Complaint, she argues in her response to Mr. Mitchell's motion to dismiss that Mr. Mitchell's statements imply that Dr. Monge deviated from professional standards in handling the MOVE remains, that she had a racial motive for the way that she handled the remains, and that Dr. Monge was an ineffective forensic anthropologist.

Any implication that Dr. Monge's actions were motivated by a racially based animus is a non-actionable pure opinion. Dr. Monge argues that "given the racial undertones of the MOVE

bombing and subsequent investigation, these statements . . . falsely imply that Dr. Monge may have had a racial motive for the way she handled the remains." Pl.'s Resp. to Mot. to Dismiss at 26. Whether or not Dr. Monge's conduct was racially motivated is an opinion, and that opinion does not "impl[y] the allegation of undisclosed defamatory facts." *Braig*, 456 A.2d at 1372. Further, "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior. . . . Those statements are just more opinions based on disclosed facts, so they too are not actionable." *McCafferty*, 955 F.3d at 359.

The alleged implications that Dr. Monge deviated from professional standards in handling the MOVE remains and that she was an ineffective forensic anthropologist plausibly constitute defamation *per se* because they call into question Dr. Monge's fitness as an anthropologist and are "particularly harmful" to Dr. Monge's engagement in the anthropology profession. *Synygy*, 51 F. Supp. 2d at 580. This does not mean, however, that Dr. Monge's defamation by implication survives dismissal because Dr. Monge is still required to allege actual malice as a limited purpose public figure. *Mzamane*, 793 F. Supp. 2d at 505–10. Because Dr. Monge has failed to plead that Mr. Mitchell acted with actual malice, the Court must dismiss the defamation by implication claims against him. *See McCafferty*, 955 F.3d at 360; *Pace*, 850 F. App'x at 831–32.

The Court will grant Mr. Mitchell's motion to dismiss the defamation by implication claim without prejudice to Dr. Monge, subject to the same possibilities as mentioned above.

### III.   False Light

Dr. Monge also asserts a claim for false light. Under Section 652E of the Restatement (Second) of Torts, one who places another "before the public in a false light" is subject to liability "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second)

of Torts § 652E. "The required standard of fault in a false light claim is . . . actual malice." *Rubin v. CBS Broad., Inc.*, 170 A.3d 560, 568 n.9 (Pa. Super. Ct. 2017).

To the extent Mr. Mitchell's statements, and any alleged implications based on such statements, are substantially true, are not highly offensive to a reasonable person, or are "opinion[s] based on disclosed facts," they are not "false." *McCafferty*, 955 F.3d at 360. The false light claim fails here as a matter of law as to these substantially true statements or opinion-based implications. *Id.; see also Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988). To the extent the statements, and any alleged implications based on such statements, are defamatory *per se* and are "highly offensive to a reasonable person," the false light claim fails here as a matter of law because Dr. Monge fails to sufficiently plead actual malice, the required standard of fault for a false light claim. *Rubin*, 170 A.3d at 568 n.9.

The Court will grant without prejudice Mr. Mitchell's motion to dismiss the false light claim. Dr. Monge may endeavor to replead this claim should she determine that she is able to allege actual malice.

## IV.   Civil Aiding and Abetting

Dr. Monge also brings a claim for civil aiding and abetting. She generally alleges that "[t]he behaviors in which the defendants engaged aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge in a concerted effort to accomplish the particular result of branding [Dr.] Monge as incompetent and racist." Am. Compl. ¶ 218. She further alleges that "[w]hen each of the defendants published their defamatory statements they knew or should have known through reasonable diligence that the conduct of each of them was tortious and provided substantial assistance and/or encouragement to engage in such tortious misconduct." *Id.* ¶ 219.

A defendant is subject to liability for civil aiding and abetting if he "does a tortious act in concert with the other or pursuant to a common design," "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself," or "gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." Restatement (Second) of Torts § 876. To demonstrate "substantial assistance," the plaintiff must establish that the defendant took "some affirmative action which cause[d] the tortious actor to conduct himself inappropriately." *Doe v. Liberatore*, 478 F. Supp. 2d 742, 759 (M.D. Pa. 2007). When considering "substantial assistance," courts consider "the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind." Restatement (Second) of Torts § 876 cmt. d. Liability "can only be imposed where a plaintiff avers sufficient facts indicating that the [defendant] substantially assisted or encouraged [the bad actor's] tortious conduct." *Welc v. Porter*, 675 A.2d 334, 339 (Pa. Super. Ct. 1996).

As to substantial assistance, Dr. Monge alleges that Mr. Mitchell aided in the publication of the Billy Penn and the Philadelphia Inquirer articles. She alleges that Mr. Mitchell contacted Ms. Kassutto, whom he knew worked for Billy Penn at the time, after which she wrote the allegedly defamatory article. However, Dr. Monge fails to allege more than mere conclusory allegations regarding substantial assistance because she has not alleged facts demonstrating *how* Mr. Mitchell aided the publication of these articles. Even assuming, *arguendo*, that Dr. Monge had alleged substantial assistance by Mr. Mitchell, the civil aiding and abetting claim would still fail because under the current pleadings, the Billy Penn and the Philadelphia Inquirer articles are *not* tortious. *See Monge v. Univ. of Pa.*, No. 22-cv-2942, 2023 WL 3692935, at *9 (E.D. Pa. May 26, 2023)

(granting Billy Penn and Maya Kassutto's motion to dismiss Dr. Monge's claims); *Monge v. Univ. of Pa.*, No. 22-cv-2942, 2023 WL 2648201, at *8 (E.D. Pa. Mar. 24, 2023) (granting the Philadelphia Inquirer, Abdul Aliy Muhammad, and Jenice Armstrong's motion to dismiss Dr. Monge's claims). Thus, Dr. Monge's civil aiding and abetting claim must fail because substantial assistance of *tortious* conduct is required for a civil aiding and abetting claim. *See Doe*, 478 F. Supp. 2d at 759.

The Court will grant Mr. Mitchell's motion to dismiss the civil aiding and abetting claim without prejudice.

## CONCLUSION

For all of these reasons, the Court will grant Mr. Mitchell's motion to dismiss without prejudice as to the defamation, defamation by implication, false light, and civil aiding and abetting claims. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

22