IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MONGE, | : | |
|        *Plaintiff* | : | CIVIL ACTION |
| | : | |
|    v. | : | |
| | : | |
| UNIVERSITY OF PENNSYLVANIA *et al.*, | : | |
|        *Defendants* | : | No. 22-2942 |

## MEMORANDUM

PRATTER, J.                                                                                     JUNE 27, 2023

The Society of Black Archaeologists moves to dismiss the claims brought against it by Janet Monge, arguing that this Court lacks jurisdiction over it. For the reasons that follow, the Court grants the motion to dismiss.

### BACKGROUND[1]

The Society of Black Archaeologists (SBA) is a business entity with a corporate mailing address in Santa Monica, California. Dr. Monge alleges that the SBA "is an international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in archaeological research." Am. Compl. ¶ 41.

On April 26, 2021, the Association of Black Anthropologists (ABA), the Society of Black Archaeologists (SBA), and the Black in Bioanthropology Collective (BiBA) released a collective statement, published on the Wenner-Gren Blog, asserting that the groups "condemn in the strongest possible language the University of Pennsylvania, Princeton University, Coursera, along with Professors Alan Mann and Janet Monge, for their horrific treatment of the remains of Tree and Delisha Africa, and for the unfathomable heartlessness and disrespect shown towards the

---

[1]     The factual and procedural background of this matter is set forth in the court's February 3, 2023 memorandum.

1

Africa family." Am. Compl. ¶ 167; Ex. P to the Am. Compl. at ECF 203. Dr. Monge alleges that these statements suggest that her conduct was unethical and that she was motivated by racial animus. The collective statement also demanded that Dr. Monge be terminated from her positions as curator at the Penn Museum and as a faculty member in the department of anthropology at the University of Pennsylvania.

SBA seeks dismissal of the Amended Complaint under Rule 12(b)(2) because it contends that the Court lacks personal jurisdiction over it. In the alternative, SBA also seeks dismissal under Rule 12(b)(6) because it argues that Dr. Monge has failed to state a claim upon which relief can be granted.

## LEGAL STANDARD

In ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court takes the allegations of the complaint as true. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). However, once a jurisdictional defense is raised, the plaintiff bears the burden of proving, through "sworn affidavits or other competent evidence," that contacts with the forum state are sufficient to establish personal jurisdiction. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). The plaintiff must establish those contacts with "reasonable particularity," *see Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992), and "must respond with actual proofs, not mere allegations." *Time Share*, 735 F.2d at 66 n.9. "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion . . . ." *Id.*

DISCUSSION

I.     Whether Dr. Monge's Response to SBA's Jurisdictional Defense Was Sufficient

Dr. Monge generally alleges that the Court has personal jurisdiction over all of the named defendants "because the [d]efendants either live in Pennsylvania, are incorporated in Pennsylvania, or carry out a continuous and systematic part of their general business within this Commonwealth." Am. Compl. ¶ 61. With respect to SBA, Dr. Monge alleges that SBA "is a business entity with a corporate mailing address of PO Box 3771, Santa Monica, California, 90409." *Id.* ¶ 41. Because Dr. Monge does not allege that SBA is incorporated or headquartered in Pennsylvania, the Court construes the Amended Complaint as alleging that SBA "carr[ies] out a continuous and systematic part of [its] general business" in Pennsylvania. *Id.* at ¶ 61.

In its motion to dismiss, SBA argues that, based solely on Dr. Monge's pleadings, it is inaccurate to characterize SBA as having *any* "general business" at all because Dr. Monge alleges only that SBA "is an international organization of Black archaeologists, with the stated goal of advocacy for the histories and material culture of global Black and African communities in archaeological research." Am. Compl. ¶ 41. Because Dr. Monge does not allege that SBA carries out any business, SBA argues that Dr. Monge has failed to establish that the Court can exercise personal jurisdiction over it. SBA further argues that to the extent the Court finds that SBA does conduct business, the Court still cannot exercise jurisdiction because Dr. Monge has not alleged or proven that SBA conducts its business in Pennsylvania.

In response to SBA's motion to dismiss, Dr. Monge asserts that the Court has personal jurisdiction over SBA because SBA maintains a website that is accessible within Pennsylvania, thus it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Hammons v. Ethicon, Inc.*, 240 A.3d 537, 556 (Pa. 2020). Dr. Monge contends that

3

Pennsylvania residents can access webinars which are streamed on SBA's website and that it is likely that there are dues-paying members of SBA in Pennsylvania. SBA argues that this response is insufficient because "once a defendant has raised a jurisdictional defense, [the] plaintiff bears the burden of *proving by affidavit or other competent evidence* that jurisdiction is proper." *Dayhoff*, 86 F.3d at 1302. Thus, SBA argues, because Dr. Monge did not provide any such affidavits or other competent evidence establishing facts which prove that the exercise of jurisdiction over SBA is proper, she has failed to satisfy her burden of proof in responding to SBA's asserted jurisdictional defense. *See id.*

The Court will properly consider the evidentiary burden borne by Dr. Monge in evaluating whether SBA has minimum contacts with Pennsylvania such that this Court can exercise jurisdiction over SBA.

