IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------- x

JANET MONGE,                                          :
                                                      :
                         Plaintiff,                   :
                                                      :          No. 22-cv-2942-GEKP
            - against -                               :
                                                      :
UNIVERSITY OF PENNSYLVANIA, et al.,                   :
                                                      :
                         Defendants.                  :
                                                      :
---------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MEDIA DEFENDANTS'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Andrew A. Chirls                          Jeremy A. Chase (*pro hac vice*)
FINEMAN KREKSTEIN & HARRIS, P.C.          Amanda Levine (*pro hac vice*)
Ten Penn Center                           Alexandra Settelmayer (*pro hac vice*)
1801 Market Street, Suite 1140            DAVIS WRIGHT TREMAINE LLP
Philadelphia, PA 19103                    1251 Avenue of the Americas, 21st Floor
Tel: (215) 893-8715                       New York, NY 10020
Email: achirls@finemanlawfirm.com         Tel: (212) 489-8230
                                          Email:  jeremychase@dwt.com
                                                  amandalevine@dwt.com
                                                  alexandrasettelmayer@dwt.com

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

    I.    THE LAW OF THE CASE DOCTRINE PRECLUDES PLAINTIFF'S
        EFFORTS TO RELITIGATE WHETHER SHE IS A LIMITED-
        PURPOSE PUBLIC FIGURE ....................................................................... 3

    II.    PLAINTIFF'S DEFAMATION BY IMPLICATION CLAIMS FAIL ................. 5

        A.    Plaintiff Has Not Sufficiently Pled Actual Malice ..................................... 5

        B.    The Remaining Challenged Statements Are Non-Actionable
            Opinions ................................................................................................ 8

            1.    Statements That Plaintiff Contends Imply She Is Racist Are
                Non-Actionable Opinions ............................................................... 9

            2.    Statements That Plaintiff Contends Imply That She Acted
                Unprofessionally or Unethically Are Non-Actionable
                Opinions ...................................................................................... 11

    III.    PLAINTIFF'S FALSE LIGHT CLAIMS FAIL .................................................. 14

    IV.    PLAINTIFF'S AIDING AND ABETTING CLAIMS FAIL ............................. 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcuri v. Cty. of Montgomery*,
    2021 WL 1811576 (E.D. Pa. May 6, 2021) ..........................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................7

*Balletta v. Spadoni*,
    47 A.3d 183 (Pa. Commw. Ct. 2012) .....................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................7

*Biro v. Condé Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ...........................4

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)................................................................................................................4

*Counterman v. Colorado*,
    143 S. Ct. 2106 (2023).............................................................................................................5

*Elia v. Erie Ins. Exch.*,
    634 A.2d 657 (Pa. Super. Ct. 1993)........................................................................................9

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)..................................................................................................................5

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)................................................................................................................7

*Goldfarb v. Kalodimos*,
    539 F. Supp. 3d 435 (E.D. Pa. 2021) ...............................................................................13, 14

*Graboff v. Colleran Firm*,
    744 F.3d 128 (3d Cir. 2014)...................................................................................................14

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009)....................................................................................................4

*MacElree v. Philadelphia Newspapers, Inc.*,
    674 A.2d 1050 (Pa. 1996) .....................................................................................................10

*McCafferty v. Newsweek Media Grp., Ltd.*,
  955 F.3d 352 (3d Cir. 2020) ...................................................................... 4, 7, 9, 11

*Menkowitz v. Peerless Publications, Inc.*,
  176 A.3d 968 (Pa. Super. 2017) ......................................................................... 13

*Mitchell v. Herald Co.*,
  137 A.D.2d 213 (N.Y. App. Div. 4th Dep't 1988) ............................................... 8

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ....................................................................................... 5, 15

*Pace v. Baker-White*,
  850 F. App'x 827 (3d Cir. 2021) ......................................................................... 5

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ............................................................................... 6

*Puchalski v. School District of Springfield*,
  161 F. Supp. 2d 395 (E.D. Pa. 2001) ................................................................ 10

*Redco Corp. v. CBS, Inc.*,
  758 F.2d 970 (3d Cir. 1985) ............................................................................... 9

*Reilly v. WNEP*,
  2021 WL 1017154 (Pa. Super. Mar. 17, 2021) ................................................. 10

*Shuman v. N.Y. Mag.*,
  211 A.D.3d 558 (N.Y. App. Div. 1st Dep't 2022), *lv. denied*, 2023 WL 6153471
  (N.Y. Sept. 21, 2023) .......................................................................................... 8

*Tucker v. Fischbein*,
  237 F.3d 275 (3d Cir. 2001) ............................................................................ 7, 8

*Tucker v. Phila. Daily News*,
  848 A.2d 113 (Pa. 2004) ...................................................................................... 5

