IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET MONGE,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA** *et al.*, | : | |
| | : | **NO. 2:22-cv-2942-MRP** |
| Defendants. | : | |

**MEMORANDUM**

**Perez, J.**                                                                                                 **October 28, 2024**

Dr. Janet Monge, an anthropologist and former curator of Penn Museum, brings this action against several individuals and news outlets following statements they made concerning her work with human bone fragments recovered from the 1985 MOVE bombing in Philadelphia. Presently before the Court are Defendants Hyperallergic Media, Kinjal Dave, and Jake Nussbaum's motions to dismiss the defamation by implication and civil aiding and abetting claims set forth in the Second Amended Complaint. For the reasons that follow, the Court grants in part and denies in part the motions as to these Defendants only.

**I.      BACKGROUND[1]**

Hyperallergic Media ("Hyperallergic") is a New York corporation that operates an online arts and current events magazine. ECF No. 133 at ¶ 52. On October 31, 2021, Hyperallergic published an article titled "How the Possession of Human Remains Led to a Public Reckoning at the Penn Museum." *Id.* at ¶ 142(j). Kinjal Dave and Jake Nussbaum, two employees of

---

[1] An extensive overview of this matter's factual and procedural background can be found in the Court's May 14, 2024 memorandum opinion. ECF No. 173.

Hyperallergic, co-authored the article. *Id.* at ¶¶ 53, 142(j). Dr. Monge contends that the article "falsely blames [her] for a racially motivated investigation of the bone fragments" by stating that "Consuella [sic] did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching." *Id.* at ¶ 142(j).

Dr. Monge brings two claims against Hyperallergic, Kinjal Dave, and Jake Nussbaum (the "Hyperallergic Media Defendants"): (1) defamation by implication and (2) civil aiding and abetting. The Court addresses both in turn.

## II. LEGAL STANDARD

In deciding a motion to dismiss, the Court "accept[s] the factual allegations in the complaint as true, draw[s] all reasonable inferences in favor of the plaintiff, and assess[es] whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face[.]" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (internal quotation marks and citations omitted). The complaint must contain "sufficient factual matter" to show that a claim is plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court is "not compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Defamation by Implication Claim

Under Pennsylvania law, a defamation by implication claim exists "where the words utilized themselves are not defamatory in nature, however, the context in which these statements

are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (collecting cases). "It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Id.* (quoting *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1944)). That is, the implication "must be warranted, justified and supported by the publication." *See ToDay's Housing v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa. 2011) (quoting *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. Ct. 1992)). "When the implication alleged by the plaintiff is not 'reasonably susceptible of a defamatory meaning,' the plaintiff has failed to state a claim." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020) (quoting *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 191 (3d Cir. 1999)).

The Hyperallergic Media Defendants argue that the statements at issue are not capable of a defamatory meaning because they are at least substantially true and pure opinions. Before addressing these arguments, the Court revisits the previous determination that Dr. Monge is a limited purpose public figure.

### 1.     Whether Dr. Monge is a Limited Purpose Public Figure

A defamation claim requires that Dr. Monge prove a minimum level of fault for the Court to impose liability. *See Joseph v. Scranton Times L.P.*, 129 A.3d 404, 428 (Pa. 2015). The requisite level of fault depends on Dr. Monge's status as either a public or private figure. *Id.* A higher standard of proof is required if the individual is a public figure, which is an individual who may "achieve such pervasive fame or notoriety that he becomes a public figure for all purposes." *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 349-50 (E.D. Pa. 2021). In addition, there are limited purpose public figures, who are individuals "deemed public figures only within the context of a particular dispute as a result of voluntarily 'thrust[ing] themselves to the forefront of particular

public controversies in order to influence the resolution of the issues involved.'" *Mzamane*, 693 F. Supp. 2d at 498 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). A limited purpose public figure must prove "that the defendant acted with actual malice in publishing statements about her." *Mallory v. S&S Publishers*, 260 F. Supp. 3d 453, 465 (E.D. Pa. 2017).

