IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET MONGE,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA *et al.*,** | : | |
| | : | **NO. 2:22-cv-2942-MRP** |
| Defendants. | : | |

# ORDER

**AND NOW,** this 29th day of October, 2024, upon consideration of Defendants The Philadelphia Inquirer, Abdul-Aliy Muhammad, and Jenice Armstrong's Motion to Dismiss (ECF No. 145), and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and the claims against these Defendants are **DISMISSED** with prejudice.[1]

---

[1] Dr. Monge brings defamation by implication and civil aiding and abetting claims against Defendants The Philadelphia Inquirer, Abdul-Aliy Muhammad, and Jenice Armstrong ("The Inquirer Defendants"). The Philadelphia Inquirer published two articles: one by Mr. Muhammad on April 21, 2021 (the "Muhammad Article"), and one by Ms. Armstrong on May 18, 2021 (the "Armstrong Article"). With respect to the Muhammad Article, Dr. Monge alleges it:

> [C]onclusively asserted that the unidentified bone fragments were the remains of [] two of the black children who died in the tragic bombing and fire – Katricia and Delisha Africa – and it further asserted that Dr. Monge 'mishandled' the unidentified bone fragments, implying that she acted unprofessionally and with racial animus.

ECF No. 133 at ¶ 136. The article also "called upon the Penn Museum and University of Pennsylvania to apologize for Dr. Monge's 'unethical possession' of the bone fragments, characterizing her handling of them as an 'egregious act.'" *Id.*

Dr. Monge alleges the Armstrong Article "falsely implies unlawful and unprofessional racially motivated actions" by stating:

> This latest atrocity is beyond horrible. The MOVE victims' remains have been treated like laboratory specimens, passed from the University of Pennsylvania to Princeton University and then back to Penn. According to the Guardian, they were even included in a now-deleted video promoting a class called 'Real Bones: Adventures in Forensic Anthropology.'

BY THE COURT:

_____
Hon. Mia R. Perez

---

*Id.* at ¶ 142(g). The Inquirer Defendants contend that the challenged statements and the alleged implications are not capable of a defamatory meaning. The Court begins its analysis with the Armstrong Article.

The law governing defamation by implication and civil aiding and abetting claims is fully set forth in the Court's October 28, 2024 opinion regarding the Hyperallergic Media Defendants. Here, it is literally true that Dr. Monge transported the bone fragment remains from the University of Pennsylvania to Princeton University, that the remains were displayed in Dr. Monge's online course "Real Bones: Adventures in Forensic Anthropology," and that the Coursera course was shut down. *Id.* at ¶¶ 99, 113, 117. Thus, any implication that Dr. Monge acted unethically and with racial animus is not "reasonably susceptible of a defamatory meaning." *Pace v. Baker-White*, 432 F. Supp. 3d 495, 510 (E.D. Pa. 2020). Indeed, Ms. Armstrong's statement that "[t]his latest atrocity is beyond horrible" is a pure opinion based on facts disclosed in the article. *See* ECF No. 133, Ex. L (overviewing historical examples of scientific studies using the bodies of African Americans).

As for the Muhammad Article, the Court finds that Dr. Monge does not identify any false statements, and any alleged implications are not reasonably susceptible of a defamatory meaning. First, the article does not "conclusively assert" that the remains belonged to Katricia and Delisha Africa. Rather, it acknowledges "a dispute over whether specific remains belonged to Tree Africa" and states that the remains belonged to "someone killed in the 1985 MOVE bombing." *See* ECF No. 133, Ex. B. Second, the article does not use the terms "mishandled" nor "unethical" in reference to Dr. Monge, and even if it did, those statements would constitute pure opinion based on disclosed facts. *Id.* In that same vein, Mr. Muhammad characterizing Dr. Monge's behavior as "egregious" is pure opinion.

The Court finds that any implication that Dr. Monge engaged in unlawful, unprofessional, or racially motivated activity is not reasonably susceptible of a defamatory meaning. Similarly, the implication that Dr. Monge committed severe professional misconduct is not warranted or supported by the article, as it does not discuss any professional standards for anthropologists. Thus, in light of the foregoing, the Court dismisses the defamation by implication claims with prejudice.

Moving to the civil aiding and abetting claims, the Court finds that the Second Amended Complaint does not sufficiently allege that The Inquirer Defendants substantially assisted or encouraged another in publishing defamatory statements. *See Doe v. Liberatore,* 478 F. Supp. 2d 742, 759 (explaining that substantial assistance requires "some affirmative action which causes the tortious actor to conduct himself inappropriately."). Because the Second Amended Complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," the civil aiding and abetting claims are dismissed with prejudice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).