IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET MONGE,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **UNIVERSITY OF PENNSYLVANIA** *et al.*, | : | |
| | : | **NO. 2:22-cv-2942-MRP** |
| Defendants. | : | |

# ORDER

**AND NOW,** this 4th day of November, 2024, upon consideration of Defendants Advance Magazine Publishers Inc. d/b/a The New Yorker and Teen Vogue, Ezra Lerner, Heather A. Thompson, Associated Newspapers Limited d/b/a The Daily Mail, Adam Schrader, ESPN, Inc. d/b/a Andscape, Linn Washington, Nicole Froio, Guardian News & Media Limited d/b/a The Guardian, Ed Pilkington, NYP Holdings, Inc. d/b/a New York Post, Jackson O'Bryan a/k/a Blake Montgomery, The New York Times Company, Michael Levenson, The Slate Group, LLC, and Elaine Ayers's (the "Media Defendants") Motion to Dismiss (ECF No. 140), and the response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and the claims against the Media Defendants are **DISMISSED** with prejudice.[1]

---

[1] Dr. Monge brings defamation by implication claims against Defendants ESPN, Inc. d/b/a Andscape, Nicole Froio, Slate, Elain Ayers, Teen Vogue, Ezra Lerner, and Linn Washington. She brings false light claims against ESPN, Inc. d/b/a Andscape, Nicole Froio, Guardian Media Group ("The Guardian"), Ed Pilkington, Daily Mail and General Trust PLC ("Daily Mail"), Adam Schrader, Slate, Elain Ayers, NYP Holdings Inc. d/b/a New York Post, Jackson O'Bryan, Teen Vogue, and Ezra Lerner. Additionally, Dr. Monge brings civil aiding and abetting claims against all Media Defendants.

In support of her defamation by implication and false light claims, Dr. Monge challenges several statements. First, she alleges Daily Mail and Adam Schrader "falsely aver[red] that the remains were bones of a 'black child killed in a 1985 police bombing.'" ECF No. 133 at ¶ 140(a). Second, she alleges The Guardian and Ed Pilkington "falsely averred that the bone fragment remains are 'almost certainly those of the older MOVE girls who died.'" *Id.* at ¶ 140(b). Third, Dr. Monge alleges The New York Post and Jackson O'Bryan stated: "The bones of at least one black teenager killed in the 1985 police bombing in Philadelphia are being

used in a 'case study' in an online anthropology course—taught by an Ivy League professor who called the remains 'juicy.'" *Id.* at ¶ 140(c). Dr. Monge alleges all three articles were "written without any investigation or research . . . simply accepting Mitchell's originally proffered falsities[.]" *Id.* at ¶ 141.

Next, Dr. Monge alleges Slate and Elaine Ayers implied racial animus by stating "the physical anthropology departments like the ones that employ Mann and Monge exist today as uneasy reminders of many museums' and universities' racist and colonial foundations," and by stating that using the terms "juicy" and "greasy" reflect the "most recent example of an ongoing legacy of Black people's bodies used for academic research and pedagogy." *Id.* at ¶ 142(c).

Dr. Monge also challenges two Andscape articles: one written by Nicole Froio and the other written by Linn Washington. She alleges Ms. Froio implied racist motivations and racial insensitivity by stating:

> The handling of the remains of the two MOVE bombing victims is certainly not, as Rouge noted, a 'conspiracy.' The reality is much worse. The theft of Tree's and Delisha's bones indicates that despite attempts to purge academia and anthropology of colonial logics, they are baked into the structure. It is clear that there is still a belief in the field of anthropology that the remains of Black people are scientific objects to be studied or stored away in boxes rather than laid to rest by their families.

