**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANET MONGE,<br><br>**Plaintiff,**<br><br>v.<br><br>UNIVERSITY OF PENNSYLVANIA, et al.,<br><br>**Defendants.** | Civil Action No.: 2:22-CV-02942 |

## PENN DEFENDANTS' PRETRIAL MEMORANDUM

Defendants Trustees of the University of Pennsylvania ("Penn"), Dr. Amy Gutmann, Dr. Wendell Pritchett, and Dr. Kathleen Morrison (collectively, the "Penn Defendants") respectfully submit this Pretrial Memorandum pursuant to the Court's applicable Policies and Procedures and Local Civil Rule 16.1.

## I. NATURE OF THE ACTION AND THE PARTIES' CLAIMS

Plaintiff Janet Monge ("Plaintiff") filed this action on April 20, 2022 asserting claims for defamation, defamation by implication, false light, and civil aiding and abetting against Penn, its former President, Dr. Amy Gutmann, and its former Provost, Dr. Wendell Pritchett. Plaintiff also asserts a civil aiding-and-abetting claim against Kathleen Morrison, former Chair of Penn's Anthropology Department. The claims arise from the public controversy following revelations that Plaintiff had retained and used human remains recovered from the 1985 MOVE bombing at the Penn Museum.

## II. FACTUAL SUMMARY OF THE CASE

This case arises from the consequences of Plaintiff's decision to retain the remains of children killed in the 1985 MOVE bombing for more than three decades and use them for teaching and research without their families' knowledge or consent. On May 13, 1985, during a

confrontation between Philadelphia police and members of MOVE, a Philadelphia-based organization whose members adopted the surname "Africa," police dropped an incendiary device onto a rowhouse occupied by MOVE members on Osage Avenue in West Philadelphia. Eleven people, including five children, died in the ensuing fire. Among the victims were 14-year-old Katricia Dotson and 12-year-old Delisha Orr.

Following the bombing, the City of Philadelphia established an independent commission, known as the MOVE Commission, with authority to investigate the events of May 13, 1985. As part of its investigation, the Commission retained several independent forensic experts to examine human remains recovered from the basement of the MOVE rowhouse on Osage Avenue. The experts identified certain remains, designated B-1, as belonging to Katricia Dotson, and another set of remains, designated Body G, as belonging to Delisha Orr. Meanwhile, the Philadelphia Medical Examiner's Office ("MEO") had also asked Alan Mann, a professor of anthropology at Penn, to help in identifying remains from the MOVE site. Plaintiff, who was then a graduate student, assisted Mann with that task.

Mann and Plaintiff reached different conclusions regarding the ages of B-1 and Body G, disputing the findings of the Commission's experts. Despite that disagreement, however, the MEO ultimately accepted the Commission experts' identifications, issued death certificates for Katricia and Delisha, and approved the release of the remains to their families. The families then held funerals and believed they buried their daughters.

Unbeknownst to the families, however, Mann and Plaintiff retained the remains designated B-1 and Body G, rather than returning them to the MEO or the families. The remains stayed in boxes at Penn for more than three decades, with Plaintiff assuming custody after Mann left the University for Princeton in 2001. During that time, Plaintiff used the remains for teaching, public

presentations, and student research, including in a publicly available online course offered through Coursera in 2020, in which she displayed and handled the B-1 remains alongside an undergraduate student. Throughout this period, Plaintiff never personally informed the children's families that she continued to possess the remains or sought their consent for their educational use. Nor did she submit any supplemental forensic report, update the MEO on her purported identification efforts, or inquire about returning the remains.

In April 2021, Penn Museum leadership learned of Plaintiff's retention and use of the MOVE remains, including in the online course, when then-graduate student Paul Mitchell alerted Museum officials that journalists were preparing articles concerning those matters. The information was subsequently communicated to University administrators. Meanwhile, Museum leaders, led by recently appointed Museum Director Dr. Christopher Woods, began investigating the circumstances of the retention of the MOVE remains at the Penn Museum, including by speaking directly with Plaintiff and examining historical records and other relevant materials.

That inquiry confirmed the essential facts: human remains recovered from the MOVE bombing had been retained at the Penn Museum for more than three decades. Beginning on April 21, 2021, news articles concerning the remains prompted widespread media coverage, public criticism, and demands from the Africa family for the return of the remains. On April 26, 2021, after being informed by Dr. Woods about the Museum's investigation and the information gathered concerning the retention and use of the remains, Drs. Gutmann and Pritchett issued a six-sentence public statement (the "Statement") acknowledging the Museum's decades-long retention of the remains, describing that retention as "insensitive, unprofessional, and unacceptable," and apologizing to the Africa family. The Statement, which did not name Plaintiff, also announced that

Penn had retained independent investigators to determine how the remains came into the Museum's possession and what had transpired during the intervening decades.

