**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANET MONGE,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF PENNSYLVANIA et al.,<br><br>Defendants. | : | Civil Action No.: 2:22-CV-02942 |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Plaintiff, Janet Monge ("Plaintiff" or "Dr. Monge"), by and through her undersigned counsel, respectfully submits this Pretrial Memorandum pursuant to Local Civil Rule 16.1 and the Policies and Procedures of the Honorable Mia Roberts Perez.

## I. NATURE OF ACTION

This is a defamation action. Plaintiff is a physical anthropologist who worked at the University of Pennsylvania and the Penn Museum for decades. Her claims arise from statements made in April 2021 concerning her handling and use of human remains recovered after the 1985 MOVE bombing in Philadelphia.

Plaintiff asserts four causes of action: (1) defamation; (2) defamation by implication; (3) false light invasion of privacy; and (4) civil aiding and abetting. She asserts defamation, defamation by implication, false light, and civil aiding and abetting against The Trustees of the University of Pennsylvania ("Penn"), former Penn President Dr. Amy Gutmann, and former Provost Dr. Wendell Pritchett. She asserts defamation, defamation by implication, and civil aiding and abetting against former Penn graduate student Dr. Paul Mitchell, and a civil aiding and abetting claim against former Department of Anthropology Chair Dr. Kathleen Morrison.

## II. STATEMENT OF FACTS

Following the 1985 MOVE bombing, which killed eleven people, including five children, the Philadelphia Medical Examiner's Office enlisted Dr. Alan Mann, then a Penn anthropology professor, to assist in identifying the remains. Dr. Monge, then Dr. Mann's doctoral student, assisted him. In 1986, the Medical Examiner's Office provided Dr. Mann with certain remains for continued analysis and identification. A genuine scientific controversy existed over whether the remains belonged to a MOVE victim or to an unidentified decedent, a question with significant implications for the City of Philadelphia.

The remains stayed with Dr. Mann, and later, Dr. Monge for approximately thirty-five years, during which efforts to analyze and identify them continued. Dr. Monge later discussed and displayed the remains in an online forensic anthropology course offered through Princeton University on the Coursera platform.

The controversy began with Dr. Paul Mitchell, a former student whom Dr. Monge had previously reported to University administrators for misconduct. At an April 16, 2021, meeting with Penn personnel, including Penn Museum Director Dr. Christopher Woods, Dr. Mitchell accused Dr. Monge of mishandling the MOVE remains and of professional misconduct, and he repeated and elaborated those accusations in his communications with Dr. Woods in a report he prepared on or about April 25, 2021, and in a message to Dr. Kathleen Morrison and Dr. Theodore Schurr. Dr. Monge will show that Dr. Mitchell carried his accusations beyond the University as well, including by serving as the principal source for the news coverage from outlets like Billy Penn, Philadelphia Inquirer, and New York Times Magazine that followed and repeating his accusations to colleagues, students, and the public at large.

The University amplified and ratified those accusations. On April 26, 2021, Penn's President, Dr. Amy Gutmann, and its Provost, Dr. Wendell Pritchett, issued a statement to Penn Museum employees declaring that the retention of the remains was "insensitive, unprofessional, and unacceptable" and announcing an outside investigation. That same day, Penn and the Penn Museum issued a public apology to the Africa family. Dr. Monge will further show that the Department of Anthropology published a statement concerning her conduct and the Penn Museum responded to inquiries from the news media before Penn ever conducted an appropriate investigation into whether Dr. Mitchell's accusations were true. In the weeks that followed, Dr. Monge was locked out of her laboratory, placed on a "work pause," removed from teaching, demoted to Museum Keeper, and subjected to a salary reduction of $65,000, with Penn to deem her retired after two years.

Dr. Monge does not confine her claims to any single statement. She broadly sues for the false and defamatory statements of and concerning her – made to Penn Museum employees, the Penn community, the news media, and the public – that she will prove at trial, together with the Defendants' publication and republication of those statements and their having acted in concert to brand her as incompetent. Penn took no action on Dr. Monge's own complaints about Dr. Mitchell yet acted swiftly and severely against her in response to Dr. Mitchell's accusations; the Defendants had obvious reasons to doubt the accusations and the reliability of their source; and Penn published its condemnation without investigation.