## II.    Personal Jurisdiction

Federal district courts exercise personal jurisdiction according to the law of the state where the court sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute provides for jurisdiction "to the fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b); *O'Connor*, 496 F.3d at 316; *cf. Mallory v. Norfolk S. Ry. Co.*, No. 21-1168, 2023 WL 4187749, at *7–*9 (U.S. June 27, 2023) (providing that the exercise of general jurisdiction over a foreign corporation based on its consent to suit in Pennsylvania as a requirement for its registration to do business with Pennsylvania does not violate the due process clause) (citing *Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917)). Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does

4

not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. *O'Connor*, 496 F.3d at 317. Because Dr. Monge and SBA address both general and specific jurisdiction in their briefing, the Court will consider each in turn.

## A. General Jurisdiction

Where a foreign corporation has consented to suit in the forum state as a function of registering to do business in that state, the exercise of general jurisdiction is proper. *See Mallory*, 2023 WL 4187749, at *7. Where a foreign corporation has not consented to suit in the forum state, general jurisdiction requires that corporations have affiliations with the forum state "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *accord Mallory*, 2023 WL 4187749, at *8 (providing that *Daimler* and *Goodyear* "have long spoken of the decision [in *International Shoe*] as asking whether a state court may exercise jurisdiction over a corporate defendant that *has not* consented to suit in the forum.") (internal quotation marks omitted). A corporation is "at home" in its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. If "a defendant's contacts 'plainly [do] not approach' the quantity required for general jurisdiction, th[e] Court need not inquire as to the other means by which a defendant can satisfy general jurisdiction." *Allaham v. Naddaf*, 635 F. App'x 32, 38 (3d Cir. 2015) (quoting *Daimler*, 571 U.S. at 139 n.19).

Here, the Court cannot exercise general jurisdiction over SBA. Dr. Monge has not alleged that SBA has registered to do business in Pennsylvania, nor has she alleged that SBA otherwise consented to suit in Pennsylvania. *Cf. Mallory*, 2023 WL 4187749, at *7–*8. Dr. Monge has also not alleged that SBA is incorporated or has its principal place of business in Pennsylvania. Rather,

she alleged that SBA's corporate mailing address is in California. She pleads nothing at all that would suggest that SBA would be "at home" in this forum state. Thus, SBA is not subject to this Court's general jurisdiction. *See Daimler*, 571 U.S. at 137–39.

## B. Specific Jurisdiction

"Specific jurisdiction . . . depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). So, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.*; *accord BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (internal quotation marks omitted) (providing that specific jurisdiction is established where the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate[] to those activities").

The Third Circuit Court of Appeals has set forth a three-part test to analyze whether a party's contacts are sufficient to permit the exercise of specific jurisdiction in accordance with the mandates of due process. *O'Connor*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *Id.* (citing *Burger King*, 471 U.S. at 476) (internal quotation marks omitted).

### 1. Whether SBA Purposefully Directed Its Activities at Pennsylvania

The Court must first determine whether SBA purposefully directed its activities at Pennsylvania. "[T]he critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103–04 (3d Cir. 2009). When the purported contact with the forum state is the defendant's Internet usage, "the jurisdictional framework set out in *Zippo [Manufacturing] v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is widely accepted as the best approach to assess whether a nonresident defendant's internet usage justifies the exercise of personal jurisdiction." *Pacheco v. Padjan*, No. 16-cv-3625, 2017 WL 3217160, at *3 (E.D. Pa. July 28, 2017). *Zippo* sets forth the test as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (internal citations omitted).

"The [p]laintiff must also provide evidence 'of the intentional nature of the defendant's conduct vis-à-vis the forum state.'" *Square D Co. v. Scott Elec. Co.*, No. 06-cv-459, 2008 WL 4462298, at * 6 (W.D. Pa. Sept. 30, 2008) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003)). "[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." *Toys "R" Us*, 318 F.3d at 454. "Rather,

7

there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* "If a defendant web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied." *Id.* at 452.