Defendants Advance Magazine Publishers Inc. d/b/a The New Yorker and Teen Vogue, Ezra Lerner, Heather A. Thompson, Associated Newspapers Limited d/b/a The Daily Mail, Adam Schrader, ESPN, Inc. d/b/a Andscape, Linn Washington, Nicole Froio, Guardian News & Media Limited d/b/a The Guardian, Ed Pilkington, NYP Holdings, Inc. d/b/a New York Post, Jackson O'Bryan a/k/a Blake Montgomery, The New York Times Company, Michael Levenson, The Slate Group, LLC, and Elaine Ayers (collectively, the "Media Defendants") respectfully submit this reply memorandum of law in support of their motion to dismiss the SAC.[1]

## PRELIMINARY STATEMENT

The Media Defendants demonstrated in their Motion that the remaining claims Plaintiff has asserted against them in the SAC are wholly without merit and must be dismissed under basic principles of defamation law.[2]  Plaintiff's answering brief (Dkt. 150) (the "Opposition" or "Pl. Opp.") largely ignores the Media Defendants' arguments, and instead, obfuscates the issues by advancing new theories that she failed to set forth in her prior *three* complaints, citing cases that bear no resemblance to the present action, and melding together entirely disparate elements of defamation law.  Her reason for doing so is clear:  recognizing that the end of this case is drawing near, Plaintiff grasps at straws to say *something* that might convince this Court to permit her baseless claims to proceed into discovery.

---

[1] Defined terms and abbreviations have the same meaning as in the Media Defendants' Memorandum of Law in Support of Motion to Dismiss the Second Amended Complaint (Dkt. 140-1) (the "Motion" or "Mot.").

[2] The only live claims against the Media Defendants in this case are (1) defamation by implication against ESPN, Inc. d/b/a Andscape, Nicole Froio, Lynn Washington, Slate Group, Elaine Ayers, Teen Vogue and Ezra Lerner, (2) false light against all Media Defendants *except* The New Yorker, Heather Ann Thompson, The New York Times Company, and Michael Levenson, and (3) civil aiding and abetting against all Media Defendants.  While the defamation by implication claim pertaining to the May 26, 2021 Andscape article by Lynn Washington and the Teen Vogue article by Ezra Lerner are still live, the Court dismissed the defamation claims premised on the same articles with prejudice on the ground that the statement that Plaintiff "mistreated the remains" was a non-actionable opinion, and that "the remains of at least one young girl—believed to possibly belong to Tree as well as Delisha Africa—had been improperly kept for decades by archaeologists Alan Mann and Janet Monge" was in part substantially true, and otherwise, non-actionable opinion.  Opinion ("Op.") at 18-19.

But nothing in Plaintiff's Opposition changes the conclusion that she has not—and cannot—state a claim against any of the Media Defendants.  Plaintiff's defamation by implication and false light claims fail both because Plaintiff has not pled that the Media Defendants published the challenged statements with actual malice and because each of the challenged statements is either true or a non-actionable opinion based on facts disclosed in the Articles.[3]  And Plaintiff has similarly failed to plead the elements of a civil aiding and abetting claim—a claim that when subject to the slightest scrutiny is revealed as an obvious attempted end-run around the constitutional strictures governing defamation law.

At bottom, this case is—and always has been—about Plaintiff's frustration that the news media reported on her use of the MOVE victims' remains as a teaching tool, and that their coverage rightly placed her actions within the larger societal context of the MOVE bombing, anthropology's treatment of Black bodies, and race in America.  But the media covers the news as it sees it and as the facts dictate.  It is not the responsibility of news organizations and reporters like the Media Defendants to report on Plaintiff in the exact manner she desires, nor do their editorial prerogatives provide her with a legal cause of action.  Plaintiff has now had every opportunity to state a claim against the Media Defendants and has failed at every turn.  It is time for the Court to put this action to rest once and for all by granting the Media Defendants' Motion in its entirety and dismissing this case with prejudice.

---

[3] Further, as the Court dismissed the defamation claims with prejudice against the Daily Mail, Adam Schrader, The Guardian, Ed Pilkington, the New York Post, and Jackson O'Bryan a/k/a Blake Montgomery, and Plaintiff does not assert a claim for defamation by implication against any of these defendants, the false light claim necessarily fails as well for the same reasons.  *See* section III *infra*.