The Court previously determined that Dr. Monge is a limited purpose public figure who must therefore plead actual malice.[2] *Monge*, 2024 WL 2188473, at *7-8. However, at this juncture, the Court recognizes that such a finding is premature without a developed factual record. A court's order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "[B]ecause the District Court has not yet entered a final judgment," it may reconsider its previous orders. *Brown v. City of Pittsburgh*, 586 F.3d 263, 298 (3d Cir. 2009). The Court also retains its power "to modify an interlocutory judgment or order at any time prior to final judgment. . . ." Wright & Miller, Federal Practice & Procedure § 2852 (3d ed. June 2024 Update); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("[I]nterlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

"[A] trial judge has the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (quoting *Swietlowich v. Bucks Cnty.*, 610

---

[2] Upon the unfortunate passing of the Honorable Gene E.K. Pratter, this case was reassigned to the Honorable Mia R. Perez. Now, after careful consideration of the record, including the parties' supplemental briefs, the Court finds that determining whether Dr. Monge is a limited purpose public figure at this stage is premature.

F.2d 1157, 1164 (3d Cir. 1979)).³ If the Court chooses to exercise its inherent power, "[i]t must afford the parties notice of and an opportunity to be heard on the appropriateness of reconsideration, must explain on the record the reasons for altering the prior order if that is its decision, and must 'take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling.'" *Id.* (quoting *In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009)). Here, the parties were provided notice and an opportunity to be heard. In a Zoom conference held on July 2, 2024, the Court expressed reservations about considering Dr. Monge a limited purpose public figure at this stage of the litigation. During the conference, the Court provided each party an opportunity to be heard on the topic. The Court also permitted the parties to supplement their motions to dismiss to address the concern.⁴

Determining whether a plaintiff is a limited purpose public figure is a "difficult and fact-specific [question][.]" *Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 455 (E.D. Pa. 2021) (quoting *Woods Servs. v. Disability Advocates, Inc.*, No. 18-296, 2018 WL 2134016, at *6 (E.D. Pa. May 9, 2018)). That said, "[t]he question of whether a plaintiff is a public or private figure is a question of law to be decided by the Court." *Mzamane*, 693 F. Supp. 2d at 498 (citing *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 938 (3d Cir. 1990)). "As a result, courts regularly find that the determination of a litigant's status as a public or private figure should be deferred until summary judgment when a full factual record can be developed." *Id.* (quoting *Woods Servs.*, 2018 WL 2134016, at *6); *see also Trivedi v. Slawecki*, No. 11-2390, 2012 WL 5987410, at *3

---

³ In a footnote, the Media Defendants, upon whom Hyperallergic relies, make the argument that the "law of the case" doctrine prevents the Court from revisiting this determination. ECF No. 187 at 7 n.9. This argument is misplaced because "[i]nterlocutory orders are 'open to trial court reconsideration[] and do not constitute the law of the case.'" *United States v. Bhimani*, No. 22-1436, 2023 WL 5125056, at *3 (3d Cir. Aug. 10, 2023).

⁴ Dr. Monge and the Hyperallergic Media Defendants filed supplemental briefs. ECF Nos. 188, 190, 196. Hyperallergic also joined the Media Defendants' supplemental brief. ECF No. 190.

(M.D. Pa. Nov. 28, 2012) ("This question [of whether an individual is a limited purpose public figure] is more appropriately resolved at the summary judgment stage on the basis of record evidence.").

The Court previously found that Dr. Monge was a limited purpose public figure in part based on the online publication of her Coursera course. *Monge*, 2024 WL 2188473, at *7. In the Second Amended Complaint, Dr. Monge pleads that the course included classes that discuss the MOVE bombing and show the handling of the bone fragment remains. ECF No. 133 at ¶¶ 112-14. However, the true reach of the course, along with any other actions Dr. Monge may have taken in the public sphere regarding the MOVE bombing, are largely unknown at this point. It would be premature to conclude that Dr. Monge is a limited purpose public figure without a fully developed record on the issue.