*Id.* at ¶ 142(e). Dr. Monge further alleges the article stated, "[i]n death, [Katricia and Delisha's] bones were used as objects of colonial plunder at academic institutions," suggesting that Dr. Monge acted unethically, unprofessionally, and in a racist manner. *Id.* (alterations in original). Additionally, Linn Washington's article allegedly states that Dr. Monge "mistreated" the remains. *Id.* at ¶ 142(h). Dr. Monge also alleges it "falsely asserts that [Dr.] Monge's actions were unprofessional and unlawful" by stating, "[a]lthough the scandal caused Princeton to cancel that online course, anthropologist Janet Monge retains her positions at the Penn Museum and on the university's faculty." *Id.* The article "then went on to suggest that Penn's failure to remove Dr. Monge from her position 'renders the University of Penn's apology hollow.'" *Id.*

Lastly, Dr. Monge challenges statements in a Teen Vogue article written by Ezra Lerner, alleging they implied "improper professional conduct" by stating that "the remains of at least one young girl – believed to possibly belong[] to Tree as well as Delisha Africa, victims of the police's 1985 bombing of the MOVE house in Philadelphia – had been improperly kept for decades by archaeologists Alan Mann and Janet Monge." *Id.* at ¶ 142(i). Dr. Monge also alleges the article "states that the handling of the remains was 'unethical.'" *Id.*

The law governing defamation by implication and civil aiding and abetting claims is fully set forth in the Court's October 28, 2024 opinion regarding the Hyperallergic Media Defendants. Beginning with the defamation by implication claims, the Court finds that the alleged implications are non-actionable pure opinions based on disclosed facts. Both the Slate article and the Andscape article written by Ms. Froio overview historical examples of anthropologists using African American human remains for scientific study and then point to Dr. Monge's use and description of the bone fragment remains. *See* ECF No. 133, Exs. H & J. Considering these disclosed facts, the alleged implication that Dr. Monge acted with racial animus is pure opinion, as "[e]veryone is free to speculate about someone's motivations based on disclosed facts about that person's behavior." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 353, 359 (3d Cir. 2020). Additionally, the Andscape article authored by Mr. Washington and the Teen Vogue article each explain that Dr. Monge stored the bone fragment remains for decades and used them in her online course without consent from the MOVE family. ECF No. 133, Exs. M & N. Mr. Washington further states that the Coursera course was shut down. As such, any implication that Dr. Monge was unprofessional or unethical is pure

BY THE COURT:

_____
Hon. Mia R. Perez

---

opinion based on disclosed facts. In light of the foregoing, the Court dismisses the defamation by implication claims with prejudice.

The false light claims also fail as a matter of law. To sustain a false light claim, Dr. Monge must prove that the published "material . . . is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (internal quotations omitted). The false light claims against Daily Mail, The Guardian, the New York Post, and their authors fail because their challenged statements are substantially true. Each article identifies the bone fragment remains as belonging to "a black child killed in" the MOVE bombing, "one of the older MOVE girls who died," and a "black teenager killed in the 1985 police bombing," respectively. ECF No. 133, Exs. C, D, E. Because Dr. Monge admits that Dr. Hameli identified the remains as belonging to 14-year-old Katricia Africa, the statements are substantially true. *Id.* at ¶ 90.

As for the false light claims against Andscape, Ms. Froio, Teen Vogue, and Ezra Lerner, those fail because Dr. Monge does not meet the actual malice standard. Actual malice is "knowledge that [the statement] was false or [was made] with reckless disregard of whether it was false or not." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991). The high burden requires the plaintiff to show the defendants "entertained serious doubts as to the truth" or "acted with a 'high degree of awareness of . . . probable falsity.'" *Id.* "[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974). Dr. Monge pleads no facts that suggest these Defendants had serious doubts as to the truth of their published statements or acted with a high degree of probable falsity. As such, the false light claims are dismissed with prejudice.

Lastly, the Court finds that the Second Amended Complaint does not plausibly allege that the Media Defendants substantially assisted or encouraged another in publishing defamatory statements. *See Doe v. Liberatore,* 478 F. Supp. 2d 742, 759 (explaining that substantial assistance requires "some affirmative action which causes the tortious actor to conduct himself inappropriately."). Because the Second Amended Complaint does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face," the civil aiding and abetting claims are dismissed with prejudice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).