Following the Statement, Penn Museum leadership and communications personnel continued to work closely with Plaintiff, soliciting her input and assistance in providing relevant information, responding to media inquiries, and developing and approving public communications concerning the remains. Although the Anthropology Department faculty voted not to renew Plaintiff's adjunct appointment, Penn did not sever its relationship with her. To the contrary, Plaintiff continued to work with individual students, including advising undergraduate and graduate students, and the Penn Museum offered her a new contract that allowed her to remain involved in Museum affairs, including serving on Museum committees, until its expiration in 2023.

## III. THE PENN DEFENDANTS' DEFENSES

### A. The Statement Is Not Defamatory Because It Expressed a Protected Opinion Based on Disclosed Facts.

The Statement expressed an opinion, not a false statement of fact, and therefore cannot support a defamation claim. The Statement first explained that "human remains, provided to a faculty member by the medical examiner many decades ago in an effort to identify a victim from the 1985 bombing of the MOVE house, had been kept at the Penn Museum for much of that time." Plaintiff admits that this description is factually accurate. Thus, it cannot be defamatory. The very next sentence stated: "Simply said, ***this*** was insensitive, unprofessional, and unacceptable" (emphasis added). The word "this" refers directly to the decades-long retention of the remains described in the preceding sentence. The Statement thus made clear the facts underlying Penn's criticism, rather than suggesting any additional, undisclosed misconduct.

Moreover, the terms "insensitive," "unprofessional," and "unacceptable" are opinions. The evidence will also show that Plaintiff herself recognized that Penn's characterization of the

circumstances as "unacceptable" and "insensitive" reflected a matter of personal judgment rather than an objectively verifiable fact. Indeed, those words expressed Drs. Gutmann and Pritchett's subjective assessment of the circumstances, rather than an objectively verifiable assertion of fact. Courts in the Third Circuit have routinely recognized that characterizations of conduct as "unprofessional" may constitute nonactionable opinion. *See, e.g.*, *Kane v. Chester County*, 811 F. App'x 65, 70–71 (3d Cir. 2020). Because the Statement disclosed the basis for that assessment, readers were free to evaluate the facts and reach their own conclusions. Plaintiff's disagreement with Drs. Gutmann and Pritchett's opinion does not transform the Statement into an actionable defamatory statement. *See McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020).

### B. <u>The Statement Did Not Defame Plaintiff Because It Was Not "Of and Concerning" Her.</u>

Plaintiff cannot establish that the Statement was "of and concerning" her because a reasonable reader would not understand it as referring to Plaintiff. The Statement did not name Plaintiff, identify her position, or accuse her of any specific misconduct. Its only reference to any individual at Penn was to a "faculty member" who had received the remains from the medical examiner. That reference was to Alan Mann, not Plaintiff, who was only a graduate student at the time, not a faculty member. Instead, the Statement addressed the Penn Museum's decades-long retention of the remains, with Penn accepting institutional responsibility and apologizing to the Africa family. Consistent with that language, Drs. Gutmann and Pritchett will testify that their criticism was directed at the *Museum*, not at Plaintiff personally.

### C. <u>The Statement Is Not Defamatory Because Plaintiff Cannot Establish That It Was False.</u>

Even if the Statement could reasonably be understood as referring to Plaintiff and asserting a fact, Plaintiff's defamation claim still fails because a statement must be false to be defamatory.

Plaintiff cannot establish falsity. The Statement accurately stated that human remains from the MOVE bombing had been kept at the Penn Museum for decades, a fact Plaintiff does not dispute. And, even if the Statement were understood as criticizing Plaintiff's conduct rather than the Museum's, the evidence will show that the characterization of that conduct as "insensitive, unprofessional, and unacceptable" was substantially true.

Plaintiff's conduct was insensitive, unprofessional, and unacceptable. The evidence at trial will show that Plaintiff herself acknowledged that she had retained the remains for too long, failed to prioritize their identification and return, and exercised poor judgment in handling the matter. For more than three decades, Plaintiff retained the remains of children killed in the MOVE bombing in boxes at the Penn Museum. The MOVE Commission's forensic experts had identified those remains as belonging to Katricia and Delisha, the Medical Examiner's Office had accepted those identifications, and the families had held funerals for their daughters. Rather than respect the official identifications and the families' wishes that their daughters' remains be laid to rest, Plaintiff and Dr. Mann kept the children's remains at Penn for decades in an effort to vindicate their own competing theory. Throughout that time, Plaintiff never personally contacted the children's parents, never informed them that she possessed the remains, and never offered to return them. Nor did she prepare a supplemental forensic report, provide her findings to the MEO, or even contact that office over the ensuing decades to remind it that she still possessed the remains.