## III. PLAINTIFF'S STATEMENT OF CLAIMS

### A. Defamation and Defamation by Implication (Penn, Gutmann, Pritchett, and Mitchell).

Under Pennsylvania law, Plaintiff must establish the defamatory character of the communication, its publication, its application to her, the recipients' understanding of its

defamatory meaning and application to her, falsity, resulting harm, and abuse of any conditional privilege. The April 26 Statement is an official institutional declaration, not a protected expression of subjective opinion, and the Defendants' characterization of Dr. Monge's professional conduct is capable of being proven false. Plaintiff will prove actual malice for Defendants' statements through, among other things, the Penn Defendants' failure to investigate despite obvious reasons to doubt Dr. Mitchell and the accusations, their awareness of Dr. Mitchell's bias, and their refusal to use available internal review mechanisms.

**B. False Light Invasion of Privacy (Penn, Gutmann, and Pritchett).**

Plaintiff must establish that the Defendants gave publicity to a matter placing her in a false light that would be highly offensive to a reasonable person, with knowledge of or reckless disregard for its falsity. This claim proceeds on the same facts and for the same reasons as Plaintiff's defamation claims.

**C. Civil Aiding and Abetting (All Defendants).**

Plaintiff must prove an underlying tort and that each Defendant either acted in concert with or pursuant to a common design with one another or knowingly provided substantial assistance or encouragement. Knowledge and substantial assistance may be established by circumstantial evidence, including a Defendant's relationship to and position of authority over other actors. Plaintiff contends that the Defendants acted in concert to brand her as incompetent, and that Penn, her employer with the greatest knowledge of her work and greatest institutional authority, lent the weight of that authority to the accusations without an appropriate investigation.

## IV. ANTICIPATED DEFENSES AND PLAINTIFF'S POSITION

Defendants are expected to contend that the challenged statements were true or substantially true; that the April 26 Statement was non-actionable opinion based on disclosed

facts and did not address Dr. Monge; that Dr. Mitchell's communication with Dr. Woods was conditionally privileged; that Plaintiff cannot establish actual malice; that the aiding and abetting claim fails for lack of an underlying tort, knowledge, or substantial assistance; and that the defamation claims against Dr. Mitchell are barred by the one-year statute of limitations, 42 Pa. Const. Stat. § 5523(1).

Plaintiff will respond that the statements were false and conveyed actionable assertions of fact; that the April 26 Statement was an official declaration understood to refer to her; that Dr. Mitchell bears the burden of establishing any conditional privilege and that Plaintiff can prove abuse by a preponderance of the evidence; that the record supports actual malice by clear and convincing evidence; that the Defendants acted in concert; and that the statute of limitations is an affirmative defense on which Dr. Mitchell bears the burden, which he cannot carry given the discovery rule and the timing of Plaintiff's knowledge.

## V. DAMAGES AND RELIEF SOUGHT

Plaintiff seeks compensatory damages for harm to her professional reputation; emotional distress, mental anguish, and humiliation; and economic loss, including her demotion, a $65,000 reduction in salary, lost professional and teaching opportunities, and the premature end of her career at Penn. Plaintiff also seeks punitive damages against each Defendant for outrageous conduct, together with pre- and post-judgement interest, costs, and such further relief as the Court deems just.

## VI. WITNESSES

Plaintiff anticipates that the following witnesses could be called at the time of trial, with an identification of the issues about which each witness may testify:

1. Dr. Janet Monge – Her background; her work identifying an analyzing the MOVE remains; the Coursera course; the challenged statements; and the reputational, emotional, and economic harm she suffered.

2. Dr. Amy Gutmann – Former Penn President; co-author of the April 26, 2021 statement; its drafting, publication and basis; and the absence of any investigation before Penn's publication of its challenged statements.

3. Dr. Wendell Pritchett – Former Penn Provost; co-author of the April 26, 2021 statement; its drafting, publication and basis; and Penn's response to Dr. Monge.

4. Dr. Kathleen Morrison – Former Chair of Penn's Department of Anthropology; the Department website statement; the "work pause;" Dr. Monge's termination; and communications regarding Dr. Monge.