First, the Court must assess the level of interactivity of SBA's website along the sliding scale described in *Zippo*, 952 F. Supp. at 1124. Dr. Monge asserts that SBA has a website which is accessible in Pennsylvania and that SBA conducts webinars on its website that can be streamed anywhere in Pennsylvania.[2] Based on these assertions, the Court finds that SBA's website is a passive website which merely makes information available via the Internet. *Zippo*, 952 F. Supp. at 1124. Dr. Monge only asserts that SBA posts webinars on its website that can be streamed and viewed by residents of Pennsylvania. She does not, however, assert that residents of Pennsylvania can or do exchange information over the Internet via SBA's website—for example, she does not assert that the hypothetical SBA members in Pennsylvania pay their dues to SBA via its website. *Cf. Square D*, 2008 WL 4462298, at * 8 ("The site allowed existing and potential customers to interact with [the defendant] by submitting an inquiry about particular products, putting it in the 'middle ground' of the *Zippo* scale."). Because SBA's website is passive, "it is not grounds for the exercise [of] personal jurisdiction" and the Court need not examine the "commercial nature of the

---

[2]     Dr. Monge also argues that the collective statement published on the Wenner-Gren Blog demanding Dr. Monge's termination is akin to a web-based solicitation of business, which she avers provides further support to the exercise of jurisdiction over SBA. However, in response, SBA points out that the collective statement at issue in Dr. Monge's Amended Complaint was never posted on SBA's website, nor are there any allegations that Pennsylvania members of SBA were involved in any way with the collective statement. Because Dr. Monge's argument regarding a web-based solicitation on the Wenner-Gren Blog is unrelated to its arguments about SBA's own website, the Court does not find it to be persuasive with respect to the exercise of jurisdiction over SBA.

exchange of information," *Zippo*, 952 F. Supp. at 1124, nor whether the website was "designed or intended to reach customers" in Pennsylvania. *Toys "R" Us*, 318 F.3d at 454.

Therefore, SBA does not have sufficient minimum contacts with Pennsylvania and this Court cannot exercise personal jurisdiction over SBA.

### 2. Whether the Current Litigation Arises Out of SBA's Contacts with Pennsylvania

Even if the Court were to find, *arguendo*, that SBA had minimum contacts with Pennsylvania because of its website, Dr. Monge's claims against SBA do not arise out of these contacts. *See O'Connor*, 496 F.3d at 317. For the Court to exercise specific jurisdiction, there must be an "affiliatio[n] between the forum and the underlying controversy" because "specific jurisdiction is confined to adjudication of issues *deriving from, or connected with, the very controversy that establishes jurisdiction.*" *Goodyear*, 564 U.S. at 919 (emphasis added) (internal quotation marks omitted). Here, SBA's purported contact with Pennsylvania is its website, which is accessible to individuals in Pennsylvania, and, as Dr. Monge contends without the requisite support, the existence of dues-paying members of SBA who reside in Pennsylvania. However, the underlying controversy between Dr. Monge and SBA stems from the collective statement published not on SBA's website, but on a third-party website—the Wenner-Gren Blog. Dr. Monge has not alleged, nor has she argued, that SBA is in any way affiliated with this blog, nor does it have ownership or exercise control over this blog. Further, Dr. Monge has not alleged that any Pennsylvania members of SBA were involved with the collective statement. The present litigation does not arise out of SBA's purported contacts with Pennsylvania; therefore, the Court cannot exercise specific jurisdiction over SBA.[3]

---

[3]     Because the Court finds that SBA lacks minimum contacts with Pennsylvania and thus will not exercise specific jurisdiction over SBA, it need not consider whether exercising jurisdiction over SBA comports with fair play and substantial justice. *See O'Connor*, 496 F.3d at 317 ("*[I]f the prior two*

9

CONCLUSION

The Court will grant without prejudice the Society of Black Archeologists' motion to dismiss Dr. Monge's claims because the Court lacks jurisdiction.[4] An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

*requirements are met*, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.") (emphasis added) (internal quotation marks omitted); *Burger King*, 471 U.S. at 476 (*"Once it has been decided that a defendant purposefully established minimum contacts within the forum State*, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (emphasis added).

[4] Even assuming *arguendo* that this Court had jurisdiction over SBA, SBA's motion to dismiss would still be granted for the reasons set forth in the Court's March 7, 2023 memorandum opinion resolving the American Anthropological Association's motion to dismiss, the subject of which was the same collective statement published on the Wenner-Gren Blog by the ABA, SBA, and BiBA. *See generally Monge v. Univ. of Pa.*, No. 22-cv-2942, 2023 WL 2391004 (E.D. Pa. Mar. 7, 2023).