<u>**ARGUMENT**</u>

I.   **THE LAW OF THE CASE DOCTRINE PRECLUDES PLAINTIFF'S EFFORTS TO RELITIGATE WHETHER SHE IS A LIMITED-PURPOSE PUBLIC FIGURE**

As the Media Defendants established in their Motion, this Court already correctly concluded that Plaintiff is a limited-purpose public figure, and, under the law of the case doctrine, that determination governs the present Motion.  In her Opposition, Plaintiff once again argues that she is *not* a limited-purpose public figure and, looking to avoid the Court's prior contrary and fatal conclusion, claims that the law of the case doctrine does not govern here.  *See* Pl. Opp. at 17–18, 25–26.  But, in making this argument, Plaintiff mischaracterizes both the Court's prior decision and controlling Third Circuit law.  The Court must reject Plaintiff's argument out of hand.[4]

*First*, Plaintiff asserts that there was "no analysis of [the public figure] issue in several of the decisions."  *Id.* at 17.  But that is certainly not the case for the Court's decision on the Media Defendants' prior motion to dismiss, in which the Court spent over *three pages* analyzing whether Plaintiff is a public figure.  *See* Op. at 26–30.  In so doing, the Court correctly set forth the public figure test and found that Plaintiff was a limited-purpose public figure for purposes of the MOVE bombing controversy.  *Id.*  As the Court noted, Plaintiff has been involved in the MOVE bombing events for over thirty-six years and voluntarily injected herself into this controversy, including by publishing a free, publicly available online course on the MOVE bombing.  Op. at 29.  The Court's well-reasoned decision leaves no room for doubt—Plaintiff was a limited-purpose public figure at the time of publication of each of the Media Defendants' Articles.

---

[4] Plaintiff claims that the Media Defendants argue that "the law of the case doctrine precludes Plaintiff from re-pleading her claims," *see* Pl. Opp. at 1, but Plaintiff mischaracterizes the Media Defendants' argument.  The Media Defendants merely argue that the Court's ruling rendered two live issues the law of the case:  (1) Plaintiff is a limited purpose public figure subject to the actual malice standard of fault, and (2) certain statements that are true or non-actionable opinions.  *See* Mot. at 14–15.  Plaintiff was, or course, free to replead allegations going to the question of whether the Articles were published with actual malice or whether the remaining articles were actionable for defamation by implication.  As discussed below, she failed to do so.

*Second*, citing to three district court cases, Plaintiff claims that the determination of whether she is a public figure cannot be made on a motion to dismiss.  Pl. Opp. at 17–18.  But courts around the country, including in the Third Circuit, have recognized that courts *can* and *do* make a public figure finding on a motion to dismiss based on the facts alleged in the pleadings.  *See*, *e.g.*, *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020).  And courts across the country have "employed judicial notice in making determinations about whether the plaintiffs are public figures at the motion to dismiss stage."  *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015).  That is precisely what the Court did here, relying on the allegations in the FAC, the articles referenced therein, and Plaintiff's public Coursera lecture to find that Plaintiff is a limited-purpose public figure as a matter of law.  *See* Op. at 29–30.  The Court's holding was proper.

*Third*, in a last-ditch attempt to convince the Court to stray from its prior ruling, Plaintiff claims that the law of the case doctrine is discretionary.  Pl. Opp. at 25–26.  But the very cases that Plaintiff cites make clear that courts should be "loathe" to exercise such discretion "in the absence of *extraordinary circumstances* such as where the initial decision was clearly erroneous and would make a manifest injustice."  *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (emphasis added) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  Other "extraordinary circumstances" that courts in this Circuit have recognized include where new evidence is available, a supervening new law has been announced, where the decision is ambiguous, or the decision would lead to an "unjust result."  *Id.*  Here, other than the conclusory assertion that the Court's decision was "ambiguous"—a frankly puzzling claim given the Court's extensive analysis finding Plaintiff to be a limited-purpose public figure—Plaintiff does not even try to argue that one of these "extraordinary circumstances" is present.  It is not.  Put

simply, Plaintiff's disagreement with the Court's conclusion that she is a limited-purpose public figure does not necessitate reconsideration of this issue.

For these reasons, the Court's holding that Plaintiff is a limited-purpose public figure for purposes of this litigation should not be disturbed.

## II.      PLAINTIFF'S DEFAMATION BY IMPLICATION CLAIMS FAIL

### A.      Plaintiff Has Not Sufficiently Pled Actual Malice

Because Plaintiff is a limited-purpose public figure, she is required to plead and prove that each Media Defendant published its respective challenged statements with "actual malice."  *See* Op. at 30 (quoting *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021)); *Counterman v. Colorado*, 143 S. Ct. 2106, 2115–16 (2023); *Tucker v. Phila. Daily News*, 848 A.2d 113, 130–31 (Pa. 2004) (same).  Although Plaintiff insists that she has adequately done so, Pl. Opp. at 26–29, the arguments in her Opposition only underscore the numerous fatal deficiencies in the SAC.