The Media Defendants, upon whom Hyperallergic relies in its supplemental briefing, argue that Dr. Monge's allegations establish that she is a limited purpose public figure and such a determination "may be, and frequently is, made upon the pleadings." ECF No. 187 at 2. Defendants rely in part on *McCafferty v. Newsweek Media Group, Ltd.,* 955 F.3d 353 (3d Cir. 2020), where the court held that a twelve-year-old was a limited purpose public figure because he voluntarily injected himself into the "political controversies surrounding President Trump and the President's critics" when he published online videos. *Id.* at 359. In *McCafferty*, however, there was little doubt as to the plaintiff's status. His videos were "seen by thousands" and one went viral, "attracting more than 325,000 views on Facebook alone." *Id.* at 353. "From Russian television stations to *Philadelphia* magazine, many wanted to hear from 'Philly's Biggest Trump Supporter.'" *Id.* Indeed, the plaintiff sat for an interview with *Philadelphia* magazine. *Id.* Dr. Monge, in contrast, published online classes on a platform where the "courses are not mass-broadcasted" and "only

450 persons watched all or some of the online course segments." ECF No. 133 at ¶¶ 110, 117. There is currently no indication that Dr. Monge sat for interviews with mass media about the MOVE bombing or the bone fragment remains.

The Media Defendants also direct the Court's attention to *Wang v. University of Pittsburgh*, No. 20-1952, 2021 WL 6051568 (W.D. Pa. Dec. 21, 2021). In *Wang*, the district court held that a professor was a limited purpose public figure where he "inject[ed] himself into the affirmative action debate through the publication of his article." *Id.* at *12. There, the plaintiff published an article to an online publication, the *Journal of the American Heart Association*, which provided the article "open access to the public." *Id.* at *2. Dr. Monge's Coursera course, however, was "never broadcast to the public at large" and required enrollment. ECF No. 133 at ¶¶ 110, 117. There are apparent differences between a course that is not broadcast to the public and for which one must enroll, and a published article that is open to the public. Thus, reliance on *Wang* is also inapposite.

Dr. Monge argues that her status "is a key issue that will have longstanding and irreversible effects on this litigation[.]" ECF No. 196 at 2. She is correct. It is possible that discovery will support a determination that Dr. Monge is a limited purpose public figure, but at the Rule 12 stage, without the benefit of discovery, the Court declines to reach that conclusion. For these reasons, the Court defers deciding whether Dr. Monge is a limited purpose public figure until after a factual record has been fully developed.[5]

---

[5] This determination does not change the Court's ultimate holding in its May 14, 2024 order and opinion regarding the Penn Defendants. Because the claims against the Penn Defendants survived under the actual malice standard, the claims also survive under the less burdensome negligence standard.

2.     **The Statements are Capable of Defamatory Meaning**

Dr. Monge alleges that the Hyperallergic article "falsely blame[d] Dr. Monge for a racially motivated investigation of the bone fragments, stating 'Consuella [sic] did not consent to Monge's continued use of her daughter's remains for research. Even after those objections, Monge used Tree Africa's remains for teaching.'" ECF No. 133 at ¶ 142(j). Dr. Monge contends that these statements imply that she did not properly carry out her job responsibilities, that she was unethical, and that she was racist. *Id.* at ¶ 175.

First, the Hyperallergic Media Defendants argue these statements are not susceptible to a defamatory meaning because they are substantially true. "In Pennsylvania, truth is an absolute defense to defamation." *Gilbert v. Bionetics Corp.*, No. 98-2668, 2000 WL 807015, at *3 (E.D. Pa. June 6, 2000). However, in the context of defamation by implication claims, "courts applying Pennsylvania law have found that even where the complained-of statements are literally true, if, when viewed in *toto*, the accurate statements create a false implication, the speaker may be liable for creating a defamatory implication." *Mzamane*, 693 F. Supp. 2d at 478. As such, "the literal accuracy of separate statements will not render a communication true where the implication of the communication as a whole was false." *Id.* (cleaned up).

Dr. Monge alleges that she "sought to contact the MOVE family"—specifically, Katricia (Tree) Africa's mother, Consuewella Africa—for a DNA sample to assist in identifying the remains. ECF No. 133 at ¶ 102. "Despite multiple efforts to communicate with Consuella [sic] . . . . Dr. Monge failed to retrieve a DNA sample from any of Katricia's relatives." *Id.* at ¶ 103. Without a DNA sample, "Dr. Monge was forced to label the case 'cold' . . . ." *Id.* Dr. Monge further alleges that, after attempting to contact the MOVE family, she used the bone fragment remains in her Coursera course to "compar[e] those fragments to other similar bone fragments and models for

comparison and explain[] how forensic techniques could be used to determine the age of the remains." *Id.* at ¶¶ 108, 113. Thus, it is literally true that Dr. Monge did not obtain Consuewella Africa's consent to use the bone fragment remains for research, and Dr. Monge then used the bone fragment remains when teaching her Coursera course.