When Plaintiff ultimately ceased her efforts to identify the remains, she did not return them to the MEO. Instead, she used and displayed the remains in a publicly available Coursera course, exposing them to viewers around the world without the families' knowledge or consent. The evidence will further show that when the families learned of the remains' continued retention and use, they were deeply distressed and demanded their return.

The professional community's response further supports the substance of Dr. Gutmann and Dr. Pritchett's assessment. The evidence will show that respected anthropologists and professional organizations criticized the retention and educational use of the remains. The American Board of Forensic Anthropology condemned their educational use as "egregious mistreatment of human remains," while the American Anthropological Association concluded that their use in the online course violated principles of ethical conduct. These assessments were consistent with Drs. Gutmann and Pritchett's characterization of the Museum's decades-long retention of the remains as "insensitive, unprofessional, and unacceptable."

**D. <u>Plaintiff Cannot Establish Actual Malice or Negligence.</u>**[1]

Plaintiff will not be able to establish that Defendants acted with either actual malice or negligence. To prove actual malice, Plaintiff must show that Defendants knew the Statement was false or published it with reckless disregard for its truth. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 437 (Pa. 2015). Even under the lower negligence standard, Plaintiff must show that Defendants failed to exercise reasonable care in determining whether the Statement was true. Plaintiff will not be able to make either showing.

Before issuing the Statement, Penn investigated the relevant facts. Penn Museum Director Dr. Christopher Woods spoke directly with Plaintiff, examined historical records and other materials, and reported his findings to Dr. Pritchett, who then briefed Dr. Gutmann. That inquiry confirmed the central fact underlying the Statement: human remains from the MOVE bombing had been kept at the Penn Museum for decades. Drs. Gutmann and Pritchett relied on those findings and genuinely believed that the Museum's retention of the remains was "insensitive,

---

[1] The Penn Defendants maintain that Plaintiff is a limited-purpose public figure, as addressed more fully in their motion for summary judgment. *See* ECF No. 290 at 11–15; *see also* ECF No. 173 at 11–15. Because Plaintiff's public-figure status is a question of law for the Court, rather than an issue for the jury, Defendants do not address it further herein. *See Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1081 n.4 (3d Cir. 1985).

unprofessional, and unacceptable" and warranted an institutional apology. Neither believed the Statement was false nor did they have serious doubts about its accuracy. Plaintiff therefore will not be able to show that Defendants failed to exercise reasonable care in verifying the facts or knowingly or recklessly published a false statement.

### E. **The Statement Neither Conveyed a Defamatory Implication Nor Portrayed Plaintiff in a False Light.**

The evidence at trial will show that the Statement did not suggest that Plaintiff was racist, that she violated ethical rules, or that she engaged in any other personal misconduct. The Statement did not name Plaintiff, accuse her of wrongdoing, or attribute any improper motive to her. Instead, it addressed the Penn Museum's decades-long retention of the remains, accepted institutional responsibility, and announced an independent investigation. Although earlier news articles had raised questions about Plaintiff's conduct, Penn did not repeat those accusations in its Statement. Plaintiff cannot hold Defendants liable for implications drawn from media coverage or allegations that the Statement itself did not convey.

Moreover, the evidence will establish that Drs. Gutmann and Pritchett neither intended to convey the alleged implications nor acted negligently or recklessly in issuing the Statement. They reasonably relied on information gathered through the Museum's inquiry and genuinely believed the Statement accurately reflected the circumstances. Thus, regardless of whether the applicable standard is negligence or actual malice, Plaintiff cannot establish the requisite fault.

And just as with her defamation claim, even if the Statement could be understood as implying that Plaintiff personally acted unethically or violated professional standards, the evidence will show that such an implication was substantially true. Penn's forensic anthropology expert will testify that Plaintiff's handling, retention, and educational use of the remains fell below accepted professional and ethical standards. Her opinions are consistent with the conclusions of professional

anthropology organizations that condemned the educational use of the remains and found it inconsistent with their ethical standards.

Plaintiff's false-light claim will fail for the same reasons. The Statement did not portray her falsely or create a highly offensive false impression of her, much less one that Drs. Gutmann and Pritchett knew was false or recklessly disregarded. *See Graboff v. Colleran Firm*, 744 F.3d 128, 136–37 (3d Cir. 2014).