5. Dr. Paul Mitchell – Former Penn Ph.D. student; his statements to Dr. Woods and others; his April 2021 report; his communications with the media; and his prior history with Dr. Monge.

6. Dr. Beth Wenger – Penn's Associate Dean for Graduate Studies; communications regarding Dr. Monge and the dissertation-data dispute.

7. Dr. Greg Urban – Former Chair of Penn's Anthropology Department; Dr. Monge's appointment history and the 2021 departmental vote to remove her from her position.

8. Dr. Theodore Schurr – Professor of Anthropology; recipient of Dr. Mitchell's communication; and removal of Dr. Monge from publications.

9. Dr. Deborah Thomas – Professor of Anthropology; the professional-organization statements and public webinars concerning Dr. Monge, and Mitchell's efforts in those areas.

10. Dr. Christopher Woods – Director, Penn Museum; Dr. Mitchell's April 2021 communications to him and the Museum's communications with the news media.

11. Dr. Stephen Tinney – Deputy Director and Chief Curator, Penn Museum; direction to transport the remains, removal of Dr. Monge from the lab, and the Philadelphia Inquirer op-ed.

12. Dr. Julian Siggers – Former Director, Penn Museum; Dr. Monge's complaints regarding Dr. Mitchell.

13. Dr. Rachel Watkins – Successor curator to Dr. Monge at the Penn Museum; public commentary concerning Dr. Monge and the remains.

14. Jill DiSanto – Penn Museum public relations and communications; the Museum's media responses and handling of press inquiries.

15. Joanne Tiongson Perez – Penn Museum public relations and communications; the Museum's media responses and handling of press inquiries.

16. Bruce Mason – Lab-security incidents and reports concerning Dr. Mitchell.

17. Dr. Dorothy Roberts – Director, Penn Program on Race, Science, & Society; publication of Dr. Mitchell's statement concerning the MOVE remains.

18. Dr. Carolyn Rouse – Professor of Anthropology, Princeton University; the Coursera course and Princeton's statements.

19. Dr. Jeffrey Himpele – Lecturer, Princeton University; the construction and distribution of the Coursera course.

20. Maya Kassutto – Dr. Mitchell's advocacy concerning the MOVE remains and the coordination and communications with news publications.

21. Abdul Aliy Muhammad – Dr. Mitchell's advocacy concerning the MOVE remains and his coordination and communications with news publications.

22. Chapurukha Kusimba – Age and identity of the remains, the reasonableness of Dr. Monge's conclusions, and Dr. Monge's standing in the anthropological community.

23. Jake Nussbaum – Dr. Mitchell's advocacy concerning the MOVE remains and his coordination and communications with news publications, including the complaint regarding the Coursera course and information provided for press coverage of Dr. Monge.

24. Kinjal Dave – Dr. Mitchell's advocacy concerning the MOVE remains and his discussions and communications with news publications regarding Dr. Monge.

25. Dr. Alan Mann – The acceptance, analysis, and identification of the MOVE remains and the scientific controversy over their identity.

26. Defendants' identified fact and expert witnesses.

27. Custodian of records of all media and professional organizations issuing published statements during 2021 to authenticate all published statements and any electronic communications that have been previously identified in the pleadings in this matter concerning the actions of Dr. Monge relating to the issues raised in this litigation.

28. Dr. Jane Kauer-regarding the actions of Paul Mitchell prior to his reports to Dr. Woods regarding the issue of malicious retaliation against Plaintiff.

29. Dr. Krystal Strong-regarding the issue raised by Plaintiff of counterculture.

30. Malcolm Burnley-relating to the issue of Dr. Monge's retention of the bone fragments in issue

31. Joseph Tucker-to discuss the Tucker Law Group being hired by Penn to investigate the matter and discuss the investigation and content and conclusions of the report.