For example, Plaintiff appears to recognize that under the standard set by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964), she must "bring home" her allegations of actual malice to the individuals at *each* of the Media Defendants responsible for the publication of the challenged statements.  *See* Pl. Opp. at 28.  Yet she claims that, when "read as a whole," the SAC complies with this requirement because there are "individualized paragraphs" that pertain to each of the Media Defendants.  *Id.*  But these "individualized paragraphs" merely enumerate the challenged statements, *see* SAC ¶¶ 140–42, and do not specifically plead why individuals at each of the Media Defendants either knew that these challenged statements were false or acted with a "high degree of awareness" of "probable falsity." *See Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

Lacking these specific allegations, Plaintiff attempts to impute the alleged actions of defendants Mitchell and Kasutto to *all* of the Media Defendants, claiming that Mitchell and

Kasutto held a "grudge" against Plaintiff, engaged in a "retaliatory scheme," and "provided false information that the Media Defendants used to publish their stories."  Pl. Opp. at 28.  But the SAC never actually pleads that Mitchell or Kasutto had *any* contact with the Media Defendants.[5]  And to the extent this is what Plaintiff is now saying in her Opposition (indeed, it is unclear what Plaintiff means by the phrase "provided false information that the Media Defendants used…"), "it is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Further, even if the Media Defendants *had* spoken to Mitchell or Kasutto, this still would not be enough to plead actual malice as a matter of law.  Plaintiff claims that there were "obvious reasons" for the Media Defendants to doubt the veracity of the information she now asserts they received because Kasutto and Mitchell were "scorned former students seeking retribution against her."  Pl. Opp. at 27–28.  But even if this characterization were true, Plaintiff does not plead how the Media Defendants would have any way of knowing this.   Neither the Billy Penn nor Philadelphia Inquirer Articles name Mitchell as a source, and although the Billy Penn Article lists Kasutto as the author, it does not disclose that she had any connection to Plaintiff—let alone a negative one.  *See* Pl. Exs. A, B.  Nor were Plaintiff's allegations about Mitchell and Kasutto's purported grudge public until the filing of her Complaint, well after the Articles were published. Instead, it appears that Plaintiff is asking this Court to infer—without making any such allegations in the SAC—that Mitchell and Kasutto had some kind of conversation with each of the Media

---

[5] Plaintiff does allege that Mitchell prepared a paper that was "widely distributed . . . to Penn employees, MOVE members, and several larger media outlets with the hopes of lending further credibility to the false stories his associates had published."  SAC ¶ 138. But Plaintiff never enumerates who exactly these "larger media outlets" were, that any of the Media Defendants received this paper, or—even assuming they *did* receive the paper—that  any of the Media Defendants had any reason to doubt the truth of its contents.

Defendants in which they made clear that they harbored a grudge against Plaintiff, and each of the Media Defendants published the challenged Articles anyway without further investigation. But this is rank speculation that falls far short of the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and is directly contradicted by the facts and evidentiary support laid out in the Articles themselves.

The only other "obvious reason" that Plaintiff cites for why the Media Defendants should have doubted the truth of their publications is the fact that Plaintiff "had never been charged with any professional misconduct in her decades of service as an anthropologist." Pl. Opp. at 28. But under Plaintiff's reasoning, a media organization could *always* be charged with actual malice for reporting on a first-time offender because, by definition, that person has never committed a crime or other misconduct. This is clearly an untenable result, particularly in this case, where the Media Defendants had extensive information corroborating their reporting, including, among other things: (1) Plaintiff's own publicly available course, which showed that she did, in fact, utilize the MOVE bombing bones as a pedological tool and used the words "juicy" and "greasy" to describe them; (2) prior reports that identified these bones as belonging to Katricia and/or Delisha Africa; and (3) statements from the universities and City of Philadelphia apologizing for the failure to return the MOVE bones and, in the case of the Penn Museum, referring to the use of the remains in a class as a "serious error in judgment."

At bottom, while Plaintiff baselessly claims that the Media Defendants failed to investigate,[6] in actuality, her argument appears to be that the Media Defendants should have

---

[6] As the Media Defendants set forth in their Motion, and as Plaintiff recognizes in her Opposition, failure to investigate without more will not support a finding of actual malice. Op. at 30 ("[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth. Rather the publisher must act with a 'high degree of awareness . . . of probable falsity.'") (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 332 (1974)); *see also McCafferty*, 955 F.3d at 359–60 ("Likewise, a failure to investigate . . . standing alone, does not constitute actual malice.") (citing *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001)).

viewed the information they acquired through their investigations in the light most favorable to her.  But failure to do so does not establish actual malice.  *See*, *e.g.*, *Mitchell v. Herald Co.*, 137 A.D.2d 213, 217 (N.Y. App. Div. 4th Dep't 1988) ("[A] newspaper is under no legal obligation . . . to write the most balanced article possible."); *Shuman v. N.Y. Mag.*, 211 A.D.3d 558 (N.Y. App. Div. 1st Dep't 2022) ("[The] decision to choose one source over another is an editorial judgment in which the courts and juries have no proper function.") (citation omitted), *lv. denied*, 2023 WL 6153471 (N.Y. Sept. 21, 2023); *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (plaintiff's allegation that defendant relied on biased sources was insufficient to plead actual malice).  Because Plaintiff has made little effort to meet the "rigorous" burden of pleading actual malice as to each individual Media Defendant, Op. at 30, the SAC should be dismissed as to all claims.