However, "[a] publisher is . . . liable for the implications of what he has said or written, not merely the specific, literal statements made." *Dunlap v. Philadelphia Newspapers, Inc.*, 448 A.2d 6, 15 (Pa. Super. Ct. 1982). "The legal test to be applied is whether the challenged language could 'fairly and reasonably be construed' to imply the defamatory meaning alleged by a plaintiff." *ToDay's Hous. v. Times Shamrock Comm'cns, Inc.*, 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011) (quoting *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1944)). Dr. Monge asserts that the Hyperallergic Media Defendants' statements imply that she was unethical, unprofessional, and a racist. *See* ECF No. 133 at ¶ 175. Dr. Monge alleges that she attempted to contact Consuewella Africa through a conduit, local writer Malcolm Burnley. *Id.* at ¶ 102. She further alleges that Mr. Burnley did not have a meaningful conversation with Consuewella Africa. *Id.* at ¶ 103. Thus, taking the allegations as true and drawing all reasonable inferences in Dr. Monge's favor, neither Dr. Monge nor Mr. Burnley discussed the bone fragment remains with Consuewella Africa. Notwithstanding this, the article can be read to imply that Dr. Monge *did* contact Consuewella Africa, and Ms. Africa *affirmatively told* Dr. Monge not to use the bone fragment remains in her research. *See id.* at ¶ 142(j) ("*Even after those objections*, Dr. Monge used Tree Africa's remains for teaching." (emphasis added)).

"[E]ven where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, it is for the jury to determine if the defamatory meaning was understood by the recipient." *Pelagatti v. Cohen*, 536 A.2d 1337, 1345 (Pa. Super. Ct. 1987).

Because the Hyperallergic article can be reasonably construed to imply that Dr. Monge acted unprofessionally and potentially with a racist impetus, the fact that the challenged statements are largely true does not mandate dismissal of the defamation by implication claims against the Hyperallergic Media Defendants.

Next, the Hyperallergic Media Defendants argue that the statements are not capable of a defamatory meaning because they are non-actionable opinions. "As Pennsylvania courts recognize, pure opinions cannot be defamatory." *McCafferty*, 955 F.3d at 357. "This, however, does not mean that there is 'a wholesale defamation exemption for anything that might be labeled opinion.'" *Petula v. Mellody*, 588 A.2d 103, 108 (Pa. Commw. Ct. 1991) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990)). "A defamatory communication may thus consist of a statement in the form of an opinion and is actionable if it implies an allegation of undisclosed defamatory facts as the basis therefor." *Id.* Here, the challenged statements imply the undisclosed fact that Consuewella Africa told Dr. Monge not to use the bone fragment remains for research when, according to the Second Amended Complaint, Dr. Monge did not discuss the bone fragment remains with Ms. Africa. *See* ECF No. 133 at ¶ 103. Because the Hyperallergic article's opinions imply undisclosed facts that are untrue, the article is capable of a defamatory meaning.

### 3. Whether Dr. Monge Satisfies the Negligence Standard

Because the Court deferred ruling on whether Dr. Monge is a limited purpose public figure, Dr. Monge need only sufficiently plead that the Hyperallergic Media Defendants "acted negligently rather than maliciously." *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 923 A.2d 389, 400 (Pa. 2007). "Negligence in this context is the publication of information with a want of reasonable care to ascertain the truth." *Pacitti v. Durr*, 310 F. App'x 526, 528 (3d Cir. 2009) (citing *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 342 (Pa. Super. 2008)).