**F. <u>Plaintiff Cannot Establish Her Aiding-and-Abetting Claims.</u>**

Plaintiff's aiding-and-abetting claims will also fail because the evidence at trial will show that none of the Penn Defendants knowingly assisted in any alleged wrongdoing. Under Pennsylvania law, aiding-and-abetting liability requires proof of an underlying tort, actual knowledge of the wrongful conduct, and knowing and substantial assistance in committing it. Mere awareness of circumstances that might warrant further investigation is not enough. *Marion v. Bryn Mawr Trust Co.*, 288 A.3d 76, 89–92 (Pa. 2023). Plaintiff will not be able to establish these elements against any of the Penn Defendants.

First, the evidence will show that Mitchell did not commit the underlying tort on which Plaintiff's claims depend. Mitchell provided factual information about the MOVE remains, Plaintiff's Coursera course, and anticipated news coverage. His purpose was to alert Museum leadership to an impending controversy before the articles were published, not to make false accusations against Plaintiff. Indeed, Mitchell had no reason to alert University officials in advance if his objective was simply to harm Plaintiff. Nothing in his communications establishes the underlying defamation claim that Plaintiff alleges the Penn Defendants assisted.

The evidence will also show that Morrison did not knowingly assist Mitchell in any alleged wrongdoing. Morrison did not direct Mitchell's activities, authorize communications with the media, or participate in preparing or issuing Penn's Statement. She understood Mitchell to be

providing advance notice of a potential controversy, and she did not simply accept his account as true. Moreover, Morrison took affirmative steps to support Plaintiff, including efforts to preserve her student advising responsibilities, salary support, and authorship credit. Her conduct was not consistent with an effort to encourage or assist wrongdoing against Plaintiff.

Nor will the evidence establish knowing assistance by Penn, Dr. Gutmann, or Dr. Pritchett. Rather than accepting Mitchell's information at face value, Museum leadership independently investigated the circumstances, spoke directly with Plaintiff, and examined historical records and other materials. Neither Drs. Gutmann nor Pritchett communicated with Mitchell about the remains before issuing the Statement, and Dr. Gutmann did not even know who Mitchell was. The evidence will show no coordination between Mitchell and the Penn Defendants to defame Plaintiff or cause her harm.

Ultimately, the evidence will establish that Penn responded independently to information about a matter of substantial public concern. The fact that Penn investigated the circumstances and issued its own institutional Statement does not mean it knowingly assisted Mitchell in committing a tort.

## IV. <u>RELIEF SOUGHT AND DAMAGES</u>

Plaintiff seeks damages for alleged reputational harm, emotional distress, lost income, and diminished professional opportunities, as well as punitive damages. As set forth in Defendants' pending motion in limine, Plaintiff should be precluded from presenting undisclosed economic-damages calculations, evidence of injuries not causally connected to the April 26 Statement, and speculative testimony concerning lost professional opportunities, employability, or future earnings. *See* ECF No. 301. Plaintiff failed to provide the required computations supporting her claimed economic losses, has not established a sufficient causal foundation for attributing

independently caused injuries to the Penn Defendants, and cannot rely on speculation about third parties' decisions or hypothetical employment opportunities to establish damages. *Id.*

Indeed, the evidence at trial will not support her claim that the Penn Defendants caused these injuries. Plaintiff must establish that her claimed damages resulted from the Penn Defendants' allegedly wrongful conduct, rather than the broader controversy surrounding the MOVE remains or conduct from now-dismissed Defendants. The evidence will show that any reputational harm Plaintiff suffered arose principally from public scrutiny of her own admitted conduct, including her decades-long retention of the remains and their use in a publicly available online course, and the extensive independent media coverage of that conduct. Before Penn issued its six-sentence Statement on April 26, 2021, Plaintiff had already been identified by name in widely circulated articles published by *Billy Penn, The Philadelphia Inquirer,* and *The New York Times*, among others. Indeed, Plaintiff testified that the threats, anxiety, and emotional distress she experienced began with the April 21 Billy Penn article, five days before Penn spoke publicly. The evidence will not establish that Penn's subsequent Statement, rather than Plaintiff's underlying conduct and the far more extensive reporting and public criticism that preceded it, caused the reputational and emotional injuries for which she seeks recovery.

Plaintiff's claimed economic and professional losses are similarly unsupported. The evidence will show that Penn continued to employ Plaintiff after the Statement and entered into a new two-year Museum contract with her in September 2021. When that contract expired in 2023, Plaintiff did not seek an extension. Nor did she apply for employment elsewhere after her contract ended. Plaintiff has identified no prospective employer that declined to hire her or any specific professional opportunity she lost because of the Statement or any action taken by the Penn Defendants. Finally, the evidence will not support punitive damages. As discussed above, Penn

conducted an inquiry before issuing the Statement, confirmed its factual premise, and expressed a sincerely held institutional judgment. Plaintiff therefore will be unable to establish that Drs. Gutmann or Pritchett knowingly or recklessly published a false statement, much less that they engaged in the egregious conduct necessary to support punitive damages.