32. Jane Weiss-regarding the corsera video

## VII. EXHIBITS FOR USE DURING THE TRIAL

1. Deposition of Janet Monge (Mar. 28, 2024).
2. Deposition of Janet Monge (July 26, 2024).
3. Deposition of Janet Monge (Mar. 19, 2026).
4. Deposition of Janet Monge (May 19, 2026).
5. Deposition of Christopher Woods (July 14, 2026).
6. Deposition of Kathleen Morrison (July 7, 2026).
7. Deposition of Paul Mitchell (July 8, 2026).
8. Deposition of Paul Mitchell (July 9, 2026).
9. Deposition of Stephen Tinney (July 10, 2026).
10. Deposition of Wendell Pritchett (June 24, 2026).
11. Deposition of Deborah Thomas (June 29, 2026).
12. Deposition of Amy Gutmann (July 13, 2026).
13. Dr. Monge's Responses to Mitchell's Interrogatories.
14. Dr. Monge's Responses to Penn Defendants' Interrogatories.
15. Dr. Monge's Responses to Penn Defendants' Requests for Admission.
16. Dr. Morrison's Responses to Dr. Monge's Interrogatories.
17. Declaration of Malcolm Burnley.
18. Declaration of Christopher Woods (Aug. 2026).
19. Declaration of Kathleen Morrison (Aug. 2026).
20. Declaration of Paul Mitchell (Aug. 2026).
21. Outline of the Coursera course.
22. Coursera viewership information.