### B.     The Remaining Challenged Statements Are Non-Actionable Opinions

Even if this Court somehow finds that Plaintiff plausibly pled actual malice as to the few statements not already dismissed with prejudice from this action—and she did not—the Court should still dismiss the claims associated with those statements because, as the Media Defendants demonstrated in their Motion, the remaining challenged statements are each non-actionable opinions based on disclosed facts.  In her Opposition, Plaintiff hardly engages with the Media Defendants' arguments, instead lumping together all of the remaining challenged statements, claiming that they are all defamatory *per se* because they imply that she is racist, committed professional misconduct, or cannot be trusted, and arguing that they, therefore, cannot be opinions.  *See* Pl. Opp. at 20–21, 30–31.  But Plaintiff's arguments find no support in the law.

*First*, as the Media Defendants explained in their Motion, even if the implications that Plaintiff inappropriately draws from the challenged Articles are defamatory *per se*, that is irrelevant to the question of whether these purported implications convey facts or opinions.  *See* Mot. at 22-23.  This is because "defamatory meaning" and "falsity" are two *separate* elements of

a defamation cause of action.  *Id.*; *see also Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa. Super. Ct. 1993) ("[W]hether a particular statement or writing constitutes fact or opinion is a question of law for the court to determine in the first instance.  Additionally, it is within the trial court's province to determine whether the challenged statements are capable of having a defamatory meaning.") (internal citation omitted).  While Plaintiff pays lip service to this settled law in her Opposition, quoting *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) ("If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts."), she ignores this case law's plain import.  Put simply, the issue of whether the purported implications are "defamatory per se" is a red herring and has no bearing on whether Plaintiff has stated an actionable defamation by implication claim in this case.

*Second* and equally problematic is the Opposition's failure to address each of the specific challenged statements individually.  It is well established that determining whether a challenged statement is an opinion requires the Court to examine the statement "in [the] context of the article in its entirety."  *Balletta v. Spadoni*, 47 A.3d 183, 199 (Pa. Commw. Ct. 2012).  "When an article discloses the underlying facts, readers can easily judge the facts for themselves."  *McCafferty*, 955 F.3d at 357.  It is self-evident why Plaintiff fails to follow this instruction here: when reviewing the purported implications in the full context of the Articles, the only plausible conclusion is that they are non-actionable opinions fully supported by the uncontested facts in the Articles.

        **1.**      **Statements That Plaintiff Contends Imply She Is Racist Are Non-Actionable Opinions**

This Court previously held that one statement from the Slate Article and two statements from the May 7 Andscape Article—which Plaintiff claimed implied she acted with "a racially based animus"—were non-actionable pure opinions based on disclosed facts.  *See* Op. at 20–21.  While the SAC again brought claims based on these same statements, *see* SAC ¶ 142(c), (e), it did

9

not provide any reason for this Court to deviate from its prior opinion.  In her Opposition, Plaintiff now claims—without actually referencing any of the specific challenged statements—that the statements "create[d] false implications that Dr. Monge committed racially motivated, and potentially criminal, professional misconduct."  Pl. Opp. at 29.  And she asserts that courts have held that accusing someone of being a racist is defamatory when it also implies that the person cannot do their job.  *Id.*

But even a cursory review of the cases that Plaintiff cites shows that they do not stand for this proposition and, in actuality, belie—rather than support—Plaintiff's position.  In *Puchalski v. School District of Springfield*, 161 F. Supp. 2d 395, 408 (E.D. Pa. 2001), for example, one of the defendants accused the plaintiff of making a specific racist remark.  The court recognized that while characterizing something as "racist" is a non-actionable opinion, accusing someone of making a *specific offensive statement* is not a mere opinion because it is capable of being proven true or false.  *Id.* n.7.[7]

Here, by contrast, Plaintiff does not challenge the factual statements in the Slate and May 7 Andscape Articles as defamatory themselves.  Instead, she claims that, despite not referring to her specifically, these statements imply that she personally acted with racial motivations.  But to the extent Plaintiff's strained implication can even be found in the Articles—and it cannot—an implication that Plaintiff acted with a racial animus is an opinion incapable of being proven true or false.  *See Reilly v. WNEP*, 2021 WL 1017154, at *6 (Pa. Super. Mar. 17, 2021) ("What one person may view as racist may be acceptable to others as healthy socio-political debate.").  Indeed,

---

[7] Similarly in *MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050, 1054 (Pa. 1996), the defendant printed a statement that the plaintiff, a district attorney, was "electioneering—the David Duke of Chester County running for office by attacking [a university]"  The court held that this was not a mere accusation of racism, it was a statement that the plaintiff was "abusing his power as the district attorney, an elected office, to further racism and his own political aspirations."  *Id.*  This, too, was a concrete statement capable of being proven true or false.