Dr. Monge alleges that the Hyperallergic Media Defendants "conducted no investigation as to the allegations made by Mitchell and in the other defendants' articles." ECF No. 133 at ¶ 176. "Rather, their only intention was to create a story that would rile up the public . . . ." *Id.* Based on the totality of the Second Amended Complaint, it is plausible that the Hyperallergic Media Defendants breached their editorial duties by not conducting a routine investigation before publishing the challenged statements. It is also plausible that the Hyperallergic Media Defendants caused Dr. Monge reputational harm when they allegedly depicted her as an unethical racist. Accordingly, Dr. Monge has adequately pled negligence at this stage, and the defamation by implication claims against the Hyperallergic Media Defendants survive dismissal.

B. **Civil Aiding and Abetting Claim**

In addition to the defamation by implication claim, Dr. Monge alleges that the Hyperallergic Media Defendants "aided and abetted the tortious misconduct of each of the other defendants by giving rise to false and defamatory information against Dr. Monge in a concerted effort to accomplish the particular result of branding [Dr.] Monge as incompetent in her chosen field and a racist." ECF No. 133 at ¶ 193. Dr. Monge further alleges that each of the defendants, in publishing their statements, "assist[ed] in the initial tortious actions taken by [Mr.] Mitchell and his then-girlfriend and associate." *Id.* at ¶ 195.

"A civil aiding and abetting claim requires a showing that the defendant '(1) committed a tortious act in concert with another or pursuant to a common design with another; or (2) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself[;] or (3) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach

of duty to the third person.'" *Monge*, 2024 WL 2188473, at *11 (quoting *Byars v. Sch. Dist. of Phila.*, 942 F. Supp. 2d 552, 572 (E.D. Pa. 2013)).

As when the Court decided the Hyperallergic Media Defendants' motion to dismiss the First Amended Complaint, Dr. Monge has not sufficiently pled a civil aiding and abetting claim. The Second Amended Complaint does not plausibly allege that the Hyperallergic Media Defendants either (1) committed a tort in concert with another or pursuant to a common design; (2) knew that another's conduct constituted a breach of duty and then gave substantial assistance or encouragement to another; or (3) gave substantial assistance while their own conduct constituted a breach of duty to a third person. That is, the Second Amended Complaint does not plausibly allege that the Hyperallergic Media Defendants published their statements such that they were working with or seeking to aid another but rather that they acted on their own accord in publishing their article. Thus, the Court dismisses Dr. Monge's civil aiding and abetting claims against the Hyperallergic Media Defendants with prejudice.

### C.     Punitive Damages

Lastly, Hyperallergic argues that Dr. Monge's claims for punitive damages should be dismissed. Punitive damages "are appropriate 'where the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct." *Dwyer v. Ameriprise Fin., Inc.*, 313 A.3d 969, 980-81 (Pa. 2024) (quoting *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005)). They "are penal in nature and are intended to punish a tortfeasor" and deter others from acting similarly. *McKnight v. Amazon.com, Inc.*, No. 23-1449, 2024 WL 2156223, at *5 (E.D. Pa. May 14, 2024) (quoting *Dwyer*, 313 A.3d at 980). At the same time, their availability "is subject to the development of the factual record" and thus requires "an inherently factual inquiry not appropriately resolved on a motion to dismiss." *Greenwald Caterers Inc. v. Lancaster Host, LLC*,

599 F. Supp. 3d 235, 248 (E.D. Pa. 2022) (collecting cases). For a defamation case under Pennsylvania law, the plaintiff must satisfy two prerequisites: (1) the constitutional prerequisite that the defendant acted with actual malice, and (2) the Pennsylvania law prerequisite that the defendant acted with common law malice. *Sprague v. Am. Bar Ass'n*, 276 F. Supp. 2d 365, 375 (E.D. Pa. 2003).

Precluding the availability of punitive damages at this stage of the litigation would be premature. Akin to determining Dr. Monge's status as a private figure vs. limited purpose public figure, determining whether punitive damages are warranted requires a detailed factual record upon which the Court can rely. The Court does not have such a record before it at this time. As such, Hyperallergic's motion to dismiss is denied in this regard, and the claims for punitive damages survive.

### IV.   CONCLUSION

For the foregoing reasons, the Hyperallergic Media Defendants' motions to dismiss the Second Amended Complaint are granted in part and denied in part. An appropriate order follows.