## V. WITNESS LIST

In addition to examining witnesses called by Plaintiff, the Penn Defendants may call the following fact witnesses at trial concerning liability and damages, subject to the Court's evidentiary rulings.

### A. Plaintiff Janet Monge

- Dr. Monge may be called to testify about: (1) her education, professional background, research, and employment at Penn and the Penn Museum, including her work with Dr. Alan Mann and her responsibilities concerning the Museum's human remains collections; (2) her knowledge of and involvement in the examination, identification, retention, custody, storage, handling, and use of human remains associated with the 1985 MOVE bombing, including the history of those remains and related forensic identification efforts; (3) her communications with the Philadelphia Medical Examiner's Office, the Africa family, and other individuals or organizations concerning the remains, their identification, and their potential return; (4) her research, teaching, publications, presentations, and other professional activities involving the remains, including the preparation, content, and dissemination of the Coursera course; (5) her relationship and interactions with Paul Mitchell, including communications with Mitchell, Drs. Morrison and Thomas, and other University and Museum personnel concerning that relationship; (6) her knowledge of and involvement in the Museum's inquiries, media response, and investigation concerning the remains, including her communications with Drs. Woods, Tinney, and other University and Museum personnel and the information and materials she provided; (7) the public controversy surrounding the remains, the Africa family's response, media coverage, and her communications with journalists and other third parties; (8) her knowledge and understanding of the April 26 Statement and other public communications by Penn and the Museum, including her communications with University personnel concerning those statements; (9) her employment, teaching assignments, research, facilities, compensation, student advising responsibilities, and other professional activities at Penn; and (10) the factual allegations underlying her claims, her communications and interactions with Defendants and other relevant individuals, and her alleged reputational, emotional, professional, and economic injuries, including the nature, extent, causation, and calculation of her claimed damages.

**B. Dr. Amy Gutmann**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Gutmann may be called to testify about: (1) her role and responsibilities as Penn's President during the relevant period; (2) when and how she learned of the MOVE remains, the information communicated to her by University and Museum leadership, and her understanding of the circumstances; (3) her knowledge of and involvement in the Penn Museum's inquiries and investigation concerning the MOVE remains, including the information developed and communicated to University leadership; (4) the public controversy surrounding the remains, the Africa family's response, and the University's reasons for responding publicly; (5) the preparation, purpose, content, meaning, and factual basis of the April 26 Statement, including her understanding and beliefs at the time of its publication; (6) Penn's decision to apologize to the Africa family, facilitate the return of the remains, and commission an independent investigation; (7) her knowledge of and communications, if any, with Paul Mitchell, including her awareness of Plaintiff's relationship with Mitchell; (8) her knowledge of and involvement, if any, in decisions concerning Plaintiff's employment and professional responsibilities at Penn; (9) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within her personal knowledge or involvement.

**C. Dr. Wendell Pritchett**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Pritchett may be called to testify about: (1) his role and responsibilities as Penn's Provost during the relevant period, including his oversight of the Penn Museum; (2) when and how he learned of the MOVE remains, his communications with Drs. Woods, Gutmann, and other University and Museum personnel, including Plaintiff, and his understanding of the circumstances; (3) his knowledge of and involvement in the Penn Museum's inquiries and investigation concerning the MOVE remains and the Coursera course, including the information developed and communicated to University leadership; (4) the public controversy surrounding the remains, the Africa family's response, and the University's reasons for responding publicly; (5) the preparation, purpose, content, meaning, and factual basis of the April 26 Statement, including his understanding and beliefs at the time of its publication; (6) Penn's decision to apologize to the Africa family, facilitate the return of the remains, and commission an independent investigation; (7) his knowledge of and communications, if any, with Paul Mitchell, including his awareness of Plaintiff's relationship with Mitchell; (8) his knowledge of and involvement, if any, in decisions concerning Plaintiff's employment and professional responsibilities at Penn; and (9) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within his personal knowledge or involvement.

**D. Dr. Kathleen Morrison**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Morrison may be called to testify about: (1) her role and responsibilities as Chair of Penn's Anthropology Department during the relevant period, including her authority concerning faculty appointments, teaching assignments, and other employment-related matters; (2) her knowledge and understanding of Plaintiff's relationship and interactions with Paul Mitchell, and her communications with Plaintiff, Mitchell, and other University personnel related to such matters; (3) the April 16, 2021 meeting, Mitchell's communications concerning the MOVE remains, and her understanding of the information he conveyed; (4) her knowledge of the MOVE remains, her examination of the Coursera course, her communications with Plaintiff and Museum leadership, and her knowledge of and involvement in the Museum's investigation into the circumstances surrounding the remains; (5) the public controversy surrounding the remains, the Africa family's concerns, and the University's response; (6) her knowledge of and involvement, if any, in the preparation, content, and publication of the April 26 Statement; (7) her knowledge of and involvement in decisions concerning Plaintiff's employment, teaching assignments, and professional responsibilities at Penn; (8) her communications with and efforts to support Plaintiff; and (9) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within her personal knowledge or involvement.