23. Invoice from Mann to Segal (May 20, 1985).

24. Philadelphia Inquirer article (May 20, 1985).

25. Letter from Lytton to Hameli (July 12, 1985).

26. Excerpt from MOVE commission hearing (Nov. 5, 1985).

27. Letter from Hameli to Lytton (Jan. 30, 1986).

28. Receipt for the MOVE remains, signed by Dr. Monge (Sept. 23, 1986).

29. Email from Dr. Monge to Burnley (July 3, 2014).

30. Email from Dr. Monge to Burnley (Sept. 2, 2014).

31. Email from Kassutto to Dr. Monge (June 14, 2016).

32. Email from Thomas to Woods, Mitchell, Morrison, Tinney (Apr. 13, 2021).

33. Email from Mitchell to Thomas et al. (Apr. 16, 2021).

34. Email from Mitchell to Woods (Apr. 16, 2021).

35. Email from Woods to Mitchell (Apr. 18, 2021).

36. Email from Tinney to Woods et al. (Apr. 18, 2021).

37. Email from Dr. Monge to Woods et al. (Apr. 18, 2021).

38. Email from Dr. Monge to DiSanto et al. (Apr. 19, 2021).

39. Email from Dr. Monge to Perez et al. attaching Dr. Monge's edits to a Penn Museum MOVE remains FAQ (Apr. 19, 2021).

40. Email from Dr. Monge to Perez (Apr. 19, 2021).

41. Email from Dr. Monge to Fixdal (Apr. 19, 2021).

42. Email from Dr. Monge to Woods and Tinney (Apr. 19, 2021).

43. Email from Rost to Gutmann and Cohen (Apr. 20, 2021).

44. Email from Dr. Monge to Woods (Apr. 21, 2021).

45. Email from Dr. Monge to Perez et al. (Apr. 23, 2021).

46. Email from Hunter to Pritchett and Fluharty (Apr. 23, 2021).

47. Email from Smith to Woods et al. (Apr. 23, 2021).

48. Email from Saint-Amour (Apr. 23, 2021).

49. Email from Dr. Monge attaching MOVE remains summary (Apr. 23, 2021).

50. Email from Dr. Monge to Mann (Apr. 24, 2021).

51. Email from Brown to Pritchett (Apr. 25, 2021).

52. Dr. Mitchell's MOVE report (Apr. 25, 2021).

53. Email from Woods to Pritchett (Apr. 26, 2021).

54. MOVE press conference transcript (Apr. 26, 2021).

55. Email from Tinney to Dr. Monge and Woods attaching Draft Museum Op-Ed (Apr. 26, 2021).

56. Statement of Dr. Gutmann and Dr. Pritchett Regarding Human Remains Recovered from the MOVE Home (Apr. 26, 2021).

57. Email from Dr. Monge to Tinney and Woods (Apr. 26, 2021).

58. Email from Charney to Hunter and Pritchett (Apr. 26, 2021).

59. Email from Pritchett to Brown (Apr. 26, 2021).

60. Email from Dr. Monge to Woods et al. (Apr. 27, 2021).

61. Email from Perfetti to Morrison and Schurr attaching Penn graduate anthropology students' demand (Apr. 27, 2021).

62. Email from Morrison to Moore and Styles (Apr. 29, 2021).

63. Letter from P. Thomas Schoenemann to Woods, Morrison and Fluharty (May 14, 2021).

64. Email from Morrison to Mitchell (May 17, 2021).

65. Email from Dr. Monge to DiSanto et al. (June 30, 2021).

66. Email from Morrison to Dr. Monge et al. (Sept. 12, 2021).

67. Email from Dr. Monge to Klaverkamp attaching appointment letter (Sept. 20, 2021).

68. Dr. Monge's Wikipedia page (Jan. 30, 2024) (ECF No. 285-138).

69. Dr. Monge's Wikipedia page (Jan. 7, 2026) (ECF No. 285-139).

70. Review of Scene Investigation by Dr. Ali Hameli.

71. Dr. Alan Mann's Report on MOVE Remains (Nov. 14, 1985).

72. MOVE fact sheet.

73. Segal Report.

74. B-1 Postmortem Report.

75. Summary of events involving MOVE remains drafted by Dr. Monge.

76. Penn Museum Body G report.

77. Dr. Monge's Curriculum Vitae.

78. Paul Mitchell's Curriculum Vitae.

79. Report of Ali Hameli.

80. Photographs of remains (Exhibit 22 to Dr. Monge's May 19, 2026 deposition).

81. Screenshot of texts between Mitchell and Deborah Thomas.

82. University of Pennsylvania Institutional Review Board Standard Operating Policies Version 11.1.

83. Defendants’ Expert Reports

84. Tucker Law Group, Report of the Independent Investigation into the Demonstrative Display of MOVE Remains at the Penn Museum and Princeton University (Aug. 20, 2021)

85. Stipulations of Fact (ECF No. 272).

86. All media and professional-organization statements published during 2021 and previously fully identified in the pleadings in this matter concerning Dr. Monge.

## VIII. LEGAL ISSUES AND ANTICIPATED DISPUTES

The principal legal issues to be tried include whether the challenged statements are actionable assertions of fact or implication rather than protected opinion; whether the April 26 Statement was of and concerning Dr. Monge; whether the statements are false; whether Plaintiff has proven actual malice by clear and convincing evidence; whether Dr. Mitchell's communication was conditionally privileged and, if so, whether the privilege was abused; whether the defamation claims against Dr. Mitchell are timely; whether each Defendant is liable for civil aiding and abetting; and the nature and amount of compensatory and punitive damages.

The parties have submitted joint proposed jury instructions, a joint proposed voir dire questions, and a joint neutral statement of facts concurrently with this Memorandum, along with separate proposed special verdict forms. Plaintiff anticipates disputes concerning, among other things, the proper framing of the actual-malice instruction, the burden of proof on conditional privilege and its abuse, the allocation of the burden on the statute-of-limitations defense, the sequencing and gating of the special verdict questions, and the circumstantial proof available on the civil aiding-and-abetting claim, which must be decided by the Court.

## IX. ESTIMATED TRIAL LENGTH AND PLACEMENT IN TRIAL POOL

Assuming all counts in the controlling pleading are to be considered by the jury, Plaintiff estimates that the trial will require approximately ten to 14 days trial days. Plaintiff demands a trial by jury of eight jurors on all issues so triable.

This matter is currently listed in the trial pool set for December 7, 2026 through December 18, 2026. Plaintiff's lead trial counsel, Alan B. Epstein, has a longstanding travel plans to attend an out-of-state wedding of a close family member (great niece) that will render him unavailable from Tuesday, December 8, 2026 through Tuesday December 15, 2026 to participate in the trial during that time. To permit Mr. Epstein to serve as lead trial counsel, Plaintiff respectfully requests that this matter be placed at the back of the current trial pool selected by the Court (that extends through December 18, 2026) to ensure his availability, or, in the alternative, if placement at the back of the currently selected trial cannot be scheduled to accommodate the aforesaid conflict of Mr. Epstein, Plaintiff respectfully requests the matter be moved to the next available trial pool.

Respectfully Submitted,

**SPECTOR GADON ROSEN VINCI P.C.**

By: /s/ Adam Filbert

Alan B. Epstein, Esquire (Pa. Atty ID No. 2346)
Adam Filbert, Esquire (Pa. ID No. 330960)
*Attorneys for Plaintiff*

November 16, 2026