"[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior." *McCafferty*, 955 F.3d at 359. And, as this Court already found, the Slate and May 7 Andscape Articles both set forth uncontested facts about the MOVE bombing and Plaintiff's decision to use the MOVE bones in her lecture, which would form the factual basis for the opinion that she acted with racial motivations. Op. at 21–22.

Finally, Plaintiff's new assertion that these statements also accuse her of potential criminal activity cannot save her deficient claim. This purported implication has no basis in the Articles, and Plaintiff notably does not point to any language that indicates she engaged in criminal behavior. This Court should not permit Plaintiff to continually invent unsupported implications in the hopes that something sticks.[8] Accordingly, Plaintiff's claims stemming from the Slate and May 7 Andscape Articles should be dismissed as non-actionable opinions based on disclosed facts.

### 2. Statements That Plaintiff Contends Imply That She Acted Unprofessionally or Unethically Are Non-Actionable Opinions

The only other statements that Plaintiff challenges as defamatory by implication arise from the May 7 and 26 Andscape Articles and the Teen Vogue Article. *See* SAC ¶¶ 142(e), (h), and (i). While Plaintiff claims that these Articles accuse her of acting unprofessionally, unethically, or in an improper professional manner,[9] to the extent these implications are even reasonable—a point that the Media Defendants contest—they are also opinions based on facts disclosed in the Articles or in sources hyperlinked in the Articles. *See* Mot. at 22–28.

---

[8] Relatedly, Plaintiff's Opposition now also states that the Articles imply that she is "a racist that could not be trusted." Pl. Opp. at 30. But no reasonable reading of any of the Articles suggests that Plaintiff is dishonest or "could not be trusted," and Plaintiff again points to no specific language that would support this implication.

[9] With respect to the Teen Vogue Article, Plaintiff claims that Ms. Turner-Byfield's statement concerning "the unethical nature of how [Monge and Mann] treated of the remains" implied that she engaged in "improper professional conduct." SAC ¶ 142(i). She does not, however, bring a direct claim for defamation based on the use of the term "unethical" to describe Plaintiff's treatment of the remains. But regardless of whether the Court focuses on the statement or the implication Plaintiff claims can be drawn from the statement, it is still a statement of opinion based on facts disclosed in the Article and in the hyperlinks contained in the Article. *See* Mot. at 26–28.

11

Rather than actually responding to the Media Defendants' arguments, Plaintiff's Opposition attempts to confuse the issues. She first claims that these implications are defamatory *per se*. *See* Pl. Opp. at 31. But, as explained above, this is irrelevant to the question of whether the alleged implications are opinions (*i.e.*, capable of being proven true or false). And she claims that the statements also imply that Dr. Monge is a racist. *Id.* But this was never alleged in the SAC, and, even if it were, it would fail for the same reasons as stated in Section II.B.1, *supra*.[10]

Plaintiff also asserts that the implications that she acted unprofessionally or unethically cannot be opinions because "it has already been 'prov[en] as false' that she committed no professional misconduct." Pl. Opp. at 30 (alteration in original). The Media Defendants presume that Plaintiff intended to say that it was proven false that she committed *any* professional misconduct. Regardless, the fact that the SAC pleads that there have been three separate investigations about the handling of the MOVE bombings and "none of the reports have found that Dr. Monge violated any professional, ethical, or legal standards," *see* SAC ¶ 155, does not turn opinions that she acted unprofessionally or unethically into statements of fact. Plaintiff never pleads that these investigations were charged with reviewing whether Plaintiff violated professional, ethical, or legal standards–standards which Plaintiff never attempts to specify.[11] And even if they were, a person reviewing a set of undisputed facts can reach the conclusion that

---

[10] The Court has already held that the alleged implications from the Slate Article and May 7 Andscape Article pertaining to Plaintiff's purported racist motivations are pure opinions, and, as such, to the extent they are not barred by the law of the case, they should be dismissed again for the same reasons as in the Court's May 19, 2023 Opinion. *See* Op. 20-23. The only other extant defamation by implication claims pertain to the purported implications in the Teen Vogue Article and two Andscape Articles that Plaintiff acted unprofessionally or unethically, or acted in an improper professional manner. *See* SAC ¶¶ 142(e), (h), (i). Plaintiff cannot now amend the SAC through her Opposition to claim that these articles also accuse her of being "racist." Pl. Opp. 29–31. If the Court nevertheless considers this unsupported and unpled argument, the Court should dismiss it for the same reasons as in Section II.B.1 *supra*.