**E. Dr. Rachel Watkins**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Watkins may be called to testify, to the extent within her personal knowledge, about: (1) her collections-management work at the Penn Museum; (2) human remains held at the Penn Museum, including the inventorying, cataloguing, documentation, and examination of those remains and the discovery of certain other relevant remains; (3) the examination, analysis, and identification efforts concerning those remains, including their identification as Body G and the basis for that identification; (4) reports prepared concerning those remains and related records, findings, photographs, and communications; and (5) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within her personal knowledge or involvement.

**F. Alex Denning**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Alex Denning may be called to testify, to the extent within their personal knowledge, about: (1) collections-management work at the Penn Museum; (2) human remains held at the Penn Museum, including the inventorying, cataloguing, documentation, and examination of those remains and the discovery of certain other relevant remains; (3) the examination, analysis, and identification efforts concerning those remains, including their identification as Body G and the basis for that identification; (4) reports prepared concerning those remains and related records, findings, photographs, and communications; and (5) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within their personal knowledge or involvement.

**G. <u>Dr. Deborah Thomas</u>**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Thomas may be called to testify about: (1) her role and responsibilities within Penn's Anthropology Department during the relevant period; (2) her knowledge and understanding of Plaintiff's relationship and interactions with Paul Mitchell, including her communications with Plaintiff, Mitchell, and other University personnel related to such matters; (3) the April 16, 2021 meeting, Mitchell's communications concerning the MOVE remains, and her understanding of the information he conveyed; (4) her knowledge of Mitchell's report concerning the MOVE remains, including its preparation, contents, and dissemination; (5) her knowledge of the MOVE remains, the Coursera course, and the Museum's inquiries and investigation into the circumstances surrounding the remains, including her communications with Plaintiff and Museum leadership; (6) the public controversy surrounding the remains, the Africa family's concerns and response, and the University's responses; and (7) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within her personal knowledge or involvement.

**H. <u>Dr. Christopher Woods</u>**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Woods may be called to testify about: (1) his role and responsibilities as Director of the Penn Museum during the relevant period, including his oversight of Museum collections, personnel, and operations; (2) when and how he learned of the MOVE remains, the April 16, 2021 meeting, Mitchell's communications and report concerning the remains, and his understanding of the information conveyed; (3) his knowledge of the MOVE remains, Plaintiff's retention and use of the remains, the Coursera course, and the Museum's investigation into the circumstances surrounding the remains; (4) his communications with University leadership concerning the remains, the Museum's investigation, and the information developed; (5) the public controversy surrounding the remains, the Africa family's concerns and response, and the University's and Museum's responses; (6) Penn's and the Museum's efforts to apologize to the Africa family, facilitate the return of the remains, and conduct an independent investigation; (7) his knowledge of and involvement in decisions concerning Plaintiff's employment, research, Museum facilities, and professional responsibilities at Penn; and (8) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within his personal knowledge or involvement.

**I. <u>John Taggart</u>**

779 Claire Road
Philadelphia, PA 19128

- John Taggart may be called to testify about: (1) his professional background, including his employment as a photographer at Penn and as a police officer and crime scene investigator with the Philadelphia Police Department; (2) his professional and personal relationship with Plaintiff, including their communications concerning forensic anthropology, human remains, and related matters; (3) his knowledge of and involvement, if any, in the investigation of the 1985 MOVE bombing and the identification of remains associated with that incident; (4) his knowledge and understanding of the status of the MOVE bombing investigation, including any communications with Plaintiff, the Philadelphia Medical Examiner's Office, or the Philadelphia Police Department concerning whether the investigation remained open or had been closed; (5) his knowledge of and involvement, if any, in efforts to return or transfer the MOVE remains to the Philadelphia Medical Examiner's Office or Philadelphia Police Department, including any discussions with Plaintiff concerning the return of those remains; and (6) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within his personal knowledge or involvement.