[11] To the extent the Court considers the contents of these reports in rendering its decision—it need not do so to dismiss Plaintiff's claims—the Tucker Law Group report concluded that "Dr. Monge's retention of the remains from 2001 to 2021 and their use in the Princeton Online video course demonstrated, at a minimum, extremely poor judgment and gross insensitivity to the human dignity and social and political implications of her conduct." *See* Dkt. 28-3, at 8.

Plaintiff acted unethically or unprofessionally even if there has not been an official finding that she broke an ethical or professional rule.  As the Andscape and Teen Vogue Articles explain, the Penn Museum stored bones that belonged to a bombing victim for decades, the victims' families were not informed of these decisions (despite the Penn Museum referring to informed consent as an "ethical imperative"), and Plaintiff used the bones as a pedagogical tool in a publicly available online course.  *See* Mot. at 27–28.  The opinion that Plaintiff's conduct was unprofessional or unethical based on these undisputed facts cannot support a defamation by implication claim.

*Menkowitz v. Peerless Publications, Inc.*, 176 A.3d 968 (Pa. Super. 2017), a case Plaintiff relies upon for this point (despite the fact that it was ultimately vacated and remanded by the Pennsylvania Supreme Court), demonstrates the infirmities in Plaintiff's position.  In *Menkowitz*, the challenged article stated that plaintiff committed "professional misconduct regarding the treatment of his older female patient."  *Id.* at 983–84.  The article, however, did not disclose what was meant by "professional misconduct," and the court held that, without the underlying facts, there could be a defamatory implication that the plaintiff committed *sexual* misconduct.  *Id.* at 984–85.  Here, by contrast, the challenged Articles do not accuse Plaintiff of amorphous "misconduct" without providing the underlying facts.  They accurately explain how Plaintiff failed to return the MOVE bones to the Africa family and used them as a teaching tool in her online anthropology course.  Plaintiff is simply disagreeing with a valid opinion that she believes readers may draw from the facts set forth in the Article.[12]

---

[12] Plaintiff also relies heavily on *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435 (E.D. Pa. 2021).  But *Goldfarb* is not even a defamation by implication case and is starkly different from the present action.  In *Goldfarb*, the defendant tweeted that the plaintiff—a Penn Medical School professor—"called a class meeting where he berated [the] class for talking candidly" about sexual and racial harassment, gave the message to students that they were "too sensitive for reporting sexual harassment," and "s[ought] to hide abuse and protect abusers" at the school.  *Id.* at 459–60.  The defendant argued that these statements were merely his opinions about the plaintiff's conduct.  The court held that, even if these statements are opinions (which seems questionable since these statements can be proven true or false), they are based on information not disclosed in the tweets, such as the plaintiff's classroom behavior.  Here, by contrast,

Ultimately, because the implication that Plaintiff was "unprofessional" or "unethical" is an opinion fully supported by facts enumerated in the Andscape and Teen Vogue Articles, Plaintiff's defamation by implication claims based on these Articles should be dismissed.

## III.   PLAINTIFF'S FALSE LIGHT CLAIMS FAIL

As set forth in the Media Defendants' Motion, Plaintiff's false light claim suffers from the same fatal flaws as her defamation by implication claims. *First*, regardless of her status as a public or private figure, Plaintiff is required to plead that the Media Defendants acted with actual malice. *See Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (holding plaintiff must plead that challenged statement "is not true, is highly offensive to a reasonable person, and *is publicized with knowledge or in reckless disregard of its falsity*" in order to state a false light claim) (emphasis added) (citation omitted). For the reasons stated in Section II.A., *supra*, she has failed to do so. And while the false light section of her Opposition goes a step further than the defamation section, asserting that Mitchell actually "came to [the Media] Defendants to assist them with the writing of [the challenged] articles," Pl. Opp. at 32, the SAC again *never* pleads as much and Plaintiff cannot salvage her deficient claim by adding new allegations at this juncture. In any event, such an allegation is not probative of actual malice without further factual averments about why the Media Defendants would have reason to doubt Mitchell. *Second*, Plaintiff has not—and cannot—allege that the challenged statements are false (either because they are true or non-actionable opinion), another essential element of a false light claim. *See* Section II.B., *supra*; *see also* Op. at 16-23.

Perhaps recognizing that she has no legitimate response to these arguments, Plaintiff instead inexplicably asserts that she is not required to plead that the challenged statements did not

---

Plaintiff is not suing over the actual words of the Articles but on opinions that she believes are implied in the reporting—*i.e.*, that she is racist, unprofessional, or unethical. Accordingly, *Goldfarb*'s analysis is inapposite here.

involve a matter of public concern in order to state a false light claim. Pl. Opp. at 23, 31. But this is a straw-man argument; the Media Defendants never claimed that she was required to make this showing. This does not change the conclusion that she has failed to plead a false light claim.