**J. Joe H. Tucker, Jr. (Conditional Witness)[2]**

Tucker Law Group, LLC
100 N 20th St #301
Philadelphia, PA 19103

- The Penn Defendants object to admission of the Tucker Law Group report and do not concede the admissibility of the report or any part of it. Mr. Tucker is identified solely on a conditional basis. If the Court is inclined to permit introduction of, or substantive reliance on, the Tucker Law Group report, the Penn Defendants reserve the right to call Mr. Tucker to testify about: (1) the scope, purpose, and methodology of the Tucker Law Group's investigation into the Penn Museum's retention, handling, and use of the MOVE remains; (2) his interactions and communications with Plaintiff, University and Museum personnel, and others concerning the investigation; (3) the information, records, interviews, and other materials obtained and considered during the investigation; (4) the factual assumptions and limitations underlying the investigation and report; and (5) the investigation's findings and conclusions in their full context. This disclosure does not waive the objection to the report or constitute consent to its admission.

**K. <u>Dr. Stephen Tinney</u>**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

- Dr. Tinney may be called to testify about: (1) his historical and current roles and responsibilities at the Penn Museum, including his oversight of Museum collections, personnel, research, and operations; (2) his professional relationship and interactions with Plaintiff, including his knowledge of her research, teaching, collections-management responsibilities, and use of Museum facilities and resources; (3) his knowledge of the MOVE remains; (4) the April 16, 2021 meeting, Mitchell's communications and report concerning the remains, and his understanding of the information conveyed; (5) his knowledge and understanding of Plaintiff's relationship and interactions with Paul Mitchell, including his communications with Plaintiff, Mitchell, and other University and Museum personnel concerning those matters; (6) his knowledge of Plaintiff's retention and use of the MOVE remains, the Coursera course, and the Museum's inquiries, media response, and investigation into the circumstances surrounding the remains, including his communications with Plaintiff, Mann, Woods, Morrison, Thomas and others, and his examination of relevant records and materials; (7) his communications with Museum and University leadership concerning the remains, the Museum's investigation, and the information developed; (8) the public controversy surrounding the remains, the Africa family's concerns and response, and the University's and Museum's responses; (9) Penn's and the Museum's efforts to apologize to the Africa family, facilitate the return of the remains, and commission and conduct an independent investigation; (10) his knowledge of

[2] The Penn Defendants have filed a motion to exclude the report of Joe Tucker. Accordingly, the Penn Defendants identify Mr. Tucker as a conditional witness solely in the event that the Court denies their motion to exclude.

and involvement in decisions concerning Plaintiff's employment, research, Museum facilities, and professional responsibilities at Penn; and (11) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within his personal knowledge or involvement.

**L. <u>Malcolm Burnley</u>**

624 South Hancock Street
Philadelphia, Pennsylvania 19147

- Malcolm Burnley may be called to testify about: (1) his professional background and work as a journalist, including his reporting and research concerning Plaintiff and the MOVE remains; (2) his relationship and communications with Plaintiff concerning her work with the MOVE remains, including his 2014 profile of Plaintiff and subsequent discussions regarding potential news coverage; (3) his investigation and attempted reporting concerning the MOVE remains, including his communications with Consuewella Africa and Ramona Africa, the circumstances and substance of those communications, and his communications with Plaintiff concerning them; and (4) any other matters relevant to Plaintiff's claims, Defendants' defenses, and Plaintiff's alleged damages, to the extent within his personal knowledge or involvement.

The Penn Defendants reserve the right, subject to applicable disclosure requirements and the Court's permission, to present rebuttal or impeachment testimony, supplement this list on appropriate notice, and use admissible deposition testimony if a witness is unavailable. Any affirmative deposition designations and counter-designations will be made in accordance with the Court's orders.

## VI. <u>EXPERT WITNESS</u>

**A. <u>Dr. Elizabeth DiGangi</u>**

c/o Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103

Dr. Elizabeth A. DiGangi may be called to testify concerning the contents of her expert report and the opinions asserted therein, dated July 30, 2026, including, but not limited to: (1) her qualifications, education, training, and experience as a board-certified forensic anthropologist; (2) professional practices and standards concerning the examination, identification, handling,

documentation, retention, and use of forensic human remains; and (3) her opinions and conclusions concerning the MOVE remains and the conduct of Drs. Mann and Plaintiff, including the factual, scientific, and professional bases for those opinions. Dr. DiGangi's opinions and their supporting bases are set forth more fully in her expert report, which includes her curriculum vitae as Appendix D. Plaintiff has not designated an expert nor produced an expert report.

## VII. EXHIBITS

The Penn Defendants' proposed trial exhibits are identified in Exhibit A, which is incorporated herein. The Penn Defendants may offer or use these exhibits at trial, subject to authentication, the Federal Rules of Evidence, and the Court's rulings.[3]

Exhibit A does not include documents that may be used for impeachment or in response to exhibits identified by Plaintiff after the submission of this Pretrial Memorandum. The Penn Defendants reserve the right to identify and use such documents at trial, as well as appropriate rebuttal evidence, admissible admissions, deposition excerpts, and demonstratives. The Penn Defendants further reserve the right to supplement Exhibit A, subject to the Court's orders, applicable disclosure requirements, and appropriate notice to Plaintiff.