## IV.   PLAINTIFF'S AIDING AND ABETTING CLAIMS FAIL

Finally, Plaintiff's Opposition does nothing to salvage her meritless civil aiding and abetting claim. Plaintiff completely sidesteps the pleading requirements for this cause of action, despite the fact that they were explicitly set out by this Court when it dismissed the FAC. *See* Op. at 33–34 (dismissing Plaintiff's civil aiding and abetting claims because she "fail[ed] to demonstrate that (1) these defendants had knowledge of the allegedly tortious conduct of the other defendants named in the matter; and (2) these defendants substantially assisted the other defendants in conducting their allegedly tortious conduct"). Instead, Plaintiff invents a new pleading standard out of thin air, asserting that she is only required "to show . . . the identities of the wrongdoers and those who have acted in concert." Pl. Opp. at 33. This is not the law.

Tellingly, Plaintiff also does not address the main argument in the Media Defendants' Motion: that a plaintiff cannot bring a claim for aiding and abetting as an alternative to defamation, as this would allow a plaintiff to skirt the First Amendment's protections. Mot. at 32–33. Instead, Plaintiff restates her outrageous argument that merely because competitive news outlets each reported on different aspects of the issues involving the MOVE remains, they somehow "provided substantial assistance to each of the other Defendants by bolstering the media coverage and notoriety of the story" sufficient to make even non-defamatory publications liable for the allegedly defamatory publications of other defendants. Pl. Opp. at 25. Such a rule, were it to be the law, would make every publisher responsible for the conduct of every other publisher. It is an absurd proposition that would be an affront to the First Amendment, and the nearly sixty years of libel jurisprudence since *New York Times Co. v. Sullivan*. Plaintiff has had *numerous* opportunities to

plead a defamation cause of action, and she has failed again and again.  The law does not permit her to use her aiding and abetting claim as an opportunity to re-state her deficient defamation claims, or, more precisely, to claim that all of the Media Defendants "aided and abetted" each other *and* the other defendants simply by each publishing articles on the same newsworthy subject. Plaintiff's frivolous aiding and abetting claim must be dismissed.

Finally, Plaintiff has abandoned her aiding and abetting claim against The Times and Michael Levenson (her only remaining claim as to these defendants).  Her Opposition entirely omits any discussion of the Times Article both from the factual recitation of the case and throughout the brief, even going so far as to refer to the "eight relevant articles," when she in fact sued over nine articles.  *See* Pl. Op. at 12–15; *see generally Arcuri v. Cty. of Montgomery*, 2021 WL 1811576, at *10 (E.D. Pa. May 6, 2021) ("Plaintiffs' failure to substantively respond to Individual Defendants' arguments to dismiss Count V constitutes a waiver and the claim must be dismissed.") (collecting cases).  For this additional reason, Plaintiff's claim as to these Defendants must be dismissed with prejudice.

16

## <u>CONCLUSION</u>

For the foregoing reasons, the SAC fails to state any viable claim against each of the Media

Defendants.   Accordingly, the Media Defendants respectfully request that the Court dismiss all

claims against them with prejudice and grant any further relief as the Court deems just and proper.


Dated:  New York, New York
          October 11, 2023

                              Respectfully submitted,
                              DAVIS WRIGHT TREMAINE LLP

                              By:  */s/ Jeremy A. Chase*
                                      Jeremy A. Chase (*pro hac vice*)
                                      Amanda B. Levine (*pro hac vice*)
                                      Alexandra M. Settelmayer (*pro hac vice*)
                              DAVIS WRIGHT TREMAINE LLP
                              1251 Avenue of the Americas, 21st Floor
                              New York, NY 10020
                              Tel: (212) 489-8230
                              Email: jeremychase@dwt.com
                                       amandalevine@dwt.com
                                       alexandrasettelmayer@dwt.com

                              Andrew A. Chirls
                              FINEMAN KREKSTEIN & HARRIS, P.C.
                              Ten Penn Center
                              1801 Market Street, Suite 1140
                              Philadelphia, PA 19103
                              Tel: (215) 893-8715
                              Email: achirls@finemanlawfirm.com

                              *Attorneys for Defendants Advance Magazine*
                              *Publishers Inc. d/b/a The New Yorker and Teen*
                              *Vogue, Ezra Lerner, Heather A. Thompson,*
                              *Associated Newspapers Limited d/b/a The Daily*
                              *Mail, Adam Schrader, ESPN, Inc. d/b/a Andscape,*
                              *Linn Washington, Nicole Froio, Guardian News &*
                              *Media Limited d/b/a The Guardian, Ed Pilkington,*
                              *NYP Holdings, Inc. d/b/a New York Post, Jackson*
                              *O'Bryan a/k/a Blake Montgomery, The New York*
                              *Times Company, Michael Levenson, The Slate*
                              *Group, LLC, and Elaine Ayers*