## VIII. DEPOSITION DESIGNATIONS

The Penn Defendants' proposed deposition designations are identified in Exhibit B, which is incorporated herein. The Penn Defendants may offer or use these deposition excerpts at trial, subject to the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the Court's rulings. The Penn Defendants reserve the right to offer additional deposition testimony for impeachment, rebuttal, or in response to testimony or evidence offered by Plaintiff, and to

---

[3] The identification of any witness or exhibit does not constitute a concession as to admissibility or a waiver of any timely objection. In particular, the Penn Defendants object to the admission of the Tucker Law Group report and request that the Court resolve its admissibility before the report is presented to the jury. The conditional identification of Mr. Tucker in Section V.J does not waive or otherwise affect that objection.

supplement their designations as appropriate, subject to the Court's orders, applicable disclosure requirements, and appropriate notice to Plaintiff.

## IX. OTHER ISSUES

The Penn Defendants have filed four motions in limine seeking to exclude or limit certain evidence and arguments at trial, which remain pending.

1. **Motion in Limine to Limit Plaintiff's Damages Evidence and Argument (ECF No. 301).** The Penn Defendants seek to preclude Plaintiff from introducing undisclosed economic-damages calculations, speculative testimony concerning lost employment opportunities and future earnings, and evidence of harm not causally attributable to the April 26 Statement. The motion also seeks to prevent Plaintiff from recovering defamation damages based on independent employment decisions or injuries caused by third parties.
2. **Motion in Limine to Preclude University Investigative Reports and Evidence or Testimony Concerning Their Findings and Conclusions (ECF No. 306).** The Penn Defendants seek to exclude the third-party investigative reports prepared by the University of Pennsylvania and Princeton University, including testimony or argument concerning their findings and conclusions, because they constitute inadmissible hearsay and were prepared after the April 26 Statement, rendering them irrelevant to the Defendants' knowledge or state of mind at the time of publication. The reports also risk unfair prejudice and jury confusion by inviting the jury to substitute the investigators' conclusions for its own factual determinations.
3. **Motion in Limine to Preclude Undisclosed Expert Opinion Testimony (ECF No. 307).** The Penn Defendants seek to preclude Plaintiff from offering undisclosed expert opinions concerning the age at death of individuals associated with the MOVE remains and whether

her handling of the remains complied with accepted forensic anthropology standards. Because Plaintiff was not disclosed as an expert, such opinions are inadmissible.

4. **Motion in Limine to Preclude Evidence Related to Racial Animus and "Cancel Culture" (ECF No. 308).** The Penn Defendants seek to preclude Plaintiff from suggesting that they accused her of racism, acted with racial animus, or participated in "cancel culture," including by attributing third-party accusations of racism to them. Such assertions lack evidentiary support, contradict the Court's prior determination that the April 26 Statement does not imply racism, and risk unfair prejudice and confusion concerning the issues actually before the jury.

Dated: November 16, 2026

Respectfully submitted,

<u>*/s/ Michael L. Banks*</u>

Michael L. Banks, Bar No. 35052
michael.banks@morganlewis.com
Klair Fitzpatrick, Bar No. 309329
klair.fitzpatrick@morganlewis.com
Ali M. Kliment, Bar No. 318988
ali.kliment@morganlewis.com
Arielle H. Steinhart, Bar No. 331886
arielle.steinhart@morganlewis.com
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103-3007
Telephone: +1.215.963.5000
Facsimile: +1.215.963.5001

*Attorneys for Defendants Trustees of the University of Pennsylvania, Amy Gutmann, Wendell Pritchett, Kathleen Morrison*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, a true and correct copy of the foregoing Penn Defendants' Pretrial Memorandum was filed electronically through the Court's CM/ECF system, is available for viewing and downloading from that system, and was served through that system upon all counsel of record entitled to electronic service.

Alan B. Epstein
Adam A. Filbert
SPECTOR GADON ROSEN VINCI P.C.
1635 Market Street, 7th Floor, Philadelphia, PA 19103
Phone: 215.241.8832
aepstein@sgrvlaw.com
afilbert@sgrvlaw.com

*Attorneys for Plaintiff*

Todd Ewan
Michael Galey
Ivy Waisbord
Fisher & Phillips LLP
100 N. 18th Street, Philadelphia, PA 19103
Phone: 610.230.6108
iwaisbord@fisherphillips.com
mgaley@fisherphillips.com
tewan@fisherphillips.com

*Attorneys for Defendant Paul Mitchell*

*/s/ Michael L. Banks*
Michael L. Banks